UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>NTT DATA, INC.,<br><br>          Defendant. | Case No. 6:18-cv-06591-CJS |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE CLASS ACTION COMPLAINT IN ITS ENTIRETY AND WITH PREJUDICE**

Jacqueline Phipps Polito, Esq.
Jessica F. Pizzutelli, Esq.
LITTLER MENDELSON, P.C.

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**PAGE**

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     PLEADED "FACTS" BASED ON ALLEGATIONS IN THE COMPLAINT ............... 3

III.    LEGAL STANDARD........................................................................................ 5

IV.    CLAIM I MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A
CLAIM FOR TITLE VII DISPARATE IMPACT RACE DISCRIMINATION ............. 7

V.     THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS, AND DISMISS
CLAIMS II AND III ........................................................................................ 11

VI.    CLAIM III MUST BE DISMISSED BECAUSE MANDALA RECEIVED A
COPY OF ARTICLE 23-A................................................................................ 13

VII.   CLAIM III SHOULD BE DISMISSED FOR THE ADDITIONAL REASON
THAT PLAINTIFFS LACK STANDING TO SUE UNDER BINDING
SUPREME COURT PRECEDENT .................................................................... 14

VIII.  PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN........................... 17

       A.    Plaintiffs Do Not Have Standing To Represent Applicants Whose Claims
Arose Before Plaintiffs Applied For Positions With NTT Data ......................... 18

       B.    Plaintiffs Do Not Adequately Allege That The Fed. R. Civ. P. 23
Prerequisites Are Met Here............................................................................. 19

IX.    THE CLAIMS OF THE PURPORTED "NY CRIMINAL HISTORY
DISCRIMINATION CLASS" ARE ALSO TIME-BARRED ...................................... 22

X.     PLAINTIFFS' CLAIMS FOR COMPENSATORY AND PUNITIVE
DAMAGES MUST BE DISMISSED ................................................................... 23

XI.    CONCLUSION................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
   742 F.3d 720 (7th Cir. 2014) .................................................................11

*Alexander v. Bd. of Educ.*,
   648 F. App'x 118 (2d Cir. May 6, 2016) ................................................14

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...............................................................5, 6, 10

*Barnett v. Cobb County Sch. Dist.*,
   No. 1:15-CV-3561, 2017 WL 5203049 (N.D. Ga. 2017) ................8, 9, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................5, 6, 10, 20

*Booker v. City of New York*,
   No. 14 Civ. 9801, 2017 U.S. Dist. LEXIS 43436 (S.D.N.Y. Mar. 24, 2017).........................12

*Brown v. Coach Stores, Inc.*,
   163 F.3d 706 (2d Cir. 1998)....................................................................7

*Castellano v. Bd. Of Trustees of the Police Officers' Variable Supplements Fund*,
   937 F.2d 752 (2d Cir. 1991).............................................................11, 12

*E.E.O.C. v. Joe's Stone Crab, Inc.*,
   220 F. 3d 1263 (11th Cir. 2000) ..............................................................7

*Hall v. Kodak Ret. Income Plan*,
   No. 07-CV-6169, 2009 U.S. Dist. LEXIS 23682 (W.D.N.Y. Mar. 20, 2009),
   *aff'd* No. 09-1674-cv, 2010 U.S. App. LEXIS 2108 (2d Cir. 2010)......................13

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995).......................................................................14

*Jennings v. City of Tuscaloosa*,
   No. 7:13-CV-00874, 2013 WL 5299304 (N.D. Ala. Sept. 19, 2013)............8, 9, 11

*Kolstad v. ADA*,
   527 U.S. 526, 119 S. Ct. 2119 (1999).....................................................23

*Lee v. Hertz Corp.*,
   No. 15-cv-04562-BLF, 2016 U.S. Dist. LEXIS 166911 (N.D. Cal. Dec. 2,
   2016) ......................................................................................................16

*Long v. SEPTA*,
   903 F.3d 312 (3rd Cir. 2018) .................................................................15, 16, 17

*Machella v. Cardenas*,
   653 F.2d 923 (5th Cir. 1981) ...............................................................................14

*Maddison v. Comfort Sys. USA (Syracuse)*,
   No. 5:17-CV-0359, 2018 U.S. Dist. LEXIS 16090 (N.D.N.Y. Feb. 1, 2018) ..................18, 19

*Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*,
   631 F.3d 57 (2d Cir. 2011)......................................................................................6

*Mentor v. Dept. of Educ. of City of N.Y.*,
   56 Misc. 3d 1220(A), (Sup. Ct. N.Y. Cty. Jan. 17, 2017) ......................................22

*New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
   497 F.3d 109 (2d Cir. 2007)...........................................................................11, 12

*Norman v. Connecticut State Board of Parole*,
   458 F.2d 497 (2d. Cir. 1972)...............................................................................14

*Pagán v. Calderon*,
   448 F.3d 16 (1st Cir. 2006).....................................................................................6

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ...............................................................................17

*Pouyeh v. Bascom Palmer Eye Inst.*,
   613 F. App'x 802 (11th Cir. 2015) .........................................................................8

*Roach v. T.L. Cannon Corp.*,
   No. 3:10-cv-0591(TJM/DEP), 2015 U.S. Dist. LEXIS 177286 (N.D.N.Y.
   Sept. 4, 2015) .......................................................................................................19

*Rodriguez v. Beechmont Bus Service, Inc.*,
   173 F. Supp. 2d 139 (S.D.N.Y. 2001)..................................................................10

*Sutton ex rel. Rose v. Wachovia Sec., LLC*,
   208 F. App'x 27 (2d Cir. 2006) .....................................................................11, 12

*Schilling v. Kenton Cty.*,
   No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050 (E.D. Ky. 2011) .........................17

*Schmookler v. Empire Blue Cross and Blue Shield*,
   107 F.3d 4 (2d Cir. 1997)......................................................................................14

*Smith v. City of Jackson, Miss.*,
   544 U.S. 228 (2005).............................................................................................10

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................... *passim*

*Trezza v. Hartford, Inc.*,
    No. 98 CIV. 2205, 1998 WL 912101 (S.D.N.Y. Dec. 30, 1998) ................................9

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .........................................................................................21

