**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.**
*Rachel M. Kleinman
40 Rector St.
New York, NY 10006

*Application for admission pending*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

GEORGE MANDALA and CHARLES
BARNETT, individually and on
behalf of all others similarly situated,

                           Plaintiffs,

       v.

NTT DATA, INC.,

                           Defendant.

Case No. 18 Civ. 6591 (CJS)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT IN ITS ENTIRETY AND WITH PREJUDICE

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.      Facts ......................................................................................................................... 2

II.     Plaintiffs' Complaint .............................................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.      Legal Standard ........................................................................................................ 5

II.     Plaintiffs' Title VII Allegations are More than Sufficient to Survive a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss. ............................................................................... 6

        A.      Plaintiffs Have Sufficiently Pled Their Title VII Claim. ......................... 6

        B.      NTT's Challenge to Plaintiffs' Statistical Allegations is Unpersuasive. ................ 9

                (1)     Plaintiffs' Use of General Population Statistics Is Proper and Warranted. ................................................................. 10

                (2)     Plaintiffs Need Not Make a More Specific Statistical Showing. .............. 10

III.    Plaintiffs' NY FCRA Allegations are More than Sufficient to Survive a Motion to Dismiss Under Fed. Civ. P. 12(b)(1) and (6). ................................................. 14

        A.      Plaintiff Mandala Was Harmed By NTT's NY FCRA Violation. ......................... 14

        B.      Plaintiff Mandala Plausibly Pled His NY FCRA Claims. ..................................... 17

IV.     The Court Should Not Strike Plaintiffs' Class Claims. ..................................... 18

        A.      Plaintiffs May Represent Class Members Who Could Have Filed Suit for the Same Injuries When Plaintiffs Commenced This Action. .................................... 18

        B.      Plaintiffs Properly Pleaded the Elements of Rule 23. ........................................... 21

V.      Plaintiffs' NYHRL Class Period Should Extend Back To June 2, 2014. ......................... 24

VI.     Defendant's Request to Dismiss Types of Damages is Premature. ................................. 25

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Adkins v. Morgan Stanley,*
    No. 12 Civ. 7667, 2013 WL 3835198 (S.D.N.Y. July 25, 2013) ............................................12

*American Pipe & Construction Company v. Utah,*
    414 U.S. 538 (1974)................................................................................................20, 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................................5

*Avagliano v. Sumitomo Shoji Am., Inc.,*
    103 F.R.D. 562 (S.D.N.Y. 1984) ........................................................................................20

*Barnett v. Cobb Cnty. Sch. Dist.,*
    No. 15 Civ. 3561, 2017 WL 5203049 (N.D. Ga. Feb. 7, 2017)...........................................12

*Barrett v. Forest Labs., Inc.,*
    39 F. Supp. 3d 407 (S.D.N.Y. 2014)....................................................................................9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................................................5, 6

*Bellino v. JPMorgan Chase Bank, N.A.,*
    209 F. Supp. 3d 601 (S.D.N.Y. 2016)..................................................................................15

*Bennett v. Schmidt,*
    153 F.3d 516 (7th Cir. 1998) ...............................................................................................12

*Biondolillo v. Livingston Corr. Facility,*
    No. 17 Civ. 6576, 2018 WL 3241693 (W.D.N.Y. July 3, 2018).....................................17, 18

*Brown v. Coach Stores, Inc.,*
    163 F.3d 706 (2d Cir. 1998)................................................................................................11

*Brown v. City of N.Y.,*
    No. 16 Civ. 1106, 2017 WL 1102677 (E.D.N.Y. Mar. 23, 2017) ...................................12, 24

*Calibuso v. Bank of Am. Corp.,*
    893 F. Supp. 2d 374 (E.D.N.Y. 2012) ..............................................................................6, 22

*Cater v. HealthPort Techs., LLC,*
    822 F.3d 47 (2d Cir. 2016)...................................................................................................5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.,*
    504 F.3d 229 (2d Cir. 2007)................................................................................................19

*Chen-Oster v. Goldman, Sachs & Co.*,
325 F.R.D. 55 (S.D.N.Y. 2018) ..............................................................................19, 20, 22, 23

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012)........................................................................................6

*Crown, Cork & Seal Co., Inc. v. Parker*,
462 U.S. 345 (1983)..................................................................................................................21

*Denis v. Home Depot, U.S.A., Inc.*,
No. 10 Civ. 3227, 2014 WL 6632486 (E.D.N.Y. Nov. 21, 2014)...........................................25

*Dothard v. Rawlinson*,
433 U.S. 321 (1977)..................................................................................................................10

*E.E.O.C. v. Joe's Stone Crab, Inc.*,
220 F.3d 1263 (11th Cir. 2000) ...............................................................................................13

*E.E.O.C. v. Joint Apprenticeship Comm'n of Joint Indus. Bd. of Elec. Indus.*,
164 F.3d 89 (2d Cir. 1998)........................................................................................................10

*Esposito v. Deutsche Bank AG*,
No. 07 Civ 6722, 2008 WL 5233590 (S.D.N.Y. Dec.16, 2008)...........................................24

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006)......................................................................................................18

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
862 F. Supp. 2d 322 (S.D.N.Y. 2012).................................................................................18, 19

*Gambles v. Sterling Infosystems, Inc.*,
234 F. Supp. 3d 510 (S.D.N.Y. 2017)......................................................................................17

*Garcia v. Country Wide Fin. Corp.*,
No. 07 Civ. 1161, 2008 WL 7842104 (C.D. Cal. Jan. 17, 2008)..............................................9

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)......................................................................................................5

*Gordon v. City of N.Y.*,
No. 14 Civ. 6115, 2016 WL 4618969 (S.D.N.Y. Sept. 2, 2016)...........................................7, 9

*Gratz v. Bollinger*,
539 U.S. 244 (2003)..................................................................................................................20

*Hall v. Kodak Retirement Income Plan*,
No. 07 Civ. 6169, 2009 WL 778102 (W.D.N.Y. Mar. 20, 2009)............................................18

*Hendricks v. JPMorgan Chase Bank, N.A.*,
  No. 08 Civ. 613, 2008 WL 5191819 (D. Conn. Nov. 21, 2008)..............................................22

*Houser v. Pritzker*,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014)..............................................................................14, 20

*Jenkins v. N.Y.C. Transit Auth.*,
  646 F. Supp. 2d 464 (S.D.N.Y. 2009)..................................................................................7

*Jennings v. City of Tuscaloosa*,
  No. 13 Civ. 874, 2013 WL 5299304 (N.D. Ala. Sept. 19, 2013) ...........................................13

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017)...............................................................................................14

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013)...................................................................................19

*Kennedy v. Fed. Express Corp.*,
  No. 513 Civ. 1540, 2016 WL 5415774 (N.D.N.Y. Sept. 28, 2016) ........................................24

*Long v. SEPTA*,
  903 F.3d 312 (3d Cir. 2018).........................................................................................16, 17

*Lewis v. City of Chicago, Ill.*,
  560 U.S. 205 (2010)...........................................................................................................7

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
  No. 17 Civ. 359, 2018 WL 679477 (N.D.N.Y. Feb. 1, 2018) .......................................6, 18, 21

*Malave v. Potter*,
  320 F.3d 321 (2d Cir. 2003)...............................................................................................7

*Martin v. Coinmach Corp.*,
  No. 15 Civ. 8137, 2016 WL 6996182 (S.D.N.Y. Nov. 29, 2016) ...........................................10

*McCain v. United States*,
  No. 14 Civ. 92, 2015 WL 1221257 (D. Vt. Mar. 17, 2015) .........................................8, 9, 12

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d. Cir. 2007)..........................................................................................5, 24

