UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>NTT DATA, INC.,<br><br>　　　　　　Defendant. | Case No. 6:18-cv-06591-CJS |

**DEFENDANT'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO DISMISS THE CLASS ACTION
COMPLAINT IN ITS ENTIRETY AND WITH PREJUDICE**

Jacqueline Phipps Polito, Esq.
Jessica F. Pizzutelli, Esq.
LITTLER MENDELSON, P.C.

　　*Attorneys for Defendant*

# **TABLE OF CONTENTS**

**PAGE**

I. PLAINTIFFS' TITLE VII CLAIM SHOULD BE DISMISSED ................................. 1

II. PLAINTIFFS' NY FCRA CLAIM SHOULD BE DISMISSED ..................................... 5

III. MANDALA RECEIVED A COPY OF ARTICLE 23-A ..................................................... 6

IV. THE CLASS CLAIMS SHOULD BE STRIKEN ............................................................... 8

V. THE CRIMINAL HISTORY DISCRIMINATION CLAIMS ARE TIME BARRED ............................................................................................................................... 8

VI. PLAINTIFFS' REQUEST FOR CERTAIN DAMAGES SHOULD BE DISMISSED ............................................................................................................................ 9

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 ................................................................................................1, 2, 3, 5

*Barnett v. Cobb Cnty. Sch. Dist.*,
    No. 15 Civ. 3561, 2017 WL 5203049 (N.D. Ga. Feb. 7, 2017)..............................1, 2

*Brown v. Coach Stores, Inc.*,
    163 F. 3d 706 (2d Cir. 1998)..................................................................................4, 9

*Constellation Brands, Inc. v. Keste, LLC*,
    No. 14-cv-6272, 2014 U.S. Dist. LEXIS 159753 (W.D.N.Y. Nov. 13, 2014) .........10

*Dothard v. Rawlinson*,
    433 U.S. 321 (1977)....................................................................................................4

*EEOC v. Freeman*,
    961 F. Supp. 2d 783 (D. Md. 2013) ...........................................................................4

*EEOC v. Joint Apprenticeship Comm'n of Joint Indus. Bd. of Elec. Indus.*,
    164 F.3d 89 (2d Cir. 1998).........................................................................................4

*George v. Prof'l Disposables Int'l, Inc.*,
    No. 15-cv-03385, 2016 U.S. Dist. LEXIS 72912 (S.D.N.Y. June 1, 2016) ..............3

*Globecon Group, LLC v. Hartford Fire Ins. Co.*,
    434 F.3d 165 (2d Cir. 2006).....................................................................................10

*Hall v. Kodak Ret. Income Plan*,
    07-Civ.-6196, 2009 WL 778102 (W.D.N.Y. Mar. 20, 2009) ....................................6

*Heskiaoff v. Sling Media, Inc.*,
    719 Fed. Appx. 28 (2d Cir. Nov. 22, 2017) ...............................................................6

*Jennings v. City of Tuscaloosa*,
    No. 13 Civ. 874, 2013 WL 5299304 (N.D. Ala. Sept. 19, 2013) ..............................2

*Kennedy v. Fed. Express Corp.*,
    2016 WL 5415774 (N.D.N.Y. Sept. 28, 2016) ..........................................................9

*Long v. SEPTA*,
    903 F.3d 312 (3rd Cir. 2018) .................................................................................5, 6

*Maddison v. Comfort Sys. USA (Syracuse)*,
  No. 5:17-CV-0359, 2018 U.S. Dist. LEXIS 16090 (N.D.N.Y. Feb. 1, 2018) ..........................8

*McCain v. United States*,
  2015 WL 1221257 (D. Vt. Mar. 17, 2015) .......................................................................2

*Roach v. T.L. Cannon Corp.*,
  No. 3:10-cv-0591, 2015 U.S. Dist. LEXIS 177286 (N.D.N.Y. Sept. 4, 2015) ..........................8

*Smith v. Home Health Sol., Inc.*,
  2018 WL 5281743 (D. Mass. Oct. 24, 2018) ...................................................................2

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................................6

*Strubel v. Comenity Bank*,
  842 F. 3d 181 (2d Cir. 2016) ........................................................................................6

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ....................................................................................................3

