**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
Alexis J. Hoag
40 Rector Street, Fifth Floor
New York, NY 10006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NTT DATA, INC.,

Defendant.

Case No. 18 Civ. 6591 (CJS)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL RULE 26(f) CONFERENCE**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 1

I. This Case's Factual and Procedural History ..... 1

II. NTT's Motion to Dismiss ..... 2

III. Plaintiffs' Discovery Requests ..... 3

ARGUMENT ..... 3

I. Legal Standard ..... 3

II. NTT's Motion to Dismiss Does Not Stay Discovery. ..... 4

III. A Stay of Discovery is Not Appropriate. ..... 5

A. NTT's Motion to Dismiss Lacked Substantial Support When Filed, and Subsequent Case Law Further Undermines Its Arguments. ..... 6

B. Plaintiffs' Requests Are Narrowly Cabined and Minimally Burdensome ..... 9

C. Plaintiffs Continue to Suffer Prejudice from the Delay in Discovery. ..... 10

IV. The Parties Should Engage in a Rule 26(f) Conference Now. ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Baker v. Ark. Blue Cross*,
No. 08 Civ. 3974, 2009 WL 904150 (N.D. Cal. Mar. 31, 2009) .............................................. 6

*Biofeedtrac Inc. v. Koliner Optical Enters.*,
No. 90 Civ. 1169, 1991 WL 85951 (E.D.N.Y. May 7, 1991) .................................................. 5

*Ceglia v. Zuckerberg*,
No. 10 Civ. 569A, 2012 WL 12995531 (W.D.N.Y. June 20, 2012) ..................................... 5, 6

*In re Chase Manhattan Corp. Sec. Litig.*,
No. 90 Civ. 6092, 1991 WL 79432 (S.D.N.Y. May 7, 1991) .................................................. 5

*Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*,
201 F.R.D. 1 (D.D.C. 2001) ..................................................................................................... 6

*Cole-Hoover v. N.Y. Dep't of Corr. Servs.*,
No. 02 Civ. 826, 2012 WL 13000661 (W.D.N.Y. Oct. 10, 2012) .......................................... 11

*CytoSport, Inc. v. Nature's Best, Inc.*,
No. 06 Civ. 1799, 2007 WL 1040993 (E.D. Cal. Apr. 4, 2007) ............................................... 4

*Escareno ex rel. A.E. v. Lundbeck, LLC*,
No. 14 Civ. 257, 2014 WL 1976867 (N.D. Tex. May 15, 2014) ............................................ 10

*Godson v. Eltman, Eltman & Cooper, PC*,
No. 11 Civ. 0764, 2013 WL 4832715 (W.D.N.Y. Sept. 11, 2013) ........................................... 9

*Hicks v. T.L. Cannon Mgmt. Corp., No.*,
13 Civ. 6455, 2018 WL 2440732 (W.D.N.Y. Mar. 13, 2018) .................................................. 8

*Howard v. Galesi*,
107 F.R.D. 348 (S.D.N.Y. 1985) ......................................................................................... 4, 5

*Jackson v. Tryon Park Apartments, Inc.*,
No. 18 Civ. 6238, 2019 WL 331635 (W.D.N.Y. Jan. 25, 2019) .............................................. 7

*Kron Med. Corp. v. Groth*,
119 F.R.D. 636 (M.D.N.C. 1988) .......................................................................................... 12

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
No. 10 Civ. 1899, 2014 WL 1245053 (N.D. Ill. Mar. 26, 2014) .............................................. 11

*Lee v. Hertz Corp.*,
__ F.R.D. __, 2019 WL 1434226 (N.D. Cal. Mar. 28, 2019) ..................................................... 7

*Martin v. Coinmach Corp.*,
No. 15 Civ. 8137, 2016 WL 6996182 (S.D.N.Y. Nov. 29, 2016) .............................................. 6

*Mirra v. Jordan*,
No. 15 Civ. 4100, 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016).................................................. 4

*Morien v. Munich Reinsurance Am., Inc.*,
270 F.R.D. 65 (D. Conn. 2010)............................................................................................ 4, 5, 6

*Moss v. Hollis*,
No. 90 Civ. 177, 1990 WL 138531 (D. Conn. June 29, 1990) .................................... 4, 5, 6, 11

