# Exhibit A



Advocates for Workplace Fairness

February 4, 2019

<u>**Via E-Mail and U.S. Mail**</u>
Jacqueline Phipps Polito
Jessica F. Pizzutelli
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Second Floor
Fairport, NY 14450
jpolito@littler.com
jpizzutelli@littler.com

Re:     *Mandala v. NTT DATA, Inc.*, No. 18 Civ. 6591 (W.D.N.Y.)

Dear Counsel:

    Along with this letter, please find Plaintiffs' First Set of Requests for the Production of Documents, First Set of Interrogatories, and proposed Stipulation and [Proposed] Order Concerning Production of Electronically Stored Information.

    Please let us know when you are available to confer over the planning of discovery. Plaintiffs are available Wednesday, February 6, 2019, or Thursday, February 7, 2019.

    As you know, the parties' Rule 26(f) conference must include discussion of the "preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3)(C). To this end Plaintiffs' ESI counsel will be present for our conferral, and we request that NTT also provide a person knowledgeable on these topics, so that the parties can begin to work cooperatively to identify (a) relevant sources of ESI,[1] (b) effective and proportional search processes, and (c) sufficient production formats, as applicable.

    Even while NTT's motion to dismiss is pending, the parties are still obligated to "confer as soon as practicable[.]" Fed. R. Civ. P. 26(f)(1). "The obligation to participate in the planning process is imposed on all parties that have appeared in the case, including defendants who, because of a pending Rule 12 motion, may not have yet filed an answer in the case." Fed. R. Civ. P. 26(f), advisory committee note to 1993 Amendment; *see Moss v. Hollis*, No. 90 Civ. 177, 1990 WL 138531, at *1 (D. Conn. June 29, 1990) ("Had the Federal Rules contemplated that a

---

[1]    While production format specifications are addressed in the proposed ESI protocol, Plaintiffs will work cooperatively with NTT to identify appropriate formats of production for any ESI that does not fit into prescribed formats—like structured data.

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
Chicago  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
San Francisco  One California Street  12th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
Washington DC  601 Massachusetts Ave NW  Suite 200W  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410
www.outtengolden.com

February 4, 2019
Page 2 of 3

motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, they would contain such a provision. Rather, Rule 1 provides that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of any action.'"); *Howard v. Galesi*, 107 F.R.D. 348, 350-51 (S.D.N.Y. 1985) (rejecting argument that court should "preclude discovery until a valid complaint has been pleaded").[2]

## I.    NTT Must Identify Sources of ESI.

In advance of the parties' meet and confer, we ask that NTT be prepared to discuss the following sources of ESI (both the systems used and how they are maintained—backed up, searched, preserved via litigation hold, *etc.*): (1) e-mail; (2) instant messaging; (3) mobile devices; (4) databases; and (5) internal portals or wiki sites. This will allow the parties to identify sources of ESI that are likely to contain relevant data and files *now*, which will help minimize costs and attorney time later.

## II.    NTT's Search Process Must be Validated.

We also ask that NTT be prepared to discuss methods for validating its search process. Here, Plaintiffs' goal is to establish an ESI search process that is efficient, effective *and* proportional. Thus, Plaintiffs are agnostic as to *what* process NTT chooses to use (consistent with industry standards), so long as NTT provides Plaintiffs with information sufficient to ensure the chosen process is validated as effective.[3]

Nonetheless, if NTT chooses to employ search terms, we request seven basic data points to help assess the underlying metrics of a search. This information is routinely provided, necessary for validation, and will not increase NTT's burden:

1.    Total document universe searched;
2.    Total number of documents with any hit;
3.    Total number of documents with any hit including families;
4.    Total number of documents with hits for each search term;
5.    Total number of documents with hits for each search term including families;
6.    Unique number of documents with hits for each search term (*i.e.* hit on a

---

[2]    *See also, e.g.*, *S.R. Kenton Cnty. Sheriff's Office*, No. 15 Civ. 143, 2015 WL 12977103, at *1-2 (E.D. Ky. Nov. 3, 2015) (granting motion to compel Rule 26(f) conference); *Escareno ex rel. A.E. v. Lundbeck, LLC*, No. 14 Civ. 257, 2014 WL 1976867, at *2 (N.D. Tex. May 15, 2014) (explaining that a stay to discovery pending resolution of a motion to dismiss is "the exception rather than the rule" and ordering Rule 26(f) conference (citation omitted)); *CytoSport, Inc. v. Nature's Best, Inc.*, No. 06 Civ. 1799, 2007 WL 1040993, at *3 (E.D. Cal. Apr. 4, 2007) (explaining that a party has "no right to withhold discovery responses solely because a motion to dismiss is pending" (citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005))).

[3]    Plaintiffs are amenable to participating in the creation of a search process (*e.g.* search terms or technology assisted review (TAR)), should NTT find it helpful.

February 4, 2019
Page 3 of 3

        given term and no other terms); and

7.      Unique family count per search term (*i.e.* when a family has a hit for only one term and no others).

      Regardless of the search process NTT uses, Plaintiffs also require a final recall metric to ensure the effectiveness and validity of the search process chosen.  Recall—the percentage of relevant documents identified by a search process—can easily be measured using null set sampling.  *See City of Rockford v. Mallinckrodt ARD Inc.*, No. 17 Civ. 50107, 2018 WL 3766673, at *4 (N.D. Ill., Aug. 7, 2018) (citing Karl Schieneman & Thomas C. Gricks III, *The Implications of Rule 26(g) on the Use of Technology-Assisted Review*, 2013 Fed. Cts. L. Rev. 239, 273 (2013)).  In turn, null set sampling can ensure effectiveness, thereby meeting the requirements under Federal Rule of Civil Procedure 26(g) for a producing party, while limiting added burden and promoting proportionality.

*    *    *

      Please let us know as soon as possible your availability to confer over these topics, or whether NTT is refusing to engage in the discovery process so that, if so, we can seek expeditious review by the Court.

           Very Truly Yours,

           Christopher M. McNerney

cc:    Counsel of record (via e-mail)

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated, | Case No. 18 Civ. 6591 (CJS) |
| Plaintiffs, | |
| v. | |
| NTT DATA, INC., | |
| Defendant. | |

**STIPULATION AND [PROPOSED] ORDER
CONCERNING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION**

WHEREAS, counsel for Plaintiffs George Mandala and Charles Barnett ("Plaintiffs") and Defendant NTT DATA, Inc. ("Defendant") (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulation and [Proposed] Order Concerning Production of Electronically Stored Information ("Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

IT IS HEREBY ORDERED that:

1.    All Parties are bound by and subject to the terms of this Order.

2.    <u>Definitions</u>.

        a.        "Discovery Material" is defined as all products of discovery and all information derived there from, including, but not limited to, documents, objects and things, deposition testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

  b. Plaintiffs and Defendant, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

  c. "Plaintiffs" as used herein shall mean George Mandala and Charles Barnett, as well as any other individually named plaintiff in this case or in any case that is consolidated with this matter and any other putative class member.

