UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>       -against-<br><br>NTT DATA, INC.,<br><br>             Defendant. | Civil Action No. 18 Civ. 6591 (CJS) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL A RULE 26(F) CONFERENCE AND IN SUPPORT OF NTT DATA INC.'S CROSS-MOTION TO STAY DISCOVERY

LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
(585) 203-3400
Jacqueline Phipps Polito, Esq.
Jessica F. Pizzutelli, Esq.
*Attorneys for Defendant*
*NTT Data, Inc.*

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION AND STATEMENT OF FACTS ......................................................... 1

II.   LAW AND ARGUMENT ................................................................................................ 3

    A.    NTT DATA MADE A STRONG SHOWING THAT PLAINTIFFS'
        CLAIMS LACK MERIT, WHICH IS REINFORCED BY
        SUBSEQUENT CASE LAW FROM THIS CIRCUIT AND SEVERAL
        OTHER COURTS OF APPEALS ........................................................................ 4

    B.    THE BREADTH OF THE REQUESTED DISCOVERY AND BURDEN
        OF RESPONDING FAVOR A STAY HERE ........................................................ 9

    C.    A STAY DOES NOT UNFAIRLY PREJUDICE PLAINTIFFS ........................ 12

III.  CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. County of Monroe*,
  No. 10-CV-6164, 2013 U.S. Dist. LEXIS 134344 (W.D.N.Y. Sept. 19, 2013) ......................4

*Barnett v. Cobb Cty. Sch. Dist.*,
  No. 15-CV- 3561, 2017 WL 5203049 (N.D. Ga. Feb. 7, 2017) ................................................5

*Canada v. Tex. Met. Ins. Co.*,
  No. 18-50247, 2019 U.S. App. LEXIS 9017 (5th Cir. Mar. 26, 2019) ....................................7

*Cole-Hoover v. N.Y. Dep't of Corr. Servs.*,
  No. 02 Civ. 826, 2012 WL 13000661 (W.D.N.Y. Oct. 10, 2012).........................................12

*Dubin & Dubin LLP v. Mayorga*,
  No. 13-MC-21S, 2013 U.S. Dist. LEXIS 109017 (W.D.N.Y. Aug. 2, 2013) ........................11

*Duncan v. N.Y.C. Transit Auth.*,
  127 F. Supp. 2d 354 (E.D.N.Y. 2001), *aff'd* 45 F. App'x 14 (2d Cir. 2002) ..........................7

*Evans v. City of Philadelphia*,
  No. 18-1947, 2019 WL 581555 (3rd Cir. Feb. 13, 2019) ........................................................7

*Giminez v. Law Offices of Hoffman & Hoffman*,
  Nos. CV 120669(JFB)(ETB), CV 12-2844 (JFB)(ETB), 2012 U.S. Dist.
  LEXIS 96168 (E.D.N.Y. July 11, 2012).................................................................3, 4, 11, 12

*Hicks v. T.L. Cannon Mgt. Corp.*,
  No. 13-Civ.-6455, 2018 WL 2440732 (W.D.N.Y. Mar. 13, 2018) ..........................................8

*Jackson v. Tyron Park Apts., Inc.*,
  No. 18 Civ. 6238, 2019 WL 331635 (W.D.N.Y. Jan. 25, 2019) ..............................................6

*Jenkins v. TJX Cos., Inc.*,
  CV 10-3753, 2011 U.S. Dist. LEXIS 44372 (E.D.N.Y. Apr. 25, 2011).................................11

*Jennings v. City of Tuscaloosa*,
  No. 13 Civ. 874, 2013 WL 5299304 (N.D. Ala. Sept. 19, 2013) .............................................6

*Josie-Delerme v. American Gen. Fin. Corp.*,
  No. CV 2008-3166 (NG)(MDG), 2009 U.S. Dist. LEXIS 15525 (E.D.N.Y.
  Feb. 26, 2009) ........................................................................................................................11

*Laurant v. City of New York*,
  No. 17-CV-5740, 2019 U.S. Dist. LEXIS 50503 (E.D.N.Y. Mar. 26, 2019).......................6, 7

*Lee v. Hertz Corp.*,
No. 18-CV-07481, 2019 WL 1434226 (N.D. Cal. Mar. 28, 2019)..........................................6

*Long v. SEPTA*,
903 F.3d 312 (3rd Cir. 2018) ...................................................................................................8

