**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE &**
**EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
40 Rector Street, Fifth Floor
New York, NY 10006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 18 Civ. 6591 (CJS) |
| v. | |
| NTT DATA, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... iii

I.     Procedural Background..................................................................................................... 3

     A.     Proceedings Before the Court .............................................................................. 3

     B.     Appeal .................................................................................................................. 4

     C.     Proceedings *En Banc* ........................................................................................... 4

II.    First Amended Complaint................................................................................................. 6

     A.     NTT's Policies ..................................................................................................... 6

     B.     George Mandala ................................................................................................... 7

     C.     Charles Barnett.................................................................................................... 7

     D.     Disparate Impact on Black Applicants ............................................................... 8

III.   Argument ......................................................................................................................... 9

     A.     Analysis of Plaintiffs' Motion Is Guided by a "Liberal Spirit" in Favor of Amendment........................................................................................................... 9

     B.     Because No *Foman* Factors Are Present, Amendment Should Be Granted......... 12

     C.     The Interests of Justice Require this Court to Reopen the Judgment Under Rule 60(b)(6) .............................................................................................................. 15

CONCLUSION...................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                       **PAGE(S)**

*Adams v. Gould, Inc.*,
  739 F.2d 858 (3d Cir. 1984)..................................................................10

*Agerbrink v. Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016)...........................................13, 14

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975)..........................................................................16

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
  434 U.S. 412 (1978)..........................................................................16

*Davis v. Musler*,
  713 F.2d 907 (2d Cir. 1983)...........................................................9, 10

*District Council 47 v. Bradley*,
  795 F.2d 310 (3d Cir. 1986).............................................................10

*Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.2d 594 (5th Cir.1981) ............................................................11

*EEOC v. Port Auth. of N.Y. & N.J.*,
  768 F.3d 247 (2d Cir. 2014)..............................................................4

*Faryniarz v. Ramirez*,
  62 F. Supp. 3d 240 (D. Conn. 2014)................................................12

*Foman v. Davis*,
  371 U.S. 178 (1962)....................................................................10, 14

*Griggs v. Duke Power Co.*,
  401 U.S. 424 (1971)..........................................................................16

*Hamilton v. Lee*,
  188 F. Supp. 3d 221 (E.D.N.Y. 2016) ...............................................9

*Jolin v. Casto*,
  238 F.R.D. 48 (D. Conn. 2006).................................................9, 10, 15

*Kauffman v. Moss*,
  420 F.2d 1270 (3d Cir. 1970)...........................................................11

*Kenning v. Berryhill*,
  No. 16 Civ. 6778, 2018 WL 1640598 (W.D.N.Y. Apr. 5, 2018) ...........15

*In re Krautheimer*,
    210 B.R. 37 (Bankr. S.D.N.Y. 1997) .................................................................16

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ..............................................................................15, 16

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020) ......................................................................4, 12, 13

*Mandala v. NTT Data, Inc.*,
    988 F.3d 664 (2d Cir. 2021) ........................................................................ *passim*

*Marrero Pichardo v. Ashcroft*,
    374 F.3d 46 (2d Cir. 2004) ...............................................................................9

*Matarese v. LeFevre*,
    801 F.2d 98 (2d Cir. 1986) ...........................................................................9, 10

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
    970 F.3d 133 (2d Cir. 2020) .....................................................................2, 11, 13

*Monahan v. N.Y.C. Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) .......................................................................13, 14

*Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*,
    930 F.2d 240 (2d Cir. 1991) .......................................................................11, 12

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) .........................................................................9, 15

*New York v. Green*,
    420 F.3d 99 (2d Cir. 2005) .........................................................................2, 11

*Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*,
    907 F.2d 1408 (3d Cir. 1990) .........................................................................10

*Parks v. "Mr. Ford"*,
    68 F.R.D. 305 (E.D. Pa. 1975) ........................................................................11

*Soojung Jang v. Trustees of St. Johnsbury Acad.*,
    No. 17 Civ. 162, 2018 WL 4941784 (D. Vt. Oct. 12, 2018) ...................................11

*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) ...........................................................................12

*United Airlines, Inc. v. Brien*,
    588 F.3d 158 (2d Cir. 2009) ...........................................................................10

*United States v. Cirami,*
   563 F.2d 26 (2d Cir. 1977)..................................................................................9

*United States v. Hayes Int'l Corp.,*
   456 F.2d 112 (5th Cir. 1972) ..............................................................................17

