UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

NTT DATA, INC.,

        Defendant.

Case No. 6:18-cv-06591-CJS

---

**DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE JUDGMENT**

LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
(585) 203-3400
Jacqueline Phipps Polito, Esq.
Jessica F. Pizzutelli, Esq.
Abigail L. Giarrusso, Esq.

*Attorneys for Defendant
   NTT DATA, Inc.*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND ....................................... 2

ARGUMENT ........................................................................................................ 6

   I.   PLAINTIFFS' MOTION TO VACATE PURSUANT TO FEDERAL RULE OF CIVIL
      PROCEDURE 60(B)(6) MUST BE DENIED ................................................ 6

     A.   Plaintiffs' Motion Is Untimely .......................................................... 7

     B.   Plaintiffs Have Not Demonstrated, and Cannot Demonstrate, that Exceptional
        Circumstances Justify Vacating a Judgment that the Second Circuit Affirmed ......... 12

     C.   Even If the Court Considers Plaintiffs' Proposed Amended Complaint, Their Motion
        Should Be Denied ........................................................................ 15

CONCLUSION .................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abate v. Fifth Third Bank*,
    No. 13-CV-9078 (VSB), 2019 WL 2409792 (S.D.N.Y. June 6, 2019)..................6, 12, 13, 15

*Anthony v. City of New York*,
    No. 00 CIV. 4688 (DLC), 2002 WL 731719 (S.D.N.Y. Apr. 25, 2002) ..........................12, 19

*Ashcroft v. Iqbal*
    (556 U.S. 662 (2009)) ........................................................................................................4

*Axar Master Fund, Ltd. v. Bedford*,
    806 F. App'x 35 (2d Cir. 2020) ....................................................................................7, 16

*Berman v. Parco*,
    986 F. Supp. 195 (S.D.N.Y. 1997).......................................................................................18

*Brook v. Simon*,
    No. 17 CIV. 6435 (GBD), 2018 WL 6518855 (S.D.N.Y. Nov. 27, 2018)..............................19

*Brooks v. Doe Fund, Inc.*,
    No. 17CV3626PKCLB, 2020 WL 5706451 (E.D.N.Y. Sept. 24, 2020) ..........................15, 19

*In re Buckskin Realty, Inc.*,
    No. 19-3828-BK, 2021 WL 1081480 (2d Cir. Mar. 22, 2021)...........................................6, 16

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122 (2d Cir. 2008)........................................................................................16, 19

*DePasquale v. DePasquale*,
    No. 12-CV-2564 RRM MDG, 2013 WL 4010214 (E.D.N.Y. Aug. 5, 2013),
    *aff'd*, 568 F. App'x 55 (2d Cir. 2014)....................................................................................12

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    466 F. Supp. 2d 560 (S.D.N.Y. 2006)...............................................................................8, 11

*EEOC v. Freeman*,
    961 F. Supp. 2d 783 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th Cir. 2015)....................21

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
    No. 10-CV-696 (KAM)(SMG), 2012 WL 6617361 (E.D.N.Y. Dec. 19, 2012)....................12

*Freeman v. Rochester Psychiatric Ctr.*,
    No. 6:12-CV-06045 (MAT), 2018 WL 1244479 (W.D.N.Y. Mar. 9, 2018)............................7

# TABLE OF AUTHORITIES (CONT.)

**Page(s)**

*Hobbs v. Emas Properties, Inc.*,
No. 17-CV-0948 (CM), 2019 WL 2003990 (S.D.N.Y. May 3, 2019) ..................................8, 9

*Hughes v. Elmira Coll.*,
584 F. Supp. 2d 588 (W.D.N.Y. 2008) ..................................................................................17

*Knife Rights, Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015)..................................................................................................16

*Kramer v. Gates*,
481 F.3d 788 (D.C. Cir. 2007)..............................................................................................12

*Lucente v. International Bus. Machs. Corp.*,
310 F.3d 243 (2d Cir. 2002)..................................................................................................19

*Miller v. Norton*,
No. 04-CV-3223 (CBA), 2008 WL 1902233 (E.D.N.Y. Apr. 28, 2008), *aff'd
sub nom. Miller v. Kempthorne*, 357 F. App'x 384 (2d Cir. 2009) ..........................................6

*Mirkin v. XOOM Energy, LLC*,
No. 18-CV-2949, 2018 WL 6381456 (E.D.N.Y. Dec. 6, 2018)..............................................16

*N.Y. Mercantile Exch., Inc. v. Intercontinental Exchange, Inc.*,
497 F.3d 109 (2d Cir. 2007)..................................................................................................22

*National Petrochemical Co. of Iran v. M/T Stolt Sheaf*,
930 F.2d 240 (2d Cir. 1991)....................................................................................................6

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986).........................................................................................7, 12, 14

*In re Optionable Sec. Litig.*,
No. 07 CIV. 3753 (PAC), 2009 WL 1653552 (S.D.N.Y. June 15, 2009) ................................7

*PRC Harris, Inc. v. Boeing Co.*,
700 F.2d 894 (2d Cir. 1983)..............................................................................................7, 8, 9

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990)..............................................................................................9, 16

*Twersky v. Yeshiva Univ.*,
No. 13 CV 4679 JGK, 2015 WL 4111837 (S.D.N.Y. July 8, 2015) .........................................8

*United States v. Int'l Brotherhood of Teamsters*,
247 F.3d 370 (2d Cir. 2001).....................................................................................................7

## TABLE OF AUTHORITIES (CONT.)

**Page(s)**

*Williams v. Citigroup Inc.*
(659 F.3d 208 (2d Cir. 2011)) ............................................................................9, 10

**Statutes**

28 U.S.C. § 1367(c)(3) ........................................................................................22

42 U.S.C. § 2000e-5(f)(1) ....................................................................................17

**Other Authorities**

FEDERAL RULE OF CIVIL PROCEDURE 60(B)(6) ......................................................6

W.D.N.Y. Local Rule 15(b) .................................................................................15

Defendant NTT DATA, Inc. ("Defendant") respectfully submits this Memorandum of Law in Opposition to Plaintiffs George Mandala's and Charles Barnett's (collectively, "Plaintiffs") Motion to Vacate Judgment (Dkt. 35).

