| | |
|---|---|
| **OUTTEN & GOLDEN LLP** | **NAACP LEGAL DEFENSE &** |
| Ossai Miazad | **EDUCATIONAL FUND, INC.** |
| Christopher M. McNerney | Rachel M. Kleinman |
| 685 Third Avenue, 25th Floor | 40 Rector Street, Fifth Floor |
| New York, New York 10017 | New York, NY 10006 |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

GEORGE MANDALA and CHARLES
BARNETT, individually and on
behalf of all others similarly situated,

                      Plaintiffs,

   v.

NTT DATA, INC.,

                      Defendant.

Case No. 18 Civ. 6591 (CJS)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO VACATE JUDGMENT PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 60</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.    Extraordinary Circumstances at the Second Circuit Merit a Reopening of the Judgment ... 2

     A.   Plaintiffs Have Established Extraordinary Circumstances ........................................... 2

     B.   The Cases Cited by NTT Presented No Extraordinary Circumstances. ....................... 3

     C.   Two Other Cases Filed Against NTT Do Not Dilute the Exceptional Circumstances Presented in This Case ........................................................................ 4

II.   Plaintiffs Have Proceeded Efficiently to Protect Their Rights............................................ 6

     A.   Plaintiffs Promptly Filed Their Rule 60 Motion............................................................ 6

     B.   Rule 60 Motions Are Appropriate Post-Appeal............................................................ 8

III.  Plaintiffs' Amended Complaint States A Claim ................................................................. 8

CONCLUSION.............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*Abate v. Fifth Third Bank*,
   No. 13 Civ. 9078, 2019 WL 2409792 (S.D.N.Y. June 6, 2019)..........................................4, 5

*Aczel v. Labonia*,
   584 F.3d 52 (2d Cir. 2009)..............................................................................................6

*Anthony v. City of New York*,
   No. 00 Civ. 4688, 2002 WL 731719 (S.D.N.Y. Apr. 25, 2002).......................................4

*Berman v. Parco*,
   986 F. Supp. 195 (S.D.N.Y. 1997) .................................................................................7

*Bowles v. Russell*,
   551 U.S. 205 (2007).........................................................................................................3

*Buck v. Davis*,
   137 S. Ct. 759 (2017)..................................................................................................6, 7

*DePasquale v. DePasquale*,
   No. 12 Civ. 2564, 2013 WL 4010214 (E.D.N.Y. Aug. 5, 2013) ....................................4

*DeWeerth v. Baldinger*,
   38 F.3d 1266 (2d Cir. 1994)............................................................................................8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   466 F. Supp. 2d 560 (S.D.N.Y. 2006).............................................................................8

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
   No. 10 Civ. 696, 2012 WL 6617361 (E.D.N.Y. Dec. 19, 2012) ....................................4

*Freeman v. Rochester Psychiatric Ctr.*,
   No. 12 Civ. 6045, 2018 WL 1244479 (W.D.N.Y. Mar. 9, 2018)....................................3

*Grullon v. Mukasey*,
   509 F.3d 107 (2d Cir. 2007)............................................................................................3

*Hobbs v. Emas Properties, Inc.*,
   No. 17 Civ. 948, 2019 WL 2003990 (S.D.N.Y. May 3, 2019).......................................7

*Mandala v. NTT Data, Inc.*,
   975 F.3d 202 (2d Cir. 2020).......................................................................................6, 7

*Mandala v. NTT Data, Inc.*,
   988 F.3d 664 (2d Cir. 2021)................................................................................. *passim*

*Marrero Pichardo v. Ashcroft*,
    374 F.3d 46 (2d Cir. 2004)..................................................................................2, 3

*Miller v. Norton*,
    No. 04 Civ. 3223, 2008 WL 1902233 (E.D.N.Y. Apr. 28, 2008).............................3

*Mirkin v. XOOM Energy, LLC*,
    931 F.3d 173 (2d Cir. 2019)....................................................................................1

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) .....................................................................................3

*PRC Harris, Inc. v. Boeing Co.*,
    700 F.2d 894 (2d Cir. 1983)................................................................................7, 8

*Radack v. Norwegian Am. Line Agency, Inc.*,
    318 F.2d 538 (2d Cir. 1963)....................................................................................2

*Robinson v. Page*,
    No. 18 Civ. 12233, 2019 WL 2209237 (S.D.N.Y. May 20, 2019)..........................9

*Standard Oil Co. of California v. United States*,
    429 U.S. 17 (1976)..................................................................................................8