*Wards Cove Packing Co, Inc.. v. Atonio*,
    490 U.S. 642 (1989) ...............................................................................................7

*Washington v. Steve*,
    No. 13-CV-343, 2013 WL 6061988 (E.D. Wisc. Nov. 18, 2013) .......................8, 9

**Statutes**

28 U.S.C. § 1367(c)(3) ..........................................................................................11

42 U.S.C. § 1981a(a)(1) ........................................................................................23

N.Y. Exec Law § 296(15) ................................................................................18, 22

N.Y. Gen. Bus. Law § 380-g(d) ...............................................................3, 13, 16, 21

New York Correction Law § 753 ..........................................................................12

**Other Authorities**

CPLR § 214(2) .......................................................................................................22

Fed R. Civ. P. 8(a)(2) ..............................................................................................5

Fed. R. Civ. P. 12(f) ..............................................................................................17

Fed. R. Civ. P. 23 ...........................................................................................*passim*

Fed. R. Civ. P. 23(a)(1)-(a)(4) ..............................................................................19

Fed. R. Civ. P. 23(c)(1)(A) ....................................................................................17

Fed. R. Civ. P. 12(b)(1) .......................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ..............................................................................1, 6, 9, 17

Fed. R. Civ. P. 23(d)(1)(D) ....................................................................................17

5-23 Moore's Federal Practice – Civil § 23.21 (2017) ..........................................19

I.      **PRELIMINARY STATEMENT.**

Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), Defendant NTT DATA, Inc. ("NTT DATA") submits this Memorandum of Law in support of its Motion to Dismiss, in its entirety and with prejudice, Plaintiffs' purported "Class Action Complaint," filed on August 15, 2018 (Dkt. 1) ("Complaint" or "Compl.").

Reduced to its core, Plaintiffs' sole federal claim of alleged Title VII disparate impact race discrimination is based only on Plaintiffs' purported and conclusory contention that there are "gross racial disparities in the criminal justice system" which are not in any way unique to NTT DATA, but as stated in the Complaint, due instead to a "national crisis." (Compl., ¶¶ 53-54).  NTT DATA is not, however, liable or responsible for "gross racial disparities in the criminal justice system," nor is a Title VII class action the mechanism to correct same.  Instead, to survive a motion to dismiss, Plaintiffs must identify a facially neutral employment policy or practice *by NTT DATA*, not the country as a whole, which actually has a *significant disparate impact* for which *NTT DATA is responsible*, not a nationwide "crisis" concerning the "criminal justice system."  Plaintiffs have utterly failed to meet that burden here.  For this reason, and those set forth in more detail below, Plaintiffs' Title VII disparate impact claim in Claim I must be dismissed.

In addition, since the Complaint indisputably fails to state a plausible claim for relief under Title VII, the only federal claim, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims alleged in Claim II (alleged discriminatory denial of employment under the New York Human Rights Law and Article 23-A of New York's Correction Law) and Claim III (alleged failure to provide a copy of Article 23-A pursuant to New York's General Business Law).  Indeed, Claims II and III are quintessential state law claims that will require individualized inquiries and concern issues of state law that, if even

1

viable, more appropriately belong in New York state court.

Even if this Court were inclined to exercise supplemental jurisdiction over the remaining claims, Claim III should be dismissed outright because it is based on the false factual premise that Mandala did not receive a copy of Article 23-A when executing a background check authorization.  The background check authorization executed by Mandala is submitted herewith, and plainly shows that Mandala received a copy of Article 23-A.  In addition, even if Plaintiff Mandala did not receive a copy of Article 23-A (he did), Claim III must nevertheless still be dismissed because Plaintiff Mandala lacks standing to sue because he suffered no concrete harm.  Although Plaintiff Mandala claims that he was denied "an opportunity to learn of [his] rights under Article 23-A," this is completely belied by the very fact that he filed this lawsuit.  Plainly he is aware of his rights, and filed a lawsuit to enforce same.  Accordingly, Claim III should be dismissed on both the merits and jurisdictional grounds.

In addition, Plaintiffs' purported class claims must be stricken because they are deficient in at least three respects.  First, Plaintiffs do not have standing to represent the classes as alleged in the Complaint.  Second, Plaintiffs fail to plead that the FED. R. CIV. P. 23 prerequisites are met here.  Third, a significant portion of the "NY Criminal History Discrimination Class" is also time-barred.

For these reasons and those set forth below, Plaintiffs' Complaint is completely deficient on multiple fronts, and should be dismissed in its entirety and with prejudice.  Claim I fails to state a claim upon which relief can be granted, and the Court should decline to exercise jurisdiction over Claims II and III, in accordance with Second Circuit law.  These claims are also facially deficient in their own right based on the merits and jurisdictional grounds as described more fully below.

## II.    <u>PLEADED "FACTS" BASED ON ALLEGATIONS IN THE COMPLAINT</u>.

The following are the pleaded "facts" alleged in Plaintiffs' Complaint, which are assumed to be true solely for the purposes of this motion to dismiss.

According to the Complaint, Mandala, who is African American and lives in Rochester, New York, applied for a job as a Salesforce Developer with NTT DATA "[i]n or around January or February of 2017." (Compl., ¶¶ 15, 16, 23). This is a "technical" position. (*Id.* at ¶ 24). When he interviewed, Mandala was asked "technical questions related to the position," which he answered "competently, based on his years of applicable work experience." (*Id.*). On March 22, 2017, Mandala received an offer letter for a position as an Application Software Development Senior Principal Consultant, a position Mandala accepted. (*Id.* at ¶¶ 27, 29). Thereafter, Mandala "authorized a background check," and NTT DATA obtained a criminal background check on Mandala from a consumer reporting agency. (*Id.* at ¶ 30). After receiving his background check, NTT DATA recruiter Patricia Price asked Mandala to "give [her] a call to discuss [his] background check." (*Id.* at ¶ 32). Mandala called Price, and Price allegedly informed Mandala that "NTT had a policy not to hire persons with felonies on their records." (*Id.* at ¶ 33). Mandala's job offer was withdrawn on April 6, 2017. (*Id.* at ¶ 34). Mandala claims that "NTT never provided [him] with a copy of Article 23-A of the Correction Law as required by N.Y. Gen. Bus. Law § 380-g(d)." (*Id.* at ¶¶ 36, 79).