*McQueen v. City of Chicago*,
  803 F. Supp. 2d 892 (N.D. Ill. 2011) ...................................................................................9

*Mielo v. Steak 'n Shake Operations, Inc.*,
  897 F.3d 467 (3d Cir. 2018)................................................................................................20

*Mitchell v. City of LaFayette,*
    No. 10 Civ. 118, 2011 WL 13136617 (N.D. Ga. Feb. 11, 2011)..............................................9

*Murdock-Alexander v. Tempsnow Emp't,*
    No. 16 Civ. 5182, 2016 WL 6833961 (N.D. Ill. Nov. 21, 2016)..............................................11

*Okyere v. Palisades Collection, LLC,*
    961 F. Supp. 2d 522 (S.D.N.Y. 2013)..............................................25

*Pouyeh v. Bascom Palmer Eye Inst.,*
    613 F. App'x 802 (11th Cir. 2015) ..............................................13

*Roach v. T.L. Cannon Corp.,*
    No. 10 Civ. 591, 2015 WL 10818750 (N.D.N.Y. Sept. 4, 2015) ..............................................21

*Robertson v. Allied Solutions, LLC,*
    902 F.3d 690 (7th Cir. 2018) ..............................................16

*Robinson v. Metro-North Commuter RR. Co.,*
    267 F.3d 147 (2d Cir. 2001)..............................................7

*Rodriguez v. Beechmont Bus Serv., Inc.,*
    173 F. Supp. 2d 139 (S.D.N.Y. 2001)..............................................13

*Smith v. City of Jackson, Miss.,*
    544 U.S. 228 (2005)..............................................13

*Smith v. Home Health Solutions, Inc.,*
    No. 17 Civ. 30178, 2018 WL 5281743 (D. Mass. Oct. 24, 2018)..............................................8

*Strubel v. Comenity Bank,*
    842 F.3d 181 (2d Cir. 2016)..............................................14, 15, 16

*Swierkiewicz v. Sorema N. A.,*
    534 U.S. 506 (2002)..............................................7

*Trezza v. Hartford, Inc.,*
    No. 98 Civ. 2205, 1998 WL 912101 (S.D.N.Y. Dec. 30, 1998)..............................................11

*United States v. Maricopa Cnty., Ariz.,*
    915 F. Supp. 2d 1073 (D. Ariz. 2012) ..............................................12

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72 (2d Cir. 2015)..............................................7

*Wards Cove Packing Co., Inc. v. Atonio,*
    490 U.S. 642 (1989)..............................................13

*Washington v. Steve*,
    No. 13 Civ. 343, 2013 WL 6061988 (E.D. Wis. Nov. 18, 2013) ...........................................13

*Whitt v. Kaleida Health*,
    298 F. Supp. 3d 558 (W.D.N.Y. 2018) ...................................................................................24

*Williams v. Compassionate Care Hospice*,
    No. 16 Civ. 2095, 2016 WL 4149987 (D.N.J. Aug. 3, 2016)........................................8, 9, 12

*Williams v. Wells Fargo Bank, N.A.*,
    No. 15 Civ. 38, 2015 WL 13753220 (S.D. Iowa Aug. 6, 2015) ...............................................8

*In re WorldCom Sec. Litig.*,
    496 F.3d 245 (2d Cir. 2007).....................................................................................................21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...............................................................................................................................19

Fed. R. Civ. P. 26(b)(1).....................................................................................................................12

*Report to the United Nations on Racial Disparities in the U.S. Criminal Justice*
    *System* (April 19, 2018), *available at*
    https://www.sentencingproject.org/publications/un-report-on-racial-
    disparities/ ...............................................................................................................................2

## INTRODUCTION

This case, brought against Defendant NTT Data, Inc. ("Defendant" or "NTT"), one of the country's largest information technology employers, involves serious violations of federal and New York State civil rights and consumer protection laws designed to protect qualified applicants like Plaintiffs from unfair denials of employment based on their criminal histories.

Plaintiffs are each experienced professionals, qualified for the positions in question, who applied to NTT and were extended offers of employment after a rigorous application process. However, in each case, NTT denied Plaintiffs employment pursuant to a policy of excluding applicants with criminal records that did not take into account the circumstances of their convictions or whether exclusion was consistent with any legitimate business necessity. NTT's practice imports the discriminatory racial disparities in the criminal justice system's treatment of African Americans[1] into the workplace, and is unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII"). NTT's actions also violate the protections of New York State law, which require that applicants receive a full evaluation of their conviction history, its relevance to the job, and an opportunity to provide evidence of rehabilitation, before losing employment because of their criminal history.

Plaintiffs have more than adequately pled each element of their Title VII claim by identifying NTT's policy of denying employment to applicants with criminal records and alleging that this practice disproportionally screens out African American applicants and is neither job related nor consistent with business necessity. Plaintiffs also have sufficiently pled

---

[1]    As is widely acknowledged, racial disparities in arrest and conviction rates in the United States are themselves the result of systemic discrimination in the criminal justice system. *See, e.g.*, The Sentencing Project, *Report to the United Nations on Racial Disparities in the U.S. Criminal Justice System* (April 19, 2018), *available at* https://www.sentencingproject.org/publications/un-report-on-racial-disparities/.

their state law claims by alleging Plaintiff Mandala was denied employment based on his criminal record without consideration of the factors mandated by the New York Human Rights Law ("NYHRL") and was not provided with a copy of Article 23-A of the Correction Law.

NTT's arguments to dismiss, strike, and narrow Plaintiffs' class claims are both premature – relying on inapposite case law that does not address the pleading stage of litigation – and unsupported by Supreme Court or Second Circuit law. *See generally* Defendant's Memorandum of Law in Support of Motion to Dismiss the Class Action Complaint in its Entirety and With Prejudice ("Def.'s Br."), ECF No. 9-3. NTT asks that the Court impose a heightened pleading standard beyond what courts require, and to decide questions regarding the scope of Plaintiffs' class claims that are properly reserved for a motion for class certification.

Because Plaintiffs have more than adequately pled their claims, the Court should deny Defendant's motion and should do so on the papers. Each day that goes by, additional qualified applicants like Plaintiffs will be injured by NTT's discriminatory practices unless the Court enjoins their conduct. Illegal barriers to employment, like those NTT imposes, heighten recidivism rates and limit opportunities for persons who have paid the price for their crimes and seek to make positive contributions to their communities.

## **BACKGROUND**

### I.    **Facts**

Plaintiffs George Mandala and Charles Barnett are African American men residing in New York and Kentucky, respectively. ECF No. 1 ("Compl."), ¶¶ 15-18. Plaintiffs have criminal convictions. *Id.* ¶ 14. Each Plaintiff applied for, was qualified for, and received a conditional offer of employment for a job with NTT. *Id.* ¶¶ 23-28, 38-43. Each Plaintiff authorized a criminal background check, pursuant to NTT's policy, after receiving his job offer.

2

*Id*. ¶¶ 30, 44.  NTT then withdrew each Plaintiff's job offer, indicating to each Plaintiff that this was the result of a policy not to hire individuals with criminal convictions.  *Id*. ¶¶ 33-34, 46, 48.

In Mr. Mandala's case, Patricia Price, a Senior Recruiter with NTT, informed him in or around April 2017 that NTT would withdraw its offer of employment because NTT has a policy not to hire persons with felonies on their records.  *Id*. ¶¶ 33.  NTT did not seek or consider information from Mr. Mandala regarding the circumstances of his convictions or evidence of Mr. Mandala's rehabilitation or good conduct.  *Id*. ¶ 35.  NTT also did not provide Mr. Mandala with a copy of Article 23-A of the Correction Law as required by N.Y. Gen. Bus. Law § 380-g(d).  *Id*. ¶ 36.  On June 2, 2017, Mr. Mandala filed a Charge of Discrimination with the EEOC's Buffalo, New York office, based on NTT's denial of employment.  *Id*. ¶ 37.