*Tyree v. GCA Servs. Grp., Inc.*,
  No. 17-cv-328, 2018 U.S. Dist. LEXIS 4063 (W.D. Va. Jan. 9, 2018) .............................2, 9

*Underwood v. Roswell Park Cancer Inst.*,
  No. 15-cv-684, 2017 U.S. Dist. LEXIS 5689 (W.D.N.Y. Jan. 13, 2017) ....................6, 7, 10

*Velarde v. GW GJ, Inc.*,
  No. 14-cv-695S, 2016 U.S. Dist. LEXIS 159692 (W.D.N.Y. Nov. 16, 2016) ..........................7

*Washington v. First Transit, Inc.*,
  No. GJH-17-3747, 2018 U.S. Dist. LEXIS 128684 (D. Md. Aug. 1, 2018) ........................2, 4

*Washington v. Steve*,
  No. 13 Civ. 343, 2013 WL 6061988 (E.D. Wis. Nov. 18, 2013) .......................................2, 9

*Watson v. N.Y. Pressman's Union No. 2*,
  444 Fed. Appx. 500 (2d Cir. Dec. 13, 2011) ..................................................................1, 4

*Williams v. Compassionate Care Hospice*,
  2016 WL 4149987 (D.N.J. Aug. 3, 2016) .......................................................................2, 7

*Williams v. Wells Fargo Bank, N.A.*,
  2015 WL 13753220 (S.D. Iowa Aug. 6, 2015) ..................................................................2

**Statutes**

42 U.S.C. § 2000e-2(k)(1)(A)(i) ..........................................................................................9

N.Y. Gen. Bus. L. § 380-g(d) ................................................................................................5, 7

**Other Authorities**

Fed. R. Civ. P. 11 ...............................................................................................................................3

Fed. R. Civ. P. 12(b)(6).................................................................................................................10

I.     **PLAINTIFFS' TITLE VII CLAIM SHOULD BE DISMISSED.**

Plaintiffs argue that they can plead in conclusory fashion that NTT DATA has an employment practice that causes "disparate impact," cite to inapposite statistics, and then be permitted to unlock the doors of discovery based on such allegations. If Plaintiffs' position is accepted, then any employer could be victim to a nationwide class action, and be forced to expend hundreds of thousands of dollars defending against same, based on nothing more than a single employee's (or applicant's) alleged experience and generic statistics. Fortunately, the law requires more. Supreme Court binding authority mandates that Plaintiffs assert actual *facts* that *plausibly* give rise to an entitlement to relief, and "more than a sheer *possibility* that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (emphasis added).

According to the Second Circuit, in order to survive a motion to dismiss, the "basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy. This comparison must reveal that although neutral, ***the policy in question imposes a significantly adverse or disproportionate impact on a protected group of individuals***." *Watson v. N.Y. Pressman's Union No. 2,* 444 Fed. Appx. 500, 501 (2d Cir. Dec. 13, 2011) (affirming 12(b)(6) dismissal of disparate impact claim).

Here, Plaintiffs fail to allege that any policy of NTT DATA imposes any significantly adverse or disproportionate impact on a protected group. Instead, they allege only labels and conclusions—and inapposite ones at that. *Iqbal,* 556 U.S. at 679. For example, Plaintiffs allege that NTT DATA had a policy to deny job opportunities to individuals with felony convictions, and then assert in conclusory fashion that this policy causes a "disparate impact." Compl., ¶¶ 6, 33, 48, 52, 61, 110. Many courts recognize that such allegations are insufficient to survive a motion to dismiss under *Iqbal*. For example:

- *Barnett v. Cobb Cnty. Sch. Dist.,* No. 15 Civ. 3561, 2017 WL 5203049 (N.D. Ga. Feb. 7,

1

2017):  Employee failed to state disparate impact claim based on alleged policy not to hire individuals who have been arrested, because Plaintiff "fails to offer facts tending to show that the arrest policy *as applied by Defendant* has caused the exclusion of African American applicants because of their race." *Id.* at *4 (emphasis added).  While "Plaintiff generally alleges African Americans are arrested more often than other non-minority groups, Plaintiff does not allege statistics or any other facts tending to show the application of Defendant's arrest policies has had a disproportionate impact on African Americans." *Id.*