*Obiajulu v. City of Rochester, Dep't of Law*,
166 F.R.D. 293 (W.D.N.Y. 1996) ............................................................................................. 4

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ................................................................................................................... 9

*Rodriguez v. Metro. Cable Commc'ns*,
913 N.Y.S.2d 292 (N.Y. App. Div. 2010) ................................................................................. 8

*SK Hand Tool Corp. v. Dresser Industries, Inc.*,
852 F.2d 936 (7th Cir. 1988)...................................................................................................... 5

*S.R. v. Kenton Cnty. Sheriff's Office*,
No. 15 Civ. 143, 2015 WL 12977103 (E.D. Ky. Nov. 3, 2015) .................................... 6, 10, 12

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016)....................................................................................................... 8

*In re Sulfuric Acid Antitrust Litig.*,
231 F.R.D. 331 (N.D. Ill. 2005) ................................................................................................ 5

*Weitzner v. Sciton, Inc.*,
No. 2005 Civ. 2533, 2006 WL 3827422 (E.D.N.Y. Dec. 27, 2006)........................................... 9

*Williams v. Swack*,
No. 13 Civ. 974, 2015 WL 2237216 (W.D.N.Y. May 12, 2015)............................................. 11

*Youngblood v. Family Dollar Stores, Inc.*,
No. 09 Civ. 3176, 2011 WL 1742109 (S.D.N.Y. Jan. 5, 2011) .................................................. 9

**Statutes**

N.Y. Correct. Law § 753(1)(a)........................................................................................... 11

N.Y. Gen. Bus. Law § 380-g(d)........................................................................................... 2

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................... 9

Fed. R. Civ. P. 23 ......................................................................................................... 9

Fed. R. Civ. P. 26 ......................................................................................................... *passim*

N.Y. C.P.L.R. § 901(a) ................................................................................................... 9

N.Y. C.P.L.R. § 3101(a) ................................................................................................. 8

**Other Authorities**

*EEOC Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, at 9-10 (Apr. 25, 2012), https://www.eeoc.gov/laws/guidance/upload/arrest_conviction.pdf........................................ 11

## INTRODUCTION

Plaintiffs George Mandala ("Mandala") and Charles Barnett ("Barnett," and collectively, "Plaintiffs") respectfully request an order from the Court compelling Defendant NTT Data, Inc. ("NTT") to take the first step in discovery and engage in the planning process mandated by Rule 26(f) of the Federal Rules of Civil Procedure. In this civil rights case, Plaintiffs allege that NTT unjustifiably screens out individuals with criminal histories unrelated to any legitimate business necessity, to the detriment of African American applicants. While the parties await resolution of Defendant's Motion to Dismiss, NTT may continue its unfettered use of an illegal and overly broad criminal history screen that operates to wrongfully reject African-American applicants. As such, a stay or other delay of discovery is not warranted.

## BACKGROUND

### I. This Case's Factual and Procedural History

Named Plaintiffs are African-American job applicants to NTT residing in New York and Kentucky. ECF No. 1 ("Compl."), ¶¶ 15-18. NTT offered each Plaintiff a conditional offer of employment, but then withdrew these offers, indicating to each Plaintiff that the decision was pursuant to its policy of not hiring people with certain criminal convictions. *Id*. ¶¶ 23-28, 33-34, 38-43, 46, 48.

On August 15, 2018, Plaintiffs brought this action on behalf of themselves and those similarly situated against NTT for violating Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York Human Rights Law ("NYHRL"), Article 23-A of the New York State Correction Law, and the New York State Fair Credit Reporting Act ("NY FCRA"), alleging that NTT's hiring process impermissibly denies employment to qualified individuals because of their criminal convictions, fails to consider the factors required by the NYHRL when making an

employment decision based on an individual's criminal record, and fails to provide applicants with copies of Article 23-A of the Correction Law as required by N.Y. Gen. Bus. Law § 380-g(d) when it obtains criminal conviction information about them. *See generally* Compl.

Plaintiffs seek to represent a "Title VII Disparate Impact Class" of "[a]ll African American individuals who, from August 6, 2016 through the resolution of this action, were denied employment in whole or in part because of NTT's policy and practice of denying employment to individuals with criminal convictions." *Id.* ¶ 93. Plaintiffs allege that NTT's policy and practice of denying employment to individuals with criminal convictions has a disparate impact on African Americans, who are convicted of crimes at higher rates than white people. *Id.* ¶¶ 52-54.