  3. <u>Cooperation</u>. The Parties shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(1); and producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.

  4. <u>Search Methodology</u>.

  a. The Parties expect to employ one or more search methodologies, including possibly but without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI. The Parties will meet and confer and attempt in good faith to reach agreement regarding:

    i. the method of searching and, if applicable, the words, terms, and phrases to be searched; and

    ii. the custodians and non-custodial sources from whom ESI will be collected and searched.

  b. Parties will validate search methodologies employed by measuring and data points, such as search term hits, elusion, to ensure adequacy and proportionality, and share those results.

  c. Non-searchable files, such as non-searchable PDFs, corrupt, or encrypted files must be identified and assessed independently from any search term or text-based search protocol.

  5. <u>Deduplication</u>. The Parties shall make reasonable efforts to deduplicate ESI. ESI shall be deduplicated horizontally across custodians. ESI will be considered duplicative if it has the same content including metadata. For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians, even if different instances of the file reflect different dates created.

  6. <u>Email Threading</u>. In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression." As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced

string.  For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

     7.    <u>Privilege Logs And Redaction</u>.  If utilizing email threading, an email thread for which a party claims a privilege may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread.  The Parties agree that the following documents need not be included on a privilege log:

     a.    Communications between the parties and counsel (including internal communications within a law firm or a legal department of a corporation) on and after the filing of this lawsuit and before the lawsuit in anticipation of litigation regarding the litigation or litigation strategy.

     b.    Work product created by or for trial counsel in this matter after commencement of this action.

     8.    <u>Production Format For ESI</u>.

     a.    <u>General Provisions</u>.  Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.  All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI.  Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

     b.    <u>Document Text</u>.  All unredacted documents should be provided with complete document-level extracted text files.  In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents.  The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files.  These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files. A UNC file path must be included in the ESI load file.

     c.    <u>Parent-Child Relationships</u>.  For email collections, the parent-child relationships (the association between emails and attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

d.    <u>Dynamic Fields</u>.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

e.    <u>Non-redacted Word Processing Files</u>.  All word processing files, including without limitation Microsoft Word files, that do not require redactions, will be produced in native file format showing comments and track changes, and as *.tiff images showing track changes and comments. A UNC file path must be included in the ESI load file.

f.    <u>Non-redacted Spreadsheet Files</u>.  Spreadsheet files, including without limitation Microsoft Excel files, that do not require redactions will be produced as native files showing comments and similar data.  A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file.  To the extent Parties prefer native file redaction of Spreadsheet File, the Parties will meet and confer to discuss the form of production.

g.    <u>Presentation Files</u>.  Presentation files, including without limitation Microsoft PowerPoint files, will be produced as native files showing comments, hidden slides, speakers' notes, and similar data.  A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. The Parties will meet and confer regarding production of presentation files with alternate default settings.

h.    <u>Database Records and Structured Data</u>.  To the extent that any Party requests information that is stored in a database or database management system, including but not limited to records of Plaintiffs' contact information, work telephone records, and/or log-in/log-out records, the producing Party will identify the database and platform to the receiving party, and will meet and confer in good faith in an attempt to reach agreement on the data to be produced and the form of the production.  The producing Party will provide information about the database to facilitate that discussion, including the fields, data types, and rules contained within the database.  The producing Party will also provide upon request, insofar as it is helpful to a discussion of responsive data, information regarding:

i.    The reporting capabilities and enhanced reporting capabilities of the database;

ii.    The size of the database and its content;

iii.    The query language that may be used to search the database;

iv.    The database's physical schema, including the software and hardware on which it is stored and administered;

4

> v. The database's logical schema, including its tables, structures, attributes, fields, relationships, joins, and views, and including any entity relationship model
>
> vi. Any available data dictionary describing the content of the data fields;
>
> vii. Any available system catalog containing metadata associated with the database.

Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party, containing fields and reference points requested by producing Party. To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

i. <u>Embedded Files</u>. Embedded files are produced as independent document records. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

j. <u>Time Zone</u>. Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with Concordance and Summation formats, below.

k. <u>Bates Numbering</u>. Files will be named according to the Bates number of the corresponding *.tiff image. The Bates number will:

> i. be consistent across the production;
>
> ii. contain no special characters; and
>
> iii. be numerically sequential within a given document.

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

l.      <u>Load File Formats</u>.  ESI will be produced in standard Concordance load file format and an image file that is in .OPT format.

m.      <u>Metadata to be Produced</u>.  Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.  All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email **and** attachment |
| **ENDDOC** | Ending bates | Hardcopy, edoc, email **and** attachment |
| **CUSTODIAN** | Custodial **or** non-custodial source(s) from which the **document** was collected | Hardcopy (if coded), edoc, email **and** attachment (populated through processing) |
| **ALL CUSTODIANS** | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email **and** attachment (populated through processing) |
| **FAMILYIDOR ATTACHID** | Family (Range of bates related **documents** (i.e email & attachment) - this field will be populated for **all** records in the family), and will distinguish parent documents from attachments. | Hard copy, edoc, emails **and** attachments (populated through processing) |
| **PRPERTIES OR RCRDTYPE** | Record type – will be either "email," "attachment," "edoc," **or** "hardcopy." | |
| **FROM** | Email Author | Emails (populated through processing) |
| **TO** | Recipient | Emails (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **CC** | CC field - In the event of emails | Emails (populated through processing) |
| **BCC** | Bcc field - in the event of emails | Emails (populated through processing) |
| **DOCTITLE** | **Document** Title/name/subject of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc (including email) **or** attachment (populated through processing) |
| **DOCDATE** | **Document** Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email **and** Attachments |
| **DATESENT** | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| **TIMESENT** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **TIMESVD** | Time saved, format 00:00:00 AM/PM | (populated through processing) |
| **PAGECOUNT** | **Document** page count | Edoc **or** attachment (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, Powerpoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files **and/or** emails, attachments (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **FOLDERID OR ORIGFOLDERPATH OR FILEPATH** | File path/folder structure of original native file as it existed at the time of collection.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) | Electronic files **and/or** emails, attachments (populated through processing) |
| **ALL FILEPATHS** | File path/folder structure of original native file as it existed at the time of collection but subsequently removed as a duplicate.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) when duplicate copies were suppressed during processing. | Electronic files **and/or** emails, attachments (populated through processing) |
| **DOCLINK or NATIVEFILE** | Active link reflecting current filepath back to the native file | Electronic files **and/or** emails, attachments (populated through processing **and only provided if receiving native files**.) |
| **FILEEXTEN** | In the event of attachments **or** emails, this will enable us to search by **document** type.  Sample contents: *PST*, *MSG*, *PDF*, *DOC*, *PPT*, *HTM*, etc. | Electronic files **and/or** emails, attachments (populated through processing) |
| **FILESIZE** | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing). |
| **AUTHOR** | In the event of attachments, this field contains the 'author' of the **document** | For Hard Copy **documents** (if coded) **or** electronic files **and/or** attachments (populated through processing) |