*Moss v. Hollis*,
No. CIV. B-90-177 (PCD), 1990 WL 138531 (D. Conn. June 29, 1990) ................................3

*New York v. Grand River Enters. Six Nations*,
No. 14-CV-910A, 2015 U.S. Dist. LEXIS 19357 (W.D.N.Y. Feb. 18, 2015) .........................9

*O'Sullivan v. Deutsche Bank AG*,
No. 17 Civ. 8709, 2018 U.S. Dist. LEXIS 70418 (S.D.N.Y. April 26, 2018)...........3, 4, 10, 13

*S.R. v. Kenton Cty. Sheriff's Office*,
No. 15-143-WOB-JGW, 2015 WL 12977103 (E.D. Ky. Nov. 3, 2015) .................................10

*Spencer Trask Software and Info. Servs., LLC v. RPost Int'l, Ltd.*,
206 F.R.D. 367 (S.D.N.Y. 2002) ...................................................................................4, 11, 12

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..............................................................................................................8

*Telesca v. Long Island Hous. P'ship., Inc.*,
No. CV 05-5509 (ADS)(ETB), 2006 U.S. Dist. LEXIS 24311 (E.D.N.Y. Apr.
27, 2006) ................................................................................................................................3, 9

*Thomas v. New York City Dep't of Educ.*,
No. 09-CV-5167 (SLT)(RLM), 2010 U.S. Dist. LEXIS 95798 (E.D.N.Y. Sept.
14, 2010) ...............................................................................................................................4, 11

*Tyree v. GCA Servs. Grp., Inc.*,
No. 17CV328, 2018 U.S. Dist. LEXIS 4063 (W.D. Va. Jan. 9, 2018)....................................5

*United States v. County of Nassau*,
188 F.R.D. 187 (E.D.N.Y. Sept. 23, 1999)........................................................................9, 13

*Washington v. First Transit, Inc.*,
No. GJH-17-3747, 2018 U.S. Dist. LEXIS 128684 (D. Md. Aug. 1, 2018)............................5

*Washington v. Steve*,
No. 13 Civ. 343, 2013 WL 6061988 (E.D. Wis. Nov. 18, 2013) .............................................6

*Weitzner v. Sciton, Inc.*,
No. CV 2005-2533, 2006 WL 3827422 (E.D.N.Y. Dec. 27, 2006) .........................................9

*Williams v. Swack,*
   No. 13 Civ. 974, 2015 WL 2237216 (W.D.N.Y. May 12, 2015) ...........................................12

**Statutes**

N.Y. Gen. Bus. Law § 380-g(d) ......................................................................................................1

**Other Authorities**

FED. R. CIV. P. 26(c) ......................................................................................................................3

FED. R. CIV. P. 26(c)(1) ..................................................................................................................3

## I.    INTRODUCTION AND STATEMENT OF FACTS.

On August 15, 2018, over one year after Plaintiffs were denied employment with NTT DATA, Plaintiffs filed a "Class Action Complaint" accusing the Company, without factual support, of violations under Title VII of the Civil Rights Act of 1964, the New York Human Rights Law (N.Y. Exec. Law § 296(15)), and the New York FCRA (N.Y. Gen. Bus. Law § 380-g(d)). Dkt. 1. Due to the facial deficiency of the Complaint and Plaintiffs' lack of standing, NTT DATA filed a motion to dismiss the Complaint. Dkt. 9, 9-3. A motion hearing was scheduled for April 25, 2019. Dkt. 10. Plaintiffs requested an adjournment of the hearing, which the Court granted. Dkt. 17, 18. The motion to dismiss is fully briefed, and the Court will hear oral argument on June 27, 2019. Dkt. 18.

In the meantime, and after confronted with the motion to dismiss, Plaintiffs served NTT DATA with 17 interrogatories and 41 requests for production of documents (some with multiple sub-parts) (the "discovery demands"). Dkt. 21-3. Plaintiffs also requested a Rule 26(f) conference. *Id*. This was no doubt designed to gather evidence to support their deficient Complaint.

NTT DATA objects to the discovery demands for many reasons, including those outlined below. Relevant here is the alarming and expansive breadth of the demands. By way of non-exhaustive example, Plaintiffs seek:

- The identity of *every person* who communicated with *every potential class member* regarding their *job applications* and/or *consumer reports* (*Id.* at Interrogatory No. 6).