*Wilburn v. Pepsi-Cola Bottling Co.,*
   492 F.2d 1288 (8th Cir. 1974) ...............................................................11, 14, 15

*Williams v. Citigroup Inc.,*
   659 F.3d 208 (2d Cir. 2011)............................................................... *passim*

## OTHER AUTHORITIES

C. Wright, A. Miller & M. Kane, Federal Practice and Procedure (3d ed.) .............................9, 11

7 Moore's Federal Practice (2d ed. rev. 1975).........................................................9, 16

## INTRODUCTION

Plaintiffs George Mandala and Charles Barnett ("Plaintiffs"), on behalf of themselves and a class of all others similarly situated, file this motion requesting that the Court vacate the final judgment in this action pursuant to Federal Rule of Civil Procedure ("Rule") 60(b)(6) and allow them to file their First Amended Class Action Complaint ("FAC") setting forth claims alleging that Defendant NTT Data, Inc.'s ("NTT") policy of denying employment to applicants with criminal histories violates Title VII of the Civil Rights Act of 1964 ("Title VII"), and related state laws. *See* Ex. A (FAC).[1]

The FAC pleads facts alleging that NTT's policy has a disparate impact on Black applicants, including on those Black applicants with higher levels of education that may be more likely to be part of NTT's applicant pool—thus curing the critical flaw identified by this Court and the Second Circuit in initially dismissing Plaintiffs' complaint.  In her published dissent from the Second Circuit's denial of Plaintiffs' request for rehearing *en banc*, Judge Pooler specifically encouraged Plaintiffs to file this precise motion.  *Mandala v. NTT Data, Inc.*, 988 F.3d 664, 671 (2d Cir. 2021) (Pooler, J., dissenting from denial of *en banc*) ("I encourage . . . Plaintiffs here to move under Rule 60 for relief from the district court's judgment in order to file an amended complaint that includes statistics incorporating the continued racial gaps in conviction rates as education levels rise.")  Plaintiffs' motion is also supported by the acknowledgement of at least nine Second Circuit judges that the allegations newly included in Plaintiffs' FAC would meet the pleading standard as articulated by the Second Circuit in this matter, and further supported by the liberal standard for amendment under Rule 15 and the justice-driven approach of Rules 60 and 15.

---

[1]        Exhibits are attached to the Declaration of Christopher M. McNerney.

In the Second Circuit, post-judgment motions to file an amended complaint are governed by Rule 60(b) and reviewed with "due regard" to the "liberal spirit" of amendment under Rule 15(a). *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 146 (2d Cir. 2020) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011)). Evaluation of these motions is guided by the interests of justice and requires courts to consider whether the amended complaint states a claim. *See Williams*, 659 F.3d at 214 (remanding a denial of a motion to vacate the judgment to file an amended complaint and ordering the district court to assess whether amendment would be futile). In addition, the analysis of post-judgment motions to amend reflects deference to the "strong preference" that claims be considered on their merits. *Id*. at 212-13 (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

Here, leave to amend the complaint is strongly in the interest of justice. The majority of the active judges on the Second Circuit, including those that dismissed Plaintiffs' original complaint, have made clear that the amendments to Plaintiffs' complaint would state a claim under the operative standard.[2] Moreover, the requirements under Rule 12(b)(6) for Plaintiffs' claims were clarified in the decisions denying Plaintiffs' appeal and their petition for rehearing *en banc*. Under a Rule 15 analysis, Plaintiffs should be provided an opportunity to meet this clarified standard for plausibility—especially given the important issues raised by Plaintiffs' allegations of discrimination.

---

[2]    *See Mandala*, 988 F.3d at 688 (Sullivan, J., and Nardini, J., concurring with denial of *en banc*) (explaining that facts alleged in *en banc* amicus brief are "the very figures that might have rendered Plaintiffs' claims plausible"); *id*. at 671 (Pooler, J., dissenting from denial of *en banc*) ("We know that racial disparities in conviction and arrest rates will persist across all education levels. Indeed, as set forth in another amicus brief, the data is quite clear on this point."); *see also id.* at 672-82 (Chin, J., dissenting from denial of *en banc*) (explaining that "it is certainly plausible – even probable, as explained below – that the racial disparity in conviction rates does not dissipate with education"); *id.* at 683 (Lohier, J., dissenting from denial of *en banc*) (adopting dissents of Judge Chin and Judge Pooler).