## PRELIMINARY STATEMENT

This Court granted Defendant's Motion to Dismiss almost two years ago, final judgment was entered, and the case was closed. Plaintiffs did not move to vacate the judgment or to file an amended complaint at that time. Instead, Plaintiffs filed an appeal to the Second Circuit. The Second Circuit affirmed this Court's Decision and Order dismissing Plaintiffs' claims. Thereafter, Plaintiffs still did not move to vacate the judgment of this Court or to file an amended complaint. Rather, Plaintiffs filed a Petition for *En Banc* and Panel Rehearing. The Second Circuit denied Plaintiffs' Petition. Having twice failed to obtain relief from the Second Circuit, Plaintiffs now make this belated request to this Court for the extraordinary relief of vacating the Court's final judgment, in a last ditch effort to revive their fatally deficient and now time barred Title VII disparate impact claim.

Enough is enough. Plaintiffs' request should be denied for several reasons. Initially, Plaintiffs' Motion is untimely because it was not filed within a reasonable time period. In addition, there has been no change in circumstances, there is no relevant and necessary information that was previously unavailable to Plaintiffs, and there are no other exceptional circumstances that justify the requested relief. Plaintiffs simply seek a third bite at the apple (and arguably, fourth and fifth, when considering the corresponding state court actions) after a series of losses—a palpably improper use of Rule 60(b) and this Court's resources. In short, Plaintiffs' Motion fails to identify any proper basis for vacating the judgment that followed this Court's well-reasoned Decision and Order, which was affirmed by the Second Circuit. Even disregarding these dispositive reasons for

denying Plaintiffs' Motion, nothing in the proposed Amended Complaint supports a different outcome under Rule 15(a), let alone under Rule 60(b). For these reasons and those set forth below, Plaintiffs' Motion should be denied.

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The following "facts" are assumed to be true because this case was dismissed pursuant to Defendant's Motion to Dismiss. According to the Complaint,[1] "[i]n or around January or February of 2017," Plaintiff George Mandala ("Mandala"), who is African American and lives in Rochester, New York, applied for a job as a Salesforce Developer with Defendant. *See* Dkt. 1, ¶¶ 15, 16, 23. On March 22, 2017, Defendant sent Mandala an offer letter for a position as an Application Software Development Senior Principal Consultant, and Mandala accepted the position. *See id.*, ¶ 27, 29. After Defendant conducted a routine background check with Mandala's permission, a recruiter allegedly informed Mandala that Defendant had a purported policy not to hire persons with felony convictions (a fact which Defendant disputes but which must be accepted as true at this stage of the proceeding) on or about March 30, 2017. *See id.*, ¶ 33. Soon thereafter, Mandala received a letter from Defendant dated April 6, 2017, which allegedly stated that Defendant "was

---

[1] This section of this Memorandum of Law includes citations to Plaintiffs' initial Complaint dated August 15, 2018 (Dkt. 1), which was dismissed on July 18, 2019. In that Complaint, Plaintiffs made clear that Mandala and Barnett had technical expertise and a high level of education. Specifically, Plaintiffs alleged that during his interviews, Mandala answered technical questions "competently, based on his years of applicable work experience," and his offer letter stated that Defendant's "management team was impressed with [his] credentials and experience." *See* Dkt. 1 ¶¶ 24, 27. In addition, Plaintiffs alleged that Barnett had "achieved a Masters of Science in Computer Science Technology" before applying for the position with Defendant. *See id.*, ¶ 50. Notably, Plaintiffs removed the allegations concerning their technical knowledge and high level of education from the proposed Amended Complaint (*see* Pl. Mem., Ex. A), showcasing their attempt to plead (by omission!) around this Court's decision dismissing the Complaint and the Second Circuit's affirming opinion, and the total irrelevance of Plaintiffs' statistic concerning groups with "some college education" (and not technical expertise, years of experience and credentials, and higher education, which is at issue here).

withdrawing Mr. Mandala's job offer, and that 'this action was influenced by information contained in a consumer report[.]'"  *See id.*, ¶ 34.

Separately, Plaintiff Charles Barnett ("Barnett"), who is African American and lives in Frankfort, Kentucky, was "contacted" by Defendant regarding a "web developer" position in or around July 2017.  *See id.*, ¶¶ 17, 18, 38.  After an in-person interview, Barnett received an offer of employment, which he accepted.  *See id.*, ¶ 43.  Barnett then authorized a background check. *See id.*, ¶ 44.  After Defendant conducted the check, Barnett alleges that he was advised that his offer of employment was withdrawn because of his felony convictions.  *See id.*, ¶¶ 44-48.

On August 15, 2018, Plaintiffs filed a nationwide putative class action Complaint against Defendant in the U.S. District Court for the Western District of New York.  *See id.*  In the Complaint, Plaintiffs asserted one federal claim and two state law claims.  *See id.*, ¶¶ 105-124.  For the federal claim, Plaintiffs alleged on behalf of themselves and "the Title VII Disparate Impact Class," that Defendant's alleged "policy and practice of denying employment opportunities to individuals with criminal convictions had a disparate impact on African Americans," in violation of Title VII.  *See id.*, ¶ 110.  In support of their Title VII disparate impact claim, Plaintiffs asserted that "African Americans are arrested and incarcerated for crimes at higher rates than Whites, relative to their share of the national population" and cited to statistics addressing U.S. prisoners and national incarceration rates.  *See id.*, ¶¶ 52-54.