*State Trading Corp. of India v. Assuranceforeningen Skuld*,
    921 F.2d 409 (2d Cir. 1990)....................................................................................7

*Toliver v. Cty. of Sullivan*,
    957 F.2d 47 (2d Cir. 1992)......................................................................................8

*Twersky v. Yeshiva Univ.*,
    No. 13 Civ. 4679, 2015 WL 4111837 (S.D.N.Y. July 8, 2015) ..............................8

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011)................................................................................1, 6

**Statues**

Fed. R. Civ. P. 60..............................................................................................1, 2, 6, 8

## INTRODUCTION

Plaintiffs have established the "extraordinary circumstances" necessary to warrant Federal Rule of Civil Procedure ("Rule") 60 relief. During the en banc proceedings, the Second Circuit made clear that "the very figures that might have rendered Plaintiffs' claims plausible" were available, in the form of data demonstrating racial disparities in criminal history persist as education levels rise. *Mandala v. NTT Data, Inc.*, 988 F.3d 664, 668 (2d Cir. 2021) (Sullivan, J. and Nardini, J., concurring); *see also id*. at 671 (Pooler, J., dissenting) ("The concurrence notes that the availability of statistics regarding the interaction between race, education, and conviction rates offer sufficient facts . . . to successfully plead plausible disparate impact claims."). As a result, Judge Pooler encouraged Plaintiffs to file, and this Court to grant, this motion.

NTT disregards these extraordinary circumstances and argues that Plaintiffs' Amended Complaint, including the very evidence cited by the en banc opinions, does not state a claim. In so doing, NTT fails to identify any comparable case or engage with the wealth of Second Circuit precedent requiring that courts consider the liberal spirit of Rule 15 when Rule 60 motions seek leave to amend at the pleading stage. *See, e.g.*, *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011); *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 178 (2d Cir. 2019). Finally, while NTT argues that Plaintiffs' motion was untimely, Plaintiffs brought their motion only four weeks after the mandate on appeal issued, pursuant to the encouragement of four Second Circuit judges.

If Plaintiffs' motion is denied, they will face real prejudice. Plaintiff Charles Barnett and all putative Title VII class members would be left without a remedy for a claim that the Second Circuit has – nearly unanimously – indicated can survive a motion to dismiss. *See* ECF No. 35-1 ("Pls.' Br.") at 2 n.2 (citations omitted). As Judge Lohier cautioned, "a pleading is the key to the courthouse door," and if pleading standards are "raised arbitrarily high, . . . then those

1

substantive rights that reside just behind the door wither and die." *Mandala*, 988 F.3d at 683 (Lohier, J., dissenting); *see also id*. at 682 (Chin. J., dissenting) ("[The Second Circuit] has long recognized the importance of Title VII and the rights it protects.").

Plaintiffs have done everything possible to diligently and efficiently protect the important rights guaranteed under Title VII, and the interests of justice will suffer if this motion is denied. This Court should grant the motion and permit Plaintiffs to file their Amended Complaint, so that the parties can litigate whether NTT can justify its exclusionary hiring practices on the merits in accordance with this Circuit's strong preference.

## ARGUMENT

**I.     Extraordinary Circumstances at the Second Circuit Merit Reopening the Judgment.**

Rule 60(b)(6) relief is proper where the party seeking to reopen the judgment can show "extraordinary circumstances[.]" *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004). The rule provides a "grand reservoir o[f] equitable power to do justice in a particular case," and "should be liberally construed when substantial justice will thus be served." *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963).

**A.     Plaintiffs Have Established Extraordinary Circumstances.**

In its opposition brief, NTT strategically ignores the extraordinary circumstances that caused Plaintiffs to file this motion. *See* Pls.' Br. at 3-5 (describing appeal and en banc proceedings). The Rule 60 standard is case-specific, and in this case the extraordinary circumstances occurred en banc. In their opinion concurring with the denial of rehearing, Judges Sullivan and Nardini clarified that Plaintiffs needed only to allege claims that would make it plausible that national statistics might accurately reflect the relevant labor pool, such as "national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain." *Mandala*, 988 F.3d at 668. They then identified such statistics in an amicus brief.

2

*Id*. (The "new facts introduced by an *amicus* brief . . . underscore the limited impact of the panel majority opinion," because "[t]he very figures that might have rendered Plaintiffs' claims plausible not only exist but also are publicly available"). In a dissent, Judge Pooler "encourage[d]" Plaintiffs to file this Rule 60 motion "in order to file an amended complaint that includes statistics incorporating the continued racial gaps in conviction rates as education levels rise," expressing her "hope the district court will allow such amendments[.]" *Id.* at 671.