Separately, Barnett, who is African American and lives in Frankfort, Kentucky, was "contacted" by NTT DATA regarding a "web developer" position. (*Id.* at ¶¶ 17, 18, 38). After an in-person interview, Barnett received an offer of employment, which he accepted. (*Id.* at ¶ 43). Thereafter, Barnett authorized a background check, and a criminal background check was obtained from a consumer reporting agency. (*Id.* at ¶¶ 44-45). Barnett alleges that he was advised that his offer of employment was withdrawn, and that he would not be considered for

other positions, because of his felony convictions. (*Id.* at ¶¶ 46-48). Neither Mandala nor Barnett allege that they actually have a felony conviction or what that felony conviction is. (*Id.*, *generally*).

The only statistics cited by Plaintiffs are the following: "African Americans are arrested and incarcerated for crimes at higher rates than Whites, relative to their share of the national population." (*Id.* at ¶ 52). In support of this bald assertion, Plaintiffs refer to arrest data from 2010, 2012 and 2016. (*Id.* at ¶ 53, n. 1). Plaintiffs do not cite to any data concerning felony conviction rates, let alone felony conviction rates for skilled individuals like Plaintiffs. (*Id.*, *generally*). None of these assertions are specific to NTT DATA, but rather rely upon purported national statistics. Nevertheless, based on these scant alleged "facts," Plaintiffs filed a class action complaint against NTT DATA. In the Complaint, Plaintiffs assert one federal and two state law causes of action, as follows:

- First Claim for Relief (Title VII Disparate Impact Discrimination): Plaintiffs allege on behalf of themselves and "on behalf of the Title VII Disparate Impact Class," that Defendant's "policy and practice of denying employment opportunities to individuals with criminal convictions had a disparate impact on African Americans," in violation of Title VII. (*Id.* at ¶ 110).

- Second Claim for Relief (New York Human Rights Law, Article 23-A): Plaintiff Mandala, on behalf of himself and "the NY Criminal History Discrimination Class," alleges that Defendant denied Plaintiff Mandala and the class employment based on their criminal history without conducting a "proper inquiry into the factors outlined in Article 23-A." (*Id.* at ¶ 115).

- Third Claim for Relief (New York General Business Law): Plaintiff Mandala, on behalf of himself and a "NY FCRA Class" alleges that "NTT violated the NY FCRA by procuring consumer reports" from Plaintiff Mandala and the class "without providing them with a copy of Article 23-A of the Correction Law." (*Id.* at ¶ 119).

In defining the scope of the above-referenced classes, Plaintiffs purport to represent class members who allegedly applied for positions with NTT DATA long before Plaintiffs ever applied for a position. (*Id.* at ¶¶ 93-95). They also broadly define the "Title VII Disparate

4

Impact Class" and "NY Criminal History Discrimination Class" as including "[a]ll African American individuals" who were denied employment "based in whole or in part" on their "criminal record," despite the fact that Plaintiffs only challenge NTT DATA's purported policy to exclude applicants with criminal *felony* convictions.  (*Id.* at ¶¶ 93-94).  Plaintiffs also define the "NY FCRA Class" as including "[a]ll individuals who, from August 15, 2016, through the resolution of this action, had consumer reports requested about them by NTT and were not provided with a copy of Article 23-A of the Correction Law," regardless of whether the consumer reports had criminal conviction information on them.  (*Id.* at ¶ 95).

In addition, in the "Prayer for Relief," Plaintiffs seek—among other things—an "award of compensatory and/or punitive damages for violations of Title VII," and an "award of compensatory and/or punitive damages for violations of the NYHRL."  (*Id.* at p. 23).  For the reasons set forth below, Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

## III.   <u>LEGAL STANDARD.</u>

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) ("[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests") (internal quotations and citations omitted).  In making that determination, the Court must conduct a two-part analysis.  *Iqbal*, 129 S. Ct. at 1949-50.  First, the Court must separate factual allegations from legal conclusions because mere "[t]hreadbare recitals of the

5

elements of a cause of action, supported by mere conclusory statements" do not suffice. *Id.* Second, the Court must determine whether the factual allegations sufficiently show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. Where the facts, even if believed, do not state a viable legal claim, dismissal is warranted. *Twombly*, 550 U.S. at 556, 570. Therefore, the complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (internal quotation marks and citations omitted). When deciding a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* The same is not true, however, of the legal conclusions derived from those factual allegations. *See Iqbal*, 556 U.S. at 678.

In addition, Rule 12(b)(1) requires dismissal of a claim if the Court lacks subject matter jurisdiction over it. FED. R. CIV. P. 12(b)(1). For subject matter jurisdiction to exist, Plaintiffs bear the burden of showing that they have Article III standing. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). It is well-settled that standing is both "plaintiff-specific and claim-specific." *Pagán v. Calderon,* 448 F.3d 16, 26 (1st Cir. 2006). Thus, each Plaintiff must plead facts showing standing to assert each claim against NTT DATA. *Id.* To do so, each Plaintiff must plead facts that plausibly show that he personally suffered a cognizable "injury in fact." *Spokeo,* 136 S. Ct. at 1547-48. To establish an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548.

Application of these well-settled principles requires that the Complaint be dismissed in its entirety and with prejudice.

**IV.** **CLAIM I MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM FOR TITLE VII DISPARATE IMPACT RACE DISCRIMINATION.**

The Complaint fails to state a claim for Title VII disparate impact race discrimination. "To establish a *prima facie* case of disparate impact, a plaintiff 'must show that a facially neutral employment policy or practice **has a significant disparate impact**.'" *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir. 1998) (internal citation omitted, emphasis added); *see also E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F. 3d 1263, 1274 (11th Cir. 2000) (in order to establish a disparate impact claim, a plaintiff must establish: (1) a significant statistical disparity between the labor pool and those actually hired, (2) a specific employment practice that allegedly has a disproportionate impact, and (3) demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination).