In Mr. Barnett's case, Katie Sargent, a recruiter with NTT, informed him in or around July 2017 that NTT was withdrawing its offer of employment to Mr. Barnett as a result of his criminal convictions, and, when he sought to apply for other positions, she informed him that NTT would not submit Mr. Barnett's applicant profile for other positions because of his felony convictions.  *Id*. ¶¶ 46, 48.  As with Mr. Mandala, NTT did not seek or consider information from Mr. Barnett regarding the circumstances of his convictions or evidence of Mr. Barnett's rehabilitation or good conduct.  *Id*. ¶ 51.

## II.    Plaintiffs' Complaint

Plaintiffs George Mandala and Charles Barnett brought this action against NTT for violating Title VII, the NYHRL, Article 23-A of the New York State Correction Law, and the New York State Fair Credit Reporting Act ("NY FCRA"), because NTT's hiring process impermissibly denies employment to qualified individuals because they have certain categories of criminal convictions, fails to consider the factors required by the NYHRL when making an employment decision based on an individual's criminal record, and fails to provide applicants

with copies of Article 23-A of the Correction Law as required by N.Y. Gen. Bus. Law § 380-g(d) when it obtains criminal conviction information about them. *See generally* Compl.

Plaintiffs seek to represent a "Title VII Disparate Impact Class" of "[a]ll African American individuals who, from August 6, 2016 through the resolution of this action, were denied employment in whole or in part because of NTT's policy and practice of denying employment to individuals with criminal convictions." *Id*. ¶ 93.[2]  Plaintiffs allege that NTT's policy and practice of denying employment to individuals with criminal convictions has a disparate impact on African Americans, who are convicted of crimes at higher rates than white people. *Id*. ¶¶ 52-54.[3]  In the Complaint, Plaintiffs cite to both the overwhelming statistical evidence of this disparity in criminal conviction rates and EEOC guidance setting forth how data "supports a finding that criminal record exclusions have a disparate impact based on race and national origin." *Id*. ¶¶ 52-53, n.1-3.  Plaintiffs also cite multiple studies demonstrating that employer bias towards African Americans with criminal records, compared to white people with criminal records, compounds the discriminatory effect. *Id*. ¶ 54, n.4.

In addition to the Title VII class, Plaintiff Mandala seeks to represent a "NY Criminal History Discrimination Class" of "[a]ll individuals who, from June 2, 2014, through the resolution of this action, were denied employment based in whole or in part on their criminal record without NTT having performed a complete New York Correction Law Article 23-A analysis . . . ." *Id*. ¶ 94.  Plaintiff Mandala also seeks to represent a "NY FCRA Class" of "[a]ll

---

[2]     NTT misrepresents Plaintiffs' allegations as only challenging NTT's policy to exclude applicants with felony convictions.  Def.'s Br. at 4-5.  NTT indicated to each Plaintiff that it has a policy and practice of denying employment to applicants with certain criminal convictions, including specifically, but not limited to, felony convictions.  *Id*. ¶ 4.
[3]     Plaintiffs note these higher rates of conviction are due to discrimination in the criminal justice system, and not because African Americans commit more crimes than white people.

individuals who, from August 15, 2016, through the resolution of this action, had consumer reports requested about them by NTT and were not provided with a copy of Article 23-A of the Correction Law." *Id.* ¶ 95.

## ARGUMENT

### I.    Legal Standard

When deciding a Fed. R. Civ. P. 12(b)(1) motion to dismiss, the Court must "determine whether the [p]leading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Cater v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal quotations and citations omitted).[4]  The Court must "*presum[e] that general allegations embrace those specific facts that are necessary to support the claim*[.]"  *Id.* (citation omitted).  When responding to such a motion, "the plaintiff has no evidentiary burden."  *Id.*

When deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept the Complaint's allegations as true, and draw all reasonable inferences in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d. Cir. 2007).  The Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The plaintiff need only state "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which means pleading "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009).  "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the

---

[4]    As to Plaintiffs' NY FCRA claim (the only subject of the Rule 12(b)(1) motion), NTT makes a facial challenge to standing.  *See id.* (A Rule 12(b)(1) motion is facial when it is "based solely on the allegations of the complaint.").

plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

Finally, striking or dismissing class claims at the pleading stage is only appropriate where they address issues "separate and apart from the issues that will be decided on a class certification motion." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotation omitted); *see also Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 17 Civ. 359, 2018 WL 679477, at *7 (N.D.N.Y. Feb. 1, 2018) (striking class allegations only appropriate where it appears "from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery."). Motions to strike are generally disfavored, and a "motion[] to strike class allegations . . . is even more disfavored because [it] requires a reviewing court to 'preemptively terminate the class aspects of . . . litigation . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (quoting *Wang v. Hearst Corp.*, No. 12 Civ. 793, 2012 WL 2864524, at *3 (S.D.N.Y. July 12, 2012); *see also Calibuso v. Bank of Am. Corp.,* 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) (same).

## II.    Plaintiffs' Title VII Allegations are More than Sufficient to Survive a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.

### A.    Plaintiffs Have Sufficiently Pled Their Title VII Claim.

"Title VII prohibits overt and intentional discrimination as well as discrimination resulting from employment practices that are facially neutral, but which have a 'disparate impact' because they fall more harshly on a protected group than on other groups and cannot otherwise be justified." *Malave v. Potter*, 320 F.3d 321, 325 (2d Cir. 2003) (citation omitted). A *prima facie* case of Title VII disparate impact requires the plaintiff to:"(1) identify a policy or

practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Robinson v. Metro-North Commuter RR. Co.*, 267 F.3d 147, 160 (2d Cir. 2001).  At the pleading stage, however, plaintiffs are not required to allege facts sufficient to establish their prima facie case. *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) (citing *Boykin v. KeyCorp, N.A.*, 521 F.3d 202, 212 (2d Cir. 2008)); *accord Gordon v. City of N.Y.*, No. 14 Civ. 6115, 2016 WL 4618969, at *4 (S.D.N.Y. Sept. 2, 2016); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (in a Title VII disparate treatment case, holding "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case"); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (substantively same).

Like with any other cause of action, "[t]o state a claim for disparate impact under Title VII, a plaintiff need only plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Jenkins*, 646 F. Supp. 2d at 469 (quoting *Iqbal*, 556 U.S. at 697) (internal quotation marks and citation omitted).  Thus, an allegation that a neutral employment practice denied equal employment opportunity to members of a protected class will suffice.  *See, e.g.*, *Gordon*, 2016 WL 4618969, at *7 (collecting cases); *see also Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 212 (2010) (finding allegation that policy "caused a disparate impact," "stated a cognizable claim" and plaintiffs need not prove impact).

Plaintiffs have more than adequately pled a neutral policy with an alleged disparate impact, sufficient to put NTT on notice of their claims—and in fact, although not required at this procedural stage, Plaintiffs have plausibly pled each element of a *prima facie* case.  *See supra*, Background.  Of particular note, Plaintiffs have pled:

- NTT's policy and practice is to "deny[] job opportunities to individuals with non-job related convictions" and that this has a detrimental impact on African Americans because they are arrested and incarcerated at a higher rate than white people relative to their share of the national population.  Compl. ¶ 52.

- Statements made by NTT to both Plaintiffs that they were denied employment because of NTT's criminal history policies.  *E.g.* Compl. ¶¶ 33, 48.

- Statistics showing African Americans are arrested and incarcerated at greater rates than white people.  *E.g.* Compl. ¶¶ 52 & n.1, 53 & ns.2-3.