- *Jennings v. City of Tuscaloosa,* No. 13 Civ. 874, 2013 WL 5299304 (N.D. Ala. Sept. 19, 2013):  Allegation that "DUI policy as enforced has a disparate impact on African-Americans" was a "legal conclusion that must be stricken." *Id.* at *3.  Employee failed to state disparate impact claim based on alleged criminal history policy where complaint "provides no factual matter to allow an inference that the City's DUI policy disparately impacts African Americans." *Id.*

- *Washington v. Steve,* No. 13 Civ. 343, 2013 WL 6061988 (E.D. Wis. Nov. 18, 2013):  Job applicant failed to state claim for disparate impact race discrimination based on company's alleged criminal conviction policy where applicant did not allege "that members of his race were more often refused jobs on the basis of their race…." *Id.* at *2.

- *Washington v. First Transit, Inc.,* No. GJH-17-3747, 2018 U.S. Dist. LEXIS 128684 (D. Md. Aug. 1, 2018):  Amending complaint is futile where plaintiff "states in a conclusory fashion that Defendants' background screening policy 'caused disparate impact discrimination,'" and where plaintiff has not pled facts that minorities "make up a disproportionate number of the job applicants who are rejected under Defendants' policy." *Id.* at *9-11.

- *Tyree v. GCA Servs. Grp., Inc.,* No. 17-cv-328, 2018 U.S. Dist. LEXIS 4063 (W.D. Va. Jan. 9, 2018):  Amended complaint fails to state a disparate impact claim where plaintiff "merely points to the EEOC's guidance concerning the use of criminal records in the employment context" because the "sheer possibility that a defendant has acted unlawfully is insufficient to meet the plausibility standard set forth in *Twombly* and *Iqbal*." *Id.* at *7-8.  And, "[i]n the absence of any facts which plausibly suggest that [employer's] selection criteria imposed a substantially disproportionate burden upon African-Americans….the court concludes that [applicant's] disparate impact claim is subject to dismissal." *Id.* at *9."[1]

Plaintiffs argue they are not required to plead a prima facie case of discrimination, and

---

[1] Plaintiffs claim "Courts have repeatedly found similar or less robust allegations regarding the discriminatory impact of a criminal records ban will survive a motion to dismiss." Pl. Opp. at 8. Plaintiffs' cases are inapposite. *Smith v. Home Health Sol., Inc.,* 2018 WL 5281743 (D. Mass. Oct. 24, 2018), *Williams v. Compassionate Care Hospice,* 2016 WL 4149987 (D.N.J. Aug. 3, 2016), and *McCain v. United States,* 2015 WL 1221257 (D. Vt. Mar. 17, 2015) rely primarily on the plaintiff's citation to EEOC enforcement guidance.  Reliance on such guidance/statistics is, however, inconsistent with Second Circuit precedent, and irrelevant when applied to the facts as alleged here.  *See infra* at pp. 3-5.  The other case, *Williams v. Wells Fargo Bank, N.A.,* 2015 WL 13753220 (S.D. Iowa Aug. 6, 2015), is a one page decision with no analysis.

2

that NTT DATA "seeks to install a heightened pleading requirement" by requiring Plaintiffs to plead statistics at this stage of the litigation. Dkt. 11 ("Pl. Opp."), at 7-9. In support, Plaintiffs cite inapposite cases that rely on pre-*Iqbal* pleading standards, including *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002). *See George v. Prof'l Disposables Int'l, Inc.,* No. 15-cv-03385, 2016 U.S. Dist. LEXIS 72912, *16 (S.D.N.Y. June 1, 2016) (*Swierkiewicz* relies on pre-*Iqbal* pleading standards, and in "the post-*Iqbal* world a discrimination plaintiff, like any other plaintiff, must plead facts sufficient to render his claim 'facially plausible'… the elements of a *prima facie* case 'provide an outline of what is necessary to render [employment discrimination] claims for relief plausible'… courts properly consider those elements at the pleading stage….").

In any event, NTT DATA never contended that a plaintiff claiming disparate impact must plead statistics in their Complaint. Defendant contends that, consistent with *Iqbal*, Plaintiffs ***here*** must plead ***well pleaded facts*** to sufficiently support their conclusory allegations of disparate impact. In addition, Defendant appropriately identifies the disconnect between the purported "facts" alleged (the statistics that Plaintiffs ***do cite*** in their Complaint), and their conclusory allegations.[2] Indeed, as both Plaintiffs and the Second Circuit have acknowledged, when "the plaintiff chose[s] to make [his] initial showing based on certain statistics," a Court may find "those statistics fail[] to support a plausible claim because plaintiff pled no 'causal connection' between defendant's policy and the [alleged] disparity." Pl. Opp. at 11, n. 7.