In addition to the Title VII class, Plaintiff Mandala seeks to represent a "NY Criminal History Discrimination Class" of "[a]ll individuals who, from June 2, 2014, through the resolution of this action, were denied employment based in whole or in part on their criminal record without NTT having performed a complete New York Correction Law Article 23-A analysis . . . ." *Id.* ¶ 94. Plaintiff Mandala also seeks to represent a "NY FCRA Class" of "[a]ll individuals who, from August 15, 2016, through the resolution of this action, had consumer reports requested about them by NTT and were not provided with a copy of Article 23-A of the Correction Law." *Id.* ¶ 95.

## II. NTT's Motion to Dismiss

On November 13, 2018, after requesting and receiving additional time to respond to Plaintiffs' Complaint (ECF No. 8), NTT filed a Motion to Dismiss the Class Action Complaint in its Entirety and With Prejudice ("Motion to Dismiss") (ECF No. 9). Plaintiffs opposed the motion. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opp.") (ECF No. 11). Oral argument is scheduled for June 27, 2019. *See* ECF No. 18.

In its motion, NTT argues that Plaintiffs failed to sufficiently plead a disparate impact cause of action under Title VII and that Plaintiff Mandala lacks standing to bring his NY FCRA claim. *See* Motion to Dismiss at 7-10, 13-14; Opp. at 6-10. NTT does not argue that Plaintiff's NY Criminal History Discrimination Class Claim is improperly pled, but rather argues that if the Title VII Claim is dismissed, the Court should decline to exercise jurisdiction over this claim. Motion to Dismiss at 11-12. Thus, even in the unlikely event that the Court granted NTT's Motion to Dismiss in its entirety, Plaintiff Mandala's state law criminal history discrimination claim would survive and require discovery.

**III. Plaintiffs' Discovery Requests**

On February 4, 2019, Plaintiffs issued a first set of Requests for the Production of Documents and a first set of Interrogatories directed to Defendant and requested that Defendant meet and confer regarding the planning of discovery pursuant to Federal Rule of Civil Procedure 26(f). *See* Declaration of Christopher M. McNerney ("McNerney Decl.") ¶ 3, Ex. A.

On February 7, 2019, NTT responded with its position that "a Rule 26(f) conference and discovery at this juncture is premature," in light of the pending Motion to Dismiss. *Id.* ¶ 4, Ex. B. On February 15, 2019, the parties met and conferred telephonically to attempt to resolve this issue. *Id.* ¶ 5. NTT's counsel followed up in an email on February 25, 2019, stating that its position refusing to have a Rule 26(f) conference was unchanged, arguing that it is inappropriate to begin the discovery process until after resolution of Defendant's motion to dismiss. *Id.* ¶ 6, Ex. C.

**ARGUMENT**

**I. Legal Standard**

The Federal Rules require that "the parties must confer as soon as practicable" to plan for discovery. Fed. R. Civ. P. 26(f)(1). "The obligation to participate in the planning process is

imposed on all parties that have appeared in the case, including defendants who, because of a pending Rule 12 motion, may not have filed an answer in the case." Fed. R. Civ. P. 26(f) advisory committee's note to 1993 amendment.

A motion to dismiss does not automatically stay discovery. *Morien v. Munich Reinsurance Am., Inc.*, 270 F.R.D. 65, 66-67 (D. Conn. 2010); *accord Howard v. Galesi*, 107 F.R.D. 348, 350-51 (S.D.N.Y. 1985). Rather, it is the party seeking to stay discovery that bears the burden to request and show good cause for a stay. *See Morien*, 270 F.R.D. at 66-67; *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996) ("The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules found in the Federal Rules of Civil Procedure."); *Mirra v. Jordan*, No. 15 Civ. 4100, 2016 WL 889559, at *2-3 (S.D.N.Y. Mar. 1, 2016) ("The party seeking a stay of discovery bears the burden of showing good cause."). The party seeking a stay cannot demonstrate good cause if the burden it faces is minimal relative to a real risk of prejudice to the opposing party. *See Moss v. Hollis*, No. 90 Civ. 177, 1990 WL 138531, at *1 (D. Conn. June 29, 1990).