8

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| HASH | MD5 Hash value for de-dupe | Electronic files **and/or** attachments (populated through processing) |

9.    Production Format for Hard Copy Documents.  Hard copy documents will be scanned and processed as .tiff images with OCR.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

10.    Encryption.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

11.    Fed. R. Evidence 502(d) Order.  Pursuant to Federal Rule of Evidence 502(d), the Court orders that a producing party's attorney-client privilege and work product protection is not waived by disclosure of the materials to the opposing side if the disclosure is unintentional.  A producing party which seeks the return of documents under this section may request the return of documents which should have been withheld on the basis of the attorney-client and/or work product protection.  Upon receipt of such a request for return, the party to whom the documents were produced must segregate the documents and return them or seek, within thirty (30) days, a determination by the Court regarding whether the documents must be returned.

12.    Costs.  The Parties agree each party shall bear the cost of its own production.  In the event, however, a Party requests the production of cumulative or repetitive information or information that otherwise imposes an undue burden, or is from a source that is not reasonably accessible due to undue burden or cost, the producing Party may object.  Upon objection, the Parties shall work in good faith to resolve the issue, for instance by producing samples or summaries of such documents.  In the event the parties are unable to resolve their differences, the parties may proceed consistent with the Federal Rules of Civil Procedure, including Rule 26(b)(2), and any applicable Local Rules.

OUTTEN & GOLDEN LLP                           LITTLER MENDELSON, P.C.


By: _____        By: _____


*Attorneys for Plaintiffs*                         *Attorneys for Defendant*

9

SO ORDERED:

_____          Date: _____
Hon. Charles J. Siragusa

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE &**
**EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
Alexis J. Hoag
40 Rector St., 5th Floor
New York, NY 10006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,<br><br>                                     Plaintiffs,<br><br>        v.<br><br>NTT DATA, INC.,<br><br>                                     Defendant. | Case No. 18 Civ. 6591 (CJS)<br><br>**PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure and the Local Rules of the Western District of New York, Plaintiffs, by their

attorneys, Outten & Golden LLP and the NAACP Legal Defense & Educational Fund, Inc.,

propound the following interrogatories to be answered by Defendant NTT Data, Inc.

("Defendant" or "NTT"). The information provided in response to these interrogatories must be

given under oath whether it is secured by you, your agent, servant, representative or attorney, or

any other person who has made this information known to you or from whom you can obtain this

information and who is competent to testify as to the facts stated, within thirty (30) days of

service of this request. A response to one interrogatory or part of an interrogatory may be

incorporated by reference into a response to another interrogatory or parts thereof.

If the answer to any interrogatory is contained in a record, document, computer disk, or

any other written or recorded material, Plaintiff requests that, pursuant to Federal Rule of Civil Procedure 34, each such document, record, computer disk or other written or recorded material be attached to the answers to these interrogatories or be made available for inspection and copying within thirty days after service hereof. Defendant's responses to these requests are to be directed to Plaintiffs' counsel at the offices of Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York, New York, 10017 and the NAACP Legal Defense & Educational Fund, Inc., 40 Rector Street, Fifth Floor, New York, NY 10006, or at such other place as is agreed by counsel.

## INSTRUCTIONS

1.      In answering these interrogatories, Defendant must furnish all requested information, not subject to a valid objection, that is known by, possessed by, or available to Defendant, Defendant's Counsel, or any consultants, representatives, agents or others acting on behalf of Defendant.

2.      If Defendant is unable to answer fully any of these Interrogatories, Defendant must answer them to the fullest extent possible, specifying the reason(s) for Defendant's inability to answer the remainder and stating whatever information, knowledge, or belief Defendant has concerning the unanswerable portion. An evasive or incomplete answer may be deemed to be a failure to answer, and may render Defendant and Defendant's Counsel liable for the expenses of a motion to compel a responsible and complete answer, including reasonable attorneys' fees.

3.      Defendant must object separately to each subpart, and if Defendant objects to less than all the subparts of a numbered interrogatory, then Defendant must answer the remaining subparts. In addition, if Defendant objects to an interrogatory or a subpart thereof as calling for information which is beyond the scope of discovery, Defendant must, nevertheless, answer the interrogatory or subpart thereof to the extent that it is not objectionable.

4.      For each interrogatory and subpart of each interrogatory, if the information furnished in Defendant's answer is not within Defendant's knowledge, identify each person to whom the information is a matter of knowledge, if known.

5.      Defendant must continue to supplement each interrogatory response once the information, document(s), and/or data responsive to each interrogatory request becomes available, and even after the close of the discovery period in this case.

6.      If an answer or document is withheld based on a claim or privilege or other protection, for each such answer or document: (1) identify the privilege and the factual basis for the claim in sufficient detail so as to permit an adjudication of the validity of the claim; (2) if a document, identify it by its general subject matter, its date, its author and its addressee; and (3) provide any other information as required by L. R. Civ. P. 26(d).

7.      If you respond to any of these Interrogatories by producing documents, the instructions contained in Plaintiffs' First Set of Requests for the Production of Documents served in this lawsuit shall apply.

8.      Plaintiffs' First Set of Interrogatories is continuing in nature and requires a continuing duty to promptly supplement your responses with any information that becomes available to you at any time up to the conclusion of the proceedings herein

## **DEFINITIONS**

1.      The definitions provided in Plaintiffs' First Set of Requests for the Production of Documents also apply here.

2.      "Describe" when used in reference to a factual situation means to state with particularity and in detail all facts connected with, bearing upon, or relating in any way to matters

contained in these interrogatories. Any description provided must include sufficient information to allow Plaintiff to conduct all appropriate discovery to the matter described.

3.  "Describe" when used in reference to a written or oral communication means to state in detail (1) the type of document or other communication; (2) the date made; (3) the persons involved in the communication; (4) the present location of the document or other recorded evidence of the communication; and (5) the subject matter of the document or other communication, including factual setting in which made, substantive content, and purpose of communication. Any description you provide must include sufficient information to allow Plaintiff to conduct all appropriate discovery to the matter described.

4.  "Identify" (or "state the identity of") with respect to persons means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subsubsection, only the person's name need be listed in response to subsequent discovery requesting the identification of that person.

5.  "Identify" (or "state the identity of") with respect to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipients(s).