- The identity of *each individual applicant to NTT* "during the relevant time period," and thirteen different sub-categories of private and intrusive information for *each applicant,* such as the last four digits of their SSN, salary information, criminal history information, contact information (including home address, email addresses, and telephone numbers), and race, ethnicity, national origin, and gender information (*Id.* at Interrogatory Nos. 9, 10; *see also* Document Request No. 1).

- Each version of *every* job application, job posting or job advertisement *in the last ten years,* and all drafts and revisions of same, even though Plaintiffs did not apply for positions until 2017. (*Id.* at Document Request Nos. 2, 3, 4).

- Policies for evaluating applicants' criminal history information *in the last ten years,* and pre- and post-adverse action letters *in the last ten years,* even though Plaintiffs did not apply for positions until 2017. (*Id.* at Document Request Nos. 7, 8, 11, 12).

- *All class member consumer reports,* including the personal information concerning class members' contained therein. (*Id.* at Document Request No. 37).

The amount of time to collect and respond to these, and the other, discovery demands would be *staggering* given their expansive scope.

In light of the procedural posture of this case, the lack of any factual foundation for Plaintiffs' Complaint, the likelihood that all of Plaintiffs' claims will be dismissed, the grossly overbroad discovery propounded by Plaintiffs, and out of respect for the parties' and the Court's valuable resources, NTT DATA informed Plaintiffs that discovery, including a Rule 26(f) conference, is premature at this juncture. NTT Data informed Plaintiffs of its position on February 7, 2019 and, after a telephone conferral, again on February 25, 2019. Nevertheless, Plaintiffs filed their motion to compel a Rule 26(f) conference, more than two months later, arguing in part the need for urgency to discovery. *See* Pl. Mem. at 15.[1] To the contrary, the two month delay demonstrates the lack of urgency.

For the reasons set forth in this brief, NTT DATA requests that Plaintiffs' motion to compel be denied, and that the Court stay all discovery in this case, including the Rule 26(f) conference, until the Court's decision on NTT DATA's motion to dismiss. As more fully addressed below, a stay is warranted on both legal and practical grounds. Plaintiffs cannot use

---

[1] Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Rule 26(f) Conference, Dkt. 21-1, is cited herein as "Pl. Mem. at [page #]."

2

discovery as a fishing expedition to garner facts to support their allegations, especially when a motion to dismiss dispositive of all claims is pending.

## II.    LAW AND ARGUMENT.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court has discretion to stay discovery for "good cause," including protection from "undue burden or expense." FED. R. CIV. P. 26(c)(1); *O'Sullivan v. Deutsche Bank AG,* No. 17 Civ. 8709, 2018 U.S. Dist. LEXIS 70418, at *13 (S.D.N.Y. April 26, 2018); *Giminez v. Law Offices of Hoffman & Hoffman*, Nos. CV 120669(JFB)(ETB), CV 12-2844 (JFB)(ETB), 2012 U.S. Dist. LEXIS 96168, at *4 (E.D.N.Y. July 11, 2012); *Telesca v. Long Island Hous. P'ship., Inc*., No. CV 05-5509 (ADS)(ETB), 2006 U.S. Dist. LEXIS 24311, at *3-4 (E.D.N.Y. Apr. 27, 2006). In determining whether to grant a stay of discovery, a court must look to the "particular circumstances and posture of each case." *Giminez*, 2012 U.S. Dist. LEXIS 96168, at *5 (internal citation omitted). Three factors are considered in determining whether there is good cause to stay discovery pending the resolution of a dispositive motion:

> (1) whether the defendant has made a strong showing that the plaintiff's claims lack merit;
>
> (2) the breadth of discovery and the burden of responding to it; and
>
> (3) the risk of unfair prejudice on the party opposing the stay.

*Id*. at *5.[2] This Court may also take into consideration the nature and complexity of the action and the posture or stage of the litigation. *Id. at* *5-6. As set forth below, each of these factors favor a stay here.

---

[2] Plaintiffs' reliance on *Moss v. Hollis,* No. CIV. B-90-177 (PCD), 1990 WL 138531 (D. Conn. June 29, 1990) is misplaced. This case did not consider these factors, defendants only speculated that their motions to dismiss "may be successful," and defendants did not point out the "glaring deficiencies" in plaintiffs' complaint.