Accordingly, Plaintiffs bring this motion, and respectfully request that the Court reopen the judgment and permit the filing of their FAC so that the merits of Plaintiffs' claims may be heard.

## I.    Procedural Background

### A.    Proceedings Before the Court

This action was filed on August 15, 2018, on behalf of Plaintiffs George Mandala and Charles Barnett, and a class of all other similarly situated employees of NTT.  ECF No. 1 (Complaint).  The complaint alleged that NTT's blanket policy of denying jobs to all applicants with a criminal history violated Title VII, as well as the New York Human Rights Law, Article 23-A of the New York State Correction Law, and the New York State Fair Credit Reporting Act. *Id.* ¶¶ 1-2.  The Title VII claims were based on allegations that NTT's policy had a disparate impact on Black applicants to NTT, denying them jobs at a much higher rate than white applicants.  *Id.* ¶ 6.  In support of these allegations, the complaint presented data from the FBI, the U.S. Census Bureau, and the Prison Policy Initiative showing that Black people in the United States are arrested and incarcerated at rates far exceeding those of white people, even though Black people make up only 13% of the overall population.  *Id.* ¶¶ 52-53.

Shortly after Plaintiffs filed the complaint, NTT moved for a dismissal with prejudice, arguing that Plaintiffs had failed to state a claim under Title VII and that the Court should decline to exercise supplemental jurisdiction over the state law claims (among other arguments). ECF No. 9.  Plaintiffs opposed, ECF No. 11, and NTT replied, ECF No. 13.  On July 18, 2019, the Court granted NTT's motion to dismiss on the basis that "general statistics are inadequate to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions."  ECF No. 27 at 6-7.  The following day, the

3

Court entered judgment in favor of NTT.  ECF No. 28.  Plaintiffs subsequently appealed to the Second Circuit.  ECF No. 29.

### B.    Appeal

On appeal, the Second Circuit affirmed 2-1 the decision of this Court, holding that Plaintiffs' complaint "set forth no allegations plausibly suggesting that the company's hiring policy has a disparate impact on African Americans within the relevant hiring pool."  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 205 (2d Cir. 2020).  The panel noted that, at the complaint stage, a plaintiff must only "assert [enough] nonconclusory factual matter . . . to nudge [her] claim[ ] across the line from conceivable to plausible to proceed."  *Id*. at 208 (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).  However, it held that the statistics presented in Plaintiffs' complaint did not meet this burden, because they did not "focus on the disparity between appropriate comparator groups," *id*. at 210, and because it was "error . . . to simply presume that population-level statistics will accurately describe subgroups of that population," *id*. at 211.  This concern was particularly significant in this action because "Plaintiffs' claim concerns hiring policies governing what Plaintiffs allege to be skilled positions."  *Id*.  "After all," the court stated, "it is not much of a stretch to imagine that arrest and conviction rates are negatively correlated with education (at least to some degree)."  *Id*. at 212.

### C.    Proceedings *En Banc*

Following the issuance of the Second Circuit's opinion, Plaintiffs petitioned for rehearing *en banc*.  In support of that petition, *amici curiae* Dr. Megan C. Kurlychek, Dr. Ojmarrh Mitchell, and Dr. Christopher J. Uggen[3] submitted a brief that analyzed available research on the

---

[3]    Dr. Kurlychek is a professor at Pennsylvania State University and Associate Director of the Penn State Criminal Justice Research Center.  2d Cir., ECF No. 146, 1-2.  Dr. Mitchell is an associate professor at the School of Criminology and Criminal Justice at Arizona State

disparate impact of criminal records by race, in which they concluded that "[t]here are no available statistics to show that racial disparities in criminal conviction rates decrease, much less disappear, with increased education." 2d Cir., ECF No. 146, 8-9. Rather, *amici* reported, Black men with some college education are *seven times* more likely to be incarcerated than white men of the same educational level, which is consistent with the racial disparities in incarceration rates at lower levels of education. *Id*. at 9. *Amici* noted that these disparities are driven in large part by systemic differences in how Black people interact with the criminal justice system. *Id*. For example, Black drivers are much more likely to be pulled over for minor violations, and Black people are six times more likely to be targeted by a stop-and-frisk. *Id*. at 9-10.