On November 13, 2018, Defendant filed a Motion to Dismiss the Complaint, arguing, in part, that the Court should dismiss Plaintiffs' Title VII disparate impact claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. 9.  In its accompanying Memorandum of Law, Defendant explained that Plaintiffs failed to state a plausible claim for relief because they relied on irrelevant general population statistics and "allege[d] no facts or statistics to support that Defendant's alleged

3

policy actually had a significant adverse impact as applied[.]"  *See* Dkt. 9-3 at 9-10.  Plaintiffs never moved for leave to amend the Complaint to remedy the pleading defects in their Title VII claims in response, even as an alternative argument.  *See* Dkt. 11.  On June 27, 2019, the Court heard oral argument on the Motion to Dismiss.  *See* Declaration of Jacqueline Phipps Polito, Esq. ("Polito Decl.) ¶ 5, filed concurrently herewith.  During oral argument, the relevant pleading standard under *Ashcroft v. Iqbal* (556 U.S. 662 (2009)) and Plaintiffs' improper reliance on general population statistics were discussed at length.  *Id.,* ¶ 5, Ex. 1 at 2-16.

On July 18, 2019, this Court issued a Decision and Order granting Defendant's Motion to Dismiss.  *See* Dkt. 27.  The Court held that Plaintiffs did not meet their burden of pleading a plausible Title VII claim.  *See id.*  Specifically, the Court explained that "Plaintiffs have not alleged facts showing that Defendant's facially-neutral policy of not hiring convicted felons is related to the statistical disparity in the numbers of African-Americans arrested and convicted of crimes in proportion to their representative numbers in the pool of qualified applicants for Defendant's positions."  *See id.* at 6-7.  The Court reasoned: "[G]eneral statistics are inadequate to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions."  *See id.*  The Court further declined to exercise jurisdiction over Plaintiffs' state law claims because it dismissed the only federal claim in this case.  *See id.* Following this Court's Decision and Order and the entry of judgment, Plaintiffs did *not* pursue leave to amend the pleadings by filing a motion under Federal Rule of Civil Procedure 59(e) or 60(b).  Polito Decl. ¶ 10.  Instead, on July 24, 2019, Plaintiffs filed a Notice of Appeal to the Second Circuit.  *See* Dkt. 29.

Shortly thereafter, on August 16, 2019, Mandala filed a separate putative class action complaint in New York state court, in which he asserted a disparate impact discrimination claim

4

under the New York Human Rights Law and the same state law claims for which this Court declined to exercise supplemental jurisdiction. Polito Decl. ¶ 26, Ex. 9. Later, after the Second Circuit issued its Order denying the *en banc* rehearing in this case, Plaintiffs filed an Amended Complaint in state court, asserting the same claims. *Id.* ¶ 27, Ex. 10.

In the meantime, after the parties fully briefed Plaintiffs' appeal in the federal action and appeared for oral argument, the Second Circuit issued its opinion affirming this Court's judgment dismissing the Complaint on September 21, 2020. *Id.* ¶ 12, Ex. 2. In its opinion, the Second Circuit agreed with the District Court that Plaintiffs failed to state a plausible claim, stating: "Plaintiffs provide no allegations to demonstrate that national arrest or incarceration statistics are in any way representative of the pool of potential applicants qualified for a position at NTT." *Id.*, Ex. 2, at 17.

Following the Second Circuit's decision, Plaintiffs still did *not* pursue leave to amend their deficient pleading by filing a motion with this Court under Federal Rule of Civil Procedure 59(e) or 60(b). *Id.* ¶ 14. Instead, Plaintiffs filed a Petition for *En Banc* and Panel Rehearing. *Id.* ¶ 15, Ex. 3. For the first time, Plaintiffs requested, in the alternative, that the panel rehear and remand the case to the District Court to permit them to amend the Complaint in their Petition. *Id.*, Ex. 3 at 16-17. On February 23, 2021, the Second Circuit issued its Order denying Plaintiffs' request for a rehearing *en banc*, which, in part, effectively *denied* Plaintiffs' request for a rehearing to *remand the case back to this Court for the opportunity to replead*. *Id.* ¶¶ 17-18, Ex. 4.

Now, over two and a half years since filing the Complaint and after three losses, in a last ditch effort to save their deficient pleading, Plaintiffs request that the Court vacate the final judgment so that they may obtain leave to amend the original Complaint in this Court. At the same time, Mandala has already filed an Amended Complaint in New York state court, and is

simultaneously pursing the exact same state law claims that he now purports to assert in his proposed Amended Complaint (filed as Exhibit A to Plaintiffs' papers in support of the instant Motion). *Id.* ¶ 28. For the reasons that follow, Plaintiffs' Motion should be denied.

## ARGUMENT

**I.    PLAINTIFFS' MOTION TO VACATE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(6) MUST BE DENIED**

Following the entry of a final judgment, "filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to FED. R. CIV. P. 59(e) or 60(b)." *National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991); *see also In re Buckskin Realty, Inc.*, No. 19-3828-BK, 2021 WL 1081480, at *2 (2d Cir. Mar. 22, 2021) ("[A] party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside."). "[T]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *National Petrochemical*, 930 F.2d at 245; *Abate v. Fifth Third Bank*, No. 13-CV-9078 (VSB), 2019 WL 2409792, at *3–4 (S.D.N.Y. June 6, 2019) ("These rules are meant to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'").

In their Motion papers, Plaintiffs request that the Court vacate the final judgment in this action pursuant to Rule 60(b)(6). *See* Pl. Mem. at 6. Rule 60(b)(6) is commonly referred to as the Rule's "catch-all" provision, and provides that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason that justifies relief." FED. R. CIV. P. 60(b)(6). Although broadly worded, Rule 60(b)(6) has "been narrowly cabined by the precedent of the Second Circuit." *Miller v. Norton*, No. 04-CV-3223 (CBA), 2008 WL 1902233, at *1

(E.D.N.Y. Apr. 28, 2008), *aff'd sub nom. Miller v. Kempthorne*, 357 F. App'x 384 (2d Cir. 2009) (internal citations omitted).