These are extraordinary circumstances. Notably, Judge Pooler is no stranger to the requirements of Rule 60, having authored *Marrero Pichardo*, where she noted that in "extraordinary circumstances," finality must give way to prevent "manifest injustice." 374 F.3d. at 55-56. Like here, the extraordinary circumstances in *Marrero Pichardo* included that the plaintiff's claims were "virtually certain to succeed" if the judgment was reopened. *Id*. at 54.[1]

### B. The Cases Cited by NTT Presented No Extraordinary Circumstances.

NTT seeks to analogize this case to a series of district court cases where no extraordinary circumstances were present. ECF No. 38 ("Opp. Br.") at 6-7, 12-15. At least two cases NTT relies on address frivolous motions brought by pro se plaintiffs. *See, e.g.*, *Freeman v. Rochester Psychiatric Ctr.*, No. 12 Civ. 6045, 2018 WL 1244479, at *1 (W.D.N.Y. Mar. 9, 2018) (denying a pro se Rule 60(b)(6) motion that baselessly alleged errors by the judge); *Miller v. Norton*, No. 04 Civ. 3223, 2008 WL 1902233, at *1-2 (E.D.N.Y. Apr. 28, 2008) (denying a pro se Rule 60(b)(6) motion that made vague allegations regarding the adequacy of prior counsel). A third case did not address Rule 60(b)(6) at all in the cited portion. *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) (denying relief under Rule 60(b)(1), which permits relief in cases of attorney

---

[1]   *Marrero Pichardo* was overruled on other, not material, grounds by *Bowles v. Russell,* 551 U.S. 205 (2007), which interpreted a statute governing judicial review of orders of removal in immigration cases. *Grullon v. Mukasey*, 509 F.3d 107, 115 (2d Cir. 2007).

mistake or excusable neglect). And a fourth case simply declined to set aside plaintiffs' choice to *voluntarily* dismiss their claims with prejudice. *See First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10 Civ. 696, 2012 WL 6617361, at *3 (E.D.N.Y. Dec. 19, 2012).[2]

NTT also compares this case to *Abate v. Fifth Third Bank*, No. 13 Civ. 9078, 2019 WL 2409792 (S.D.N.Y. June 6, 2019), where a district court denied a Rule 60 motion after summary judgment was granted on standing grounds. *Id*. at *3. The *Abate* court based its decision on the fact that the plaintiffs had been on notice of the defendant's position that plaintiffs lacked standing since the beginning of the litigation. *Id*. at *4. But, here, NTT has consistently argued that the flaw in Plaintiffs' complaint is that it lacks data specific to NTT's applicant pool, *see* Opp. Br. at 20-21, and the Second Circuit firmly rejected this argument. *See supra* Part I.A. In other words, while Plaintiffs were on notice of NTT's argument, NTT's argument was wrong.

### C.     Two Other Cases Filed Against NTT Do Not Dilute the Exceptional Circumstances Presented in This Case.

NTT also cites two other lawsuits against it to argue that Plaintiffs would not be prejudiced if this motion were denied, that NTT would be prejudiced if this litigation continued, and/or that Plaintiffs' Rule 60 motion is in bad faith. *See* Opp. Br. at 15. Here too, NTT's arguments require the Court to ignore the actual circumstances of those cases.

First, after the Court declined to exercise supplemental jurisdiction over Mr. Mandala's New York claims, Plaintiffs filed a savings action in state court to preserve the state law claims

---

[2]     *See also DePasquale v. DePasquale*, No. 12 Civ. 2564, 2013 WL 4010214, at *5 (E.D.N.Y. Aug. 5, 2013) (denying Rule 60(b)(6) motion where, prior to judgment, the plaintiff had access to but had not read documents he sought to include in a post-judgment amended complaint); *Anthony v. City of New York*, No. 00 Civ. 4688, 2002 WL 731719, at *5 (S.D.N.Y. Apr. 25, 2002) (same with motion based on Second Circuit opinion that was "readily distinguishable from the facts" of the case).