Generally, the proper basis for the initial inquiry in a disparate impact case is a comparison between the composition of qualified persons in the labor market and the persons holding the jobs at issue. *See Wards Cove Packing Co, Inc.. v. Atonio,* 490 U.S. 642, 650-51 (1989). In cases where such labor market statistics are difficult if not impossible to obtain, a plaintiff may use other statistics—for example, measures showing the mix of "otherwise-qualified applicants" for the jobs at issue—to establish a *prima facie* case. *Id.* at 651.

In addition, Plaintiff must also show that a specific employment practice actually had a disproportionate impact. *See Brown,* 163 F.3d at 712-713 ("general statistics" will not suffice; the complaint failed to "adequately allege a disparate impact claim" where the "statistics shed no light on whether there is a disparity" at defendant). A plaintiff may establish that the facially neutral practice has a significantly discriminatory impact by offering statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of job applicants *because of* their membership in a protected group. *Joe's Stone Crab,* 220 F.3d at

1273-74.  "Conclusory assertions regarding statistical disparities are not sufficient to state a disparate impact claim."  *Pouyeh v. Bascom Palmer Eye Inst.,* 613 F. App'x 802, 811 (11th Cir. 2015) (allegation that plaintiff "knew of only one other immigrant Iranian doctor, who had applied and not obtained a residency position… is insufficient to show the alleged practice of not hiring graduates of foreign medical institutions resulted in prohibited discrimination").

In *Barnett v. Cobb County Sch. Dist.,* No. 1:15-CV-3561, 2017 WL 5203049 (N.D. Ga. 2017), for example, the Court found that the employee failed to state a disparate impact claim based on his employer's alleged policy not to hire individuals who have been arrested.  *Id.* at *2. The Court reasoned:  "Plaintiff fails to offer facts tending to show that the arrest policy as applied by Defendant has caused the exclusion of African American applicants because of their race." *Id.* at *4.  The Court observed that while "Plaintiff generally alleges African Americans are arrested more often than other non-minority groups, Plaintiff does not allege statistics or any other facts tending to show that ***the application of Defendant's arrest policies*** has had a disproportionate impact on African Americans." *Id.* (emphasis added).

Similarly, in *Jennings v. City of Tuscaloosa,* No. 7:13-CV-00874, 2013 WL 5299304, at *2 (N.D. Ala. Sept. 19, 2013), the Court dismissed an employee's disparate impact claim based on an employer's alleged criminal history policy.  The Court held that the allegation that "Defendant's DUI policy as enforced has a disparate impact on African-Americans and employees over the age of forty (40)," was a legal conclusion that must be stricken.  *Id.* at *3, *citing Twombly,* 550 U.S. at 555.  The Court concluded:  "The complaint provides no factual matter to allow an inference that the City's DUI policy disparately impacts African-Americans." *Id.*

In addition, in *Washington v. Steve,* No. 13-CV-343, 2013 WL 6061988 (E.D. Wisc. Nov.

18, 2013), another Court held that a job applicant failed to state a claim for disparate impact race discrimination based on the company's alleged refusal to hire him based on his criminal conviction.  *Id.* at *2.  The Court dismissed the applicant's complaint, reasoning that the applicant "has not alleged that members of his race were more often refused jobs on the basis of their race." *Id.*

As in *Barnett, Jennings,* and *Washington,* here, Plaintiffs similarly fail to plead a Title VII disparate impact race discrimination claim.  As a threshold matter, although Plaintiffs allege that Defendant had a policy "not to hire persons with felonies on their records," (Compl., ¶ 33), Plaintiffs offer no statistics that African Americans have more "felonies on their records" than other racial groups.  Instead, Plaintiffs cite only statistics that African Americans are allegedly "*arrested and incarcerated*" (not convicted) for "*crimes*" (not specific to "felonies") at "higher rates than Whites."  (*Id.*, ¶ 52).  Thus, the purported statistics cited by Plaintiffs have absolutely nothing to do with the alleged facially neutral policy they challenge—*i.e.*, the alleged failure to hire applicants with criminal felony convictions.  (*Id.* at ¶¶ 33, 46-48).

In addition, despite their acknowledgment that the labor pool only involves "qualified African American applicants," (*Id.*, ¶ 2), Plaintiffs generally refer to generic statistics for all "African Americans," which is not the applicable labor pool here.  Indeed, Plaintiffs allege that both Mandala and Barnett are skilled workers who applied for "technical" positions as an "Application Software Development Senior Principal Consultant" and "web developer."  (*Id.,* ¶¶ 17, 18, 24, 27, 29, 38).  Again, Plaintiffs offer no statistics supporting that African Americans with this technical skill set are convicted of felonies at a higher rate than other racial groups.  *See Trezza v. Hartford, Inc.,* No. 98 CIV. 2205, 1998 WL 912101, at *8 (S.D.N.Y. Dec. 30, 1998) (dismissing disparate impact claim, pursuant to FED. R. CIV. P. 12(b)(6), where plaintiff "alleges

9

no facts about the mix of the relevant labor pool or about the pool of otherwise-qualified applicants," and only offered a "conclusory assertion" that at-issue test caused a disparate impact).

Furthermore, Plaintiffs allege no facts or statistics to support that Defendant's alleged policy actually had a significant adverse impact as applied.  In other words, Plaintiffs rely only on **general population statistics**—and inapplicable general population statistics, at that—with no connection to NTT DATA whatsoever.  Plaintiffs do not allege any facts supporting that African American applicants were, in fact, refused jobs more often than White applicants here.  *See, e.g., Rodriguez v. Beechmont Bus Service, Inc.,* 173 F. Supp. 2d 139, 148 (S.D.N.Y. 2001) (granting motion to dismiss with prejudice disparate impact claim where "plaintiff presents no statistical evidence to suggest that any such neutral policy or factor had a significant adverse impact"); *see also Barnett,* 2017 WL 5203049, at *4 (rejecting notion that simply alleging "African Americans are arrested more often than other non-minority groups" suffices to establish disparate impact claim).