- Citation to the EEOC Enforcement Guidance on the Consideration of Arrest and Conviction Records, which explains that national data showing that African Americans are arrested and convicted at higher rates than white people "supports a finding that criminal record exclusions have a disparate impact based on race and national origin," *id.* ¶ 52 n.1, and which Courts have found by itself meets pleading requirements.  *See Williams v. Compassionate Care Hospice*, No. 16 Civ. 2095, 2016 WL 4149987, at *4 (D.N.J. Aug. 3, 2016); *McCain v. United States*, No. 14 Civ. 92, 2015 WL 1221257, at *17 (D. Vt. Mar. 17, 2015).

- Audit studies by Harvard and Princeton finding that African Americans with criminal records are especially disadvantaged in the job market when compared even to white people with criminal records.  *Id.* ¶ 54 & n.4.

It is now so well established that African Americans are convicted at a rate disproportionate to their population representation that it could be the subject of judicial notice.

Courts have repeatedly found similar or less robust allegations regarding the discriminatory impact of a criminal records ban will survive a motion to dismiss.  *See Smith v. Home Health Solutions, Inc.*, No. 17 Civ. 30178, 2018 WL 5281743, at *3 (D. Mass. Oct. 24, 2018) (denying motion to dismiss when plaintiff alleged that "Defendant's policies have a disparate impact on African Americans because they are arrested in numbers disproportionate to their representation in the general population"); *Williams*, 2016 WL 4149987, at *4 (same when plaintiff identified policy as "the blanket criminal background check" and alleged that this led to a "disproportionate impact on African Americans" based on the EEOC Guidance's examination of national data); *Williams v. Wells Fargo Bank, N.A.*, No. 15 Civ. 38, 2015 WL 13753220, at *1 (S.D. Iowa Aug. 6, 2015) & Ex. A (Amended Pet. And Jury Demand, ECF No. 3-1) ¶ 73-74 (same with allegation that "[s]ocial science supports the fact that minorities are

disproportionately affected by background screening policies that have no temporal limitation"); *McCain*, 2015 WL 1221257, at *17 (identifying "blanket" background check policy as source of disparate impact provides "sufficient allegations to give fair notice of his claim and survive a motion to dismiss, irrespective of whether [plaintiff] alleged statistics demonstrating the impact of [the company's] policy on African-American candidates").

> **B.    NTT's Challenge to Plaintiffs' Statistical Allegations is Unpersuasive.**

NTT's only challenge to Plaintiffs' Title VII disparate impact allegations is that Plaintiffs' statistical showing at this procedural stage is insufficient under Fed. R. Civ. P. 12(b)(6), and that Plaintiffs therefore have not established the second prong of a *prima facie* case (*i.e.* that a disparate impact exists).  *See* Def.'s Br. at 7-11.  This argument is without support. While Plaintiffs have pled a robust statistical basis for their claims, a fact that NTT largely ignores, there is no requirement, in the Second Circuit or elsewhere, that plaintiffs with disparate impact claims must provide *any* statistical support to survive a motion to dismiss.[5]  Instead, NTT seeks to install a heighted pleading requirement that has been rejected by both the Supreme Court and the Second Circuit.

_____

[5]    *See, e.g.*, *Martin v. Coinmach Corp.*, No. 15 Civ. 8137, 2016 WL 6996182, at *7 (S.D.N.Y. Nov. 29, 2016) ("In order to survive a motion to dismiss . . . plaintiffs need not provide statistical support for their claims[.]"); *Gordon*, 2016 WL 4618969, at *7 ("statistical support . . .  is unnecessary"); *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 436 & n.11 (S.D.N.Y. 2014) (rejecting argument that plaintiffs "cannot state a plausible claim without alleging statistics"); *see also Williams*, 2016 WL 4149987, at *5; *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 906-907 (N.D. Ill. 2011); *Mitchell v. City of LaFayette*, No. 10 Civ. 118, 2011 WL 13136617, at *5 (N.D. Ga. Feb. 11, 2011) (ADEA; denying motion even when court was "skeptical . . . any meaningful statistics can be generated about the alleged" policy), *report and recommendation adopted*, 2011 WL 13136616 (N.D. Ga. Feb. 23, 2011); *Garcia v. Country Wide Fin. Corp.*, No. 07 Civ. 1161,  2008 WL 7842104, at *6-7 (C.D. Cal. Jan. 17, 2008) (Fair Housing Act).  While the Court disfavors string cites, Plaintiffs respectfully suggest that the extent of this authority itself is a persuasive argument against NTT's challenge to Plaintiffs' statistical showing.

### (1)    Plaintiffs' Use of General Population Statistics Is Proper and Warranted.

NTT argues that Plaintiffs improperly relied on general population statistics in support of their disparate impact allegations.  *See* Def.'s Br. at 10.  But such reliance is entirely appropriate at this stage of litigation where there is no reason to believe the characteristics of the NTT applicant pool differ from the general population, and where more granular statistics are not readily available before discovery.  *See Dothard v. Rawlinson*, 433 U.S. 321, 330 (1977) ("reliance on general population demographic data [i]s not misplaced where there [i]s no reason to suppose" the characteristics of the applicants "differ markedly from those of the national population"); *E.E.O.C. v. Joint Apprenticeship Comm'n of Joint Indus. Bd. of Elec. Indus.*, 164 F.3d 89, 97-98 (2d Cir. 1998) ("general population data" often "form[s] the initial basis of a disparate impact claim").  NTT concedes as much, *see* Def.'s Br. at 7 (admitting plaintiffs "may use other statistics" "where . . .  labor market statistics are difficult if not impossible to obtain[]"), and cites to the Seventh Circuit's opinion in *Adams v. City of Indianapolis*, Def.'s Br. at 11, which held that "[d]isparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims" and that "[a]t the pleading stage, some basic allegations of this sort will suffice[,]" 742 F.3d 720, 733 (7th Cir. 2014).[6]

### (2)    Plaintiffs Need Not Make a More Specific Statistical Showing.

NTT's remaining points are variations on the same argument: that Plaintiffs must provide a more specific statistical showing in their Complaint to survive a motion to dismiss—and they similarly fail.  NTT argues the proper labor pool should be "qualified African American applicants," Def.'s Br. at 9, but Plaintiffs cannot and should not be expected to present data

---

[6]    NTT's premature arguments only highlight the need for discovery in this case.  Through discovery, Plaintiffs will seek from NTT information reflecting its applicant pool for the disparate impact analysis.

regarding Defendant's applicant pool before discovery. *See Murdock-Alexander v. Tempsnow Emp't*, No. 16 Civ. 5182, 2016 WL 6833961, at *8 (N.D. Ill. Nov. 21, 2016) ("Although Defendants attacks Plaintiff's failure to allege the precise racial makeup of the purported labor pool in Waukegan, or the percentage of Hispanic laborers that were purportedly assigned instead of African American laborers, . . . there is no reason [Plaintiff] would have this kind of statistical evidence yet" (internal quotation marks and citation omitted)).