Here, Plaintiffs' reliance on general statistics is inconsistent with Second Circuit law. Indeed, the Second Circuit has rejected reliance on "general statistics," "general reports of the EEOC" and allegations "which contend only that there is a bottom line racial imbalance."

---

[2] Plaintiffs argue that they could not provide statistics to support their disparate impact claim because this information is in Defendant's possession. This is irrelevant, because under Fed. R. Civ. P. 11, Plaintiffs must have sufficient evidence before suit is filed, and certainly before discovery commences.

3

*Brown v. Coach Stores, Inc.,* 163 F. 3d 706, 712 (2d Cir. 1998); *Watson,* 444 Fed. Appx. at 501.

In addition, the general population statistics are inapposite for at least three reasons. <u>First</u>, although Plaintiffs challenge NTT DATA's purported policy not to hire persons with felonies, the cited statistics address "arrest and incarceration rates" for "crimes," generally, and do not address felony convictions. Compl., *generally*[3]; *EEOC v. Freeman,* 961 F. Supp. 2d 783, 798 (D. Md. 2013) (rejecting reliance on "general statistics" that "are not even considered under Defendant's hiring criteria, such as arrest and incarceration rates").[4]  <u>Second</u>, Plaintiffs' reliance on national, general population statistics ignores their allegation that the labor pool only consists of "qualified African American Applicants." Compl., ¶¶ 2, 61. As the *Freeman* court recognized, the general population pool "cannot be used as a surrogate for the class of qualified job applicants, because it contains many persons who have not (and would not) be applying for a job with Defendant." *Id.* at 798 (internal quotations and citations omitted).[5]  <u>Third</u>, general

---

[3] Despite Plaintiffs' contention to the contrary, the EEOC Enforcement Guidance cites only dated arrest and incarceration data, not felony conviction data. The Guidance also suggests regional or local data may differ from national statistics. Finally, the Guidance is far from definitive proof that any disparity exists from criminal conviction policies, generally, and certainly not under the facts present here. Indeed, the Guidance states that a neutral policy to exclude applicants from employment based on "***certain***" criminal conduct "***may***" disproportionately impact "***some***" individuals protected under Title VII.

[4] Plaintiffs contort their allegations in light of Defendant's challenges. For example, Plaintiffs claim to challenge a policy that prohibits applicants with undefined "certain" criminal convictions, not just felonies. This is completely divorced from the factual allegations in the Complaint, where both Named Plaintiffs allege only that recruiters cited an alleged policy not to hire applicants *with felonies*. Compl., ¶¶ 33, 48. Plaintiffs assert no facts to support that NTT DATA had any policy to exclude applicants convicted of crimes other than felonies. *Id.*.

[5] Plaintiffs' cases demonstrate the folly of their argument that general population statistics suffice. In *Dothard v. Rawlinson,* 433 U.S. 321, 330 (1977), the Court held that general population statistics were appropriate where there was "no reason to suppose that" the statistics cited differed from the relevant labor pool. Similarly, in *EEOC v. Joint Apprenticeship Comm'n of Joint Indus. Bd. of Elec. Indus.,* 164 F.3d 89, 97-98 (2d Cir. 1998), the Court found that studies based on general population data were proper where the facially neutral requirement was that an applicant be a high school graduate and/or be a certain age to qualify for the job, which basic characteristics would also be reflected in general population statistics. This is not the case

population statistics have no connection to *NTT DATA's policy*, making them further inapt and far from factual support that NTT DATA's policy causes any disparate impact. Again, to be clear, the basis of Defendant's motion is not that Plaintiffs must plead such statistics to survive a motion to dismiss. Instead, Defendant's motion is premised on the unassailable fact that, here, Plaintiffs ***did attempt to plead*** such statistics to get them over the *Iqbal* threshold, and failed miserably.

Simply put, Plaintiffs have not alleged any facts supporting that any disparities are caused by NTT DATA's employment practices. Citing two employees differing experiences, EEOC guidance and inapposite general population statistics is not enough. Plaintiffs' Title VII disparate impact claim should be dismissed.