**II. NTT's Motion to Dismiss Does Not Stay Discovery.**

NTT's position that its motion to dismiss has automatically stayed its discovery obligations, including the Rule 26(f) conference, is legally incorrect. Courts across the country have held that absent a specific showing of good cause, a motion to dismiss does not automatically stay discovery. *See Moss*, 1990 WL 138531, at *1 (denying Defendant's request to stay discovery pending motion to dismiss and explaining that "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, they would contain such a provision"); *CytoSport, Inc. v. Nature's Best, Inc.*, No. 06 Civ. 1799, 2007 WL 1040993, at *3 (E.D. Cal. Apr. 4, 2007) (A party has "no right to withhold discovery

responses solely because a motion to dismiss is pending" and accordingly ordering that defendant comply with discovery obligations (citation omitted)); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("The mere filing of the motion [to dismiss] does not automatically stay discovery. Nor does it mean that a court will automatically grant a stay pursuant to Rule 26(c) simply because a defendant asks for one." (citing *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936, 945 (7th Cir. 1988))).[1]

As the court in *Moss* noted, a finding that motions to dismiss alone constitute good cause to stay discovery would "create precedent that would result in a stay of discovery until such motions were resolved and result in significant delay in the court's docket." 1990 WL 138531, at *1 n.2. It would incentivize overly broad and legally dubious motions to dismiss aimed at slowing the start of discovery.

## III. A Stay of Discovery is Not Appropriate.

NTT, as the "party seeking a stay of discovery[,] has the burden of establishing there exists good cause for the request." *See Ceglia v. Zuckerberg*, No. 10 Civ. 569A, 2012 WL 12995531, at *1 (W.D.N.Y. June 20, 2012) (citing *Morien*, 270 F.R.D. at 67). NTT has not, however, moved for a protective order or requested a stay from the Court.

Nonetheless, even if Defendant had requested such a stay, none of the factors that courts consider when evaluating a defendant's motion to stay would support a stay here. In determining

[1] Multiple courts have also concluded that the parties' obligations under Rule 26(f)(1) apply *even* after a motion to dismiss is granted with leave to amend. *See In re Chase Manhattan Corp. Sec. Litig.*, No. 90 Civ. 6092, 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991) ("Should the complaint (or an amended complaint) be sustained . . . commencement of the discovery process, while no doubt imposing some burden on defendants, will advance the ultimate disposition of this action."); *Howard*, 107 F.R.D. at 350-51 & n.4 (even if a complaint is dismissed, discovery should continue because plaintiffs have leave to move to amend); *Biofeedtrac Inc. v. Koliner Optical Enters.*, No. 90 Civ. 1169, 1991 WL 85951, at *1 (E.D.N.Y. May 7, 1991).

whether a party has shown good cause for a stay of discovery, a court will look to "the strength of the claim by the party seeking discovery, the breadth and burden of the discovery sought, and the 'risk of unfair prejudice to the party opposing the stay.'" *Ceglia*, 2012 WL 12995531, at *1 (citing and quoting *Morien*, 270 F.R.D. at 67).

### A. NTT's Motion to Dismiss Lacked Substantial Support When Filed, and Subsequent Case Law Further Undermines Its Arguments.

First, NTT's motion to dismiss is highly unlikely to prevail given the strength of Plaintiffs' claims, as set forth in their complaint and in opposition to Defendants' motion. *See Moss*, 1990 WL 138531, at *1 (denying stay where complaint was not frivolous and defendant had not made strong showing that motion to dismiss would be successful). "[T]he mere existence of what defendants believe to be complete defenses to plaintiffs' claims does not mean that a Rule 26(f) conference should not be held." *S.R. v. Kenton Cnty. Sheriff's Office*, No. 15 Civ. 143, 2015 WL 12977103, at *1 (E.D. Ky. Nov. 3, 2015)). NTT's "'bald assertion'… that its motion to dismiss will be granted, or that discovery would be burdensome," without more, is "insufficient to justify the order staying discovery." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 n.4 (D.D.C. 2001). *See also Baker v. Ark. Blue Cross*, No. 08 Civ. 3974, 2009 WL 904150, at *1 (N.D. Cal. Mar. 31, 2009) (if "it is not clear that Plaintiffs will fail to state a claim, [] a stay of discovery is not warranted.").