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify each person with knowledge of the facts surrounding the allegations set forth in Plaintiffs' Complaint and identify the documents supporting, contradicting, or otherwise pertaining to the allegations set forth in Plaintiffs' Complaint.

**INTERROGATORY NO. 2:**

Identify each **consumer reporting agency** with whom Defendant has contracted, the dates of that relationship, and the persons with whom Defendant has been in contact with at that **consumer reporting agency**.

## INTERROGATORY NO. 3:

Identify each of Defendants' policies that apply to Defendants' evaluation of applicants' criminal history information, and the date of its implementation. If the policies changed during the relevant period, please detail the date and nature of the changes and identify the person(s) who proposed and approved the changes.

## INTERROGATORY NO. 4:

Identify each person involved in the drafting, creation, revision, modification, implementation, review, or approval of Defendants' policies and practices regarding evaluation of applicants' criminal history information, including their name, job title, description and department/division, formal employer, work performed, and location of employment.

## INTERROGATORY NO. 5:

Identify every person involved in reviewing and/or evaluating applicants' job applications, **consumer reports,** or other criminal history information (other than in defense of the litigation in this case). Include their name, job title, description and department/division, formal employer, work performed, and location of employment. This includes, and is not limited to, both persons employed by you and other **consumer reporting agencies**.

## INTERROGATORY NO. 6:

During the relevant period, identify every person who communicated with Plaintiffs and potential class members, and/or any third party communicating on behalf of Plaintiffs and putative Class Members, regarding Plaintiffs' and putative Class Members applications and/or **consumer**

**reports**, and for each such person identified, state their job title and job description and the subject, nature and content of the communications.

## INTERROGATORY NO. 7:

During the relevant period, identify in detail your procedure for hiring or screening or rejecting job applicants, including procedures regarding:

    a.  the employment application;

    b.  the applicant's criminal history information;

    c.  communications you receive relating to an applicant's eligibility for employment based in whole or in part on the applicant's criminal history information;

    d.  written notices to the applicant as to Defendant's evaluation of an applicant's criminal history information;

    e.  all paperwork or documentation exchanged between you and the applicant from the beginning of the process until the applicant is either hired, rejected for employment, or the process otherwise ends; and

    f.  interviewing applicants, whether in person, via telephone, via email, or through any other medium, including but not limited to an online application or survey.

If the procedures changed during the relevant period, please detail the date and nature of the changes and identify the person(s) who proposed and approved the changes.

## INTERROGATORY NO. 8:

Identify all experts and non-experts known to Defendant who have knowledge of facts relevant to this case, and state the subject of testimony or knowledge, giving a brief description thereof, and identify all documents received from or communicated to such person by Defendant regarding Plaintiffs and putative Class Members, or the subject matter of this case. If Defendant

intends to qualify any of these persons as experts, please so indicate, giving their areas of expertise and their credentials as experts.

**INTERROGATORY NO. 9:**

      Identify each individual applicant to NTT during the relevant period, with a separate entry for each application for employment by an applicant, including:

    a. Full name (first, last, middle name or initial, and suffix, if available) and last four digits of social security number;

    b. Date of application;

    c. Position(s) applied;

    d. Whether and when a conditional offer was made;

    e. Salary information for each conditional offer made;

    f. Whether criminal history information was self-disclosed and, if so, what information was self-disclosed;

    g. All criminal history information reported on the **CRA's consumer report**;

    h. Date when Defendant requested a **consumer report** from the **CRA**, name of the **CRA**, date by when the **CRA** completed a review of criminal history information, and date when that information was transmitted to Defendant;

    i. Whether applicant was hired or denied employment, date of decision, and (in the case of a denial) the stated reason for the denial or (in the case of a hiring) the position for which the applicant was hired;

    j. Whether and when Defendant sent pre-adverse action and adverse action notifications;

k.  Whether Defendant sought and/or received any information from the applicant regarding criminal history information, including but not limited to the time elapsed since the occurrence of the criminal offense(s), the seriousness of the offense(s), the relation of the offense(s) to the job applied to, or evidence of good conduct or rehabilitation.

l.  Contact information possessed by Defendant including known home addresses (street name and number, county, city, state and zip code), e-mail addresses and telephone numbers; and

m.  Race, ethnicity, national origin, and gender.

**INTERROGATORY NO. 10:**

Identify all structured data sources and reports containing or capable of showing the information requested in Interrogatory 9.

**INTERROGATORY NO. 11:**

Identify and describe all efforts by you to comply with laws governing the use of criminal history information including but not limited to Title VII of the Civil Rights Act of 1964, the NYHRL, N.Y. Exec. Law § 296(15), and/or Article 23-A of the Correction Law, N.Y. Correct. Law § 752, and the NY FCRA, N.Y. Gen. Bus. Law § 380-g(d), during the relevant period, including, but not limited to, training that you provided to your employees, internal audits, and audits by outside companies or individuals, and identify all communications and other documents regarding same.

**INTERROGATORY NO. 12:**

Identify every review, audit, survey, study, report, data, or literature upon which Defendant relies or relied in developing each of Defendants' policies that apply to Defendants' evaluation of applicants' criminal history information.

**INTERROGATORY NO. 13:**

Identify each person who assisted in the preparation of responses to these Interrogatories, or Plaintiffs' document requests, including each person who supplied information in responding to these Interrogatories or Plaintiffs' document requests.

**INTERROGATORY NO. 14:**

Identify all devices and/or computer programs or software that Defendant uses to record or maintain information about applicants, including, but not limited to, personnel files, application materials, **consumer reports**, conviction histories and/or records, and identify the type of information that each such device and/or computer program records or maintains.

**INTERROGATORY NO. 15:**

Identify any Class Members with whom Defendant has communicated about the litigation, Plaintiffs' claims, and/or its defenses.

**INTERROGATORY NO. 16:**

Identify any Class Members with whom Defendant has entered into an agreement to release, settle, or compromise any employment-related claims on a class basis.

**INTERROGATORY NO. 17:**

Identify each person with knowledge of any Affirmative Defenses that Defendant has

identified through its answer(s), when filed.

Dated:  February 4, 2019

Respectfully submitted,

By: _____

Ossai Miazad
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 245-1000
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork

**NAACP LEGAL DEFENSE & EDUCATIONAL
FUND, INC.**
Rachel M. Kleinman
Alexis J. Hoag
40 Rector St., 5th Floor
New York, NY 10006

*Attorneys for Plaintiffs and proposed Class Members*

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
Alexis J. Hoag
40 Rector St.
New York, NY 10006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>NTT DATA, INC.,<br><br>    Defendant. | Case No. 18 Civ. 6591 (CJS)<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure and the Local Rules of the Western District of New York, Plaintiffs, by their attorneys,

Outten & Golden LLP and the NAACP Legal Defense & Educational Fund, Inc., propound the

following document requests.  Defendant NTT Data, Inc. ("Defendant" or "NTT") must serve a

written response to these requests and produce the documents and electronically-stored

information described below for inspection and copying within thirty (30) days of the date of

these requests at the offices of Outten & Golden LLP, 685 Third Avenue, 25th Floor, New York,

New York, 10017, and the NAACP Legal Defense & Educational Fund, Inc., 40 Rector Street,

New York, NY 10006, or at such other place as is agreed by counsel.