### A. NTT DATA MADE A STRONG SHOWING THAT PLAINTIFFS' CLAIMS LACK MERIT, WHICH IS REINFORCED BY SUBSEQUENT CASE LAW FROM THIS CIRCUIT AND SEVERAL OTHER COURTS OF APPEALS.

A stay of discovery is warranted given the strength of NTT DATA's motion to dismiss. The "federal district courts have discretion to impose a stay of discovery pending the determination of dispositive motions….". *Giminez,* 2012 U.S. Dist. LEXIS 96168, at *5 (internal citation omitted). Indeed, Courts regularly stay discovery pending the disposition of a motion to dismiss where the defendant presents substantial arguments in favor of dismissal. *O'Sullivan*, 2018 U.S. Dist. LEXIS 70418, at *32; *see also Giminez*, 2012 U.S. Dist. LEXIS 96168, at *6 (good cause to stay discovery existed where substantial reasons for dismissal were presented); *Thomas v. New York City Dep't of Educ.*, No. 09-CV-5167 (SLT)(RLM), 2010 U.S. Dist. LEXIS 95798, at *8 (E.D.N.Y. Sept. 14, 2010) (stay warranted upon a showing that "at least some of plaintiffs' claims lack merit"); *Spencer Trask Software and Info. Servs., LLC v. RPost Int'l, Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (stay warranted where "defendants do appear to have substantial arguments for dismissal of many, if not all, of the claims asserted in this lawsuit."); *Barnes v. County of Monroe,* No. 10-CV-6164, 2013 U.S. Dist. LEXIS 134344, at *4 (W.D.N.Y. Sept. 19, 2013) (granting stay of discovery where defendants have "substantial arguments in favor of dismissal of many, if not all, of the claims asserted by plaintiff").

Here, Plaintiffs' Complaint is deficient, untimely, and inconsistent with Second Circuit and other persuasive authority. NTT DATA will not repeat its arguments here, as the motion to dismiss is fully briefed. However, as noted in NTT DATA's motion to dismiss, Plaintiffs' Title VII claim is based solely on the conclusory contention that there is a "national crisis" involving "gross racial disparities in the criminal justice system." Of course, NTT DATA cannot be held liable or responsible for racial disparities in the criminal justice system. And, Plaintiffs fail to

allege that *NTT DATA* engaged in any neutral practice that caused a significant disparate impact on African Americans for which *NTT DATA* is responsible.  Dkt. 9-3.  Indeed, Plaintiffs proffer no *facts* that plausibly support that NTT DATA caused *any* disparate impact on *any* protected group.  NTT DATA referred the Court to *scores of Courts* that have recognized (in the past two years no less) the basic principle that a plaintiff's disparate impact race discrimination claim *cannot survive* based solely on similar conclusory allegations, without any factual predicate.[3]  *See, e.g., Barnett v. Cobb Cty. Sch. Dist.,* No. 15-CV- 3561, 2017 WL 5203049, at *4 (N.D. Ga. Feb. 7, 2017) (dismissing disparate impact claim where "Plaintiff generally alleges African Americans are arrested more often than other non-minority groups" and "does not allege statistics or any other facts tending to show the application of Defendant's arrest policies has had a disproportionate impact on African Americans"); *Washington v. First Transit, Inc.,* No. GJH-17-3747, 2018 U.S. Dist. LEXIS 128684, at *11 (D. Md. Aug. 1, 2018) (amending complaint futile where plaintiff has not pled facts that minorities "make up a disproportionate number of the job applicants who are rejected under Defendants' policy"); *Tyree v. GCA Servs. Grp., Inc.,* No. 17CV328, 2018 U.S. Dist. LEXIS 4063, at *9 (W.D. Va. Jan. 9, 2018) (dismissing disparate impact claim where plaintiff merely relied on EEOC's guidance concerning the use of criminal records:  "[i]n the absence of any facts which plausibly suggest that [employer's] selection

---

[3] Although Plaintiffs again try to narrowly cabin NTT DATA's argument (i.e., "NTT's *only* argument is that Plaintiffs have not presented statistics from the appropriate population," Pl. Mem. at 6), NTT DATA's position is not so-limited.  Instead, NTT DATA asserts that Plaintiffs have not pled *facts* that survive the pleading standards announced by the Supreme Court in *Iqbal* and *Twombly*.  The minimal, conclusory allegations in the Complaint simply are not enough to expose an employer to a nationwide class action.  Plaintiffs must come forward with something more than national, general population statistics totally divorced from an employer's practices to survive dismissal and open the doors to discovery.