On February 23, 2021, the Second Circuit denied the *en banc* petition in an order that was accompanied by a concurrence joined by five Second Circuit judges, and by three dissents—one by Judge Chin, one by Judge Pooler, and one by Judge Lohier—each of which were joined by either four or five of their colleagues. *See Mandala*, 988 F.3d 664. The concurrence emphasized that the majority opinion reflected a narrow application of "the plausibility pleading standard that has been the law of this Circuit for more than a decade" to the facts of this case. *Id*. at 665. It also acknowledged that, "at the pleading stage, a plaintiff need not prove the accuracy of a statistical study's findings or the rigor of its methodology; he need only generally allege the facts that, accepted as true, make his alleged injury plausible." *Id.* at 666 (citation omitted). In the current case, that these facts could "have taken the form of additional national statistics indicating that, even as education levels increase, racial disparities between conviction rates

---

University. *Id*. at 3. Dr. Uggen is Regents Professor, Martindale Chair, and Distinguished McKnight Professor in Sociology, Law, and Public Affairs at the University of Minnesota. *Id*. at 3-4. All three have been published in leading criminology journals and are regarded as experts in the field. *Id*. at 1-4.

remain.  *Id*. at 668.  Citing to the amicus brief, the concurrence noted that these figures "not only

exist but also are publicly available."  *Id*.

In her dissent to the denial of the *en banc* petition, joined by three other Second Circuit

judges, Judge Pooler specifically cited the majority's indication that the statistics provided by

*amici* would be sufficient for Plaintiffs to meet their burden to plead a plausible disparate impact

case under Title VII, and urged Plaintiffs to file a Rule 60 motion seeing to reopen the judgment

and file an amended complaint.  *Id*. at 671.  Judge Pooler also stated that she "hope[d] the district

court will allow such amendments."  *Id*.

## II.     First Amended Complaint

In accordance with Judge Pooler's recommendation, as well as the requirements of Rule

60, Plaintiffs seek leave to file a First Amended Class Action Complaint (*see* **Ex. A**) setting forth

the following allegations.

### A.      NTT's Policies

NTT, a major information technology ("IT") services provider, maintains a policy of

rejecting job applicants who have a criminal history without any individualized analysis of the

specific conviction or their relationship to job requirements.  *See, e.g.*, Ex. A (FAC) ¶¶ 3, 34, 37,

51, 60 & Ex. 1.  Upon information and belief, NTT does not allow or consider evidence of

rehabilitation or a job-specific assessment of the relationship, if any, between an applicant's

criminal record and the job they are hired to perform.  *Id*.  NTT also fails to provide job

applicants with a copy of their criminal history rights under Article 23-A of the New York

Correction Law when it procures criminal history reports on them, in violation of the New York

State Fair Credit Reporting Act.  *Id*. ¶¶ 15, 36.  In their proposed FAC, Plaintiffs have

highlighted the overbroad nature of NTT's policy with the submission of an NTT job posting

advertising a position with the company and stating "No felony arrests.  No drug related arrests."
*See* FAC, Ex. 1.

**B.    George Mandala**

In or around January or February 2017, Plaintiff George Mandala, who is Black, applied
for a job as a Salesforce Developer with NTT.  *Id.* ¶¶ 15, 22.  He had two telephone interviews
with NTT employees, which he completed successfully.  *Id*. ¶ 23.  On March 22, 2017, Mr.
Mandala received an offer letter from NTT, which stated that the management team "was
impressed with [his] credentials and experience" and offered him a position as an Application
Software Development Senior Principal Consultant.  *Id*. ¶¶ 26-27.  Mr. Mandala accepted the
offer a day later, and pursuant to NTT's policy, authorized a background check as a part of the
onboarding process.  *Id*. ¶¶ 28-29.

On March 30, 2017, Mr. Mandala received an email from the recruiter he had been
working with at NTT regarding his background check.  *Id*. ¶ 31.  When he called her, she
informed him that NTT had a blanket policy not to hire people with felonies on their records.  *Id*.
¶ 32.  His job offer was subsequently withdrawn via a letter stating that the decision to withdraw
the offer was "influenced by information contained in a consumer report."  *Id*. ¶ 33.

**C.    Charles Barnett**

Plaintiff Charles Barnett is a Black man who applied to a web developer position with
NTT.  *Id.* ¶¶ 16, 39.   Prior to applying to NTT, he was employed by of the Commonwealth of
Kentucky for approximately four years as an IT specialist and project coordinator.  *Id*. ¶ 50.  In
or around July 2017, NTT reached out to Mr. Barnett regarding an opportunity to contract with
Kentucky as a web developer.  *Id*. ¶ 39.  As a result of NTT's outreach, Mr. Barnett agreed to
have NTT present him to Kentucky for the web developer position.  *Id*. ¶¶ 39-40.