It is well established that "[s]ince [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir. 1986); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir. 1983) (citing cases); *accord Freeman v. Rochester Psychiatric Ctr.,* No. 6:12-CV-06045 (MAT), 2018 WL 1244479, at *1 (W.D.N.Y. Mar. 9, 2018) ("A party seeking relief pursuant to Rule 60(b)(6) is required "to show extraordinary circumstances justifying the reopening of a final judgment."); *In re Optionable Sec. Litig.*, No. 07 CIV. 3753 (PAC), 2009 WL 1653552, at *2 (S.D.N.Y. June 15, 2009) ("Rule 60(b) reconsideration . . . is an extraordinary remedy that works against the interest of finality and should be applied only in exceptional circumstances."). Thus, as the Court of Appeals for the Second Circuit and the District Court for the Western District of New York have acknowledged, "Rule 60(b)(6) motions are disfavored." *Freeman*, 2018 WL 1244479, at *1; *see also United States v. Int'l Brotherhood of Teamsters,* 247 F.3d 370, 391 (2d Cir. 2001).

The burden of proof rests on the movant to demonstrate that exceptional circumstances justifying extraordinary judicial relief exist. *Int'l Brotherhood of Teamsters,* 247 F.3d at 391. When considering a motion under Rule 60(b), courts in the Second Circuit also require that the movant "present 'highly convincing' evidence, 'show good cause for the failure to act sooner,' and show that 'no undue hardship [would] be imposed on other parties.'" *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 40 (2d Cir. 2020) (internal citations omitted). Plaintiffs cannot meet this exacting and extraordinarily high standard.

### A.    Plaintiffs' Motion Is Untimely

To avoid being dismissed as time-barred, a Rule 60(b) motion must be filed within a reasonable time period. *PRC Harris,* 700 F.2d at 897. When determining whether such a motion

is timely, courts are required to "scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." *Id.* (citing *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648 (2d Cir. 1979)); *Hobbs v. Emas Properties, Inc.*, No. 17-CV-0948 (CM), 2019 WL 2003990, at *2 (S.D.N.Y. May 3, 2019). "Notably, a Rule 60(b)(6) motion requires 'extraordinary circumstances,' which 'typically do not exist where the applicant fails to move for relief promptly.'" *Hobbs,* 2019 WL 2003990, at *2.

Indeed, a motion under Rule 60(b) generally must be made ***before an appeal***. *Twersky v. Yeshiva Univ.*, No. 13 CV 4679 JGK, 2015 WL 4111837, at *2 (S.D.N.Y. July 8, 2015); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 466 F. Supp. 2d 560, 562–63 (S.D.N.Y. 2006). In limited circumstances, a district court may consider a Rule 60(b) motion following an appeal; however, a request for relief from final judgment after an appeal should be denied absent some significant change in circumstances. *See Twersky*, 2015 WL 4111837, at *2 (citing *DeWeerth v. Baldinger,* 38 F.3d 1266, 1271 (2d Cir. 1994)); *see also Duane Reade*, 466 F. Supp. 2d at 562–63.

Contrary to Plaintiffs' unsupported contention that they "have not unduly delayed in seeking to amend their [C]omplaint" (*see* Pl. Mem. at 12), Plaintiffs failed to promptly seek leave to vacate the final judgment and amend their Complaint. The District Court issued its Decision and Order granting Defendant's Motion to Dismiss on July 18, 2019. *See* Dkt. 27. In its Decision and Order, this Court unequivocally explained:

> Plaintiffs have not alleged facts showing that Defendant's facially-neutral policy of not hiring convicted felons is related to the statistical disparity in the numbers of African-Americans arrested and convicted of crimes in proportion to their representative numbers in the pool of qualified applicants for Defendant's positions… general statistics are inadequate to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions. The Court finds that Plaintiffs have not met their burden of pleading a plausible claim of Title VII disparate impact and grants Defendant's motion.

*Id.* at 6-7.

8

Rather than seeking leave to vacate the judgment and to replead immediately after the Court issued its Decision and Order, Plaintiffs decided to proceed to appeal, and following the Second Circuit's decision affirming this Court's judgment dismissing the Complaint, Plaintiffs decided to file a Petition for *En Banc* and Panel Rehearing. *See* Polito Decl. ¶¶ 10-15. Only after the Second Circuit issued its Order denying Plaintiffs' request for a rehearing *en banc* did Plaintiffs decide to return to this Court in a last ditch effort to seek leave to amend—approximately *one year and eight months* after this Court issued its Decision and Order that put Plaintiffs on explicit notice of the deficiencies in their Complaint. *Id.* ¶ 19. By waiting approximately one year and eight months to file the instant motion, while making a calculated decision to appeal this Court's Decision and Order despite having knowledge of the pleading deficiencies in the Complaint, Plaintiffs failed to comply with Rule 60(b)(6)'s reasonable time requirement. *See, e.g., State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir. 1990) (holding plaintiff's delay of "nineteen months after [defendant] first challenged the applicability of Connecticut law before attempting to plead additional causes of action based on foreign law" was "unreasonably long and apparently lacked a good faith basis"); *PRC Harris*, 700 F.2d at 897 (explaining plaintiff's delay submitting the Rule 60(b) motion was unreasonably long where plaintiff failed to move to amend the judgment for almost one year while otherwise litigating, including filing a notice of appeal); *Hobbs,* 2019 WL 2003990, at *1-2 (holding plaintiff's Rule 60(b)(6)) motion was untimely where plaintiff failed to request such relief for over one year and four months after entry of judgment).

Plaintiffs' effort to downplay the stringent requirements for relief under Rule 60(b)(6) by extensively and repeatedly citing *Williams v. Citigroup Inc.* (659 F.3d 208 (2d Cir. 2011)) is entirely misplaced. Unlike here, in *Williams*, the plaintiff "timely moved for reargument and reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) . . . [to] obtain leave

9

to amend her original complaint" just 14 days after the entry of the final judgment. *See id.* at 211-12.  In material contrast, here, Plaintiffs deliberately chose to wait for more than one and a half years to request such relief from this Court, after exhausting their attempts to obtain a ruling that would allow them to file a class action lawsuit against any employer they wish armed with only general statistics.