4

in the event appeal proved unsuccessful. *See* Ex. A.[3] NTT has been in no way prejudiced by that filing.[4] Plaintiffs agreed to stay the case until after the Second Circuit mandate issued, and have since agreed to extend NTT's time to respond to the complaint twice. To date, no judge has been assigned. *Id*. If Plaintiffs' motion is successful, that case will be dismissed.[5] In contrast, Plaintiffs would be prejudiced if only the state court case goes forward, because unlike in *Abate* (Opp. Br. at 15), Mr. Barnett and any other class members who do not live in New York would be left without a remedy. *Cf. Abate*, 2019 WL 2409792, at *3 n.3 (noting lack of prejudice from a Rule 60(b)(6) denial because plaintiffs had filed a related case against the same defendant).[6]

NTT also cites a 2015 action challenging NTT job ads that included language barring individuals with criminal records, brought on behalf of the NAACP New York State Conference Metropolitan Counsel of Branches ("NAACP New York Conference"). Opp. Br. at 17-18. This case was brought by different plaintiffs [7] alleging different claims, and bears no relation to that case – except to the extent it demonstrates a persistent pattern on the part of NTT of maintaining a blanket policy that excludes job applicants based solely on their criminal history.

At its core, the only prejudice NTT identifies from this motion is that it will be forced to defend the legality of its policy. But where plaintiffs seek to reopen the judgment under Rule

---

[3] All exhibits are attached to the Declaration of Christopher M. McNerney.
[4] Up until May 17, 2021, NTT had not filed anything at all in the state court action. Ex. A. On May 17, 2021, it chose to file a one-sentence demand for change of venue. *Id*.
[5] NTT also suggests that this motion was filed in bad faith because the statute of limitations on Mr. Mandala and Mr. Barnett's Title VII claims has run, leaving them unable to file a new action. It is true that Plaintiffs could not commence a new Title VII action today, which is why they have filed this motion. This evidences diligent representation, not bad faith.
[6] Whereas New York has a substantive law protecting individuals with criminal history, Kentucky (where Mr. Barnett worked) does not have equivalent protections. Accordingly, Plaintiffs did not include Kentucky state law claims in their underlying federal complaint.
[7] The NAACP New York Conference and the NAACP Legal Defense and Educational Fund, Inc. are different entities that do not control or influence each other's activities.

5

60(b)(6) to amend a complaint, it is an abuse of discretion for courts to overemphasize finality at the expense of the liberal amendment policy embodied in Rule 15(a). *Williams*, 659 F.3d at 214; *see also Buck v. Davis*, 137 S. Ct. 759, 779 (2017) ("[T]he 'whole purpose' of Rule 60(b) 'is to make an exception to finality.'" (citation omitted)).

II.   **Plaintiffs Have Proceeded Efficiently to Protect Their Rights.**

   A.   **Plaintiffs Promptly Filed Their Rule 60 Motion.**

Plaintiffs filed their Rule 60 motion as soon as it was reasonable to do so – only five weeks after the opinions that it is based on were issued, and less than a month after the mandate on appeal was entered, divesting the appellate court of jurisdiction over the case. This was timely. *See Aczel v. Labonia*, 584 F.3d 52, 61-62 (2d Cir. 2009) (finding no undue delay after a timely appeal and a prompt Rule 60(b) motion once the appeal was over).

NTT argues that Plaintiffs' motion is untimely because it should have been made after the Court entered judgment but before an appeal, or perhaps after the majority decision. Opp. Br. at 7-11, 18-19. As discussed above, NTT ignores that Plaintiffs' motion is predicated on the en banc proceedings, and therefore could not possibly have preceded them. NTT also disregards the substance of the proceedings at the Second Circuit, which illustrate that the appeal and subsequent en banc petition were an efficient and effective way to advance this action.

Both the majority and the dissent's panel opinions acknowledged that the standard for disparate impact Title VII pleading was unclear before Plaintiffs' appeal. *See Mandala v. NTT Data, Inc.*, 975 F.3d 202 (2d Cir. 2020) (acknowledging "confusion about the pleading standard applicable to disparate impact claims"); *Mandala*, 988 F.3d at 679 n.7 (Chin, J., dissenting) (noting that the *Mandala* majority sua sponte adopted the "novel legal view" that the pleading standard was different for Title VII disparate impact and disparate treatment cases). The panel majority held that Plaintiffs had not pleaded a plausible disparate impact claim, *Mandala*, 975

6

F.3d at 212, but did not provide insight into what would make such a claim plausible until six months later, in response to Plaintiffs' en banc petition and three separate dissents. Only then did that same panel majority clarify that Plaintiffs could state a plausible claim by providing national statistics showing that racial disparities in criminal history rates hold steady as education levels increase. *Mandala*, 988 F.3d at 668 (Sullivan, J., and Nardini, J., concurring).