Plaintiffs' allegations that "NTT's policy… creates a disparate impact on African Americans in violation of Title VII," "NTT's policy…had and continues to have a significant and detrimental impact on African Americans… as compared to White applicants," "the policy and practice… excluded many properly qualified persons, including disproportionate numbers of African American applicants," and "Defendant's policy… had a disparate impact on African Americans," (Compl., ¶¶ 6, 52, 61, 110), do not save their claim.  These assertions are nothing more than conclusory legal allegations that must be stricken under *Iqbal* and *Twombly.  See also, e.g., Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) ("[I]it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to

such an impact."); *Jennings,* 2013 WL 5299304, at *3 (allegation that "Defendant's DUI policy as enforced has a disparate impact on African-Americans" was legal conclusion that must be stricken, citing *Twombly*); *Adams v. City of Indianapolis* , 742 F.3d 720, 733 (7th Cir. 2014) (finding that the words "disproportionate" and "impermissible impact" and other synonyms constituted "bare legal conclusions, not facts.").

Indeed, even on the face of the Complaint, Plaintiffs appear to concede that it is an open question whether there even is a disparate impact here, and that they have no facts to support same. *See* Compl., ¶ 99(b) (framing as an open question:  "Whether Defendant's policy and practice to exclude job applicants based on certain convictions had a discriminatory disparate impact on African Americans").  For these reasons, Plaintiffs completely fail to allege a Title VII disparate impact claim, and Claim I of their Complaint should be dismissed with prejudice.

**V.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS, AND DISMISS CLAIMS II AND III.**

Plaintiffs indisputably fail to state a plausible claim for relief under Title VII, the only federal claim asserted by Plaintiffs.  Consequently, this Court should decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims, and dismiss Claims II and III (Compl., ¶¶ 113-124).  *See* 28 U.S.C. § 1367(c)(3); *New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.,* 497 F.3d 109, 119 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well") (internal citation omitted); *Sutton ex rel. Rose v. Wachovia Sec., LLC,* 208 F. App'x 27, 29 (2d Cir. 2006) ("Having dismissed the [plaintiffs'] federal claims, the district court did not err in declining to exercise supplemental jurisdiction over the state common law claims"); *Castellano v. Bd. Of Trustees of the Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991) (affirming dismissal of pendent state claim after federal claims were dismissed:  "Certainly, if

the federal claims are dismissed before trial… the state claims should be dismissed as well").

In *Booker v. City of New York,* No. 14 Civ. 9801, 2017 U.S. Dist. LEXIS 43436 (S.D.N.Y. Mar. 24, 2017), for example, the Court declined to exercise supplemental jurisdiction over an applicant's claims under Article 23-A of the New York Correction Law after it dismissed his federal claims, including his Title VII claim.  The Court reasoned that where all federal claims are eliminated before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at *3.

As in *Booker*, here, Plaintiffs' only federal claim (the Title VII claim) should be dismissed and this Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims in Claims II and III.  *Accord N.Y. Mercantile Exch.,* 497 F.3d at 119; *Sutton,* 208 F. App'x at 29; *Castellano,* 937 F.2d at 758.   Indeed, Claims II and III are quintessential state law claims, brought by a New York resident concerning New York applicants, which properly belong—if even viable—in New York state court.  In Claim II, for example, Plaintiffs allege discriminatory denial of employment under the New York Human Rights Law and Article 23-A of the New York Correction Law, which claims will require an individualized inquiry into whether: (1) each individual applicant was denied employment because of his or her felony criminal conviction; and (2) the eight factors set forth in New York Correction Law § 753 for each individual putative class member purportedly denied employment due to his felony criminal conviction.  (Compl., ¶¶ 113-117).  Claim III alleges failure to provide a copy of New York's Article 23-A under the New York General Business Law to New York applicants.  (*Id.*, ¶¶ 118-124).  Plaintiffs' meek attempt to make this a federal case, by improperly asserting a Title VII race discrimination claim with no facts to support same, should not be

allowed.

## VI.   CLAIM III MUST BE DISMISSED BECAUSE MANDALA RECEIVED A COPY OF ARTICLE 23-A.

Claim III must be dismissed for the independent reason that it is based solely on the alleged fact that Mandala did not receive a copy of Article 23-A when he authorized a background check, a contention which is patently false.

According to New York General Business Law, § 380-g:

(d)  When a consumer reporting agency provides a consumer report that contains criminal conviction information… to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. GEN. BUS. LAW, § 380-g(d).   In the Complaint, Mandala alleges that he "authorized a background check pursuant to NTT DATA's policy, and NTT DATA obtained a criminal background check on Mr. Mandala from a consumer reporting agency."  (Compl., ¶ 30). Plaintiffs also allege that "NTT violated the NY FCRA by procuring consumer reports from Plaintiff Mandala and Class Members without providing them with a copy of Article 23-A of the Correction Law." (Compl., ¶ 119).

Plaintiffs' allegation is false, as is evidenced by the plain language of the background check authorization signed by Mandala, attached to the Declaration of Patricia Price, as Exhibit A, which is submitted herewith.  In the background check authorization, Mandala expressly acknowledged "receipt of Article 23-A of the New York Correction Law."   *Id.*   An acknowledgment of receipt of a document is sufficient proof that the document was, in fact, received.  *See, e.g., Hall v. Kodak Ret. Income Plan,* No. 07-CV-6169, 2009 U.S. Dist. LEXIS 23682, at *26-27 (W.D.N.Y. Mar. 20, 2009), *aff'd* No. 09-1674-cv, 2010 U.S. App. LEXIS 2108 (2d Cir. 2010) (employee's acknowledgment that he received a document is clear "evidence" that

he actually received it).

The Court may consider the background check authorization, because such authorization was incorporated by reference into the Complaint, and is "integral" to the Complaint. *See Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) ("The complaint is deemed to include any… documents incorporated in it by reference. Moreover, when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss"); *Alexander v. Bd. of Educ.,* 648 F. App'x 118, n. 2 (2d Cir. May 6, 2016) (district court may properly consider documents "either incorporated by reference in or [that] were integral to the complaint").

Moreover, because Mandala's individual claim must be dismissed, so too must the class allegations in Claim III, because Plaintiff Mandala cannot bring suit for a class of which he is not a member. *See* FED. R. CIV. P. 23 (plaintiff must be a "member" of the class); *see also, e.g., Norman v. Connecticut State Board of Parole,* 458 F.2d 497, 499 (2d. Cir. 1972) (it is "clear that a named plaintiff cannot bring suit for a class of which he is not a part"); *Schmookler v. Empire Blue Cross and Blue Shield,* 107 F.3d 4, at *1 (2d Cir. 1997) (upholding lower court dismissal of subclass because "none of the named plaintiffs was a member of the class"); *Machella v. Cardenas,* 653 F.2d 923, 927 (5th Cir. 1981) ("One may not represent a class of which he is not a part."). Thus, Claim III must be dismissed with prejudice.