NTT's reliance on *Trezza v. Hartford, Inc.*, Def.'s Br. at 9, to support its argument about the relevant labor pool is misleading. That court dismissed the plaintiff's disparate impact claim because the plaintiff merely pointed to "an imbalance between the sexes at the Managing Attorney level" of her employer and pleaded no additional facts to suggest a connection between the alleged disparity and discrimination; the court did not require that all plaintiffs alleging disparate impact claims plead statistics regarding the relevant labor pool. No. 98 Civ. 2205, 1998 WL 912101, at *8 (S.D.N.Y. Dec. 30, 1998). Similar to *Trezza*, in another case NTT cites, *Brown v. Coach Stores, Inc.*, the Second Circuit affirmed dismissal when the plaintiff sought to bring a disparate impact training and promotions claim relying solely on statistics showing that the overall percentage of minority employees at the job decreased during a five-year period. 163 F.3d 706, 712-13 (2d Cir. 1998). As the Second Circuit explained, the pled statistics seemed "utterly disconnected" from "any" policy. *Id.*[7] Here, by contrast with *Brown* and *Trezza*, Plaintiffs allege a blanket policy that the EEOC recognizes imports a discriminatory racial disparity from the criminal justice system into the workplace. *See* Compl. ¶ 52 & n.1; *see also*

---

[7]    The Second Circuit did not hold that statistics were necessary to plead a disparate impact claim. *See id.* Rather, when the plaintiff chose to make her initial showing based on certain statistics, the Court found those statistics failed to support a plausible claim because plaintiff pled no "causal connection" between defendant's policy and the disparity. *See id.* at 712.

*McCain*, 2015 WL 1221257, at \*17 (rejecting comparison to *Brown* and denying motion to dismiss because plaintiff identified a "blanket" background check policy as source of impact).

Defendant also appears to argue that statistics should be tailored to areas where NTT is in business, Def.'s Br. at 10, but "there is no reason [a plaintiff] would have this kind of statistical evidence yet." *United States v. Maricopa Cnty., Ariz.*, 915 F. Supp. 2d 1073, 1078 (D. Ariz. 2012) (internal quotation omitted); *see also Williams*, 2016 WL 4149987, at \*5 ("Although the . . . the [national] statistics are not tailored to the New Jersey counties in which Defendant does business, the Court finds that they lend sufficient support . . . to survive the Motion to Dismiss."). Such pre-discovery challenges to impact are premature. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) advisory committee note (2015) (explaining that the plaintiff often "may have very little discoverable information" but the "other party may have vast amounts of information").[8]

The remaining caselaw relied upon by NTT does not support a contrary result. NTT cites to three supposedly similar cases where motions to dismiss were granted. *See* Def.'s Br. at 8-9. But in none of these cases had the plaintiffs pled a statistical analysis as robust as Plaintiffs or even held that statistics were necessary as a matter of law to plausibly plead a disparate impact claim, and each is otherwise easily distinguishable. *See Barnett v. Cobb Cnty. Sch. Dist.*, No. 15 Civ. 3561, 2017 WL 5203049, at \*4 (N.D. Ga. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 5479716 (Mar. 15, 2017) (pro se plaintiff failed to provide statistics "or any

---

[8]     In fact, courts have also found that "statistics that may ultimately prove insufficient can nevertheless support a plausible inference of disparate impact on a motion to dismiss." *Brown v. City of N.Y.*, No. 16 Civ. 1106, 2017 WL 1102677, at \*6 (E.D.N.Y. Mar. 23, 2017); *see also Adkins v. Morgan Stanley*, No. 12 Civ. 7667, 2013 WL 3835198, at \*10 (S.D.N.Y. July 25, 2013) ("Whether those statistics may prove insufficient at a later date is not now a question before this court."). As the Seventh Circuit noted when reversing dismissal, "better data might be gathered during discovery." *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) (rejecting challenge to data as "outdated" and using "the wrong reference population").

other facts" suggesting defendant's arrest policies disproportionately impacted African Americans); *Jennings v. City of Tuscaloosa*, No. 13 Civ. 874, 2013 WL 5299304, at *3 (N.D. Ala. Sept. 19, 2013) (plaintiff failed to provide any statistics or "factual matter to allow an inference that the City's DUI policy disparately impacts African-Americans"); *Washington v. Steve*, No. 13 Civ. 343, 2013 WL 6061988, at *2 (E.D. Wis. Nov. 18, 2013) (pro se plaintiff alleged failure to hire because of race but never "asserted any facts that could support this claim" and where court never even mentioned "impact").[9]

Finally, NTT's misunderstanding of Plaintiffs' allegations further undercuts its arguments with respect to the specificity of Plaintiffs' statistical pleadings. First, Plaintiffs challenge NTT's background check hiring practices as to all individuals with "criminal convictions including felonies," not just as to felonies. Thus, the challenged policy and practice is broader than the cabined allegation miscited by NTT, and a broader statistical analysis is appropriate. *Compare* Compl. ¶¶ 4, 56, 59, *with* Def.'s Br. at 9. Second, NTT attempts to separate out statistics about arrests and incarcerations to argue Plaintiffs failed to plead statistics about conviction rates, but ignores key portions of the quote on which it otherwise relies that includes clear citation to the

---

[9]    NTT's other cases are similarly unavailing. Many occurred after discovery and trial, based on data provided during discovery, and thus are irrelevant to determine the showing required at a motion to dismiss. *See* Def.'s Br. at 7-8; *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 648 (1989); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1268-69 (11th Cir. 2000). In others, the plaintiffs failed to plead any relevant information, including any allegation connecting alleged impact to a policy. *See Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 811 (11th Cir. 2015) (*pro se* plaintiff alleged "he knew of only one other immigrant Iranian doctor, who had applied and not obtained a residency position," which was irrelevant because it provided "no insight into statistical information") (cited at Def.'s Br. at 8); *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 148 (S.D.N.Y. 2001) (identifying no "neutral policy . . . alleged to have a disproportionate impact" on the protected class) (cited at Def.'s Br. at 10); *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (at summary judgment, identifying no policy alleged to have impact and, instead, doing "little more than point[ing] out that the pay plan at issue is relatively less generous to older workers") (cited at Def.'s Br. at 10).

EEOC Guidance, which explores national data showing African Americans are *convicted* at higher rates than white people.  *Compare* Compl. ¶ 52 & n.1, *with* Def.'s Br. at 9.  Third, NTT cites Plaintiffs' allegation that the question of disparate impact is capable of common answer, supporting classwide certification,[10] as a concession that Plaintiffs cannot establish disparate impact.  The allegation is no such thing.  Plaintiffs' pleadings are more than sufficient to support a plausible Title VII claim.

### III.   Plaintiffs' NY FCRA Allegations are More than Sufficient to Survive a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and (6).

#### A.   Plaintiff Mandala Was Harmed By NTT's NY FCRA Violation.

For Article III standing, a plaintiff must demonstrate: (1) "injury in fact," (2) "a 'causal connection' between that injury and the complained-of conduct, and" (3) "a likelihood 'that the injury will be redressed by a favorable decision."  *Strubel v. Comenity Bank*, 842 F.3d 181, 187-88 (2d Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 550, 560-61 (1992)).  "To be 'concrete,' an injury 'must actually exist,'" which means it "must be real, and not abstract[.]"  *Id.* at 188 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)).  The Second Circuit has "repeatedly described that [injury-in-fact] requirement as a low threshold . . . , which helps ensure that the plaintiff has a personal stake in the outcome of the controversy[.]"  *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citations omitted).

Here, Plaintiff Mandala has pled that NTT's failure to provide him with a copy of Article 23-A diminished his opportunity to advocate for the job, stating a tangible harm.  *See Strubel*, 842 F.3d at 188; Compl. ¶¶ 84, 121, 123 (NTT's failure denied him "information about [his]

---

[10]   *See Houser v. Pritzker*, 28 F. Supp. 3d 222, 244 (S.D.N.Y. 2014) ("Although the experts obviously reach different conclusions regarding the merits in this case, the fact that both sides' experts are able to provide classwide answers to the liability question suffices to satisfy the commonality requirement.").

legal right to be free from discrimination," and prevented him from "learn[ing] of . . . rights and opportunities" and "from timely and effectively contesting the adverse action").