## II.     PLAINTIFFS' NY FCRA CLAIM SHOULD BE DISMISSED.

Plaintiffs offer one meager retort to NTT DATA's argument that they do not have Article III standing to bring their NY FCRA claim: Mandala allegedly suffered a concrete harm because failure to receive a copy of Article 23-A "diminished his opportunity to advocate for the job." Pl. Opp. at 14-16. Notably, this allegation is nowhere in the Complaint. *See* Compl., *generally*.

Even if Mandala did make this allegation, there is nothing in Article 23-A that provides a mechanism for plaintiff to "advocate for the job," nor is this a right that N.Y. Gen. Bus. L. § 380-g(d) was designed to protect. *See* N.Y. Corr. L. §§ 750-755. Instead, as Plaintiffs' own papers assert, § 380-g(d) was designed to "help ensure that employers and prospective employees are ***informed*** about the mandates of Article 23-A of the correction law." Pl. Opp. at 15; *see also* Dkt. 11-3 (emphasis added). And, as this lawsuit demonstrates, Mandala was informed about the mandates of Article 23-A, so much so that he elected to bring a federal class action lawsuit

---

here, where Plaintiffs allege that only "qualified" African American applicants are implicated and there is no evidence that "qualified" African American applicants for skilled and technical positions are convicted of crimes at the same rate as the general population.

alleging violations of same. *Long v. SEPTA,* 903 F.3d 312, 325 (3rd Cir. 2018), cited in NTT DATA's moving papers, is exactly on point, and holds that applicants are not concretely harmed by an employer's failure to provide them with a statement of their FCRA rights.[6] Simply put, *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) and *Long v. SEPTA* are dispositive. Plaintiffs' NY FCRA claim should be dismissed because Plaintiffs do not have standing to sue individually or on behalf of the class they purport to represent.

### III.   MANDALA RECEIVED A COPY OF ARTICLE 23-A.

Plaintiffs' NY FCRA claim should also be dismissed because Mandala received a copy of Article 23-A. *See* Dkt 9-3 at 13-14. Plaintiffs have no substantive response:

- Plaintiffs do not deny that Mandala executed a background check form where he acknowledged receipt of Article 23-A, and do not dispute the authenticity of the background check form attached to the Price Declaration[7]; and

- Plaintiffs offer no meaningful distinction or refutation of *Hall v. Kodak Ret. Income Plan,* 07-Civ.-6196, 2009 WL 778102, *8 (W.D.N.Y. Mar. 20, 2009), which holds that an employee's acknowledgment that he received a document is evidence he received it.

Instead, Plaintiffs assert that the Court should not consider the authorization at this time because it is purportedly "extrinsic" to the Complaint. This is wrong as a matter of law. For motion to dismiss purposes, the Complaint is deemed to include "any statements or documents incorporated in it by reference…." *Heskiaoff v. Sling Media, Inc.*, 719 Fed. Appx. 28, 31 (2d Cir. Nov. 22, 2017); *Underwood v. Roswell Park Cancer Inst.,* No. 15-cv-684, 2017 U.S. Dist.

---

[6] *Strubel v. Comenity Bank,* 842 F. 3d 181 (2d Cir. 2016), a case relied upon by Plaintiffs, supports NTT DATA. In *Strubel,* the Second Circuit held that under the Truth in Lending Act, a plaintiff had standing to sue when she was not informed about *the plaintiff's obligations* under the law, because failure to do so could cause the plaintiff "unwittingly to lose the very credit rights that the law affords him." *Id.* at 190. Here, Article 23-A does not impose any obligations on the Plaintiffs. Further, in *Strubel,* the Second Circuit held that the plaintiff *did not have standing to sue* for failure to inform plaintiff of *defendant's obligation to provide notice,* because this was a "bare procedural violation."

[7] Although Plaintiffs claim there is a "factual dispute" for "the reasons discussed," Plaintiffs do not identify a single factual dispute relating to the background check authorization or Mandala's written acknowledgment that he received a copy of Article 23-A.