As to Plaintiffs' Title VII disparate impact claim (Claim I), NTT's *only* argument is that Plaintiffs have not presented statistics from the appropriate population, using inapposite case law mostly decided at later procedural stages of litigation after the benefit of discovery. *See* Mot. to Dismiss at 7-10; Opp. at 9-13. But Plaintiffs are not required to present *any* statistical evidence to plausibly plead a disparate impact claim. *See, e.g.*, *Martin v. Coinmach Corp.*, No. 15 Civ. 8137, 2016 WL 6996182, at *7 (S.D.N.Y. Nov. 29, 2016) ("In order to survive a motion to

dismiss . . . plaintiffs need not provide statistical support for their claims[.]"); Opp. at 9 n.5. In any event, Plaintiffs have provided statistics comparable to multiple other disparate impact cases, including Title VII disparate impact cases challenging a criminal history screening policy, that survived motions to dismiss. *See* Opp. at 9-13.[2]

In fact, since Plaintiffs filed their opposition to NTT's motion to dismiss, at least two separate district courts (including in this District) have found that a plaintiff's allegations that a defendant's criminal history adjudication process disproportionately screens out minority groups, combined with statistics showing minority groups are disproportionately burdened by the criminal justice system, stated a plausible violation of applicable civil rights statutes. *See* Plaintiffs' Second Notice of Supplemental Authority in Further Opposition to Defendant's Motion to Dismiss the Class Action Complaint (ECF No. 20) (citing *Lee v. Hertz Corp.*, __ F.R.D. __, 2019 WL 1434226, at *1 (N.D. Cal. Mar. 28, 2019) (Title VII claim that defendants' criminal history screening policy "disproportionately preclude[s] African Americans and Latinos from obtaining employment with [d]efendants because these groups have higher arrest and conviction rates than do whites")); Plaintiffs' Notice of Supplemental Authority in Further Opposition to Defendant's Motion to Dismiss the Class Action Complaint (ECF No. 15) (citing *Jackson v. Tryon Park Apartments, Inc.*, No. 18 Civ. 6238, 2019 WL 331635, at *1 (W.D.N.Y. Jan. 25, 2019) (Fair Housing Act claims that defendants' housing "policy and practice of automatically excluding a person with a felony conviction from renting an apartment had a racially disparate impact")).

---

[2] As Plaintiffs previously argued, the battle over the appropriate statistical analysis will occur later in this case with the benefit of discovery. Opp. at 10 n.6.

Further, while resolution of Plaintiffs' NY FCRA claim is immaterial to whether this action remains before the Court, Plaintiff Mandala has made a strong case for his standing to bring the claim, and indeed a court in this District recently rejected an argument similar to NTT's. *See Hicks v. T.L. Cannon Mgmt. Corp.*, No. 13 Civ. 6455, 2018 WL 2440732, at *5 (W.D.N.Y. Mar. 13, 2018) (citing *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) and finding plaintiffs' wage statement claims articulated concrete injury because "their procedural provisions are specifically designed to guard against the concrete harm that workers are subject to when they are mis- or uniformed regarding their rights and the responsibilities of their employers"); *see also* Opp. at 15.

Finally, even if the Court were to grant NTT's motion to dismiss in its entirety, Plaintiff Mandala's state law (NYHRL) criminal history discrimination claim would survive either before this Court or in state court. The discovery needed to prove that claim would include inquiries into NTTs criminal background check policies and practices—the same discovery that Plaintiffs are seeking now. Because the scope of discovery in New York State court is similar to, if not broader than, that in federal court, beginning limited discovery now would not be unduly burdensome even in the unlikely event that this Court remands the NYHRL claim to state court. *Compare* N.Y. C.P.L.R. § 3101(a) (requiring "full disclosure of all matter material and necessary in the prosecution or defense of an action"), *with* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Both New York State and federal rules require pre-certification discovery in class actions sufficient for the court to assess whether the prerequisites of class certification have been met. *See Rodriguez v. Metro. Cable Commc'ns*, 913 N.Y.S.2d 292, 294 (N.Y. App. Div. 2010) (noting "broad[] mandate[]" for discovery under N.Y. C.P.L.R.