In responding to these document requests, Defendant is requested to furnish all

information, including hearsay, in possession of Defendant's attorneys, agents, investigators,

employees, independent contractors, and all other persons acting on behalf of Defendant, and not merely information known by personal knowledge of the person answering these document requests. Documents produced in response to one request or a part thereof may be designated by reference as responsive to another request.

## **DEFINITIONS**

1.      "Plaintiffs" refers to the Plaintiffs named in the Class Action Complaint ("Complaint") and any subsequent versions of the Complaint.

2.      "Class Members" refer to all individuals who collectively fall within the class definitions of the "Title VII Disparate Impact Class," the "NY Criminal History Discrimination Class," and the "NY FCRA Class" as stated in the Complaint.

3.      "Defendant," "You", "Your", or "NTT" refers to NTT Data, Inc., its subsidiaries, officers, directors, employees, partners, corporate parent, subsidiaries or affiliates, AND any other persons acting for it OR on its behalf.

4.      "All," "each," and "every" shall be construed as inclusive or exclusive, as necessary to afford the widest possible scope of inquiry to the discovery request containing such terms.

5.      "And/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

6.      "Applicant" means any person who applied for any position with Defendant during the relevant period, as defined hereinafter.

7.      "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8.    "Concern" or "concerning" mean relating to, referring to, describing, evidencing or constituting.

9.    "CRA" means a consumer reporting agency, as defined in the NY FCRA, N.Y. Gen. Bus. Law § 380-g(d).

10.    "Criminal history information" means any information set forth or contemplated in the NY FCRA, including "criminal conviction information" as set forth in N.Y. Gen. Bus. Law § 380-g(d), the NYHRL, N.Y. Exec. Law § 296(15), and/or Article 23-A of the Correction Law, N.Y. Correct. Law § 752.

11.    "Document" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, electronic or computerized data compilations, or electronically-stored information ("ESI"), as further defined hereinafter.

12.    "Electronically stored information" or "ESI" means any file, record or document that isor has been stored in electronic form on a server, tape, other electronic media such as an internal or external hard drive or any media whereby the document can be saved and be available for retrieval using any retrieval device, including a computer or server.

13.    Pursuant to Federal Rule of Civil Procedure 34, "electronic information" subject to disclosure includes information stored "in any medium." Such media include, but are not limited to:

     a.    Active, online storage locations, such as servers and local hard drives;

     b.    Near-line storage locations, such as optical disks;

     c.    Offline storage locations and archives, such as removable optical disks and magnetic tape media;

d.      Back-up tapes;

e.      Floppy disks, diskettes, CDs, zip discs, jazz discs, zip drive, flash memory, DVDs, videotapes, audiotapes, Personal Digital Assistant ("PDA"), memory cards, mobile devices; and

f.      Any other medium, including but not limited to third-party Electronic Communications Service and Remote Computing Service providers, such as wireless mobile phone and data service providers, online electronic mail providers (e.g., Gmail, Hotmail or Facebook); and any website hosting providers (e.g., Typad).

14.     The "litigation" means the present lawsuit, titled, *Mandala, et al. v. NTT Data, Inc.*, No. 18 Civ. 6591 (CJS) (W.D.N.Y.).

15.     "Person(s)" means is defined as any natural person or any business, legal or governmental entity, or association.

16.     "Present" is intended to be an ongoing term.  To the extent additional documents become available after the date on which these requests are served, requests referring to the "present" cover those documents.

17.     "Policy" or "Policies" mean each rule, procedure, or directive, formal or informal, written or unwritten, and each common understanding or course of conduct that was recognized as such by Defendant or persons acting or purporting to act on Defendant's behalf, that has been in effect at any time during the period covered by these demands.  These terms include any change of policy.

18.     "Refers to" and "relates to" mean evidencing, constituting, reflecting, showing, comprising, including, containing, describing, considering, discussing, regarding, setting forth, studying, analyzing, commenting upon, recommending, alluding to, or mentioning, in whole or

in part.

19.    "Relevant period" means the class periods defined in the Complaint.

20.    The terms "showing" or "to show" mean depicting, displaying, demonstrating, exhibiting, reporting, presenting, and/or setting forth, and shall be construed to afford the widest possible scope of inquiry to the discovery request containing such term.

21.    "State" means to declare, articulate, resolve, identify and/or describe.

22.    "Statement" shall have the same definition as set forth in Rule 26 of the Federal Rules of Civil Procedure and includes, but is not limited to, a written statement or signed or otherwise adopted or approved by the person making it, and/or a stenographic, mechanical, electrical and/or other recording or transcription thereof, which is substantially a verbatim recital of an oral statement by the person making it.

23.    All terms in **bold** have the same meaning as they do in the NY FCRA, N.Y. Gen. Bus. Law § 380-a.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to, and are incorporated into, all Definitions, Requests, and Instructions:

1.    All requests pertain to the entirety of the relevant period, and should be updated regularly.

2.    With respect to each document produced, Plaintiffs requests that Defendant specify the Request(s) to which the document is responsive.

3.    Pursuant to Fed. R. Civ. P. 34, each document shall be produced as it is kept in the usual course of business and shall be organized and labeled with the categories in these requests.

4.      Defendant is under a duty to preserve documents and ESI related to this matter. Accordingly, Plaintiffs expect that Defendant and its counsel will prevent the destruction or alteration of any documents requested herein by the operation of any electronic information system (routine or otherwise) and hereby put Defendant on notice that any destruction or alteration of such documents, or any action that makes such documents more difficult or expensive to access and use, without completing a meet and confer process with Plaintiffs' counsel regarding such action, will not be considered to be in "good faith," as contemplated in Fed. R. Civ. P. 37(f).  If Defendant does not believe that they can reasonably comply with this instruction, Plaintiffs request that Defendant contact Plaintiffs, in writing, within 10 days from receipt of these Requests, to meet and confer about whether immediate Court intervention is necessary.

5.      Unless otherwise indicated, Plaintiffs request that Defendant produce responsive documents as follows:

a.      Document deliverables should be provided via secure file transfer.  Should the file volume eclipse what is reasonably transferred in this manner, files should be provided on DVD, CD or external hard drive as needed.

b.      Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

c.      Paper documents should be scanned and processed to TIFF files.  If a document is available to Defendant both in paper and electronic form, Plaintiffs request that Defendant produce the requested document in electronic form, as described herein.

d.      Pursuant to Federal Rule of Civil Procedure 34(b)(1)(C), Plaintiffs may specify the form or forms in which ESI is to be produced.  Plaintiffs request that ESI be produced according to the instructions contained in <u>Attachment A</u>.

e.      A cover letter or fact sheet should be included describing in as much detail as practicable the contents of the collection.

f.      All productions should be produced as they are ordinarily maintained, for example, organized by custodian or sources.