criteria imposed a substantially disproportionate burden upon African-Americans… the court concludes that [applicant's] disparate impact claim is subject to dismissal.").[4]

Indeed, NTT DATA's motion is strengthened by additional authority from this Circuit issued after its motion to dismiss was filed.[5]  Just two weeks ago, in *Laurant v. City of New York,* No. 17-CV-5740, 2019 U.S. Dist. LEXIS 50503 (E.D.N.Y. Mar. 26, 2019), the Eastern District of New York dismissed plaintiff's disparate impact race discrimination claim, which was based on the alleged decision not to hire plaintiff due to his criminal history.  In *Laurant,* the Court noted that "[d]isparate impact plaintiffs must plead facts that plausibly indicate defendants' facially neutral policy had a disproportionate effect on the plaintiff's protected group."  *Id.* at *21.  The Court stated that a "disproportionate effect can be shown through a gross statistical disparity in outcomes, or a statistically significant adverse effect coupled with other evidence of discrimination."  *Id.*  The Court went on to hold, however, that "plaintiff offers no facts to support the conclusion that disqualifying candidates based on the failure to disclose these types of arrests, or arrests in general, somehow discriminates by race.  He has not alleged any

---

[4] *See also Jennings v. City of Tuscaloosa,* No. 13 Civ. 874, 2013 WL 5299304, at *3 (N.D. Ala. Sept. 19, 2013) (dismissing disparate impact claim based on alleged criminal history policy where complaint "provides no factual matter to allow an inference that the City's DUI policy disparately impacts African Americans"); *Washington v. Steve,* No. 13 Civ. 343, 2013 WL 6061988, at *2 (E.D. Wis. Nov. 18, 2013) (dismissing disparate impact claim based on alleged criminal history policy where applicant did not allege "that members of his race were more often refused jobs on the basis of their race").

[5] Plaintiffs argue that "at least two separate district courts" have "found that a plaintiff's allegations that a defendant's criminal history adjudication process disproportionately screens out minority groups" stated "a plausible violation of applicable civil rights statutes."  Pl. Mem. at 7.  *Lee v. Hertz Corp.,* No. 18-CV-07481, 2019 WL 1434226 (N.D. Cal. Mar. 28, 2019) was wrongly decided because the Court relied on general population statistics, and in any event, is inapposite because, unlike like here, the statistics cited by plaintiffs (relating to arrest and conviction rates during the relevant time period) had some reasonable relation to the neutral policy alleged (which also pertained to convictions and arrests).  *Jackson v. Tyron Park Apts., Inc.*, No. 18 Civ. 6238, 2019 WL 331635 (W.D.N.Y. Jan. 25, 2019) is inapposite for the reasons stated in NTT DATA's response to Plaintiffs' Notice of Supplemental Authority.  Dkt. 16.

*evidentiary facts to demonstrate disparate effect on African Americans through statistics, or anything more than his bare assertions.* Thus, his disparate impact theory fails." *Id.* at \*25 (emphasis added).[6]

In addition, two weeks ago, the Fifth Circuit Court of Appeals reaffirmed that reliance on general population statistics—as Plaintiffs purport to do here—is not enough in a disparate impact case: "[r]eliance on a policy's disparate impact on the general population, rather than on the applicant pool, is misplaced." *Canada v. Tex. Met. Ins. Co.,* No. 18-50247, 2019 U.S. App. LEXIS 9017, at \*9 (5th Cir. Mar. 26, 2019). Instead, "to establish a disparate impact, [applicant] needed to show that the specific type of background-check policy [employer] uses to screen candidates disproportionately impacts black applicants who are otherwise qualified." *Id.* at \*9-10; *accord Evans v. City of Philadelphia,* No. 18-1947, 2019 WL 581555, at \*2 (3rd Cir. Feb. 13, 2019).

Thus, because the Complaint fails to state a plausible claim under Title VII, the only federal claim, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Dkt. 9-3.