Mr. Barnett's interviews with NTT employees were successful, and he received an offer of employment. *Id*. ¶¶ 41-44. However, after a background check revealed criminal history information, NTT withdrew the offer. *Id*. ¶ 47. NTT subsequently offered Mr. Barnett a "Right-to-Represent" contract for any other open positions, which he accepted. *Id*. ¶ 48. However, after several weeks of applying for other positions with NTT, Mr. Barnett was informed that he was ineligible for any employment via NTT because of his criminal convictions. *Id*. ¶ 49.

### D.    Disparate Impact on Black Applicants.

Available research overwhelmingly shows that Black Americans are arrested and incarcerated for crimes at a much higher rate than white Americans relative to their share of the national population. *Id*. ¶ 52. As of 2010, 40% of U.S. prisoners were Black, although Black people represented only 13% of the national population. *Id*. ¶ 54. Projections based on recent demographic trends suggest that, while only one of every seventeen white men will go to prison in their lifetimes, one in every three Black men will. *Id*.

Plaintiffs' FAC further plausibly alleges that these racial disparities in arrest and conviction rates persist across geographic and demographic groups, and there is no available data to show that Black and white people receive the same treatment at the hands of the criminal justice system in *any* segment of society. *Id*. ¶ 56. The imprisonment risks for white men with some college education, for example, are 0.7%, while the imprisonment risks for comparable Black men are 4.9%—*seven times* higher. *Id.* ¶ 57. Although the chances that an individual will have a criminal record decrease with education level, the racial difference in such records remains static even as education level rises. *Id*. ¶¶ 56-57. These allegations are supported by the well-reasoned conclusions of three experts in relevant fields. *Id.* ¶ 56 & Ex. 2.

### III.    Argument

Although the law places great weight in the finality of judgments, that weight must give way as needed "when appropriate to accomplish justice." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)). Rule 60(b) provides the procedural mechanism to reopen a judgment. *See* C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1489 (3d ed.); *see also Williams*, 659 F.3d at 214. Where plaintiffs seek to amend a complaint post-judgment, Rule 60(b) motions to vacate the judgment are guided by the "liberal spirit" of Rule 15(a), *Williams*, 659 F.3d at 214, which provides that amendment should be "freely give[n] . . . when justice so requires," Rule 15(a)(2). Here, the analysis under Rules 60(b) and 15(a) strongly supports amendment, as the interests of justice are exceptionally strong and the weight of finality is slight. Accordingly, and for the reasons set forth in detail below, the Court should grant Plaintiffs' motion under Rule 60(b)(6) and reopen the judgment to permit them to file their FAC.

### A.    Analysis of Plaintiffs' Motion Is Guided by a "Liberal Spirit" in Favor of Amendment.

Rule 60(b)(6) is a catchall provision that allows courts to reopen the judgment where "there are extraordinary circumstances justifying relief." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). "The Court of Appeals for the Second Circuit has declared that Rule 60(b)(6) 'confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case.'" *Hamilton v. Lee*, 188 F. Supp. 3d 221, 239 (E.D.N.Y. 2016) (quoting *Marrero*, 374 F.3d at 55). "[I]n a proper case, [it] is to be 'liberally applied,'" *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) (quoting 7 Moore's Federal Practice P 60.27(2), at 352 (2d ed.rev. 1975)), and "as such, 'all doubts should be resolved in favor of those seeking relief,'" *Jolin v. Casto*, 238

F.R.D. 48, 50 (D. Conn. 2006) (quoting *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983)); *see also United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (Rule 60 "should be liberally construed when substantial justice will thus be served." (quoting *Matarese*, 801 F.2d at 106)).

Courts in the Second Circuit analyze post-judgment motions to amend under Rule 60(b)(6) in light of *Foman v. Davis*, in which the Supreme Court held that "[i]f the underlying facts or circumstances relief upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." 371 U.S. 178, 182 (1962); *see also Williams*, 659 F.3d at 212.