In a futile attempt to justify this delay, Plaintiffs claim that the delay was necessary so that the Second Circuit could explain "what evidence Plaintiffs were required to plead to state a plausible claim for relief" and so that additional clarification could be provided in "a concurrence to the denial of Plaintiffs' *en banc* petition." Pl. Mem. at 12-13.  Plaintiffs' excuse for their undue delay is entirely meritless.  First, it is not this Court's or the Second Circuit's job to instruct Plaintiffs how to plead their claims.[2]  Second, the pleading standard has been explained to Plaintiffs since 2018.  Specifically, Defendant explained the well-established pleading standard for Title VII disparate impact claims in its papers in support of its Motion to Dismiss the Complaint.  *See* Dkt. 9-3 at 5-10.  Additionally, in its July 18, 2019 Decision and Order, this Court then correctly explained that Plaintiffs' use of general statistics was insufficient to satisfy the applicable pleading standard.  *See* Dkt. 27 at 6-7.  The Second Circuit then *confirmed* that Plaintiffs needed to assert more than general population statistics to state a claim (*see* Polito Decl. ¶¶ 12-13, Ex. 2 at 2-3), which this Court held months prior.  And if that were not enough, in denying Plaintiffs' Motion for Rehearing *En Banc,* the concurring judges explained that Plaintiffs' Complaint fell short of the longstanding plausibility "pleading standards as set forth by the Supreme Court and [the Second

---

[2] If every plaintiff who had their case dismissed pursuant to Rule 12(b) appealed to a court of appeals for guidance concerning the manner in which to plead their claims, then returned to a district court (absent remand from the court of appeals) to request that the court vacate the final judgment, an unwieldy and inefficient judicial process would exist.  This is simply not the case, and permitting such conduct would risk creating a dangerous judicial precedent.

Circuit]," and that "neither the Supreme Court nor [the Second Circuit] has ever suggested that Title VII claims are somehow exempt from the plausibility standard."  Polito Decl. ¶ 17, Ex. 5 at 11.  Plaintiffs offer absolutely no explanation for their failure to file a motion seeking leave to amend the Complaint to include additional, still inapposite, general population statistics immediately following this Court's Decision and Order.

Moreover, the new, generic statistic alleged by Plaintiffs concerning "imprisonment risks" for individuals with "some college education" that they assert to attempt to (unsuccessfully) support their disparate impact claim was allegedly published in an article in 2006.  *See* Pl. Mem., Ex A ¶ 57, n. 15.  Thus, this statistic was available to Plaintiffs when their Complaint was dismissed in 2019, and it was even available when they filed their Complaint in 2018.  (Of note, this statistic was also allegedly published eight years before Mandala's alleged 2014 felony conviction, and therefore is unrelated to Plaintiffs.)

Tellingly, the Second Circuit declined to grant Plaintiffs' request for the panel to rehear and *remand* the case to the District Court to permit them to amend their Complaint, a request made by Plaintiffs for the first time in their Petition for *En Banc* and Panel Rehearing. *See* Polito Decl. ¶¶ 15-16, Ex. 3 at 16-17.  This fact further demonstrates that the Second Circuit did not agree (as Plaintiffs suggest) that its Decision created a change in pleading standard or in any other circumstance.  *See Duane Reade*, 466 F. Supp. 2d at 562–63 (rejecting plaintiff's argument that the Second Circuit's interpretation of a contract constituted a change in circumstances because that argument was "belied by the [Second Circuit's] decision, which did not remand the case to the district court to consider the effect of the allegedly changed circumstances or any other aspect").  Therefore, there has been no change in circumstances following the final judgment that could

possibly justify Plaintiffs' unreasonable delay, and Plaintiffs' request to vacate the final judgment of this Court should be denied as time-barred.

### B.    Plaintiffs Have Not Demonstrated, and Cannot Demonstrate, that Exceptional Circumstances Justify Vacating a Judgment that the Second Circuit Affirmed

Plaintiffs have also failed to demonstrate that exceptional circumstances justify reopening the final judgment. Instead, they are inappropriately relying on Rule 60(b) in order to get a *third* bite at the apple. "[I]t is well-settled that Rule 60(b)(6) is not a mechanism to undo the consequences of a party's deliberate litigation strategy." *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2012 WL 6617361, at *4 (E.D.N.Y. Dec. 19, 2012) (citing *Ackermann v. United States*, 340 U.S. 193, 198 (1950)); *see also DePasquale v. DePasquale*, No. 12-CV-2564 RRM MDG, 2013 WL 4010214, at *2 (E.D.N.Y. Aug. 5, 2013), *aff'd*, 568 F. App'x 55 (2d Cir. 2014) (denying plaintiff's motion under Rule 60(b) where plaintiff "inject[ed] facts he was aware of but failed to allege in the amended complaint, and ma[de] new arguments that could have previously been made"); *Anthony v. City of New York*, No. 00 CIV. 4688 (DLC), 2002 WL 731719, at *3 (S.D.N.Y. Apr. 25, 2002) ("An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief . . . nor does the failure to marshal all known facts[.]"). The Second Circuit has explained that "failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from judgment." *Nemaizer*, 793 F.2d at 62; *see also Kramer v. Gates*, 481 F.3d 788, 791–92 (D.C. Cir. 2007) ("The case law makes clear that Rule 60(b)(6) is not an opportunity for unsuccessful litigants to take a mulligan.").

For example, in *Abate v. Fifth Third Bank* (No. 13-CV-9078 (VSB), 2019 WL 2409792 (S.D.N.Y. June 6, 2019)), the court found that the plaintiffs lacked standing to bring the action, and the clerk of the court entered judgment in favor of the defendant. Unlike the long delay here,

in *Abate,* less than a month after the entry of final judgment, the plaintiffs filed a motion to vacate the judgment and for leave to file an amended complaint adding a new plaintiff to correct the standing issue.[3] *Id.* at *2.  In its decision, the court explained that the plaintiffs were "on notice of [d]efendant's standing argument and the specific contours of that argument soon after the filing of the [c]omplaint, and could have sought leave to add [the new entity] as a party" prior to the entry of judgment.  *Id.* at *4.  Instead, Plaintiffs steadfastly argued that they had standing, and never requested leave to amend the complaint to add an additional party to cure that issue.  *Id.* at *1-2. The court denied plaintiffs' Rule 60(b)(6) motion, explaining that plaintiffs' decision to wait to request such relief until after an unfavorable ruling "appear[ed] to be nothing more than an improper effort to undo the consequences of their litigation strategy," and thus, plaintiffs "failed to demonstrate that extraordinary circumstances justif[ied] the extreme judicial relief" they requested.  *Id.* at *3-4 (internal quotation marks omitted).