The cases NTT cites as support for its position of undue delay all presented far longer delays than the five weeks between the extraordinary circumstances that took place en banc and the filing of this motion. *See* Opp. Br. at 7-11, 18-19. And, even if the Court were to credit NTT's timekeeping, the cases it cites all involved not merely delay but *unjustified* delay. *See, e.g.*, *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (denying relief where the plaintiff provided no reason at all for 19-month delay); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896-97 (2d Cir. 1983) (denying relief where the only reason provided for the delay was that the plaintiff had not understood the Federal Rules).[8] These cases bear no resemblance to this action, where Plaintiffs filed an appeal five days after the entry of judgment, sought en banc review 15 days after the panel decision, and filed this motion within five weeks of the en banc denial (and less than a month after the mandate was entered). Any "delay" beyond that was caused by the normal pace of appellate proceedings, and was part of the process that engendered the clarity that forms the basis for this motion. *Cf. Buck*, 137 S. Ct. at 767 (reversing denial of Rule 60(b)(6) motion filed eight years after judgment).

---

[8] *See also Hobbs v. Emas Properties, Inc.*, No. 17 Civ. 948, 2019 WL 2003990, at *1 (S.D.N.Y. May 3, 2019) (pro se plaintiff failed to amend a complaint and then sought to reopen judgment a year and half after judgment); *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) (noting that, in the Rule 15 context, "[d]elay in seeking leave to amend a pleading is generally not, in and of itself, a reason to deny a motion to amend").

### B. Rule 60 Motions Are Appropriate Post-Appeal.

NTT further argues that Rule 60(b)(6) motions should always be made before an appeal. Opp. Br. at 8-9. But Rule 60(b)(6) motions simply must be brought "within 'a reasonable time,'" the determination of which requires courts to "scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983) (quoting Fed. R. Civ. P. 60(b)(6)). If subsection (b)(6) was intended to have a specific time limit, Congress would have added one, like it did with subsections (b)(1)-(3). *See* Fed. R. Civ. P. 60(c)(1). Indeed, the Supreme Court implicitly recognized the propriety of post-appeal Rule 60 motions in *Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976), which clarified that such motions do not require the permission or involvement of the appellate court. *Id.* at 18.[9] The cases NTT cites stand only for the commonsense notion that Rule 60(b) motions are proper when circumstances have changed, but cannot be used to relitigate issues already decided on appeal. Opp. Br. at 7-11.[10]

### III. Plaintiffs' Amended Complaint States A Claim.

Plaintiffs' Amended Complaint states a plausible claim for relief, and NTT's arguments to the contrary highlight why the appeal was necessary. Plaintiffs have alleged that, according to

---

[9] There is a rule that, *during the pendency of an appeal*, a district court cannot grant (but can deny) a Rule 60(b) motion, because it has lost its jurisdiction over the underlying action. *Toliver v. Cty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992). This does not bar relief here, but it does mean that while the appeal was pending at the Second Circuit, Plaintiffs were not *permitted* to file a Rule 60 motion without leave of the appellate court.
  NTT argues that the Second Circuit could have reversed to allow Plaintiffs to amend and did not. Opp. Br. at 5. But, as noted, a Rule 60 motion does not require circuit court approval. And, while the en banc concurrence was silent as to amendment, four active judges encouraged Plaintiffs to make, and the Court to grant, a Rule 60(b) motion, and no judges discouraged it.
[10] *See DeWeerth v. Baldinger*, 38 F.3d 1266, 1270-71 (2d Cir. 1994) (holding that district courts *can* consider Rule 60(b) motions when they rely upon a "change in circumstances" not considered on appeal); *Twersky v. Yeshiva Univ.*, No. 13 Civ. 4679, 2015 WL 4111837, at *2-3 (S.D.N.Y. July 8, 2015) (denying post-appeal Rule 60(b) motion that primarily criticized the decision on appeal); *see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 466 F. Supp.

experts, the differences in criminal conviction rates between white and Black Americans are "very large," "historical[,] and pervasive across geographic and demographic groups," and that, consistent with the racial disparities among people with lower educational attainment, "[b]lack men with some college education have imprisonment risks that are seven (7) times greater than white men with some college education." *See* ECF No. 35-3 (First Amended Complaint ("FAC")) ¶¶ 56-58;[11] *Mandala*, 988 F.3d at 668 (Sullivan, J., and Nardini, J., concurring).