## VII.  CLAIM III SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT PLAINTIFFS LACK STANDING TO SUE UNDER BINDING SUPREME COURT PRECEDENT.

On May 16, 2016, the United States Supreme Court made clear in the seminal case *Spokeo, Inc. v. Robins* that an alleged violation of the Fair Credit Reporting Act—the federal analog to the New York General Business Law, § 380-g statute at issue here—on its own, is

insufficient to show a "concrete injury," even "in the context of a statutory violation." 136 S. Ct. at 1549.  The Supreme Court held that bare procedural, notice violations, divorced from any concrete injury, do not confer standing.  *Id.* at 1549.  The Court held:

> [Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation.  A violation of one of the FCRA's procedural requirements may result in no harm.  For example, ***even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate****….*

*Id.* at 1550 (emphasis added).

Consistent with *Spokeo,* other Circuit Courts have rejected claims on standing grounds where the plaintiff asserted a bare procedural violation of a statute's notice requirement.  For example, just last month in *Long v. SEPTA,* 903 F.3d 312 (3rd Cir. 2018), the Third Circuit considered facts virtually analogous to those alleged here.  In that case, the named plaintiffs— like Plaintiffs here—alleged that they were convicted of drug offenses, applied for employment, authorized a background check, received an offer of employment, and then were ultimately denied employment because of criminal information on their background check.  *Id.* at 316-317. The named plaintiffs alleged, much like Plaintiffs allege here, that they did not receive notice of their rights under the Fair Credit Reporting Act, which the employer was required to send before denying them employment.  *Id.*  The named plaintiffs thereafter filed a putative class action complaint based on this violation, as well as other claims not at issue here.  *Id.*  The employer moved to dismiss the claim on *Spokeo* standing grounds, which the District Court granted.

On appeal, the Third Circuit affirmed this aspect of the District Court's decision.  The Court reasoned that, although the FCRA provides that "before" a potential employer takes any adverse action based on a consumer report it must provide the applicant with "a description in writing of the rights of the consumer under [the FCRA]," (*Id.* at 317-318), this was a "bare procedural violation, divorced from any concrete harm" that cannot "satisfy the injury-in-fact

15

requirement of Article III." *Id.* at 325, *citing Spokeo,* 136 S. Ct. at 1549.  The Court reasoned:

"***Plaintiffs became aware of their FCRA rights and were able to file this lawsuit within the prescribed limitations period, so they were not injured***."  *Id.* at 325 (emphasis added, citing "other federal appeals courts" that "have arrived at results consistent with this one").  In other words, the named plaintiffs "lack standing, because although they did not receive FCRA rights disclosures, they understood their rights sufficiently to be able to bring this lawsuit."  *Id.* Because the named plaintiffs did not have standing, the Court also held they could not bring claims on behalf of the purported class.  *Id.; see also Lee v. Hertz Corp.,* No. 15-cv-04562-BLF, 2016 U.S. Dist. LEXIS 166911, at *20-21 (N.D. Cal. Dec. 2, 2016) (granting motion to dismiss plaintiff-applicants' FCRA claim based on allegation that they were not provided summary of rights under FCRA because Plaintiffs did not meet Article III's injury-in-fact requirement).

Plaintiffs' claims in this case are virtually identical to those asserted in *Long*.  Here, as in *Spokeo* and *Long,* Plaintiffs lack standing to bring their N.Y. Gen. Business Law claims. Plaintiffs' Complaint does nothing more than list purported violations of the procedural requirements of the "NY FCRA," N.Y. GEN. BUS. LAW § 380-g(d), and then lay claim to damages for those purported violations.  (Compl., ¶¶ 74, 124). But, *Spokeo* makes clear that a statutory violation (of a FCRA statute, no less), without more, does not satisfy Article III, and Plaintiffs do not allege a single fact showing any resulting harm or damages from their alleged failure to receive an Article 23-A notice.  Although Plaintiffs assert that "Plaintiff Mandala and other [undefined] job applicants" suffered a "concrete harm" because they were allegedly denied "an opportunity to learn of their rights under Article 23-A of the Correction Law," (Compl., ¶ 80), as in *Long,* this allegation is belied by the very fact that Plaintiff Mandala now brings a lawsuit alleging violations of Article 23-A.  This lawsuit is conclusive evidence that, even if he

did not receive a copy of Article 23-A (he did), such a bare procedural violation resulted in no harm. Plaintiff Mandala is well aware of his rights under the law and brought a lawsuit to enforce them. Under these circumstances, it is hard to imagine how the (alleged) failure to disseminate a copy of Article 23-A could work any concrete harm. *Spokeo,* 136 S. Ct. at 1550. As such, Plaintiff Mandala does not have standing to bring Claim III, either individually or on behalf of a purported class of job applicants (*Long,* 903 F.3d at 317)*,* and Defendant's motion to dismiss should be granted as a matter of law.

## VIII.   PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN.

In the alternative, if this Court is not inclined to dismiss the Complaint in its entirety, Plaintiffs' class allegations should nevertheless be stricken because Plaintiffs fail to plead that they have standing to represent the classes as defined in the Complaint, or that the FED. R. CIV. P. 23 requirements are met here.

The Federal Rules of Civil Procedure require the Court to determine whether to certify this lawsuit as a class action "at an early practicable time." FED. R. CIV. P. 23(c)(1)(A). Rule 23(d)(1)(D) provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Rule 12(b)(6) together with Rule 12(f) and Rule 23(d)(1)(D) allow a party to move to strike class claims before plaintiff moves for class certification. *See* FED. R. CIV. P. 12(b)(6), 12(f), 23(d)(1)(D), *see also, e.g., Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming grant of motion to strike class claims where predominance requirement not met); *Schilling v. Kenton Cty.*, No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *11 (E.D. Ky. 2011) ("Defendants here filed a motion to dismiss that essentially challenges class certification based solely on the allegations in the complaint. In such a situation, the standard of review is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6).").