Further, contrary to NTT's overly broad interpretation of *Spokeo* (Def.'s Br. at 15), the Second Circuit has cautioned that "[w]e do not understand *Spokeo* categorically to have precluded violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing," and stated that "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Strubel*, 842 F.3d at 189-90 (quoting *Spokeo*, 136 S. Ct. at 1549).

Both requirements are easily met here. In enacting Section 380-g(d), the New York Legislature[11] identified the precise right that Plaintiff Mandala alleges was infringed upon, creating a real risk of harm. *See* Compl. ¶¶ 74-88. The New York Legislature found that applicants were being "repeatedly dismissed . . . based solely on their criminal histories" without the employer performing the analyses required under Article 23-A. Compl. ¶ 78 (quoting N.Y.S. Assembly's Memorandum in Support of the Legislation, Bill No. 10288A, 2007-2008 Term (also attached as Exhibit B)). To address this harm, the NY FCRA was amended to require that a copy of Article 23-A be provided by the employer at the time they received criminal history to "help ensure that employers and employees are informed about the mandates of Article 23-A" and thus "help to avoid illegal discrimination against persons with a criminal conviction." *Id.*; *see also Bellino*, 209 F. Supp. 3d at 609-10 (relying on sponsor statement in determining

---

[11]     "[A] state statute, like a federal statute, may create a legal right, the invasion of which may constitute a concrete injury for Article III purposes." *Bellino v. JPMorgan Chase Bank, N.A.*, 209 F. Supp. 3d 601, 609 (S.D.N.Y. 2016) (collecting post-*Spokeo* cases).

legislative intent for *Spokeo* analysis).[12]  Like in *Strubel*, the legislature enacted the statutory

provision at issue to ensure that individuals were provided information they needed to advocate

for the identified right.  *See* 842 F.3d at 190-91 (failure to provide disclosures that "serve[d] to

protect a consumer's concrete interest in avoid[ing] the uniformed use of credit" caused concrete

harm (citation and internal quotes omitted)).

NTT argues that Plaintiff Mandala was not harmed because he eventually learned of his

Article 23-A rights and later brought suit.  *See* Def.'s Br. at 15-17.  But Plaintiff Mandala was

first harmed when NTT denied him the opportunity to advocate for a job for which he was

qualified before he was denied employment.  The rationale behind the Third Circuit's ruling in

*Long v. SEPTA*, which held that plaintiffs are concretely harmed when denied information (there,

a consumer report) to advocate in an informed manner about their "fitness for the job[,]" is

entirely consistent.  903 F.3d 312, 319, 323-24 (3d Cir. 2018).[13]

---

[12]    For example, Article 23-A explains that an employer cannot deny employment to an
applicant unless it can show "a direct relationship" between a conviction and the job or "an
unreasonable risk to property or to the safety or welfare of specific individuals or the general
public, Compl. ¶ 81 (quoting N.Y. Correct. Law § 752), and must consider all eight factors laid
out in Section 753 of the Correction Law, Compl. ¶ 82; *see also* Compl. ¶ 70 (explaining than an
employer "must solicit the information necessary to properly consider each Article 23-A factor,
including the applicant's evidence of rehabilitation" and quoting the New York City Commission
on Human Rights' guidance as to the same).

[13]    While *Long* found that the plaintiffs were not concretely harmed by the employers'
failure to provide them with a statement of their FCRA rights (as compared to their consumer
reports) because they subsequently brought suit, here Plaintiff Mandala alleges the additional
harm of being denied the opportunity to fully argue his suitability for the job.  Even so, the
Second Circuit analyzes the risk of harm at the time the denial of information occurred, and at
that time, before reaching out to Counsel, Plaintiff Mandala was denied information that would
have helped him learn of his legal rights—a concrete harm.  *See Strubel*, 842 F.3d at 200
(holding that practices that "could cause consumers unwittingly not to satisfy their own
obligations and thereby to lose their rights . . .  raise[d] a sufficient degree of the risk of real
harm necessary to [establish] concrete injury and Article III standing"); *see also Robertson v.
Allied Solutions, LLC*, 902 F.3d 690, 698 (7th Cir. 2018) (plaintiff had standing to bring claim
that employer failed to provide notice of FCRA rights; "what matters is that [plaintiff] was
denied information that could have helped her craft a response to [employer's] concerns").

To the extent NTT might argue otherwise, Plaintiff Mandala has stated a concrete harm regardless of whether (or not) NTT might ultimately prove that he would not have been hired. *See Long*, 903 F.3d at 319 (right is not conditioned "on whether having the report would allow an individual to stave off an adverse employment action"); *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 524 (S.D.N.Y. 2017) (harm need not be conditioned on showing a loss of employment because focus is on "material risk of harm") (citing *Strubel*, 842 F.3d at 189)).

**B.    Plaintiff Mandala Plausibly Pled His NY FCRA Claims.**

Plaintiffs allege that NTT obtained criminal history information on Plaintiff Mandala but did not provide him with a copy of Article 23-A at that time. *See* Compl. ¶¶ 30, 119. This is a plausible allegation that states a violation of the law. *See* N.Y. Gen. Bus. Law § 380-g(d).

NTT attempts to upend the Fed. R. Civ. P. 8 pleading standard by arguing that Plaintiff Mandala's factual allegations should *not* be credited at a motion to dismiss. While NTT attaches to its motion a declaration from an NTT employee that Mr. Mandala signed a background check authorization form including an acknowledgement of receipt of a copy of Article 23-A, and a document purporting to be a page out of Plaintiff Mandala's authorization form, this partial submission was not attached to the Complaint, relied on by Plaintiffs, or referenced beyond a statement that Plaintiff Mandala authorized a background check. It also is not integral to the Complaint because the alleged violation—which turns on whether NTT failed to provide Plaintiff Mandala with a copy of Article 23-A when in receipt of criminal history information about him—does not rely on whether Mr. Mandala authorized a background check (or even whether Mr. Mandala might have previously received a copy of Article 23-A). *See Biondolillo v. Livingston Corr. Facility*, No. 17 Civ. 6576, 2018 WL 3241693, at *4 (W.D.N.Y. July 3, 2018) (rejecting extrinsic form and explaining that a "document is integral to the complaint where the

complaint relies heavily upon its terms and effect" (citations omitted)).[14]

Even if the Court considered the extrinsic information NTT attaches to its motion, it would create at best a factual dispute that cannot be resolved now for the reasons discussed. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (for a court to consider extrinsic evidence, there must be no dispute about the "accuracy of the document" or "material disputed issues of fact" as to its "relevance"); *Biondolillo*, 2018 WL 3241693, at *4 (same). Illustrating the gamesmanship behind its argument, NTT does not even submit the copy of Article 23-A it claims to have provided Plaintiff Mandala (although inclusion would not rebut Plaintiff Mandala's well-pled allegation, for the reasons discussed herein).

## IV.    The Court Should Not Strike Plaintiffs' Class Claims.

NTT separately moves to strike Plaintiffs' class claims on the grounds that Plaintiffs do not have standing to represent applicants whose claims arose before theirs, and that Plaintiffs fail to sufficiently allege Rule 23's prerequisites. Both are premature attacks properly reserved for a motion for class certification, and are otherwise without merit.

### A.    Plaintiffs May Represent Class Members Who Could Have Filed Suit for the Same Injuries When Plaintiffs Commenced This Action.

At this stage of the litigation, Plaintiffs must establish Article III standing to represent the proposed classes, which includes a requirement to "allege and show that they personally have been injured"; but it does not require a showing "that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Maddison*, 2018 WL 679477, at *8; *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase*

---

[14]    NTT's lone case on this point, Def.'s Br. at 13, is factually and procedurally distinct. *Hall v. Kodak Retirement Income Plan*, No. 07 Civ. 6169, 2009 WL 778102, at *8 (W.D.N.Y. Mar. 20, 2009) (at summary judgment noting, in pertinent part, that defendants provided multiple pieces of evidence to conclude plaintiff was provided with benefits information).