LEXIS 5689, *25-27 (W.D.N.Y. Jan. 13, 2017) (documents referenced in Amended Complaint were deemed incorporated).  In *Velarde v. GW GJ, Inc.,* No. 14-cv-695S, 2016 U.S. Dist. LEXIS 159692 (W.D.N.Y. Nov. 16, 2016), the Court held that where the complaint specifically cited a document, that document was incorporated by reference and properly considered.  *Id.* at *10.  The Court further held that where the plaintiff signs an acknowledgment of receipt of a document, the Court may consider the document referenced in the acknowledgment as well.  *Id.*

Here, the authorization is cited in the Complaint: "Mr. Mandala authorized a background check pursuant to NTT's policy…".  Compl., ¶ 44.  Plaintiffs admit as much, and do not dispute that Mandala signed the authorization.  Pl. Opp. at 17-18.  Accordingly, the authorization was incorporated by reference into the Complaint and is properly before the Court.

In any event, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Underwood,* 2017 U.S. Dist. LEXIS 5689, *25-26 (internal citations omitted).  Plaintiff's authorization is integral to Plaintiffs' NY FCRA claim.  Indeed, Plaintiffs' entire NY FCRA claim is premised on a violation of N.Y. Gen. Bus. Law § 380-g(d), which provides that "the person… requesting [a consumer report] shall provide the subject of such report a printed or electronic copy of article [23-A] of the correction law."  Thus, Plaintiffs' NY FCRA claim is based, entirely, on what disclosure was made to Mandala when NTT DATA requested a consumer report.  It is hard to imagine a document ***any more integral*** to the Complaint than the disclosures made to, and acknowledgment signed by, Mandala, at that time.[8]  Because the background authorization is properly considered by the

---

[8] Even a case cited by Plaintiffs, *Williams v. Compassionate Care Hospice,* 2016 WL 4149987, *n. 2, held that the Court may consider a letter not explicitly attached to, or referred to in, the

7

Court on a motion to dismiss and is sufficient evidence Mandala received Article 23-A, Plaintiffs' NY FCRA claim should be dismissed.

## IV. THE CLASS CLAIMS SHOULD BE STRIKEN.

*Maddison v. Comfort Sys. USA (Syracuse),* No. 5:17-CV-0359, 2018 U.S. Dist. LEXIS 16090 (N.D.N.Y. Feb. 1, 2018) and *Roach v. T.L. Cannon Corp.,* No. 3:10-cv-0591, 2015 U.S. Dist. LEXIS 177286 (N.D.N.Y. Sept. 4, 2015) directly support that **Mandala** does not have standing to represent any class member who applied for employment prior to Mandala's application. In response, Plaintiffs offer only the unsupported retort that these cases were "wrongly decided." Pl. Opp. at 21. Plaintiffs cite inapposite case law where the defendant never challenged the named plaintiff's standing to represent the absent class members from irrelevant time periods; and where the Court never addressed this issue. *Id*. at 19-20. This is not "authority" refuting the well-reasoned *Maddison* and *Roach* decisions.

Plaintiffs also argue that Defendant "prematurely" attacks their class claims. As Plaintiffs admit, however, Defendant may attack such claims based on their facial insufficiency. *Id*. at 6. And, Plaintiffs offer no substantive response to Defendant's facial challenges:

- Numerosity: Plaintiffs did not plead that over 40 *African American applicants* were refused employment based on criminal history. Plaintiffs concede they alleged only two applicants were refused employment. *Id*. at 22. This is not enough to satisfy numerosity.

- Commonality/Typicality/Adequacy of Representation: Plaintiffs admit that they did not plead that they have felony convictions. *Id*. at n. 17. Therefore, from the face of the Complaint, Plaintiffs do not allege claims common or typical of the class they purport to represent. Plaintiffs also concede they did not limit the NY FCRA class to individuals with consumer reports containing "criminal conviction information" – thereby creating an inherent conflict within the class as is evident from the face of the Complaint. *Id*. at 23-24.

For these reasons, Plaintiffs' class allegations should be stricken.

---

Complaint where the letter set forth the terms of employment, **including the criminal background check** and driving record review, which formed the basis of the action.

## V. THE CRIMINAL HISTORY DISCRIMINATION CLAIMS ARE TIME BARRED.

Plaintiffs claim that their N.Y. Executive Law § 296(15) ("NYHRL") claims should date back to June 2, 2014 (and not August 15, 2015, three years prior to the filing of the Complaint), because Plaintiff Mandala tolled those class members' statutes of limitations by filing his charge with the EEOC on June 2, 2017. In the EEOC Charge, Mandala does not (because he cannot under Title VII) claim criminal conviction discrimination. Of course, claims never filed with the EEOC cannot be tolled by an unrelated Charge.