3101(a) requires that trial court afford plaintiff requisite pre-class certification discovery to determine whether class certification is appropriate and "to ascertain the dimensions of the group of individuals who share plaintiff's grievance"); *Godson v. Eltman, Eltman & Cooper, PC*, No. 11 Civ. 0764, 2013 WL 4832715, at *2 (W.D.N.Y. Sept. 11, 2013) ("[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.3 (1978))); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 1742109, at *1-2 (S.D.N.Y. Jan. 5, 2011) (noting that Fed. R. Civ. P. 26 is "broad rule" to be "liberally construed" in permitting discovery relevant to class certification). Finally, the New York State and federal prerequisites for class certification are substantially similar. *Compare* N.Y. C.P.L.R. § 901(a) (requiring numerosity, commonality, typicality, adequacy, and superiority), *with* Fed. R. Civ. P. 23 (requiring numerosity, commonality, typicality, and adequacy, as well as predominance and superiority with respect to class actions under Rule 23(b)(3)). Thus, NTT should not be permitted to delay discovery to which Plaintiffs would be entitled regardless of the resolution of NTT's Motion to Dismiss. *See Weitzner v. Sciton, Inc.*, No. 2005 Civ. 2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006) (denying stay when, *inter alia*, granting of motion "would not extinguish plaintiff's claims here, as plaintiff would still have a right to bring suit on his individual claims in state court").

**B. Plaintiffs' Requests Are Narrowly Cabined and Minimally Burdensome.**

Second, Plaintiffs' request that NTT engage in the Rule 26(f) planning process and limited discovery is narrowly cabined, minimally burdensome, and consistent with the dictates of Rule 1. *See* Fed. R. Civ. P. 1 (explaining that the federal rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and

inexpensive determination of every action and proceeding"). Plaintiffs seek discovery regarding the policies at issue in this case and documents referencing the named Plaintiff Mandala.[3] Should Plaintiffs successfully defeat NTT's motion, these documents will be relevant to all of Plaintiffs' claims. But even if NTT prevails, these documents would still be relevant to Plaintiff Mandala's NYHRL claim, which also challenges NTT's criminal history screening policy and practice. This discovery is no more burdensome than what would be expected as part of the normal civil discovery process. *See S.R.*, 2015 WL 12977103, at *1. Even so, NTT already should have collected and reviewed the information Plaintiffs seek as part of its initial investigation into the merits of Plaintiffs' claims.

**C. Plaintiffs Continue to Suffer Prejudice from the Delay in Discovery.**

Third, delay in discovery has already caused—and will continue to cause—significant prejudice to Plaintiffs. Plaintiffs filed their case approximately eight months ago. Without an order from the Court compelling NTT to participate in discovery, the prosecution of the case could be delayed for many more months given that NTT's Motion to Dismiss is not scheduled to be argued until June 27, 2019, and may not be decided until several months later. *See id.* at *1 (compelling Defendant to engage in Rule 26(f) conference where motion to dismiss had been filed less than two months earlier); *Escareno ex rel. A.E. v. Lundbeck, LLC*, No. 14 Civ. 257, 2014 WL 1976867, at *3 (N.D. Tex. May 15, 2014) (same).

During this delay, as Plaintiffs have alleged, NTT "continues to utilize a job applicant screening process that systemically eliminates qualified African American applicants based on their race, color or national origin in violation of Title VII." Compl. ¶ 2; *see also id.* ¶ 8. In

[3] While providing discovery as to Plaintiff Barnett, who was denied employment by NTT in Kentucky, arguably would not be necessary if only Plaintiff Mandala's NYHRL claim survived, producing his information would be minimally burdensome.

choosing to implement an overly broad and unnecessary criminal history screening policy, NTT ignores clear guidance from the EEOC regarding the appropriate use of criminal background checks in light of widely known research establishing the discriminatory and disproportionate targeting of African Americans in the criminal justice system. *See EEOC Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, at 9-10 (Apr. 25, 2012), https://www.eeoc.gov/laws/guidance/upload/arrest_conviction.pdf (explaining that national data showing blacks are arrested and convicted at higher rates than whites "supports a finding that criminal record exclusions have a disparate impact based on race and national origin"). NTT's policy also runs afoul of New York State law, which seeks to remove barriers to employment for individuals with criminal convictions. *See* N.Y. Correct. Law § 753(1)(a) (recognizing "[t]he public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses"). Each day that goes by, additional applicants, many of whom are potential class members, are injured.