6.      With respect to each request, Defendant is requested to provide all documents in Defendant's possession, custody, or control that are known to Defendant or that Defendant can locate or discover through reasonably diligent efforts.

7.      If Defendant cannot respond or produce documents in response to any part of the following Requests in full, please respond to the extent possible, specifying the reason or reasons for Defendant's inability to respond or produce documents in response to the remainder of the Requests.

8.      If, to Defendant's knowledge, documents responsive to one or more requests were never in Defendant's possession, custody, or control but are or have been in the possession, custody, or control of any other person, please identify all such persons.

9.      If any responsive document was formerly in Defendant's possession, custody, or control, but has been eliminated from Defendant's possession in any way, including, but not limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

a.      The basis for withholding such document;

b.      A generic description of the document being withheld;

c.    The date the information contained in the document was learned or the document created;

d.    The identity of the individual(s) who learned the information or authored the document;

e.    The date the document was transmitted or otherwise made available to anyone; and

f.    The specific Request(s) to which the withheld document relates.

10.    If requested documents are maintained in a file, folder, or other container, please produce the file, folder, or other container, or a complete copy of same, with the documents.  For ESI that originates in a digital folder structure, please produce the folder names and relationships as metadata.

11.    The scope of your search for ESI shall include all forms of ESI collection, preservation, transmission, communication and storage, including:

a.    All ESI generated and maintained in the ordinary course of business, including ESI stored on mainframe computers or local and network computers or drives or servers or any other media or location where ESI can be or is stored;

b.    Distributed data or removable data, i.e., information which resides on portable media and non-local drives, including home computers, laptop computers, magnetic or floppy discs, CD-ROMs, DVDs, zip drives, Internet repositories including emailed host by Internet service providers, handheld storage devices such as PDAs, BlackBerry devices, cellular telephones, and flash memory drives;

c.    Forensic copy or backup ESI, including archive and backup data;

d.    Network ESI, including voice mail systems, email servers, ISP servers, network servers, cloud servers and fax servers;

e.      Legacy ESI, i.e., retained data that has been created or stored by the use of software or hardware that has been rendered outmoded or obsolete;

f.      Metadata, i.e., information regarding a particular data set which describes how, when and by whom it was collected, created, accessed and modified and how it is formatted.

12.    If Defendant objects to any of the definitions or instructions herein, please state such objection(s) in each response and indicate whether Defendant is complying with the definition or instruction in spite of the objection.  If the objection goes to only part of a request, please produce all documents which do not fall within the scope of the objection.

13.    In accordance with Fed. R. Civ. P. 26(b)(5), if any information or document responsive to these requests is withheld pursuant to a claim of attorney-client privilege, work product protection, or any other common law or statutory privilege or protection, please specify the following, and please otherwise comply with L. Civ. R. 26(d):

a.      the basis for withholding such information or document;

b.      a generic description of the nature of the information or document being withheld in a manner that will enable Plaintiffs to assess the claim of privilege;

c.      the date the information was learned or the document created;

d.      the identity of the person(s) who learned the information or authored the document;

e.      the date the information or document was transmitted or otherwise made available to anyone; and

f.      the specific discovery request(s) to which the withheld information or document relates.

14.     Unless otherwise indicated in writing, the failure to produce any documents in response to any request herein means that such documents do not exist, or are not in Defendant's possession, custody, or control, or the possession, custody, or control of Defendant's agents or anybody acting on Defendant's behalf.

## DOCUMENT REQUESTS

### Plaintiffs' and Putative Class Members' Information

#### REQUEST NO. 1:

An unredacted computer-readable document containing the following information about each individual applicant to NTT during the relevant period, with a separate entry for each application for employment by an applicant:

a. Full name (first, last, middle name or initial, and suffix, if available) and last four digits of social security number;

b. Date of application;

c. Position(s) applied;

d. Whether and when a conditional offer was made;

e. Salary information for each conditional offer made;

f. Whether criminal history information was self-disclosed and, if so, what information was self-disclosed;

g. All criminal history information reported on the **CRA's consumer report**;

h. Date when Defendant requested a **consumer report** from the **CRA**, name of the **CRA**, date by when the **CRA** completed a review of criminal history information, and date when that information was transmitted to Defendant;

i.   Whether applicant was hired or denied employment, date of decision, and (in the case of a denial) the stated reason for the denial or (in the case of a hiring) the position for which the applicant was hired;

j.   Whether and when Defendant sent pre-adverse action and adverse action letters;

k.   Contact information possessed by Defendant including known home addresses (street name and number, county, city, state and zip code), e-mail addresses and telephone numbers; and

l.   Race, ethnicity, national origin, and gender.

This request includes the production or disclosure of all codes used in the designation of any of the information identified above.  To the extent any of this information is in the possession of a CRA, identify the CRA and the information in its possession.

**REQUEST NO. 2:**

Each version of all job applications used by Defendant in the last ten years, including all documents provided to applicants to evaluate their criminal history information.

**REQUEST NO. 3:**

Each version of all job postings or job advertisements used by Defendant or by recruiters or agents of Defendant in the last ten years, including all documents concerning potential applicants' criminal history information.

**REQUEST NO. 4:**

All drafts and revisions of documents responsive to Request No. 3.

**REQUEST NO. 5:**

Each version of NTT's complete policies and practices for evaluating applicants' criminal history information in the last ten years.

**REQUEST NO. 6:**

All drafts and revisions of documents responsive to request No. 5.

**REQUEST NO. 7:**

Any other types of documents reflecting Defendant's policies and practices for evaluating applicants' criminal history information in the last ten years including, but not limited to policies, procedures, manuals, handbooks, instructions, guidance or other documents.

**REQUEST NO. 8:**

All drafts and revisions of documents responsive to request No. 7.

**REQUEST NO. 9:**

Any other types of documents reflecting reviews, audits, surveys, studies, reports, data, or literature upon which Defendant relies or relied in developing each of Defendants' policies that apply to Defendants' evaluation of applicants' criminal history information.

**REQUEST NO. 10:**

All drafts and revisions of documents responsive to request No. 9.

**REQUEST NO. 11:**

Each version of Defendant's pre- and post-adverse action letters (however titled) in the last ten years.

**REQUEST NO. 12:**

All drafts and revisions of documents responsive to request No. 11.