In addition, with respect to Plaintiffs' NY FCRA claim, NTT DATA provided the Court with uncontroverted evidence that Mandala did, in fact, receive a copy of Article 23-A when he executed his background check authorization. NTT DATA also referred the Court to binding Supreme Court precedent, and the Third Circuit's affirmance of dismissal of materially similar claims, that fully support that Mandala does not have standing to sue for his NY FCRA claim, in

---

[6] Although this case involved disparate impact under the New York State Human Rights Law and New York City Human Rights Law, the standards applied by the Court were those applied in Title VII cases. *See Laurant,* 2019 U.S. Dist. LEXIS 50503, at \*21, *citing Watson v. Fort Worth Bank & Trust,* 487 U.S. 977 (1988) and *Duncan v. N.Y.C. Transit Auth.,* 127 F. Supp. 2d 354, 360 (E.D.N.Y. 2001), *aff'd* 45 F. App'x 14 (2d Cir. 2002).

any event. Dkt. 9-3; *see Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) and *Long v. SEPTA,* 903 F.3d 312, 325 (3rd Cir. 2018).[7]

Further, the motion to dismiss presents compelling reasons why Plaintiffs' class claims should be stricken, why Plaintiffs do not have standing to represent the classes as defined in the Complaint, and that the claims of the purported "NY Criminal History Discrimination Class" are time-barred, in part. Dkt. 9-3.

Plaintiffs' motion to compel relies, primarily, on their contention that "even if the Court were to grant NTT's motion to dismiss in its entirety, Plaintiff Mandala's state law (NYHRL) criminal history discrimination claim would survive either before this Court or in state court." Pl. Mem. at 8. As a threshold matter, if NTT DATA's motion is granted in its entirety, the Court would decline to exercise supplemental jurisdiction, and the entire case would be dismissed. Thus, Plaintiffs would not be entitled to any discovery whatsoever, as no case would be pending.

If, *and only if,* Plaintiff Mandala were to bring his claims again in New York state court, and if, *and only if,* Plaintiff Mandala were able to survive any dispositive motion NTT DATA may file respecting that claim, and if, *and only if,* Plaintiff Mandala were able to prepare and serve properly tailored discovery demands in that hypothetical future state law case, would he then even possibly be entitled to even a fraction of the discovery he currently demands. Indeed, Plaintiff Mandala's future, hypothetical state court case where he would hypothetically be entitled to discovery would likely be subject to the same arguments regarding the insufficiency of his class allegations, calling into further question the scope of discovery. As the Court

---

[7] Plaintiffs' reliance on *Hicks v. T.L. Cannon Mgt. Corp.,* No. 13-Civ.-6455, 2018 WL 2440732 (W.D.N.Y. Mar. 13, 2018) is misplaced. Indeed, in *Hicks,* the Court distinguished the case before it (involving wage notices) from claims like those asserted by Plaintiffs here, which assert "bare procedural violation[s]" of the FCRA where Plaintiff was *not* "mis-or uninformed regarding [his] rights," as evidenced by the very fact that he brought this lawsuit. *Id.* at *5. The *Hicks* case supports NTT DATA's position, not Plaintiffs.

observed in *New York v. Grand River Enters. Six Nations,* No. 14-CV-910A, 2015 U.S. Dist. LEXIS 19357, at *6-7 (W.D.N.Y. Feb. 18, 2015), even if "discovery against at least [one defendant] regarding Plaintiff's state law claims… is likely to proceed regardless of whether [defendants] succeed on Defendants' motions to dismiss… the scope and related burdens of discovery could be significantly affected should those federal claims be dismissed." *Id.*[8] The same is equally true here, and for these same reasons, discovery should be stayed pending the Court's decision on the motion to dismiss.

### B. THE BREADTH OF THE REQUESTED DISCOVERY AND BURDEN OF RESPONDING FAVOR A STAY HERE.

A stay of discovery is warranted in order to preserve the time and resources of both the Court and the parties. Upon considering a stay of discovery during the pendency of a motion to dismiss, courts are rightfully mindful of the burden and substantial expense of discovery. *See Telesca*, 2006 U.S. Dist. LEXIS 24311, at *6 (finding good cause to stay discovery in complex case where defendant would incur "substantial expenses if and/or when discovery is conducted"); *United States v. County of Nassau*, 188 F.R.D. 187, 189 (E.D.N.Y. Sept. 23, 1999) (finding the "interests of fairness, economy, and efficiency … favor[ed] the issuance of a stay of discovery" because "it is self-evident that the cost of discovery, coupled with the diversion of employees' time and attention… to focus on the retrieval of discovery and to otherwise assist in the pursuit of this litigation, would be an unnecessary expense in the event that [the] motion to dismiss is ultimately granted").