*Foman* analyzed a motion to reopen the judgment under Rule 59(a) in light of the liberal amendment standard set forth in Rule 15(a), which it used as a basis to conclude that leave to amend should routinely be granted "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. at 182; *see also Williams*, 659 F.3d at 212 (reflecting understanding that "[i]n the ordinary course, [] Federal Rule[] of Civil Procedure [15(a)] provide[s] that courts 'should freely give leave' to amend a complaint 'when justice so requires'"); *cf. Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 907 F.2d 1408, 1417 (3d Cir. 1990) ("[C]ourts have held that grants for leave to amend complaints should be routinely granted to plaintiffs, even after judgments of dismissal have been entered against them, if the appropriate standard for leave to amend under Fed. R. Civ. P. 15(a) is satisfied.").[4]

---

[4] Citing *Foman*, 371 U.S. at 182; *Adams v. Gould, Inc.*, 739 F.2d 858, 864, 867–69 (3d Cir. 1984); *District Council 47 v. Bradley*, 795 F.2d 310, 321 (3d Cir. 1986) (J. Aldisert, dissenting) ("Although a plaintiff loses the right to amend the complaint when judgment is entered on a

"This permissive standard is consistent with [the Second Circuit's] 'strong preference' for resolving disputes on the merits." *Williams*, 659 F.3d at 212 (quoting *Green*, 420 F.3d at 104).

To be sure, where a party seeks amendment after final judgment, the "liberality" in interpreting Rule 60(b)(6) "must be tempered by considerations of finality." *Williams*, 659 F.3d at 212. And yet, "[c]onsiderations of finality do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment." *Id*. at 213; *see also Soojung Jang v. Trustees of St. Johnsbury Acad.*, No. 17 Civ. 162, 2018 WL 4941784, at *3 (D. Vt. Oct. 12, 2018), *aff'd*, 771 F. App'x 86 (2d Cir. 2019) ("[T]he Second Circuit has made clear that 'considerations of finality do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment.'"). Rather, the Second Circuit has cautioned courts to avoid "a standard that overemphasize[s] considerations of finality at the expense of the liberal amendment policy embodied in the Federal Rules of Civil Procedure." *Williams*, 659 F.3d at 210.

The "liberal spirit of Rule 15" is at its strongest on post-judgment motions, where, as here, the plaintiffs have not previously sought to amend the complaint. *See Metzler Inv. GmbH*, 970 F.3d at 146 ("In the post-judgment context, we have indeed given 'due regard' to 'the liberal spirit of Rule 15' by ensuring plaintiffs at least one opportunity to replead." (quoting *Williams*, 659 F.3d at 213-14)). Additionally, courts evaluating such motions often focus their analysis on whether amendment would be futile. *See, e.g.*, *Nat'l Petrochemical Co. of Iran v. M/T Stolt*

---

motion to dismiss, 'the district court is enjoined to "freely" permit amendment as a matter of discretion.'" (quoting from *Kauffman v. Moss*, 420 F.2d 1270, 1276 (3d Cir. 1970)); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-600 (5th Cir.1981); *Wilburn v. Pepsi-Cola Bottling Co.*, 492 F.2d 1288, 1290 (8th Cir. 1974); *Parks v. "Mr. Ford"*, 68 F.R.D. 305, 308–09 (E.D. Pa. 1975). *See generally* 6 Federal Practice and Procedure, § 1488 (1990).

*Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) ("[I]n view of the provision in rule 15(a) that leave [to amend] shall be freely given when justice so requires, it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." (internal citation and quotation marks omitted)); *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 248 (D. Conn. 2014) ("[T]he merits of the proposed amendment should factor into the Court's calculus in certain circumstances.").

### B.    Because No *Foman* Factors Are Present, Amendment Should Be Granted.

Here, the *Foman* factors, as interpreted through Rule 60, make clear that Plaintiffs should be given leave to amend their complaint.

<u>First</u>, Plaintiffs have not unduly delayed in seeking to amend their complaint.  As the case history on appeal makes clear, Plaintiffs diligently pursued their claims both in the trial court and on appeal, and have made this motion less than a month after the March 2, 2021 issuance of the mandate on appeal.[5]

<u>Second</u>, Plaintiffs have consistently acted in good faith, and have not acted with dilatory motive.  They vigorously litigated their case, timely appealed, and have moved to reopen this case promptly.

Plaintiffs also have acted diligently to clarify the application of the Title VII pleading standards to this case.  In a divided opinion on appeal, the Second Circuit explained what evidence Plaintiffs were required to plead to state a plausible claim for relief under Title VII, *see*

---

[5]    However, even if the Court were to find some delay here, in the Second Circuit, "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  Indeed, *Foman* "cannot be reconciled with the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered."  *Williams*, 659 F.3d at 214 (reversing denial of post-judgment motion for leave to replead to remedy pleading defects).