Here, like in *Abate*, Plaintiffs were on notice of Defendant's argument that Plaintiffs failed to state a claim under Title VII, including that *general* population statistics are insufficient to support their disparate impact claim against *Defendant*.  Indeed, Plaintiffs filed their Complaint on August 15, 2018 and Defendant filed its Motion to Dismiss just three months later—on November 13, 2018.  Polito Decl. ¶¶ 2-3.  In addition, Plaintiffs' improper reliance on general population statistics that were completely divorced from the facts of the case, policy at issue, and relevant applicant pool was extensively discussed during oral argument before this Court on June 27, 2019. *Id.* ¶ 5, Ex. 1 at 2-16.  Despite being on notice of the pleading deficiencies, Plaintiffs never moved for leave to amend before this Court (even in the alternative) and insisted that they had satisfied

---

[3] Plaintiffs filed a notice of appeal at the same time as the motion to vacate, which was stayed until the resolution of the Rule 60(b) motion.  *Abate*, 2019 WL 2409792, at *2.

the pleading standard for a disparate impact claim. *Id.* ¶ 9, Ex. 1. Even after this Court issued its Decision and Order dismissing the Complaint, Plaintiffs did not move to vacate the judgment and for leave to file an amended complaint at that time. *Id.* ¶ 10. Rather, Plaintiffs appealed this Court's Decision and Order, and after the Second Circuit affirmed this Court's Decision and Order, Plaintiffs requested a rehearing *en banc*, which was also denied. Polito Decl. ¶¶ 11-17.

Now, after a series of losses, Plaintiffs return to this Court and request that the Court vacate its final judgment (despite the fact that the Second Circuit affirmed the same). This hardly constitutes the "exceptional circumstances" required under Second Circuit jurisprudence. Simply put, contrary to their baseless assertions, Plaintiffs have had knowledge of the pleading deficiencies in the Complaint since Defendant filed its Motion to Dismiss almost two and a half years ago. They identify nothing improper with the Court's Decision and Order dismissing their Complaint, and final judgment entered pursuant to the same, nor could they given that the Second Circuit affirmed the same. That should end the inquiry. Moreover, their proposed amendments rely on inapposite general population statistics having nothing to do with Defendant (or even Plaintiffs), and which have been available since 2006. *See supra*, p. 14. Even though Plaintiffs had ample opportunity to move for leave to replead before this Court, they instead decided to proceed with their appeal, in an apparent attempt to use this as a bellwether case to create a lower pleading standard for Title VII disparate impact claims. This does not constitute an exceptional circumstance justifying relief under Rule 60(b).

Plaintiffs should not be permitted to take advantage of such extraordinary judicial relief to escape the consequences of their intentional litigation strategy. *See, e.g., Nemaizer*, 793 F.2d at 62. It has been over two and a half years since Plaintiffs filed their original Complaint, and Plaintiffs have forced Defendant to litigate with them over the insufficiency of the same at

Defendant's considerable expense, where Plaintiffs have suffered repeated loss after loss. Enough is enough; Defendant should be able to rely on the finality of this Court's judgment after it was examined in detail and then affirmed on appeal.

Moreover, Mandala has filed a related state court action against Defendant (*see* Polito Decl., Ex. 9), in which he asserts substantially similar claims on behalf of a putative class. *See Abate*, 2019 WL 2409792 at *3, n. 3 (explaining plaintiffs would not be "left without a remedy" because they filed a separate related case against defendant, and therefore, plaintiffs "failed to demonstrate how they would experience extreme hardship if their motion [to vacate] were denied"); *see also Brooks v. Doe Fund, Inc.*, No. 17CV3626PKCLB, 2020 WL 5706451, at *7 (E.D.N.Y. Sept. 24, 2020) (denying motion to vacate, stating plaintiff was "not entirely without recourse, as his state law claims asserting sex discrimination were dismissed without prejudice to refile in state court"). Plaintiffs have not demonstrated, and cannot demonstrate, that any exceptional circumstances justify the extraordinary relief of vacating the final judgment here, and accordingly, they cannot satisfy this requisite for relief under Rule 60(b)(6). For these additional reasons, Plaintiffs' Motion pursuant to Rule 60(b)(6) should be denied.

## C.    Even If the Court Considers Plaintiffs' Proposed Amended Complaint, Their Motion Should Be Denied

Plaintiffs' request for relief should also be denied because should the Court grant Plaintiffs' motion to vacate the judgment, and should the Court allow Plaintiffs to file their proposed Amended Complaint, Plaintiffs' proposed Amended Complaint would be immediately subject to dismissal, and therefore, a complete waste of this Court's (and Defendant's) time and resources.[4]

---

[4] Rule 15 of the Local Rules of Civil Procedure for the U.S. District Court for the Western District of New York provides: "Unless the movant is proceeding *pro se*, the amendment(s) or supplement(s) to the original pleadings shall be identified in the proposed pleading through the use of a word processing 'redline' function[.]" Local Rule 15(b). Here, Plaintiffs have failed to comply with this local rule because they have not included a redlined version of the proposed

District courts have considerable discretion to deny amendment when there has been "undue delay, bad faith or dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment[.]" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015). In addition, a request for leave to amend should be denied in the case of futility. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

Where, as here, "the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." *State Trading Corp.,* 921 F.2d at 418; *see also Axar Master Fund,* 806 F. App'x at 40, n. 3. In such circumstances, "Rule 15's liberality must be tempered by considerations of finality[.]" *In re Buckskin Realty, Inc.*, No. 19-3828-BK, 2021 WL 1081480, at *2 (2d Cir. Mar. 22, 2021); *Mirkin v. XOOM Energy, LLC*, No. 18-CV-2949, 2018 WL 6381456, at *3 (E.D.N.Y. Dec. 6, 2018). In this case, Plaintiffs' proposed amendment is too little, too late, and their Motion should be denied.