In response, NTT renews its argument that Plaintiffs' Amended Complaint "rel[ies] on inapposite general population statistics having nothing to do with Defendant (or even Plaintiffs)." Opp. Br. at 14; *see also id*. at 20-21. The Second Circuit rejected this extreme pleading standard, which would be impossible to meet before discovery. *See, e.g.*, *Mandala*, 988 F.3d at 665, 667-68 (Sullivan, J., and Nardini, J., concurring); *see also id*. at 673-74 (Chin, J., dissenting) (noting that "before any discovery, . . . information about NTT's applicant pools was not available").[12] NTT's remaining challenges to Plaintiffs' allegations at best amount to quibbling at the margins, and do not impact the plausibility of Plaintiffs' allegations:

---

2d 560, 562-63 (S.D.N.Y. 2006) (noting that plaintiffs had waited 15 months *after* the appeals court ruled to seek to reopen the judgment).

[11]   A redlined version comparing the Amended Complaint to the original Complaint is attached hereto as Exhibit B. As this motion arises under Rule 60, Plaintiffs disagree with NTT's contention that a redline was required, but provide one here for the convenience of the Court. NTT appears to have redlined the two complaints already, and thus suffered no prejudice.

NTT also criticizes the removal of information about Mr. Mandala and Mr. Barnett's specific training from the Amended Complaint. Opp. Br. at 15-16, n.4. These lines were removed simply because they are not necessary to state a claim. *See, e.g.*, *Robinson v. Page*, No. 18 Civ. 12233, 2019 WL 2209237, at *2 (S.D.N.Y. May 20, 2019) (noting that "a complainant's statement of claim should not be prolix (lengthy) or contain unnecessary details"). Plaintiffs have attached an Edited Amended Complaint to this motion that includes these allegations, and would have no opposition to filing that complaint in the place of the Amended Complaint, as they are substantively identical. *See* Ex. C. A redlined version is attached as Exhibit D.

[12]   While NTT's argument is legally incorrect, it does reaffirm why Plaintiffs properly waited until after the appeal to move for Rule 60(b) relief. Because of the majority and en banc

- NTT argues that "imprisonment risks" do not sufficiently "relate to the criminal conviction policy that Plaintiffs challenge." Opp. Br. at 21. But "imprisonment risks" are the risks of being arrested and/or convicted of a crime for which the punishment is prison – i.e., the risk of having a felony or drug conviction, which is what NTT's policy addresses. *See* ECF No. 35-3 (FAC) ¶¶ 4, 32, 34, 37, 52 and Ex. 1 (job posting).

- NTT argues that if racial disparities in imprisonment risk persist among people with "some college education," Opp. Br. at 20-21, this does not mean that NTT's applicant pool will show similar racial disparities. But the Second Circuit found the connection to be plausible at the pleading stage. *See Mandala*, 988 F.3d at 668 (Sullivan, J. and Nardini, J., concurring).

- NTT argues that Plaintiffs' statistics come from a study that was published before Plaintiffs applied to NTT (ignoring this is a class case).[13] Opp. Br. at 20-21. In fact, given Plaintiffs' allegations, it is *im*plausible that racial disparities in imprisonment risks have suddenly plunged in the last few years. ECF No. 35-3 (FAC) ¶¶ 56-58 and Ex. 2 (expert report).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court vacate the final judgment in this action and allow Plaintiffs to file their First Amended Class Action Complaint.

---

opinions, Plaintiffs now have controlling caselaw to rebut an argument that NTT assuredly would have also made if Plaintiffs have moved to reopen this matter directly after judgment.

[13] Plaintiffs have not argued that the existence of the statistics *themselves* represents an extraordinary or a changed circumstance, so it does not matter for that reason, either, that the study at issue was published before the filing of the complaint. Plaintiffs do note that prior to the en banc proceeding the statistics cited in the Amended Complaint were not readily available or searchable on an online database. It was only through the amicus brief that presented the research of several subject-matter experts that these statistics became generally available.

10

Dated: May 17, 2021
New York, New York

Respectfully submitted,

By: /s/ Christopher M. McNerney
**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
E-mail: om@outtengolden.com
E-mail: cmcnerney@outtengolden.com

Rachel Williams Dempsey*
One California Street, Ste 1250
San Francisco, CA 94111
Telephone: (415) 638-8800
E-mail: rdempsey@outtengolden.com

**NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
40 Rector Street, Fifth Floor
New York, NY 10006
Telephone: (212) 965-2200
E-mail: rkleinman@naacpldf.org

Catherine Meza*
700 14th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 682-1300
E-mail: cmeza@naacpldf.org

*pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Putative Classes*