Here, Plaintiffs class allegations should be stricken because Plaintiffs: (1) do not have standing to represent applicants whose claims arise before Plaintiffs applied for a position with NTT DATA; and (2) do not adequately allege that the FED. R. CIV. P. 23 prerequisites are met.

> **A.    Plaintiffs Do Not Have Standing To Represent Applicants Whose Claims Arose Before Plaintiffs Applied For Positions With NTT Data.**

As set forth above, "a class cannot be certified if a named plaintiff lacks Article III standing." *Maddison v. Comfort Sys. USA (Syracuse)*, No. 5:17-CV-0359, 2018 U.S. Dist. LEXIS 16090, at *26 (N.D.N.Y. Feb. 1, 2018). "Accordingly, the named plaintiff must 'allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* at *26-27.

Here, Plaintiffs purport to represent the following classes:

- The "Title VII Disparate Impact Class," which Plaintiffs define to include "All African American individuals who, *from August 6, 2016, through the resolution of this action*, were denied employment based in whole or in part because of NTT DATA's policy and practice of denying employment to individuals with criminal convictions." (Compl., ¶ 93) (emphasis added).

- "NY Criminal History Discrimination Class," which Plaintiffs define to include "All individuals who, *from June 2, 2014, through the resolution of this action*, were denied employment based in whole or in part on their criminal record without NTT DATA having performed a complete New York Correction Law Article 23-A analysis, as required by N.Y. Exec Law § 296(15)." (*Id.* at ¶ 94) (emphasis added); or

- "NY FCRA Class," which Plaintiffs define to include "All individuals who, *from August 15, 2016, through the resolution of this action*, had consumer reports requested about them by NTT and were not provided with a copy of Article 23-A of the Correction Law." (*Id.* at ¶ 95) (emphasis added).

Plaintiffs concede, however, that Mandala only first applied for a position with NTT DATA starting "[i]n or around January or February of 2017." (*Id.* at ¶ 23). Barnett applied for a position even later, in July 2017. (*Id.* at ¶ 38). Thus, this Court should, at a bare minimum, strike any class claims brought by Plaintiffs *prior to January 2017*, because neither Plaintiff has

standing to assert such claims. *See, e.g., Maddison,* 2018 U.S. Dist. LEXIS 16090, at \*26-27 (limiting class period to only the dates that the Named Plaintiffs were employed, because "Plaintiff cannot claim to have been injured…before… his dates of employment" and "Plaintiff only has standing to represent the Rule 23 and FLSA Classes regarding injuries that the putative classes incurred between [dates Named Plaintiff was employed]"); *Roach v. T.L. Cannon Corp.,* No. 3:10-cv-0591(TJM/DEP), 2015 U.S. Dist. LEXIS 177286, at \*19-20 (N.D.N.Y. Sept. 4, 2015) (named plaintiffs do not have standing to sue as class representatives for claims that pre- or post-date their employment, and limiting temporal scope of class to dates named plaintiffs were employed); *see also, e.g.,* 5-23 Moore's Federal Practice – Civil § 23.21 (2017) ("For a class action to proceed, the court must apply the class definition to each proposed class representative and find that the class representative is a member of that class.").

Thus, for the reasons stated above, Plaintiffs' class allegations which fall before Plaintiff Mandala applied for a position at NTT DATA should be stricken.

### B. Plaintiffs Do Not Adequately Allege That The Fed. R. Civ. P. 23 Prerequisites Are Met Here.

Not surprisingly, considering that Plaintiffs lack standing to represent the "NY FCRA Class" (*see supra* Section VII), and a large percentage of the other classes as pled, Plaintiffs also fail to plead that the basic requirements of FED. R. CIV. P. 23 are met here.

Rule 23 provides that one or more members of a class may sue or be sued as representative parties on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"]." FED. R. CIV. P.

23(a)(1)-(a)(4).

Plaintiffs' Complaint alleges no facts supporting that these factors are met here.  For example, with respect to numerosity, Plaintiffs allege that the "Class Members identified herein are so numerous that joinder of all members is impracticable."  (Compl., ¶ 98).  This is nothing more than a "formulaic recitation" of the Rule 23 requirements.  *Twombly,* 550 U.S. at 555.

Moreover, although Plaintiffs claim that the "number of job applicants harmed by NTT's violations of the law is far greater than feasibly could be addressed through joinder,"  (Compl*.,* ¶ 98), these allegations have nothing to do with job applicants with felony convictions, let alone job applicants with felony convictions in New York who were actually denied employment.  Nowhere do Plaintiffs even allege that the number of job applicants with felony convictions during the relevant time period meet the numerosity requirements.  Nor do Plaintiffs break out the number of potential class members for each of their purported classes.  Simply put, Plaintiffs do not come close to alleging numerosity for any of the classes they seek to represent.

Similarly, with respect to typicality and commonality, Plaintiffs' assertion that their claims are "typical of the claims of the classes they seek to represent" (*Id.* at ¶ 101) and that there are "questions of law and fact common to Class Members" (*Id.* at ¶ 99), are belied by their own allegations in the Complaint.  Plaintiffs concede that, with respect to both the "Title VII Disparate Impact Class" and "NY Criminal History Discrimination Class" that an *individualized inquiry* is required to determine whether each individual applicant was actually "denied employment based in whole or in part on their criminal record," and not for some other reason.  (*Id.*, ¶¶ 93,-94).  Moreover, respecting the "NY FCRA Class," the class members, defined as *every single* "individual[] who… had consumer reports requested about them by NTT and were not provided with a copy of Article 23-A," is not limited to applicants with criminal histories.

As Plaintiffs concede, NY FCRA § 380-g(d) only applies to a *consumer report that contains criminal conviction information.*  (*Id.*, at ¶ 74).  Thus, class members with no criminal history have suffered no injury or violation of the law.  Accordingly, the class, as defined, is vastly overbroad, not tied to the allegations in the Complaint, and purports to include class members both with and without criminal histories whose claims are neither common nor typical of each other.  *See, e.g., Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers").