*& Co.*, 862 F. Supp. 2d 322, 333 (S.D.N.Y. 2012) (same).  Here, there is no question that Plaintiffs have alleged that they were injured by NTT's discriminatory denial of employment (NTT also does not contest this injury).  Compl. ¶¶ 33-35, 46-48.  Plaintiffs therefore have standing to pursue class claims on behalf of others who, like them, were denied employment based on NTT's policy and whose claims would have been timely as of the date the Complaint was filed.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (holding that only one named plaintiff must "establish standing . . . to seek relief on behalf of the entire class); *cf. Fort Worth*, 862 F. Supp. 2d at 332 (standing does not require that "the named plaintiff must literally suffer the same actual injury that each class member suffered. That would, of course, be impossible").

NTT's argument that Plaintiffs cannot represent applicants who were denied employment before them conflates Article III standing with a premature inquiry into the proper scope of the class period and the adequacy and typicality of Plaintiffs as class representatives.  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 468-69 (S.D.N.Y. 2013) (plaintiffs, ex-employees seeking reinstatement, had standing to sue; "[t]o the extent that Defendant relies on [standing arguments under] *Dukes* . . . to challenge the adequacy of [Plaintiffs] as class representatives . . . , its motion is denied as premature").  "Once a plaintiff has show[n] that it has the same interest in redressing the same injurious conduct by the same defendant . . . [,] questions of adequacy, typicality and the like should be resolved at the class certification stage." *Fort Worth*, 862 F. Supp. 2d at 333 (internal citation omitted); *see also generally* Fed. R. Civ. P. 23 (providing no limitation of class action time period to when named plaintiff was harmed).[15]

---

[15]    Even at the class certification stage, typicality does not require the Plaintiffs' claims be identical to those of the class members.  *See Chen-Oster*, 325 F.R.D. at 77 (to satisfy typicality, lead plaintiffs must only "have the incentive to prove all the elements of the cause of action

Courts thus regularly permit class actions to proceed where the plaintiffs' injuries were not *identical* to those of the class members. *See, e.g., Gratz v. Bollinger*, 539 U.S. 244, 265 (2003) (plaintiff asserting race discrimination claims regarding admission of transfer students also had standing to represent claims based on admission of freshmen, as University's use of race in transfer admissions "d[id] not implicate a significantly different set of concerns than d[id] its use of race in undergraduate freshman admissions"); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) ("reject[ing] [defendant's] invitation to insert Rule 23 issues into [its] inquiry on standing," and permitting a plaintiff suing for Americans with Disabilities Act violations to represent a class including restaurants where plaintiff was not injured).

Courts also regularly permit employment class actions to proceed where the class period does not precisely coincide with or predates the dates of the named plaintiffs' injuries. *See, e.g., Chen-Oster*, 325 F.R.D. at 62-63 (certifying nationwide class for pay and promotion claims dating back to 2004 and New York City class dating back to 2002, even though the earliest a named plaintiff alleged denial of a promotion was 2008); *Houser*, 28 F. Supp. 3d at 254 (certifying class of African Americans who sought employment during the 2010 Decennial Census, regardless of whether they sought employment precisely when named plaintiffs did so); *Avagliano v. Sumitomo Shoji Am., Inc.,* 103 F.R.D. 562, 584 (S.D.N.Y. 1984) (certifying Title VII class and § 1981 class consisting of "all past and present female employees of Sumitomo, except as limited by the applicable statutes of limitations"). To do otherwise would be fundamentally at odds with class action jurisprudence.[16]

---

which would be presented by the individual members of the class were they initiating individualized actions.") (internal quotation omitted).

[16]    For example, the Supreme Court ruled in *American Pipe & Construction Company v. Utah* that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found

In light of this authority, Plaintiffs respectfully contend that the two cases NTT cites—
*Maddison* and *Roach v. T.L. Cannon Corp.*, No. 10 Civ. 591, 2015 WL 10818750, at *6
(N.D.N.Y. Sept. 4, 2015)—wrongly decided the standing question and conflated named plaintiff
standing with the class definition, and are not controlling.  In *Roach*, notably decided at the class
certification stage, the court limited the class period to the plaintiffs' dates of employment, citing
precedent that addressed a completely different issue – whether U.S. citizen plaintiffs had
standing to sue on behalf of a class of all U.S. citizens and taxpayers (they did not because of the
"necessarily abstract nature of the injury all citizens share").  2015 WL 10818750, at *6 (citing
*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216-17 (1974)).  The court in
*Maddison*, in turn, relied only on the *Roach* decision for its holding.  2018 WL 679477, at *8.

**B.      Plaintiffs Properly Pleaded the Elements of Rule 23.**

As for the remaining attacks on Plaintiffs' class claims, the Court should reject NTT's
invitation "to preemptively terminate the class aspects of . . . litigation . . . before plaintiffs are
permitted to complete the discovery to which they would otherwise be entitled on questions
relevant to class certification."  *Maddison*, 2018 WL 679477, at *7.

---

the suit inappropriate for class action status."  414 U.S. 538, 553 (1974).  The Supreme Court
later extended *American Pipe* to hold that "a class action tolls the statute of limitations as to all
asserted members of the class, not just as to intervenors."  *Crown, Cork & Seal Co., Inc. v.
Parker*, 462 U.S. 345, 350 (1983) (internal quotation marks and citation omitted).  *Crown Cork*
specifically involved a man discharged by his employer in 1977, who was a member of the class
in a class action brought against the employer for race discrimination in 1978 (i.e. after his
denial).  *Id.* at 347.  Under the logic of *American Pipe* and *Crown Cork*, the class period should
extend to the full statute of limitations applicable to Plaintiffs' claims.  Otherwise, class members
whose injuries preceded Plaintiffs' during the applicable statute of limitations period and whose
claims were still timely when the Complaint was filed could not "rely on the class plaintiffs to
advance their claims," *In re WorldCom Sec. Litig.*, 496 F.3d 245, 254 (2d Cir. 2007) and "to
protect their rights," *Crown Cork*, 462 U.S. at 350, 353-54.  Instead, such class members would
have to file individual suits or intervene as parties, which would "frustrate the principal function
of a class suit," namely avoiding the multiplicity of litigation.  *American Pipe*, 414 U.S. at 551.

NTT again seeks to impose an unjustifiably high pleading standard and require that Plaintiffs *prove* their claims in their Complaint. While NTT challenges numerosity, plaintiffs are not required to show "evidence of exact class size or identity of class members." *Hendricks v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 613, 2008 WL 5191819, at *4 (D. Conn. Nov. 21, 2008) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *see also Calibuso*, 893 F. Supp. 2d at 383 (numerosity was not "separate and apart from the issues that will be decided on a class certification motion," and thus motion to strike was premature). Proving numerosity would be virtually impossible pre-discovery. Here, Plaintiffs have alleged that NTT is a large employer, with over 18,000 employees nationally and four offices in New York State. Compl. ¶ 98. Plaintiffs also identified applicants in two states across the country who were each denied employment pursuant to the same common policy. *Id.* ¶¶ 4, 15, 17, 26, 39. This raises a plausible inference that numerosity will be met.