Nor are the NYHRL claims "reasonably related" to the EEOC charge. To be "reasonably related," the "conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[9] *Brown,* 163 F.3d at 712. Here, Mandala's criminal conviction discrimination allegation cannot fall within the scope of the EEOC's investigation, because having a criminal record is not a protected characteristic under federal law. 42 U.S.C. § 2000e-2(k)(1)(A)(i); *Washington,* 2013 WL 6061988, *2 ("Title VII does not prohibit discrimination on the basis of a criminal record"); *Tyree,* 2018 U.S. Dist. LEXIS 4063, *7 (same). Plaintiffs' cases are inapposite, because none address the facts present here, where the plaintiff never asserted criminal record discrimination in the charge, and where the EEOC would have no basis to investigate same. For these reasons, equitable tolling is inapplicable and claims prior to August 15, 2015 are time-barred.

## VI. PLAINTIFFS' REQUEST FOR CERTAIN DAMAGES SHOULD BE DISMISSED.

Finally, Plaintiffs do not contest that they are not entitled to compensatory and punitive

---

[9] Plaintiffs also claim that their NYHRL claims are tolled because complaints filed with the EEOC are deemed to be cross-filed with the Division of Human Rights. Pl. Mem. 24. Even Plaintiffs' own case recognizes that district "courts in this circuit are split on this issue." *Kennedy v. Fed. Express Corp.,* 2016 WL 5415774 (N.D.N.Y. Sept. 28, 2016). Regardless, as set forth above, Plaintiffs' NYHRL criminal conviction discrimination claims are not reasonably related to the EEOC charge, so even if tolling did apply to the claims within the scope of the EEOC charge, it does not apply to Plaintiffs' unrelated criminal conviction discrimination claim.

9

damages for Title VII disparate impact, or punitive damages for violations of the NYHRL. Pl. Opp. at 25. Instead, they assert that "dismissal of particular types of damages is inappropriate at the pleading stage." *Id.* This position has no merit. Numerous courts (including this one) have dismissed improper damages requests under Fed. R. Civ. P. 12(b)(6). *See Constellation Brands, Inc. v. Keste, LLC,* No. 14-cv-6272, 2014 U.S. Dist. LEXIS 159753, *10 (W.D.N.Y. Nov. 13, 2014) (Siragusa, J.) ("disagree[ing] with Plaintiff's argument that damages claims should not be dismissed at the pleading stage," and granting defendant's motion for dismissal of certain damages claims); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 167, 176-77 (2d Cir. 2006) (affirming Rule 12(b)(6) dismissal of party's claims for consequential damages); *Underwood,* 2017 U.S. Dist. LEXIS 5689, *60-62 (granting motion to dismiss request for punitive damages: "the federal statutes under which [plaintiff] seeks relief, namely Title VII… do not permit the award of punitive damages… Therefore, [plaintiff] is precluded from recovering punitive damages against [defendant]"). Thus, Plaintiffs' request for compensatory and punitive damages in Claim I, and punitive damages in Claim II, should be dismissed.[10]

| | |
|---|---|
| Date:   December 27, 2018<br>Fairport, New York | */s/ Jessica F. Pizzutelli*<br>Jacqueline Phipps Polito<br>Jessica F. Pizzutelli<br>LITTLER MENDELSON, P.C.<br>375 Woodcliff Drive, Second Floor<br>Fairport, NY  14450<br>jpolito@littler.com<br>jpizzutelli@littler.com<br> Tel. (585) 203-3400<br>*Attorneys for Defendant* |

---

[10] At the time the opposition brief was filed, December 12, 2018, it does not appear that the NAACP Legal Defense & Educational Fund, Inc. ("NAACP") had properly filed their Notice of Appearance. In fact, according to Docket No.12, the Notice of Appearance was not filed until December 18, 2018, contrary to the requirements of the local rules (Local Rule 83.2). It appears that the addition of their representation to the brief was solely to support public comments made to the press in an effort to bolster their claims or garnish media attention for their purported class.