Moreover, as time elapses, discovery may become more difficult for Plaintiffs: class members may become harder to locate, documents will be more likely to be damaged or destroyed, and witnesses' memories will fade. *See Williams v. Swack*, No. 13 Civ. 974, 2015 WL 2237216, at *3 (W.D.N.Y. May 12, 2015) (that witnesses' memories fade counsels against a stay); *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10 Civ. 1899, 2014 WL 1245053, at *3 (N.D. Ill. Mar. 26, 2014) (noting a stay could "increase[] difficulty in locating class members as time goes by"); *Cole-Hoover v. N.Y. Dep't of Corr. Servs.*, No. 02 Civ. 826, 2012 WL 13000661, at *4 (W.D.N.Y. Oct. 10, 2012) (denying adjournment where memories will fade and witnesses may become unavailable); *Moss*, 1990 WL 138531, at *1 (denying stay where plaintiffs argued it

would "possibly prejudice their ability to obtain relevant information");. This harm, which stems from delayed discovery, disproportionately impacts Plaintiffs because NTT is disproportionally in possession of relevant information. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (noting that the plaintiff often "may have very little discoverable information" but "other party may have vast amounts of information").

In contrast, NTT faces little prejudice from engaging in a Rule 26(f) conference now and providing cabined discovery over claims it will be required to face even if it entirely prevails on its motion. *See S.R.*, 2015 WL 12977103, at *1 (compelling Rule 26(f) conference where "[d]efendants have pointed to no special prejudice which they will suffer, other than the unavoidable cost and time expenditures inherent in engaging in a Rule 26(f) conference").

## IV. The Parties Should Engage in a Rule 26(f) Conference Now.

A prompt Rule 26(f) conference serves several important purposes. It allows the parties to better understand the "nature and basis of their claims and defenses"; it begins the discussion over if and when the parties should engage in settlement talks; and it focuses the parties on potential witnesses and sources of electronically stored information ("ESI"), and related preservation issues. *See* Fed. R. Civ. P. 26(f)(2)-(3). This conference "can be particularly important with regard to [ESI]" where "[t]he volume and dynamic nature of . . . [the] information may complicate preservation obligations" and the "[f]ailure to address preservation issues early in the litigation increases uncertainty and raises a risk of disputes." Fed. R. Civ. P. 26(f) advisory committee's note to 2006 amendment; *cf. Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988) ("Disruption or prolongation of the discovery schedule is normally in no one's interest. A stay of discovery duplicates costs because counsel must reacquaint themselves with the case once the stay is lifted. Matters of importance may be mislaid or avenues unexplored.").

Here, each of these goals supports engaging in the Rule 26(f) process *now.* Given the nature of modern communication, ESI likely will represent a significant portion of discovery in this case,[4] and it is vital that the parties take steps now to understand sources of ESI and ensure that relevant information be preserved. *See, e.g.*, Fed. R. Civ. P. 26(f) advisory committee's note to 2006 amendment ("The volume and dynamic nature of electronically stored information may complicate preservation obligations. The ordinary operation of computers involves both the automatic creation and the automatic deletion or overwriting of certain information.").

The Rule 26(f) process also will allow the parties to negotiate the proper scope of discovery at this stage, including Plaintiffs' proposal to limit pre-decision discovery to an exploration of Defendant's criminal background check policy and information regarding the named Plaintiffs – a process that Rule 26(f) specifically endorses. *See* Fed. R. Civ. P. 26(f)(3)(A) and (B) (noting that at Rule 26(f) conference the parties should discuss "whether discovery should be conducted in phases or be limited to or focused on particular issues"). As discussed *supra*, regardless of the resolution of its motion to dismiss, NTT will be obligated to produce the information Plaintiffs currently seek.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court compel NTT to comply with its discovery obligations by promptly conferring with Plaintiffs over the scope of discovery pursuant to Rule 26(f) and agreeing to a schedule for appropriately targeted discovery during the pendency of its Motion to Dismiss.

---

[4] In Counsel's experience, for example, negotiating an ESI stipulation can take months: starting the process now will have minimal burden but will save significant time later.

Dated: April 26, 2019
New York, New York

Respectfully submitted,

By: /s/ Ossai Miazad

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
Alexis J. Hoag
40 Rector Street, Fifth Floor
New York, NY
Telephone: (212) 965-2200