**REQUEST NO. 13:**

All documents reflecting Defendant's alleged compliance with the requirements of the NY FCRA, N.Y. Gen. Bus. Law § 380-g(d), including all documents supporting Defendant's assertion that Mr. Mandala's allegation that he did not receive a copy of Article 23-A of the

12

Correction Law is false, *see* Def.'s Motion to Dismiss the Class Action Complaint at 13, but excluding documents sent to specific Class Members.

**REQUEST NO. 14:**

All documents reflecting Defendant's alleged compliance with the requirements of Title VII of the Civil Rights Act of 1964 or the NYHRL, N.Y. Exec. Law § 296(15), excluding documents sent to specific Class Members.

**REQUEST NO. 15:**

All documents sent to or from Plaintiffs, or referring to or relating to Plaintiffs, including but not limited to all documents concerning Plaintiffs' applications for employment with Defendant, any documents Defendant provided to any administrative agency in relation to a charge of discrimination by any Plaintiff, and any documents containing information or data used as the basis for the documents Defendant provided to any administrative agency in relation to a charge of discrimination by any Plaintiff.

**REQUEST NO. 16:**

Documents reflecting Defendant's organizational structure, including but not limited to organizational charts, telephone and e-mail lists or directories—including the place in the organizational hierarchy for job positions applied to by Plaintiffs and Class Members.

**REQUEST NO. 17:**

Job descriptions (however titled) for the positions applied to by Plaintiffs and Class Members during the relevant period.

**REQUEST NO. 18:**

Documents sufficient to establish the hiring criteria and/or qualifications for the positions to which Plaintiffs and putative Class Members applied during the relevant period.

**REQUEST NO. 19:**

All documents referencing Defendant's training of its employees as to federal, state or local requirements regarding the employment of individuals with criminal histories, including but not limited to Title VII, the NY FCRA or NYHRL.

**REQUEST NO. 20:**

All internal or external audits, assessments, studies, investigations, or examinations concerning Defendant's evaluation of applicants' criminal histories, and documents referencing or relating to the same.

**REQUEST NO. 21:**

All internal or external audits, assessments, studies, investigations, or examinations commissioned, enacted or otherwise put into place as a result of any other lawsuits challenging Defendant's criminal history screens, policies, and practices, and documents referencing or relating to the same.  This request includes, but is not limited to, *NAACP New York State Conference Metropolitan Council of Branches v. Philips Electronics North America Corp.*, Index No. 156382/2015 (Sup. Ct. N.Y. Cnty.).

**REQUEST NO. 22:**

Documents—including contracts, agreements, letters, reports, memoranda, correspondence, manuals or guidelines—sufficient to establish the scope of work and/or responsibilities of the **CRAs** used by Defendant.

**REQUEST NO. 23:**

All communications between Defendant, **CRAs**, and/or any other entity from whom Defendant obtained **consumer reports** on employees or applicants during the relevant period, which concern:

14

a.     Defendant's obligations and/or responsibilities under federal, state, or local law;

b.     This lawsuit; or

c.     The obligations of those entities to Defendant.

**REQUEST NO. 24:**

All documents that relate to Defendant's policies, practices, and procedures concerning individuals who are afforded write access, and individuals who are afforded read/write access, to information contained in NTT's databases and systems responsive to these requests, the process by which the databases and systems may be accessed, and the information available to individuals who access the databases and systems during the relevant period.

**REQUEST NO. 25:**

All documents that include information as to the maintenance of data in any databases that Defendant has consulted or referred to in the preparation of responses to any of the Requests contained herein or in response to any of Plaintiffs' Interrogatories. This Request also specifically seeks all documents that relate to the storage procedures and data preservation practices employed with respect to any such databases including, but not limited to information on whether and how such databases are maintained, backed up, accessed, and otherwise kept during the relevant period.

**REQUEST NO. 26:**

All documents showing Defendant's data retention/purge practices with respect to information submitted by applicants and/or employees during the relevant period.

**REQUEST NO. 27:**

All witness statements, declarations, and/or affidavits that refer or relate to the claims in the litigation or Defendant's defenses.

**REQUEST NO. 28:**

All documents that Defendant intends to use in this litigation, including but not limited to documents used in deposition, motion practice, or trial.

**REQUEST NO. 29:**

All documents referenced in Defendant's initial disclosures (once provided) or any updated disclosures that Defendant shall provide to Plaintiffs.

**REQUEST NO. 30:**

All documents or records identified or relied upon by Defendant in response to Plaintiffs' First Set of Interrogatories directed to Defendant, or any subsequent Interrogatories from Plaintiffs to Defendant.

**REQUEST NO. 31:**

All documents supporting the defenses to be presented in Defendant's answer, including any subsequent answer made by Defendant.

**REQUEST NO. 32:**

All documents and/or communications that relate to any contact, audits, reviews, or investigations by any federal or state government agency, regarding Title VII, the NY FCRA and/or similar state laws, the NYHRL, or the conduct alleged in the Complaint.

**REQUEST NO. 33:**

All documents and/or communications reflecting good faith efforts Defendant made to comply with Title VII, the NY FCRA or the NYHRL.

**REQUEST NO. 34:**

All documents that relate to any oral or written complaints, inquiries, investigations, lawsuits, administrative proceedings, alternative dispute resolution proceedings, or reports

regarding discrimination on the basis of race, ethnicity, or national origin or criminal history, or Defendant's compliance or lack of compliance with Title VII, the NY FCRA or the NYHRL, and/or similar state laws, or the conduct alleged in the Complaint.

**REQUEST NO. 35:**

All documents signed by any agent of Defendant which purports to release, settle, or compromise any employment-related claims by individuals who are included within the definition of Class Members in this litigation.

**REQUEST NO. 36:**

For all experts and non-experts listed in response to Interrogatory No. 8, documents sufficient to show the subject of testimony or knowledge, and documents received from or communicated to such person by Defendant regarding Plaintiffs and Class Members, and the subject matter of this case. If Defendant intends to qualify any of these persons as experts, provide documents sufficient to show their areas of expertise and their credentials as experts.

**REQUEST NO. 37:**

All Class Member **consumer reports**, and other communications to, from, or about Class Members reflecting the evaluation of their suitability for employment and any adverse actions taken or considered by Defendant, including pre and post adverse action letters.

**REQUEST NO. 38:**

All documents relating to representation rates of NTT employees and applicants by race, ethnicity, or national origin, including but not limited to any documents regarding recruiting initiatives, studies, analyses, reviews or audits concerning such representation rates.

**REQUEST NO. 39:**

All documents relating to Defendant's affirmative action, diversity, non-discrimination and/or equal employment opportunity policies, statements, guidelines, plans and/or training programs, including surveys and/or reports regarding employee attitudes, recruitment, and race, ethnicity or national origin discrimination.