Here, Plaintiffs seek broad and sweeping discovery from NTT DATA. For example, they request intimate details concerning every single job applicant, nationwide, since June 2, 2014. In

---

[8] *Weitzner v. Sciton, Inc.,* No. CV 2005-2533, 2006 WL 3827422 (E.D.N.Y. Dec. 27, 2006), a case cited by Plaintiffs, is inapposite. That case was at a completely different procedural stage, and there was only a "small amount of class discovery remaining." *Id.* at *1.

addition, they seek discovery that bears no relevance to the claims as pled, including seeking information concerning ethnicity and gender. They also seek documents that go back a decade in time. *See O'Sullivan,* 2018 U.S. Dist. LEXIS 70418, at *27-28 (granting motion to stay where plaintiffs seek documents "that go back decades in time" and "discovery would span information generated over the course of many years"). Although NTT DATA will serve timely objections to these overly broad discovery demands if required to do so under the federal rules, a plain read of the discovery demands shows that they are extremely broad and the burden of responding is great. Proceeding with such discovery during the pendency of NTT DATA's motion to dismiss would serve only to unnecessarily drain the parties' resources, especially where the decision on NTT DATA's motion may have a significant impact on the scope of discovery. Indeed, should the Court grant some or all of NTT DATA's motion, the claims and issues in dispute in this case will be narrower. Further, Plaintiffs' current demands are not geographically limited, and appear to seek *nationwide* information. Even accepting Plaintiffs' contention that their NYHRL claim would survive, all of the discovery demands would then be limited to New York. In addition, if NTT DATA's motion is granted, Barnett would no longer be a party. Further, NTT DATA has challenged the relevant time periods at issue in this case, and if NTT DATA's motion is granted, the at-issue time period will be narrower. Similarly, if the motion to strike is granted, discovery will only go forward on Mandala's and Barnett's individual claims.[9]

Thus, it makes practical sense to wait and see what claims and parties remain in play before having the parties and this Court undergo the time, expense and burden of discovery. *See*

---

[9] *S.R. v. Kenton Cty. Sheriff's Office,* No. 15-143-WOB-JGW, 2015 WL 12977103 (E.D. Ky. Nov. 3, 2015) does not help Plaintiffs. In that case, the Court specifically noted that the issue of conducting *discovery*—as opposed to merely participating in the Rule 26(f) conference—was not before the Court, and any party seeking to stay discovery could file an appropriate motion, which is exactly what NTT DATA did here.

*Spencer,* 206 F.R.D. at 368 ("proceeding with discovery while the motion to dismiss is pending would unnecessarily drain the parties' resources"); *Josie-Delerme v. American Gen. Fin. Corp.*, No. CV 2008-3166 (NG)(MDG), 2009 U.S. Dist. LEXIS 15525, at *5 (E.D.N.Y. Feb. 26, 2009) (stay warranted where resolution of motion may "obviate the need for potentially onerous discovery").

In addition, a stay is warranted where "discovery is likely to lead to protracted motion practice, which may end up being moot in the event these actions are dismissed." *Giminez,* 2012 U.S. Dist. LEXIS 96168, at *6. Here, if discovery is permitted prior to the Court's decision on the motion to dismiss, protracted motion practice is inevitable. As set forth above, NTT DATA objects to Plaintiffs discovery demands as overly broad, among other things. *Thomas,* 2010 U.S. Dist. LEXIS 95798, at *8-9 (granting stay where "[e]ven if defendants' motion to dismiss is granted only in part, such a ruling will narrow and clarify the scope of the issues in this litigation, and will impact this Court's decision on defendants' objections to the discovery requests").