*Mandala*, 975 F.3d at 220, and then further clarified that standard in a concurrence to the denial of Plaintiffs' *en banc* petition, *see Mandala*, 988 F.3d at 669. That standard, as applied to the particular facts of this case, was previously unclear, as illustrated by the panel dissent and then by the three dissents accompanying the *en* banc review, all of which opined that the majority's opinion had applied an erroneously high pleading standard to Plaintiffs' claims and emphasized the importance of allowing such claims to proceed to a determination on the merits. *See Mandala*, 988 F.3d at 669 (Pooler, J., dissenting from denial of *en banc*) ("[T]his panel opinion has imposed a heightened standard for employment discrimination against the instructions of the Supreme Court."); *id*. at 673 (Chin, J. dissenting from denial of *en banc*) (arguing that the majority's decision imposes "a heightened pleading standard" that "weakens Title VII, and threatens to shut the courthouse door to those who may have valid disparate impact claims (internal citation, quotation marks and alteration omitted)); *id*. at 683 (Lohier, J., dissenting from denial of *en banc*) ("When, as here, the standard for pleadings is raised arbitrarily high or subjected almost entirely to the uneven vagaries of judicial 'experience' and 'common sense,' then those substantive rights that reside just behind the door wither and die.").[6]

Third, Plaintiffs have not previously amended their complaint, and were not provided with the opportunity to do so prior to the entry of judgment. *See Metzler Inv. GmbH*, 970 F.3d at 142 (holding that "'the liberal spirit of Rule 15' . . . ensur[es] plaintiffs at least one opportunity to replead" (quoting *Williams*, 659 F.3d at 213-14)).

Fourth, NTT faces no undue prejudice from amendment. Courts evaluating prejudice consider factors such as "whether the amendment would '(i) require the opponent to expend

---

[6]    *See also id.* at 680 n.8 (Chin, J., dissenting from denial of *en banc*) ("There is, of course, a lack of precision as to what is 'plausible' for purposes of Federal Rule of Procedure 12(b)(6), and different panels of this Court have interpreted the standard in different ways.").

significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay

the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another

jurisdiction.'" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016)

(quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)).  Here, since this

action has not yet made it past the motion to dismiss stage, none of these factors are present.  No

discovery has taken place and no trial date has been set.  And, although allowing amendment

would permit this action to proceed on the merits in accordance with the strong public policy of

the Second Circuit, "the possibility 'that an amendment will require the expenditure of additional

time, effort, or money' [does] not constitute 'undue prejudice'" sufficient to deny amendment.

*Id*. at 455.  Thus, a mere desire to escape scrutiny of its practices on the merits is not a legitimate

basis for NTT to oppose this motion.

Fifth, and most importantly, amendment is not futile—and in fact, this motion presents

the highly unusual circumstance that a majority of the active judges on the Second Circuit have

already opined that the specific facts pleaded in Plaintiffs' proposed First Amended Class Action

Complaint would plausibly state a claim for disparate impact discrimination under Title VII.  As

set forth above, both the concurrence to the denial of Plaintiffs' *en banc* petition, authored by

two judges and joined by an additional three, *and* the dissent to the denial of Plaintiffs' *en banc*

petition, authored by Judge Pooler and joined by three others, agree that statistics showing that

differences in conviction rates between Black and white individuals persist regardless of

education level are sufficient to state a claim under the operative Second Circuit standards.

Plaintiffs should have the opportunity to do so.  *See Foman*, 371 U.S. at 182 ("If the underlying

facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be

afforded an opportunity to test his claim on the merits."); *Williams*, 659 F.3d at 215; *Wilburn*,

492 F.2d at 1290 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *cf*. *Jolin*, 238 F.R.D. at 51 (on a Rule 60 motion, "plaintiffs need not conclusively establish that they will prevail on their claim, so long as it is sufficiently grounded in law so as to give the fact finder some determination to make.")