### 1. *Plaintiffs' Motion Should Be Denied Because They Are Acting in Bad Faith and with Dilatory Motive*

Plaintiffs chose to appeal this Court's July 18, 2019 Decision and Order dismissing the Complaint. Plaintiffs also chose to request rehearing *en banc* after the Second Circuit affirmed this Court's Decision and Order. This case has been dismissed for nearly two years. Only now, after considerable time and expense, have Plaintiffs decided to request leave from this Court to amend their Complaint to attempt to correct the deficiencies that this Court identified back in July

---

Amended Complaint as an exhibit to this Motion. From a plain read of Plaintiffs purported Amended Complaint, it appears that Plaintiffs have strategically decided to omit certain allegations concerning the Plaintiffs' technical abilities and higher education in an unsuccessful attempt to escape dismissal by omission of these facts. In the event Plaintiffs' request for extraordinary relief under Rule 60(b) is granted, Defendant respectfully requests that Plaintiffs be directed to file a motion for leave to amend with a redlined proposed Amended Complaint so that Defendant will have the opportunity to fully respond to Plaintiffs' request for leave to amend.

2019.  They make this request even though Mandala has the opportunity to pursue identical state law claims in the state court action that is currently pending.  Polito Decl. ¶¶ 26-28, Exs. 9, 10.

Plaintiffs' Motion is made in bad faith with the intent of reviving an otherwise time-barred Title VII claim.  A plaintiff asserting a claim under Title VII must file suit within 90 days of receiving a dismissal and notice of right to sue from the U.S. Equal Employment Opportunity Commission ("EEOC").  42 U.S.C. § 2000e-5(f)(1); *see, e.g., Hughes v. Elmira Coll.*, 584 F. Supp. 2d 588, 589 (W.D.N.Y. 2008).  This "90-day period is 'strictly enforced,' . . . and cannot be extended 'by even one day.'"  *Hughes*, 584 F. Supp. 2d at 589 (internal citations omitted).  According to the allegations in the proposed Amended Complaint, the EEOC issued a Notice of Right to Sue dated May 17, 2018 to Mandala.  Pl. Mem., Ex. A ¶ 12.  Therefore, if Plaintiffs tried to commence a new action today, almost three years after receiving the Notice of Right to Sue, their Title VII claim would be time-barred.  In an effort to circumvent the applicable statutory deadline and avoid this outcome, Plaintiffs ask that the Court disturb its final judgment, which the Second Circuit affirmed on appeal.

Further, although Plaintiffs claim that they have not yet filed an amended complaint in this action (*see* Pl. Mem. at 13), they neglect to mention that similar litigation started approximately **six years ago,** when the NAACP (who serves as co-counsel with Outten & Golden LLP in the instant action) sued Defendant and others under a substantially similar theory.  On or about June 25, 2015, the NAACP New York State Conference Metropolitan Counsel of Branches commenced a putative class action against Defendant and other entities in the Supreme Court of the State of New York, New York County.  Polito Decl., Ex. 6.  In the 2015 complaint, the NAACP asserted a purported claim for an alleged violation of the New York City Human Rights Law against Defendant, alleging: "Blanket bans on hiring because of felony conviction are illegal . . . [and]

17

[t]he use of these arbitrary pre-employment bans also results in discrimination on the basis of race, ethnicity, color, and national origin because it imports the racial and ethnic disparities in the criminal justice system into the employment application process." *See id.*, Ex. 6 ¶¶ 13, 15. Of note, the NAACP attached the same exact job description to the 2015 complaint as Plaintiffs now attach to their proposed Amended Complaint in this action. *Compare id.*, Ex. 6, Ex. B *with* Pl. Mem., Ex. A, Ex. 1. On February 16, 2016, the NAACP filed an amended complaint in that action. Polito Decl., Ex. 7. On May 31, 2018, the NAACP and Defendant stipulated and agreed that the complaint be dismissed with prejudice. *Id.*, Ex. 8. Less than three months later, the within action was commenced against Defendant. *Id.* ¶ 25. Then, on August 16, 2019, after this Court issued its Decision and Order dismissing the Complaint in the federal court action, Mandala filed ***another*** putative class action in New York state court, asserting a purported disparate impact discrimination claim under the New York Human Rights Law and the same two state law claims that this Court dismissed. *Id.* ¶ 26, Ex. 9. Mandala has recently amended the complaint in the state court action. *Id.*, Ex. 10. Plaintiffs' latest attempt to revive their claims before this Court is essentially the ***fourth*** attempt to attack Defendant's alleged "hiring policy" in a lawsuit; an attempt that should be firmly rejected.

In sum, Plaintiffs' transparent gamesmanship and attempt to resuscitate their claims— which are now time barred—after the entry of a final judgment that was affirmed on appeal, is prejudicial to Defendant, who has been defending against these claims since 2015 in multiple actions. For this reason, Plaintiffs' Motion should be denied.

### 2. *Plaintiffs' Motion Should Be Denied As a Result of Their Undue Delay*

Courts "may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y.

1997); *see also Brooks*, 2020 WL 5706451 at *8.  In cases where the plaintiff requests leave to amend after an unreasonable delay, it "bears the burden to explain that delay."  *Anthony v. City of New York*, No. 00 CIV. 4688 (DLC), 2002 WL 731719, at *5 (S.D.N.Y. Apr. 25, 2002) (citing *MacDraw v. CIT Group Equipment Financing,* 157 F.3d 956, 962 (2d Cir. 1998)).

In their moving papers, Plaintiffs claim that they have plausibly stated a claim for relief in their proposed Amended Complaint by referencing an opinion of three professors concerning the prevalence of unequal treatment in the criminal justice system and by adding a statistic from an article published in 2006.  *See* Pl. Mem. at 14.  Plaintiffs should have known of the proposed additional allegations at the time they filed their original Complaint in 2018, and as explained above, they have not offered any legitimate excuse for their intentional delay in filing a motion to vacate this Court's judgment or for leave to file an Amended Complaint until 2021—over two and a half years after filing the Complaint and approximately 15 years after the statistic they seek to cite was published.  *See supra*, Point I.A.  Therefore, Plaintiff's Motion should be denied.