In fact, Plaintiffs own claims are not even "common" or "typical" of each other.  Mandala alleges that he applied for a position with NTT DATA (*Id.* at ¶ 23), but Barnett concedes he did not apply for a position.  Instead he alleges he was "contacted"—despite the fact that he purports to represent a class of job *applicants* (*Id.* at ¶ 38).  Mandala and Barnett were considered for different positions, with different clients and client requirements, in completely different states.  Mandala was told "he would be working at a company based in Wellesley, Massachusetts," but Barnett was contacted about an "opportunity to work on a contract with the Commonwealth of Kentucky."  (*Id.* at ¶¶ 26, 38).  Although Plaintiffs claim they have "criminal convictions," and challenge an alleged policy to exclude applicants with felony convictions, they do not allege that they themselves even have *felony* criminal convictions.  (Compl., *generally*).

Finally, with respect to adequacy of representation, for the reasons stated above, Plaintiffs are not adequate representatives of the classes.  They purport to represent a class of applicants who purportedly applied for positions long before Plaintiffs applied for positions with NTT DATA.  And, as set forth above, although Plaintiffs claim they have "criminal convictions," they do not allege that they themselves have *felony* criminal convictions—despite

21

the fact that they purport to represent a class of employees impacted by an alleged *felony* conviction policy.  In addition, Mandala received a copy of Article 23-A, and/or was clearly aware of the law's requirements, and therefore cannot adequately represent a class of employees who either did not receive Article 23-A, or were not aware of the law's requirements.

Thus, for these additional reasons, Plaintiffs' class allegations should be stricken.

## IX.   THE CLAIMS OF THE PURPORTED "NY CRIMINAL HISTORY DISCRIMINATION CLASS" ARE ALSO TIME-BARRED.

In addition to the fact that Plaintiff Mandala does not have standing to bring claims on behalf of the purported "NY Criminal History Discrimination Class" prior to January 2017, Plaintiffs' Complaint suffers from a second facial deficiency.  In Claim II, Plaintiffs improperly purport to challenge alleged discrimination dating back to June 2, 2014.  (Compl., ¶¶ 94, 113-117).  However, any claims prior to August 15, 2015 are plainly time-barred.

In Claim II, Plaintiffs allege that Defendant violated N.Y. Executive Law § 296(15), which prohibits denying employment in violation of Article 23-A of the New York Correction Law.  (*Id.*, ¶¶ 113-117).  "Executive Law § 297(9) is the applicable procedural enforcement mechanism invoked…for violations of Executive Law § 296(15)."  *Mentor v. Dept. of Educ. of City of N.Y.*, 56 Misc. 3d 1220(A), at *3 (Sup. Ct. N.Y. Cty. Jan. 17, 2017).  For such claims, a plaintiff must commence an action within three years, pursuant to CPLR § 214(2).  *See Id.; see also* C.P.L.R. § 214(2) ("The following actions must be commenced within three years… (2) an action to recover upon a liability, penalty or forfeiture created or imposed by statute").

Here, Plaintiffs filed their Complaint on August 15, 2018.  (Dkt. 1).  Thus, any claims for discriminatory denial of employment under Executive Law § 296(15) prior to August 15, 2015 are time-barred.  *Id.*  Nevertheless, in the Complaint, Plaintiff Mandala proposes a class period for the "NY Criminal History Discrimination Class" beginning on June 2, 2014, over a year

outside the applicable limitations period.   Accordingly, even if the Court does not limit Plaintiffs' class allegations on standing grounds, Plaintiff Mandala's and the class claims in Claim II must be limited to only those individuals who allegedly experienced discrimination during the relevant limitations period, and the Court should dismiss Plaintiffs' class claims prior to August 15, 2015.

## X.      PLAINTIFFS' CLAIMS FOR COMPENSATORY AND PUNITIVE DAMAGES MUST BE DISMISSED.

Finally, Plaintiffs improperly seek compensatory and punitive damages in the Complaint. Compensatory and punitive damages are not available for disparate impact claims under Title VII.   42 U.S.C. § 1981a(a)(1) (complaining party "may recover compensatory and punitive damages" except for cases where complaining party brings claims for "an employment practice that is unlawful because of its disparate impact"); *Kolstad v. ADA,* 527 U.S. 526, 534, 119 S. Ct. 2119, 2124 (1999) ("The 1991 Act limits compensatory and punitive damages awards, however, to cases of 'intentional discrimination'—that is, cases that do not rely on the 'disparate impact' theory of discrimination").   Similarly, punitive damages are not available under the New York Human Rights Law.   *See* N.Y. Exec. L. § 297(9) (punitive damages awarded "in cases of housing discrimination only").   Thus, to the extent the Complaint is not dismissed with prejudice and in its entirety (which it should be), Plaintiffs' request for compensatory and punitive damages for Claim I, and punitive damages for Claim III, must be dismissed, with prejudice.

## XI.     CONCLUSION.

The Complaint should be dismissed in its entirety.   Claims I and III should be dismissed on the merits and the Court should decline to exercise supplemental jurisdiction over Claim II. Plaintiffs' Title VII race discrimination claim should be dismissed, because Plaintiffs fail to assert facts supporting that African American applicants were disparately impacted by any NTT

DATA policy.  Claim III fails to state a claim, because Mandala did receive a copy of Article 23-A, a fact the Court may properly take judicial notice of.  Even if Mandala did not receive a copy of Article 23-A, he still does not have standing to sue because he suffered no concrete harm, as evidenced by the very fact of this lawsuit.  Plaintiffs' remaining claims are purely state law claims that properly belong in state court.  Furthermore, Plaintiffs' class allegations must be stricken, because they are untimely, Plaintiffs do not have standing to represent class members prior to the date Mandala first applied for employment with NTT DATA, and because Plaintiffs fail to allege that the FED. R. CIV. P. 23 prerequisites are met here.  Accordingly, for the reasons stated herein, Defendant respectfully requests that the Complaint be dismissed, in its entirety, and with prejudice.

Date:   November 13, 2018
        Fairport, New York

*/s/ Jessica F. Pizzutelli*
Jacqueline Phipps Polito (Bar Roll #511655)
Jessica F. Pizzutelli (Bar Roll #520090)
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Second Floor
Fairport, NY  14450
jpolito@littler.com
jpizzutelli@littler.com
Tel. (585) 203-3400

*Attorneys for Defendant*

158734752

24