NTT's attacks on commonality and typicality are similarly premature and without merit. NTT highlights superficial differences between plaintiffs – such as Plaintiffs learning about job opportunities with NTT in different ways, living in different states, and applying for different positions – that are irrelevant to findings of commonality and typicality (and, indeed, support the broad impact of NTT's challenged policy). Def.'s Br. at 21.[17]

Plaintiffs have plausibly pleaded that their claims "arise from the same series of events and find support in the same legal theories as the claims of all of the remaining class members." *Chen-Oster*, 325 F.R.D. at 77. Plaintiffs list several questions of law and fact common to the

---

[17]     Although not relevant to the disposition of the motion, NTT also states incorrectly that Plaintiffs have not alleged felony convictions. *Id.* While the Plaintiffs do not explicitly allege their felony convictions, both Plaintiffs' allegations establish that NTT told them they were rejected because of their felony convictions. Compl. ¶¶ 33, 48. Plaintiffs did not deny the existence of felony convictions.

Title VII Disparate Impact Class, the NY Criminal History Discrimination Class, and the NY FCRA Class, in their Complaint. Compl. ¶ 99. Plaintiffs further allege how each Plaintiff's claim is typical of the classes he seeks to represent, as Plaintiffs each sought jobs with NTT, were subject to the same screening policy for criminal histories, and were denied jobs as a result of their criminal convictions. *Id.* ¶ 101.

To the extent NTT argues that liability would require individualized inquiries, Def.'s Br. at 20, that argument also is premature, and ignores that Plaintiffs challenge uniform policies that were applied by NTT without any such individualized inquiry, *see* Compl. ¶¶ 2, 35, 51, 60 (as to the Title VII Class, alleging NTT fails to perform an individualized review of applicants' criminal histories or evidence of rehabilitation), ¶¶ 5, 69 (as to the NY Criminal History Discrimination Class, alleging NTT denied employment without performing any Article 23-A analysis), ¶ 79 (as to the NY FCRA class, alleging NTT's failure to provide copies of Article 23-A). It also ignores the case management tools available to the Court at class certification and trial. *See, e.g.*, *Chen-Oster*, 325 F.R.D. at 84 (certifying Fed. R. Civ. P. 23(b)(3) disparate impact and treatment discrimination classes and identifying "management tools available to a district court to address any individualized damages issues").

To attack the adequacy of Plaintiffs as class representatives, NTT reiterates its attack on Plaintiffs' standing to sue for class members who applied for jobs earlier than Plaintiffs, as well as its argument that Mr. Mandala received a copy of Article 23-A. These arguments fail for the same reasons previously discussed.

Finally, as to the NY FCRA class, NTT asks the Court to strike the class claims merely because Plaintiffs did not explicitly state that the class definition was limited to individuals who had consumer reports containing "criminal conviction information" requested about them.

Def.'s Br. at 21.  First, such a qualification is implicit in the NY FCRA class definition and

elsewhere cited by Plaintiffs in their Complaint, and at the very least raises a reasonable

inference that the Court must draw.  *See, e.g.*, Compl. ¶ 74; *McCarthy*, 482 F.3d at 191.  Second,

this attack on the precise contours of the NY FCRA class is premature for all of the reasons

discussed above and should be addressed on a motion for class certification, after discovery.[18]

## V.     Plaintiffs' NYHRL Class Period Should Extend Back To June 2, 2014.

The Court should deny NTT's request to limit the NY Criminal History Discrimination

class period.  Plaintiffs' NY Criminal History Discrimination class period appropriately extends

back to June 2, 2014, the full extent of the three-year statute of limitations period under the

NYHRL, because Plaintiff Mandala tolled those class members' statutes of limitations by filing

his charge with the EEOC on June 2, 2017.  *See Compl.* ¶ 12.  NYHRL claims are tolled during

the pendency of an EEOC proceeding because complaints filed with the EEOC are deemed to be

constructively cross-filed with the New York Division of Human Rights.[19]  *Whitt v. Kaleida*

*Health*, 298 F. Supp. 3d 558, 571-72 (W.D.N.Y. 2018) (collecting cases); *see also Esposito v.*

*Deutsche Bank AG*, No. 07 Civ. 6722, 2008 WL 5233590 *5 (S.D.N.Y. Dec.16, 2008)

("numerous courts in this Circuit have held that the three-year statute of limitations applicable to

claims under NYSHRL . . . is tolled during the period in which a complaint is filed . . . with the

EEOC."); *Kennedy v. Fed. Express Corp.*, No. 513 Civ. 1540, 2016 WL 5415774, at *9

(N.D.N.Y. Sept. 28, 2016), *aff'd in part, vacated in part, and remanded on other grounds*, 698 F.

---

[18]     Nonetheless, even if the Court were to credit any of NTT's argument, each could be
easily cured through a routine amendment to the Complaint.

[19]     Plaintiff Mandala's NYHRL claims are "reasonably related" to his EEOC charge because
"the conduct complained of would fall within the scope of the EEOC investigation which can
reasonably be expected to grow out of the charge of discrimination[,]" since the Title VII and
NYHRL claims both arise from the same NTT policy and practice.  *Brown*, 163 F.3d at 712.

App'x 24 (2d Cir. 2017) ("State law claims are tolled while charges are pending before the EEOC, even if . . . the administrative charge was not actually dual-filed[.]").

## VI.    Defendant's Request to Dismiss Types of Damages is Premature.

NTT asks the Court to "dismiss" Plaintiffs' "claims" for compensatory and punitive damages for disparate impact in violation of Title VII, and Plaintiffs' "claim" for punitive damages for violations of the NYHRL.  Def.'s Br at 23.  But these are not claims, and dismissal of particular types of damages is inappropriate at the pleading stage, and thus this argument should be rejected.  *See Denis v. Home Depot, U.S.A., Inc.*, No. 10 Civ. 3227, 2014 WL 6632486, at *6 (E.D.N.Y. Nov. 21, 2014) ("Punitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss stage to be premature."); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 536 (S.D.N.Y. 2013) ("Because there is no independent cause of action for punitive damages under New York law, . . . we deny defendant's motion to 'dismiss' [the] plaintiff's request for punitive damages as procedurally premature.") (internal quotation marks and citation omitted).[20]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny NTT's Motion to Dismiss Plaintiffs' Class Action Complaint.

Dated:  December 12, 2018
        New York, New York

                                    Respectfully submitted,

                                    By:  /s/ Ossai Miazad
                                         **OUTTEN & GOLDEN LLP**
                                         Ossai Miazad
                                         Christopher M. McNerney
                                         Elizabeth V. Stork
                                         685 Third Avenue, 25th Floor

---

[20]    To be clear, Plaintiffs have asserted backpay claims.  *See* Compl. ¶ 91; *see also id.* ¶ 111 (NTT caused "losses in earnings and other employment benefits") & Prayer for Relief § (l).

New York, New York 10017
Telephone: (212) 245-1000

**NAACP LEGAL DEFENSE &**
**EDUCATIONAL FUND, INC.**
*Rachel M. Kleinman
40 Rector St.
New York, NY
Telephone: (212) 965-2200

*Application for admission pending*

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE &**
**EDUCATIONAL FUND, INC.**
*Rachel M. Kleinman
40 Rector St.
New York, NY 10006

*Application for admission pending*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 18 Civ. 6591 (CJS) |
| v. | |
| NTT DATA, INC., | |
| Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2018, I electronically filed ***Plaintiffs'***
***Memorandum of Law in Opposition of Defendant's Motion to Dismiss the Class Action***
***Complaint in its Entirety and with Prejudice*** with the Clerk of the District Court using its
CM/ECF system, which would then electronically notify the following CM/ECF participants on
this case.

Jacqueline Phipps Polito
Jessica F. Pizzutelli
LITTLER MEDELSON, P.C.
375 Woodcliff Drive, Second Floor
Fairport, NY 14450
jpolito@littler.com
jpizzutelli@littler.com

By:    /s/ Ossai Miazad
Ossai Miazad