**REQUEST NO. 40:**

All documents relating to policies and procedures for raising a claim of unfair treatment or discrimination in hiring, including but not limited to all documents that refer or relate to Defendant's procedures for investigating and addressing such complaints.

**REQUEST NO. 41:**

All insurance policies or other agreements that would cover (even in part) litigation costs in this case.

Dated:  February 4, 2019

Respectfully submitted,

By:

Ossai Miazad
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 245-1000
Ossai Miazad
Christopher M. McNerney
Elizabeth V. Stork

**NAACP LEGAL DEFENSE & EDUCATIONAL
FUND, INC.**
Rachel M. Kleinman
40 Rector St.
New York, NY 10006

*Attorneys for Plaintiffs and proposed Class Members*

## **Attachment A**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiffs may specify the form or forms in which ESI is to be produced.  Plaintiffs request that ESI be produced as follows:

a.    <u>General Provisions</u>.  Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder.  All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI.  Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

b.    <u>Document Text</u>.  All unredacted documents should be provided with complete document-level extracted text files.  In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents.  The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files.  These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

c.    <u>Parent-Child Relationships</u>.  For email collections, the parent-child relationships (the association between emails and attachments) should be preserved.  Email attachments should be consecutively produced with the parent email record.

d.    <u>Dynamic Fields</u>.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

e.    <u>Non-redacted Word Processing Files</u>.  All word processing files, including without limitation Microsoft Word files, that do not require redactions, will be produced in native file format showing comments and track changes, and as *.tiff  images showing track changes and comments. A UNC file path must be included in the ESI load file.

f.    <u>Non-redacted Spreadsheet Files</u>.  Spreadsheet files, including without limitation Microsoft Excel files, that do not require redactions will be produced as native files showing comments and similar data.  A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file.  To the extent Parties

19

prefer native file redaction of Spreadsheet File, the Parties will meet and confer to discuss the form of production.

        g.     <u>Presentation Files</u>.  Presentation files, including without limitation Microsoft PowerPoint files, will be produced as native files showing comments, hidden slides, speakers' notes, and similar data.  A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file. The Parties will meet and confer regarding production of presentation files with alternate default settings.

        h.     <u>Database Records and Structured Data</u>.  To the extent that any Party requests information that is stored in a database or database management system, including but not limited to records of Plaintiffs' contact information, work telephone records, and/or log-in/log-out records, the producing Party will identify the database and platform to the receiving party, and will meet and confer in good faith in an attempt to reach agreement on the data to be produced and the form of the production.  The producing Party will provide information about the database to facilitate that discussion, including the fields, data types, and rules contained within the database.  The producing Party will also provide upon request, insofar as it is helpful to a discussion of responsive data, information regarding:

        i.     The reporting capabilities and enhanced reporting capabilities of the database;

        ii.     The size of the database and its content;

        iii.     The query language that may be used to search the database;

        iv.     The database's physical schema, including the software and hardware on which it is stored and administered;

        v.     The database's logical schema, including its tables, structures, attributes, fields, relationships, joins, and views, and including any entity relationship model

        vi.     Any available data dictionary describing the content of the data fields;

        vii.     Any available system catalog containing metadata associated with the database.

Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party, containing fields and reference points requested by producing Party.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

i.     <u>Embedded Files</u>. Embedded files are produced as independent document records. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

j.     <u>Time Zone</u>. Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with Concordance and Summation formats, below.

k.     <u>Bates Numbering</u>. Files will be named according to the Bates number of the corresponding *.tiff image. The Bates number will:

      i.     be consistent across the production;

      ii.     contain no special characters; and

      iii.     be numerically sequential within a given document.

Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

l.     <u>Load File Formats</u>. ESI will be produced in standard Concordance load file format and an image file that is in .OPT format.

m.     <u>Metadata to be Produced</u>. Metadata to be produced: The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email **and** attachment |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| ENDDOC | Ending bates | Hardcopy, edoc, email **and** attachment |
| CUSTODIAN | Custodial **or** non-custodial source(s) from which the **document** was collected | Hardcopy (if coded), edoc, email **and** attachment (populated through processing) |
| ALL CUSTODIANS | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email **and** attachment (populated through processing) |
| FAMILYIDOR ATTACHID | Family (Range of bates related **documents** (i.e email & attachment) - this field will be populated for **all** records in the family), and will distinguish parent documents from attachments. | Hard copy, edoc, emails **and** attachments (populated through processing) |
| PRPERTIES OR RCRDTYPE | Record type – will be either "email," "attachment," "edoc," **or** "hardcopy." | |
| FROM | Email Author | Emails (populated through processing) |
| TO | Recipient | Emails (populated through processing) |
| CC | CC field - In the event of emails | Emails (populated through processing) |
| BCC | Bcc field - in the event of emails | Emails (populated through processing) |
| SUBJECT | Subject | Emails (populated through processing) |
| DOCTITLE | **Document** Title/name of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc **or** attachment (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| DOCDATE | **Document** Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email **and** Attachments |
| DATESENT | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |
| TIMESENT | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| DATECREATED | Date first created, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| DATESVD | Date last saved/modified, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| TIMESVD | Time saved, format 00:00:00 AM/PM | (populated through processing) |
| PAGECOUNT | **Document** page count | Edoc **or** attachment (populated through processing) |
| ATTILE | File name/attachment name | Electronic files **and/or** attachments (populated through processing) |
| APPLICAT | Application used to open the file (Word, Powerpoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files **and/or** emails, attachments (populated through processing) |
| FOLDERID OR ORIGFOLDERPATH OR FILEPATH | File path/folder structure of original native file as it existed at the time of collection.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) | Electronic files **and/or** emails, attachments (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **ALL FILEPATHS** | File path/folder structure of original native file as it existed at the time of collection but subsequently removed as a duplicate.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** (if requested) when duplicate copies were suppressed during processing. | Electronic files **and/or** emails, attachments (populated through processing) |
| **DOCLINK or NATIVEFILE** | Active link reflecting current filepath back to the native file. | Electronic files **and/or** emails, attachments (populated through processing **and only provided if receiving native files**.) |
| **FILEEXTEN** | In the event of attachments **or** emails, this will enable us to search by **document** type.  Sample contents: *PST*, *MSG*, *PDF*, *DOC*, *PPT*, *HTM*, etc. | Electronic files **and/or** emails, attachments (populated through processing) |
| **FILESIZE** | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing). |
| **AUTHOR** | In the event of attachments, this field contains the 'author' of the **document** | For Hard Copy **documents** (if coded) **or** electronic files **and/or** attachments (populated through processing) |
| **HASH** | MD5 Hash value for de-dupe | Electronic files **and/or** attachments (populated through processing) |

  n. <u>Production Format for Hard Copy Documents</u>.  Hard copy documents will be scanned and processed as .tiff images with OCR.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

o.     <u>Encryption</u>.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.