Plaintiffs also appear to assert that they are entitled to individualized, class-wide pre-certification discovery (*see* Pl. Mem. at 8-9)—a contention NTT vehemently disputes, as supported by law in this Circuit and District. *See, e.g., Jenkins v. TJX Cos., Inc.*, CV 10-3753 (ADS) (WDW), 2011 U.S. Dist. LEXIS 44372, at *10 (E.D.N.Y. Apr. 25, 2011) (denying motion to compel pre-certification discovery concerning identity of non-party potential class members); *Dubin & Dubin LLP v. Mayorga*, No. 13-MC-21S, 2013 U.S. Dist. LEXIS 109017, at *2 (W.D.N.Y. Aug. 2, 2013) (adopting a recommendation that a subpoena requesting documents and detailed information about putative class members be quashed because the class had not yet been certified); *see also* W.D.N.Y. L.R. 23(c) (initial discovery may only address discovery relevant to motion for class certification).

Thus, the breadth of the requested discovery, the burden on NTT DATA, and the likely drain on judicial resources should discovery commence prior to disposition of the motion to dismiss, favor a stay here.

### C.     A STAY DOES NOT UNFAIRLY PREJUDICE PLAINTIFFS.

Finally, in considering whether to stay discovery, courts generally find no prejudice where an action is still in its early stages and discovery has not yet commenced. Indeed, in issuing a stay of discovery, the Court in *Giminez* reasoned that because the "actions are in their infancy [and] [n]o discovery has taken place…there is little prejudice to plaintiffs in staying discovery." *Giminez*, 2012 U.S. Dist. LEXIS 96168, at *6. Like *Giminez*, this case is in its infancy and no discovery has been conducted to date.

Plaintiffs argue that they would be prejudiced because "the prosecution of the case could be delayed." Pl. Mem. at 10. Plaintiff's own actions dispel any notion of prejudice, including in: (a) waiting one year to file this lawsuit (Compl., ¶¶ 34, 38); (b) requesting an adjournment of the oral argument *four months* after the Court scheduled same, and (c) waiting more than *two months* before filing the within motion. Indeed, "[a] stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Spencer,* 206 F.R.D. at 368 (internal citation omitted).

Moreover, this case has been pending for less than a year, thus, the risks cited by Plaintiffs (e.g., ability to locate class members, loss of memory, etc.) do not exist here. *Compare cases cited by Plaintiffs: Williams v. Swack,* No. 13 Civ. 974, 2015 WL 2237216, at *3 (W.D.N.Y. May 12, 2015) (case had already been stayed for nearly three years); *Cole-Hoover v. N.Y. Dep't of Corr. Servs.,* No. 02 Civ. 826, 2012 WL 13000661, at *4 (W.D.N.Y. Oct. 10, 2012) (action had been pending "for nearly 10 years"). "[T]he passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice

sufficient to defeat a motion to stay discovery.  Otherwise, stays of discovery would never be granted given that some delay is inherent in any stay." *O'Sullivan,* 2018 U.S. Dist. LEXIS 70418, at *30. [10]  For these reasons, Plaintiffs will not be prejudiced by a stay, and NTT DATA's request for a stay should be granted.

## III.    CONCLUSION.

Accordingly, in light of the foregoing, NTT DATA respectfully requests that this Court stay discovery in this case, including the Rule 26(f) conference, until the Court's ruling on NTT DATA's motion to dismiss.  Courts in this Circuit have stayed participation in the Rule 26(f) conference pending the outcome of a motion to dismiss.  *See County of Nassau,* 188 F.R.D. at 189, *O'Sullivan*, 2018 U.S. Dist. LEXIS 70418, at *12, 32.  The same result should follow here.

Date:   May 10, 2019
        Fairport, New York

/s/ *Jessica F. Pizzutelli*
Jacqueline Phipps Polito (Bar Roll #511655)
Jessica F. Pizzutelli (Bar Roll #520090)
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Second Floor
Fairport, NY 14450
jpolito@littler.com
jpizzutelli@littler.com
Telephone (585) 203-3400

*Attorneys for Defendant NTT DATA, Inc.*

164207914

---

[10] Plaintiffs also assert that they are prejudiced because they have *merely alleged* that NTT "utilizes a job applicant screening process that systemically eliminates qualified African American applicants," and "[e]ach day that goes by, additional applicants, many of whom are potential class members, are injured."  Pl. Mem. at 11.  NTT DATA vehemently disputes these allegations.  Plaintiffs offer no proof to support their claims in the Complaint, generally, or their claims of continued injury.  Indeed, Plaintiffs do not allege to have had any contact with NTT DATA since 2017.  No other applicant has come forward to join this lawsuit since it was first filed, further undermining any claim of continuing injury.