### C. The Interests of Justice Require this Court to Reopen the Judgment Under Rule 60(b)(6).

Even beyond the considerations of Rule 15, this case presents precisely the type of "extraordinary circumstances" that merit vacating the judgment under Rule 60(b)(6). *See Nemaizer*, 793 F.2d at 63. Many of these extraordinary circumstances are set forth above: The proceedings at the Second Circuit provided much-needed clarity and engendered numerous dissents authored by three separate judges expressing concerns that Plaintiffs had not had a full and fair opportunity to plead their claims at the district court. These concerns led one judge, joined by three of her colleagues, to encourage Plaintiffs to make this motion so that their claims can be heard on the merits.[7] *See Kenning v. Berryhill*, No. 16 Civ. 6778, 2018 WL 1640598, at *2 (W.D.N.Y. Apr. 5, 2018) ("Balancing the equities, and keeping in mind that the Second Circuit suggested to the parties a combined Rule 60(b)/Rule 62.1(a) motion (which is unopposed by Defendant) . . . , the Court finds that this is a proper case to rely on Rule 60(b)(6) to accomplish justice.").

Further, no other reasons prevent or limit Rule 60(b)(6) relief, because this motion was timely filed, and no prejudice to NTT will result if it is granted. Like with Rule 15(a), Rule 60(b)(6) considers whether a motion to vacate the judgment is filed "within a reasonable time."

---

[7]    The concurrence judges also did not weigh in on Judge Pooler's suggestion or provide any argument against Plaintiffs seeking Rule 60 relief through this motion.

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (citing Rule 60(c)).  This

determination must be made "in light of all attendant circumstances, intervening rights, . . .

prejudice to the adverse party, the commanding equities of the case, the general desirability that

judgments be final and other relevant factors . . ."  *In re Krautheimer*, 210 B.R. 37, 45-46

(Bankr. S.D.N.Y. 1997) (quoting 7 *Moore's Federal Practice, supra,* ¶ 60.27[3], at 60-305, 60-

306).  As discussed above, here the attendant circumstances support granting Plaintiffs' motion.

 Finally, as the *en banc* dissents in this case emphasized, allowing Plaintiffs the

opportunity to amend their complaint is particularly appropriate because of the important

interests protected by Title VII.  Judge Pooler described Title VII as "one of the most important

pieces of legislation in this country's history," which "struck a body blow to the race-based caste

system that defined this country for centuries."  *Mandala*, 988 F.3d at 669, 672 (Pooler, J.,

dissenting from *en banc*).  Similarly, Judge Chin noted that the Second Circuit "has long

recognized the importance of Title VII and the rights it protects."  *Id*. at 682 (Chin, J., dissenting

from *en banc*).  The Supreme Court, too, has recognized Title VII as a means "to achieve

equality of employment opportunities and remove barriers that have operated in the past to favor

an identifiable group of white employees over other employees."  *Albemarle Paper Co. v.

Moody*, 422 U.S. 405, 417 (1975) (*quoting Griggs v. Duke Power Co*., 401 U.S. 424, 429-430

(1971)); *see also Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S.

412, 418 (1978) (Title VII "is the chosen instrument of Congress to vindicate 'a policy that

Congress considered of the highest priority.'").

 In light of the strong public policy interests in adequate enforcement of Title VII, along

with the Second Circuit's strong preference for deciding cases on the merits, granting the Rule

60(b)(6) motion and allowing Plaintiffs to amend their complaint is appropriate to accomplish

justice and consistent with the discretion provided to courts under Rule 60(b)(6).  *See, e.g.*,

*United States v. Hayes Int'l Corp.*, 456 F.2d 112, 121 (5th Cir. 1972) (ordering district court to

consider issue not raised until post-trial stage of litigation because "broad aims of Title VII

require that th[e] issue be developed and determined").

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court vacate the final judgment

in this action pursuant to Rule 60(b)(6) and allow them to file their First Amended Class Action

Complaint.

Dated: March 31, 2021
       New York, New York

Respectfully submitted,

By: /s/ Christopher M. McNerney
**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
E-mail: om@outtengolden.com
E-mail: cmcnerney@outtengolden.com

Rachel Williams Dempsey*
One California Street, Ste 1250
San Francisco, CA 94111
Telephone: (415) 638-8800
E-mail: rdempsey@outtengolden.com

**NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
40 Rector Street, Fifth Floor
New York, NY 10006
Telephone: (212) 965-2200
E-mail: rkleinman@naacpldf.org

Catherine Meza*
700 14th Street, NW, Suite 600

17

Washington, DC 20005
Telephone: (202) 682-1300
E-mail: cmeza@naacpldf.org

*pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Putative Classes*

18