### 3.    *Plaintiffs' Motion Should Be Denied Because the Proposed Amendments Are Futile*

The fact that an "amended pleading offered by the movant will not cure the defects in the original pleading that resulted in the judgment of dismissal may be a valid reason both for denying a motion to amend under Rule 15(a) and for refusing to reopen the judgment under Rule 60(b)."  *Brook v. Simon*, No. 17 CIV. 6435 (GBD), 2018 WL 6518855, at *1 (S.D.N.Y. Nov. 27, 2018).  A plaintiff's request for leave to amend must be denied if the amendment would be futile.  *E.g., Burch*, 551 F.3d at 126.  An amendment is futile "if the proposed claim could not withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6)."  *Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

In the context of a Title VII disparate impact claim, as the Second Circuit explained in its opinion in this case, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." Polito Decl., Ex. 2 at 9. To survive a motion to dismiss, the plaintiff must "assert [enough] nonconclusory factual matter . . . to nudge [her] claim[ ] across the line from conceivable to plausible to proceed." *Id.*, Ex. 2 at 11 (internal citations omitted).

As this Court held: "[G]eneral statistics are inadequate to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions." *See* Dkt. 27 at 6-7. Where, as here, general population statistics do ***not*** accurately reflect the qualified applicant pool, "relying on them to show a disparate impact is a bit like relying on apples to study oranges." Polito Decl., Ex. 2 at 16.

As an initial matter, Plaintiffs' contention that "the majority of active judges on the Second Circuit . . . have made clear that the amendments to Plaintiffs' [C]omplaint would state a claim under the operative standard" (*see* Pl. Mem. at 1, 2, 14) is wholly inaccurate. Plaintiffs' proposed Amended Complaint was never before the Second Circuit; the Second Circuit never reviewed Plaintiffs' proposed Amended Complaint, and consequently, did not opine on the legal sufficiency of the proposed pleading. (Indeed, the Second Circuit did not grant Plaintiffs' request to remand and file an Amended Complaint, either). In their papers, Plaintiffs now heavily rely on the statistic that "Black men with *some college education* have *imprisonment risks* that are seven (7) times greater than white men with *some college education*" (*see* Pl. Mem. at 8, 14, Ex. A ¶ 57 (emphasis added)); however, this proposed allegation does not make Plaintiffs' claims plausible (as Plaintiffs claim) because this statistic has absolutely nothing to do with Defendant. This statistic from 2006

also has nothing to do with Plaintiffs. Indeed, Mandala alleges that his felony conviction occurred eight years later in 2014. *See* Pl. Mem., Ex. A ¶ 15.

In addition, this statistic does not relate to the alleged criminal conviction policy that Plaintiffs challenge (*see* Pl. Mem., Ex. A ¶¶ 14-16, 32, 34, 49, 51, 98-100), and instead, it addresses "imprisonment risks." *See EEOC v. Freeman,* 961 F. Supp. 2d 783, 798 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th Cir. 2015) (explaining statistics are not applicable when they "relate to things that are not even considered under Defendant's hiring criteria, such as arrest and incarceration rates").

Moreover, this statistic is devoid of any connection to the relevant comparator pool. As the Second Circuit explained in its opinion affirming this Court's Decision and Order, to state a plausible claim, Plaintiffs must provide allegations demonstrating that the statistics are "representative of the pool of potential applicants qualified for a position [with Defendant]." Polito Decl., Ex. 2 at 17. Plaintiffs fail to allege any facts to support that a pool of individuals with "some college education" accurately reflects the pool of qualified job applicants in question. In fact, Barnett had a Master's Degree—a fact Plaintiffs alleged in their Complaint (*see* Dkt. 1 ¶ 50) and deceptively omit from their proposed Amended Complaint (*see, generally,* Pl. Mem., Ex. A)—not "some college education." Accordingly, like the other statistics cited in Plaintiffs' original Complaint and the proposed Amended Complaint, this statistic concerning the "imprisonment risks" of individuals with "some college education" has no application to Plaintiffs' claims.

Simply put, Plaintiffs' proposed Amended Complaint fails to correct the fundamental flaw in their pleadings. Plaintiffs continue to assert that there is a racial imbalance in the criminal justice system as a whole, and based on that alone, they expect the Court to jump to the conclusion that a corresponding racial imbalance exists with respect to Defendant and the job positions in question.

The "sheer possibility" of such a racial imbalance in Defendant's workforce as a result of an alleged neutral policy is insufficient to survive a motion to dismiss. Otherwise, virtually every employer on the planet could be subject to massive, nationwide class action litigation based on nothing more than general population statistics having nothing to do that that employer, its applicant pool, or its workforce.

Because even if considered, Plaintiffs' request for leave to amend should be denied due to their bad faith, dilatory motive, and undue delay as well as the amendment's futility, the Court should not disturb its final judgment and Plaintiff's Motion should be denied for this additional, independent reason.[5]

### **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion to Vacate the Judgment in its entirety.

Date:   May 3, 2021
        Fairport, New York

                                                    */s/ Jacqueline Phipps Polito*
                                                    Jacqueline Phipps Polito
                                                    Jessica F. Pizzutelli
                                                    Abigail L. Giarrusso
                                                    LITTLER MENDELSON, P.C.
                                                    375 Woodcliff Drive, Suite 2D
                                                    Fairport, NY 14450
                                                    jpolito@littler.com
                                                    jpizzutelli@littler.com
                                                    agiarrusso@littler.com
                                                    Tel. (585) 203-3400

                                                    *Attorneys for Defendant*
                                                    *NTT DATA, Inc.*

---

[5] Because Plaintiffs failed to state a claim for relief under federal law, the Court should continue to decline to exercise supplemental jurisdiction over the remaining state law claims set forth in the proposed Amended Complaint, which are duplicative of and already the subject of the pending state court litigation. *See* 28 U.S.C. § 1367(c)(3); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exchange, Inc.,* 497 F.3d 109, 119 (2d Cir. 2007).