UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    -v-<br><br>NTT DATA, INC.,<br><br>             Defendant. | Case No. 18-cv-6591-CJS-MWP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT IN ITS
ENTIRETY AND WITH PREJUDICE**

Jacqueline Phipps Polito
Erin M. Train
375 Woodcliff Drive, Suite 2D
Fairport, NY  14450
Telephone:  585.203.3400
jpolito@littler.com
etrain@littler.com

Attorneys for Defendant
NTT DATA, INC.

## TABLE OF CONTENTS

PAGE

FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND ...................................... 1

ARGUMENT ................................................................................................................ 5

   I.   LEGAL STANDARD .......................................................................................... 5

      A.  FIVE YEARS LATER, PLAINTIFFS FAIL TO CURE DEFICIENCIES. ................... 6

      B.  MANDALA FAILS TO STATE PLAUSIBLE STATE LAW CLAIMS. ................... 14

         i.  The Second Cause of Action Is Time-Barred. ............................................. 14

         ii.  Mandala Lacks Standing to Bring the Fourth Cause of Action. ................................ 15

            (a)   Mandala Does Not Allege a Concrete Injury. .................................................... 15

            (b)   Mandala Received a Copy of Article 23-A. ...................................................... 18

         iii.  This Court Should Decline to Exercise Supplemental Jurisdiction. .......................... 19

      C.  PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN. ....................... 20

         i.  Plaintiffs Do Not Have Standing to Represent Applicants Whose Claims Arose Before Plaintiffs Applied for Positions with Defendants. ........................................... 21

         ii.  Plaintiffs Do Not Adequately Allege That Fed. R. Civ. P. 23 Prerequisites Are Met Here. ................................................................................................................... 22

         iii.  The "NYRHL Criminal History Discrimination Class" Claims Are Partially Time-Barred. ................................................................................................................. 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ....................................................................8

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
  626 F.3d 699 (2d Cir. 2010)....................................................................15

*Alexander v. Bd. of Educ.*,
  648 F. App'x 118 (2d Cir. 2016) .............................................................18

*Ashcroft v. Iqbal*,
   556. U.S. 662 (2009).............................................................................5, 7

*Barnett v. Cobb County Sch. Dist.*,
  No. 15-CV-3561-RWS-LTW, 2017 WL 5203049 (N.D. Ga. Feb. 7, 2017) ....................8, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................5, 23

*Bility v. Univ. of Pittsburgh*,
  No. 2:23-CV-00770-MJH, 2024 WL 1156625 (W.D. Pa. Mar. 18, 2024)............................10

*Booker v. City of New York*,
  2017 WL 151625 (S.D.N.Y. Jan. 13, 2017), *adopted by* 2017 WL 1102673
  (S.D.N.Y. Mar. 24, 2017) ..........................................................19, 20, 25

*Borja-Valdes v. City and County of San Francisco*,
  No. 3:14-cv-04168-CRB, 2015 WL 5522287 (N.D. Ca. Sept. 18, 2015)................................10

*Cardwell v. Davis Polk & Wardwell LLP*,
  No. 1:19-cv-10256-GHW, 2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) ................................6

*Cardwell v. Davis Polk & Wardwell LLP*,
  No. 1:19-cv-10256-GHW, 2021 WL 4434935 .........................................................9

*Cordova v. Mike Bloomberg 2020, Inc.*,
  No. 22-1023, 2023 WL 6119448 (2d Cir. Sept. 19, 2023) ................................18, 19

*Crawford v. U.S. Dept. of Homeland Security*,
  245 F. App'x 369 (5th Cir. 2007) ............................................................10

*Davis v. District of Columbia*,
  925 F.3d 1240 (D.C. Cir. 2019) .............................................................10

*Doheny v. Int'l Bus. Machines, Corp.*,
  2024 WL 382142 (S.D.N.Y. Feb. 1, 2024)...........................................................................10

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
  747 F.3d 145 (2d Cir. 2014)...........................................................................................5, 17

*E.E.O.C. v. Joe's Stone Crab, Inc.*,
  220 F. 3d 1263 (11th Cir. 2000) ..........................................................................................6

*Edwards v. Zenimax Media Inc.*,
  Civ. No. 12-cv-00411-WYD-KLM, 2012 WL 4378219 (D. Colo. Sept. 25,
  2012) ...................................................................................................................................20

*EEOC v. Freeman*,
  961 F. Supp. 2d 783 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th Cir. 2015)..............12, 13

*Fulton v. City of New York*,
  No. 20-CV-144 (WFK) (PK), 2021 WL 11716365 (E.D.N.Y. Mar. 15, 2021) ......................7

*Gray v. Esper*,
  No. 20-cv-01898 (GRB) (ST), 2022 WL 1174959 (E.D.N.Y. Feb. 24, 2022) .........................8

*Hall v. Kodak Ret. Income Plan*,
  No. 07-CV-6169, 2009 WL 778102 (W.D.N.Y. Mar. 20, 2009), *aff'd* 363 F.
  App'x 103 (2d Cir. 2010) ...................................................................................................19

*Jenkins v. National Grid USA Serv. Co.*,
  No. 15-CV-1219(JS)(GRB), 2017 WL 4250511 (E.D.N.Y. Sept. 22, 2017) .........................16

*Jennings v. City of Tuscaloosa*,
  No. 7:13-cv-00874-LSC, 2013 WL 5299304 (N.D. Ala. Sept. 19, 2013)................................8

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007)................................................................................................14

*Katz v. New York City Housing Preservation & Dev.*,
  No. 21 Civ. 2933 (JPC), 2022 WL 3156178 (S.D.N.Y. Aug. 8, 2022) ............................10, 14

*Lee v. Hertz Corp.*,
  No. 15-cv-04562-BLF, 2016 WL 7034060 (N.D. Cal. Dec. 2, 2016)....................................16

*Long v. NUCO Educ. Corp.*,
  No. 5:19V01711, 2020 WL 13469459 (N.D. Ohio Apr. 20, 2020)...................................16, 17

*Long v. SEPTA*,
  903 F.3d 312 (3rd Cir. 2018) .........................................................................................16, 18

*Maddison v. Comfort Sys. USA (Syracuse)*,
   No. 5:17-CV-0359, 2018 WL 679477 (N.D.N.Y. Feb. 1, 2018) .....................................21, 22

*Mandala v. NTT DATA*,
   2019 WL 3237361 (W.D.N.Y. July 18, 2019) ...........................................................................2

*Mandala v. NTT DATA, Inc.*,
   975 F.3d 202 (2d Cir. 2020) ................................................................................... *passim*

*Mandala v. NTT DATA, Inc.*,
   988 F.3d 664 (2d Cir. 2021) .......................................................................................................2

*Mentor v. Dept. of Educ. of City of NY.*,
   66 N.Y.S.3d 654 (Sup. Ct. N.Y. Cty. Jan. 17, 2017) ......................................................24, 25

*Merhulik v. Weltman, Weinberg, & Reis Co., LPA*,
   No. 1:20 CV 1188, 2020 WL 7156621 (N.D. Ohio Dec. 7, 2020) ........................................10

*Montgomery v. Cuomo*,
   291 F. Supp. 3d 303 (W.D.N.Y. 2018) .....................................................................................5

*Morren v. New York Univ.*,
   No. 20-CV-10802 (JPO) (OTW), 2022 WL 1666918 (S.D.N.Y. Apr. 29,
   2022) .........................................................................................................................................7

*Motta v. Global Contract Servs. Inc.*,
   Nos. 15 Civ. 8555 (LGS), 15 Civ. 8892 (LGS), 2016 WL 2642229 (S.D.N.Y.
   May 4, 2016) ........................................................................................................................6, 8

*Muldrow v. Garland*,
   No. 8:21-cv-2674-KKM-JSS, 2023 WL 6376378 (M.D. Fla. Sept. 30, 2023) ........................9

*New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
   497 F.3d 109 (2d Cir. 2007) .............................................................................................19, 20

*Osborne v. Travis Cnty.*,
   638 F. App'x 290 (5th Cir. 2016) .............................................................................................9

*Pagán v. Calderón*,
   448 F.3d 16 (1st Cir. 2006) ....................................................................................................5, 6

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ...................................................................................................20

*Pouyeh v. Bascom Palmer Eye Inst.*,
   613 F. App'x 802 (11th Cir. 2015) ............................................................................................8

*Ret. Bd. of Policemen's Annuity and Benefit Fund of Chi. v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014)................................................................6

*Rice v. City of Cincinnati*,
    538 F.Supp.3d 800 (S.D. Ohio 2021) ...........................................10, 12

*Roach v. T.L. Cannon Corp.*,
    No. 3:10-CV-0591, 2015 WL 10818750 (N.D.N.Y. Sept. 4, 2015).....................22

*Rodriguez v. Beechmont Bus Serv., Inc.*,
    173 F. Supp. 2d 139 (S.D.N.Y. 2001).......................................................8

*Sutton ex rel. Rose v. Wachovia Sec., LLC*,
    208 F. App'x 27 (2d Cir. 2006) ......................................................19, 20

*Schilling v. Kenton Cty.*,
    Civ. No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011)...................20

*Schmookler v. Empire Blue Cross and Blue Shield*,
    107 F.3d 4 (2d Cir. 1997) ..................................................................6

*Smith v. City of Jackson, Miss.*,
    544 U.S. 228 (2005)..........................................................................7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).............................................................5, 6, 15, 18

*Toussaint v. City of New York*,
    No. 19 Civ. 1239 (AT), 2021 WL 4429316 (S.D.N.Y. Sept. 27, 2021).............9, 13

*Trezza v. Hartford, Inc.*,
    No. 98 CN. 2205, 1998 WL 912101 (S.D.N.Y. Dec. 30, 1998)........................13

*Tyree v. GCA Servs. Grp., Inc.*,
    No. 7:17CV00328, 2018 WL 342066 (W.D. Va. Jan. 9, 2018) ........................14

*United Prob. Officers Assoc. v. City of New York*,
    No. 21-cv-0218 (RA), 2022 WL 875864 (S.D.N.Y. Mar. 24, 2022)....................10

*Vann v. Dolly, Inc.*,
    Civ. No. 18 C 4455, 2020 WL 902831 (N.D. Ill. Feb. 25, 2020)......................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................................24

*Wards Cove Packing Co., Inc. v. Atonio*,
    490 U.S. 642 (1989) *superseded by statute on other grounds*........................1, 11

*Washington v. Steve*,
    No. 13-CV-343-JPS, 2013 WL 6061988 (E.D. Wisc. Nov. 18, 2013) .................................8

*Watson v. New York Pressman's Union No. 2*,
    444 F. App'x 500 (2d Cir. 2011) ...........................................................................9, 14

**Statutes**

28 U.S.C. § 1367(c)(3) .....................................................................................................19

42 U.S.C. § 2000e-2(k) ......................................................................................................1

42 U.S.C. § 2000e-2(k)(1)(A)(i) ......................................................................................25

N.Y. Gen. Bus. Law § 380-g(d) ............................................................................17, 18, 23

**Other Authorities**

5 James Wm. Moore et al., *Moore's Federal Practice - Civil* § 23.21 (3d ed. 2017) ...................22

Bruce Western, *Punishment and Inequality in America* 27, Fig. 1.4, 32-33, Table
    1A (Russell Sage Foundation 2006) 1 ........................................................................12

Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field
    Experiment*, 74 Am. Soc. Rev. 777 (2009) ...............................................................13

Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing
    Young Black and White Men with Criminal Records*, 623 Annals Am. Acad.
    Pol. & Soc. Sci. 195 (2009) ........................................................................................13

Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937 (2003) ...............................13

Fed. R. Civ. P. 12 ..........................................................................................................5, 20

Fed. R. Civ. P. 23 ..................................................................................................20, 21, 23

N.Y. C.P.L.R. § 214(2) (McKinney 2021) .......................................................................25

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant NTT DATA, Inc. ("NTT DATA" or "Defendant") moves to dismiss Plaintiffs' First Amended Class Action Complaint (Dkt. 49) ("Complaint" or "FAC") in its entirety.  In the alternative, Defendant moves to strike the class Claims in Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), 12(f) and 23(d)(1)(D).

The FAC contains the same deficiencies as the original complaint filed over ***five years*** ago (*see* Dkt. 1) ("Original Complaint" or "Compl.") that was dismissed by this Court and upheld by the Second Circuit. Even with ***three*** opinions from this Court and the Second Circuit, Plaintiffs still ***have not, and cannot***, meet their burden to state a plausible claim for relief. In fact, ***not a single allegation added to the FAC*** cures the deficiencies identified by this Court or by the Second Circuit: that "Plaintiffs provide no allegations to demonstrate that national arrest or incarceration statistics are in any way representative of the pool of potential applicants qualified for a position at NTT [DATA]." *Mandala v. NTT DATA, Inc.*, 975 F.3d 202, 211 (2d Cir. 2020).

Instead, Plaintiffs seek to open the floodgates of litigation – starting with NTT DATA – by asking this Court, yet again, to rely upon general statistics to impose liability – creating an untenable situation that the Supreme Court cautioned against in *Wards Cove Packing Co.*, *Inc. v. Atonio*, 490 U.S. 642, 656-57 (1989) (finding plaintiffs must go beyond "statistical disparities" as employers would face potential liability for "the myriad of innocent causes that may lead to statistical imbalances") (internal citations omitted) *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k). Accordingly, Plaintiffs' FAC must be dismissed with prejudice and finally bring this matter to a conclusion.

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

On August 15, 2018, Plaintiff George Mandala ("Mandala") and Plaintiff Charles Barnett ("Barnett") (collectively, "Plaintiffs") filed a nationwide putative class action against NTT DATA,

1

with a single federal claim – a putative class action claim for disparate impact under Title VII. *See* Compl., ¶¶ 105-112. On July 18, 2019, this Court granted NTT DATA's motion to dismiss holding that Plaintiffs did not meet their burden of pleading a plausible Title VII claim. *See* Dkt. 27; *Mandala v. NTT DATA*, 2019 WL 3237361, at \*4 (W.D.N.Y. July 18, 2019) ("*Mandala I*"). Plaintiffs appealed and the Second Circuit affirmed this Court's decision in *Mandala v. NTT DATA, Inc.*, 975 F.3d 202, 211 (2d Cir. 2020) ("*Mandala II*").[1] The Second Circuit subsequently denied Plaintiffs' request for rehearing *en banc* on the affirmance of the dismissal. *Mandala v. NTT DATA, Inc.*, 988 F.3d 664 (2d Cir. 2021) ("*Mandala III*"). Only after their *en banc* request was denied, did Plaintiffs then seek to file an amended complaint. That request triggered a second round of appeals (albeit with a strongly worded dissent by Judge Sullivan), which resulted in Plaintiffs being permitted to file their FAC based upon a procedural issue, not a merits issue. Now that the FAC has been filed, it only adds handful of ***factual*** allegations (*see* Dkts. 39-3, 39-5) that ***still do not*** address the core deficiencies identified in *Mandala II* - "that national arrest or incarceration statistics are in any way representative of the pool of potential applicants qualified for a position at NTT." *Mandala II*, 975 F.3d at 211.

The following are the pleaded "facts" alleged in Plaintiffs' Complaint, which are assumed to be true solely for the purposes of this motion to dismiss:

- Mandala, an African American, living in Rochester, New York, applied for a job as a Salesforce Developer with NTT DATA "[i]n or around January or February of 2017." FAC ¶¶ 15, 22. When he interviewed, Mandala was asked "technical questions related to the position," which he answered "competently, based on his years of applicable work experience." *Id.* at ¶ 23. On March 22, 2017, Mandala received an offer letter for a position as an Application Software Development Senior Principal Consultant, a position Mandala accepted. *Id.* at ¶¶ 26, 28. Thereafter, Mandala "authorized a background check," and NTT DATA obtained a criminal background check on

---

[1] Mandala also filed an amended putative class action complaint in New York State court alleging the same three state claims as alleged in the FAC. *See* Declaration of Jacqueline Phipps Polito (hereinafter "Polito Decl.") at ¶¶ 6-8.

Mandala from a consumer reporting agency. *Id*. at ¶ 29. After receiving his background check, NTT DATA recruiter Patricia Price asked Mandala to "give [her] a call to discuss [his] background check." *Id*. at ¶ 31. Mandala called Price, and Price allegedly informed Mandala that "NTT had a policy not to hire persons with felonies on their records." *Id*. at ¶ 32. Mandala's job offer was withdrawn on April 6, 2017. *Id*. at ¶ 33. Mandala claims that "NTT did not provide [him] with a copy of Article 23-A of the Correction Law . . . [as] required by N.Y. Gen. Bus. Law§ 380-g(d)." *Id*. at ¶¶ 36, 131. The FAC does not contain any allegations with respect to Mandala's educational background.

- Barnett, an African American, living in Frankfort, Kentucky, was "contacted" by NTT DATA regarding a "web developer'' position. *Id*. at ¶¶ 16, 39. After an in-person interview, Barnett received an offer of employment, which he accepted. *Id*. at ¶ 44. Thereafter, Barnett authorized a background check, and a criminal background check was obtained from a consumer reporting agency. *Id*. at ¶¶ 45-46. Barnett alleges that he was advised that his offer of employment was withdrawn, and that he would not be considered for other positions, because of his felony convictions. *Id*. at ¶¶ 47-49.

- The FAC largely recites the same statistics previously found deficient in *Mandala I, Mandala II,* and *Mandala III. Compare* Compl., at ¶¶ 52 n.1; 53 n.2-3; 54 n.4; 58 n.5 *with* FAC, at ¶¶ 54 n.5; 55 n.8-9; 60 n.17; 63 n.18.

In addition to essentially re-pleading their Original Complaint, Plaintiffs' FAC contains only ***nine*** additional paragraphs that contain any purported ***factual allegations***. Yet, these allegations do not contain statistics that are of the "kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." *Mandala II*, 975 F.3d at 209. More specifically:

| New Factual Allegations in the FAC | Deficiencies With New Allegations |
|---|---|
| Mandala was convicted of a non-violent felony conviction for Driving While Intoxicated ("DWI") in 2014. FAC, ¶ 35. | Fails to provide any additional support that general population statistics are the appropriate comparator. |
| Plaintiff reference an undated job posting for "Network/Systems Administrator" in New York City with a requirement for "No prior felony arrests. No drug related arrests." FAC, ¶ 37. | Neither Plaintiff allege they ever applied for or were offered this position and therefore, provides no further factual support for any causal analysis. *See Mandala II*, 975 F.3d at 212, n.6 (limiting Plaintiffs' allegations to the Salesforce Developer and web developer positions). |

| *New Factual Allegations in the FAC* | *Deficiencies With New Allegations* |
|---|---|
| Plaintiffs cite to a U.S. Commission on Civil Rights report from 2019 indicating that "criminal background checks indiscriminately disqualify all applicants with criminal records [and] black and Latino individuals are likelier to have criminal records." FAC, ¶ 53. | These are the same type of general statistics that Plaintiffs relied upon that were insufficient to state a plausible claim for disparate impact under Title VII. |
| Citing statistics to show that African-American men had a higher felony conviction rate than all American adults, were more likely to be incarcerated than whites, and were twice as likely to be arrested than the total share of the population. FAC, ¶ 55. | These are the same type of general statistics that Plaintiffs relied upon that were insufficient to state a plausible claim for disparate impact under Title VII. |
| African American imprisonment rates and arrests for marijuana were higher than their white counterparts in New York State. FAC, ¶ 56. | Neither Plaintiff (and Mandala in particular) alleges he was imprisoned. Moreover, neither alleges their felony conviction stemmed from a marijuana arrest. |
| Unsupported allegation that no statistics exist to show Black and white people are treated equally in any segment of society. FAC, ¶ 57. | Plaintiffs fail to support this allegation with any statistics. |
| Black men with **some college education** have **imprisonment risks** that are seven (7) times greater than white men with **some college education** (4.9% for Black men compared to 0.7% for white men)." FAC, ¶ 58 (emphasis added). | This study is based upon a 2006 publication studying the imprisonment rates from 1999. Moreover, there are no allegations that "some college" is the appropriate comparator pool, as Barnett held a master's degree (FAC, ¶ 51) and Mandala continued to fail to include his educational level. *See* Compl., *generally*. |
| Alleging two-thirds of college students agreed that "most students on campus are treated differently by law enforcement officials based on their racial appearance." FAC, ¶ 59. | This is an inappropriate comparator pool and is otherwise irrelevant to Plaintiffs' claims. |
| Audit studies found that even among people with criminal records, African Americans were particularly disadvantaged in the job market compared to white people with criminal records. FAC, ¶ 60. | These studies confirm the educational level of individuals in prison are vastly different than the general population and the studies are limited to individuals with high-school degrees for entry-level positions. |

In other words – none of these assertions are specific to NTT DATA, but rather rely upon purported national statistics in support of four separate classes of individuals, none of which apply to the plaintiffs in this action. *See* FAC, ¶¶ 116, 122, 127, 131. The deficiencies found in their Original Complaint that were identified in three separate opinions are still not cured in the FAC, because they cannot be cured. Two different forums, three different opinions later, enough is

enough - Plaintiffs' First Amended Class Action Complaint must be dismissed in its entirety.

## ARGUMENT

### I.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556. U.S. 662, 678 (2009) (internal quotations and citations omitted). In a two-part analysis, the Court must first separate factual allegations from legal conclusions because mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice. *Id*. Second, the Court must determine whether the factual allegations sufficiently show that the plaintiff has a ''plausible claim for relief." *Id*. at 679. Where the facts, even if believed, do not state a viable legal claim, dismissal is warranted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  When deciding a Rule 12(b)(6) motion, legal conclusions derived from factual allegations are not drawn in favor of the plaintiff.  *Iqbal*, 556 U.S. at 678.  While "factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (internal citation omitted).

Rule 12(b)(1) requires dismissal of a claim if the Court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Plaintiffs bear the burden of showing that they have Article III standing (*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)), and standing is both plaintiff-specific and claim specific. *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 343 & n.169 (W.D.N.Y. 2018). *See also Pagán v. Calderón*, 448 F.3d 16, 26 (1st Cir. 2006). Thus, Plaintiffs must plead facts showing

standing to assert each claim against NTT DATA. *Id.*[2] To do so, each Plaintiff must plead facts

that plausibly show that he personally suffered a cognizable "injury in fact." *Spokeo*, 136 S. Ct. at

338-39. To establish an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion

of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical." *Id*. at 339.

### A.    FIVE YEARS LATER, PLAINTIFFS FAIL TO CURE DEFICIENCIES.

Plaintiffs utterly fail to "***at least*** set forth enough factual allegations to plausibly support

each of the three basic elements of a disparate impact claim" required to withstand a motion to

dismiss. *Mandala II*, 975 F.3d at 209 (emphasis added).[3] "This requires the plaintiff to '(1) identify

a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish

a causal relationship between the two.'" *Id.* at 207 (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685

F.3d 135, 151 (2d Cir. 2012)).   "The plaintiff 'bears the initial burden of [making] a prima facie

showing of disparate impact.'" *Id.* (quoting *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 382

(2d Cir. 2006)). *See also E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F. 3d 1263, 1274 (11th Cir. 2000).

In order to demonstrate a disparity, Plaintiffs either must allege statistical evidence or

---

[2] Class standing requires that Plaintiffs demonstrate that the conduct that allegedly caused them personal injury "implicates the same set of concerns[,]" and requires similar proof, "as the conduct alleged to have cause injury to other members of the putative class…" *Ret. Bd. of Policemen's Annuity and Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161-62 (2d Cir. 2014) (internal quotations omitted). *See also, e.g., Schmookler v. Empire Blue Cross and Blue Shield*, 107 F.3d 4, at *1 (2d Cir. 1997) (upholding lower court dismissal of subclass because "none of the named plaintiffs was a member of the class").  Given Plaintiffs fail to establish standing on their fourth cause of action, any class claims for their fourth cause of action must also be dismissed.

[3] "Claims brought under the NYSHRL 'are analyzed identically and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under…Title VII.'" *Motta v. Global Contract Servs. Inc.*, Nos. 15 Civ. 8555 (LGS), 15 Civ. 8892 (LGS), 2016 WL 2642229, at *2 (S.D.N.Y. May 4, 2016) (internal quotation omitted). *See also Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-cv-10256-GHW, 2020 WL 6274826, *40 (S.D.N.Y. Oct. 24, 2020) (noting the NYHRL, as amended, only applies to claims that accrued after the amendments effective date of October 11, 2019).

allege that a "neutral employment practice denied equal employment opportunities to a small number of members of a protected class compared to similarly-situated colleagues." *Morren v. New York Univ.*, No. 20-CV-10802 (JPO) (OTW), 2022 WL 1666918, at *17 (S.D.N.Y. Apr. 29, 2022) (internal quotations omitted). Here, Plaintiffs do not identify ***any*** similarly situated colleagues, and therefore must rely upon their alleged statistical analysis alone. *Compare FAC with Fulton v. City of New York*, No. 20-CV-144 (WFK) (PK), 2021 WL 11716365, at *11 (E.D.N.Y. Mar. 15, 2021) (denying motion to dismiss solely because of allegations of similarly situated comparators after finding national statistics were based upon inappropriate comparators).

Accordingly, "[t]o nudge a disparate impact claim across the line from conceivable to plausible – and, indeed, to ultimately prove such a claim – plaintiffs typically rely on statistical evidence to show a disparity in outcome between groups." *Mandala II*, 975 F.3d at 209. "At the prima facie stage, a plaintiff's statistical analysis 'must [demonstrate] that the disparity is substantial or significant and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." *Id.* (quoting *Chin*, 685 F.3d at 151).

At the outset, Plaintiffs' vague  and conclusory allegations that "NTT's policy...has an unjustified disparate impact on African Americans," "NTT's policy...had and continues to have a significant and detrimental impact on African Americans...as compared to White applicants," "the policy and practice...excluded many properly qualified persons, including disproportionate numbers of African American applicants," and "Defendant's policy...had a disparate impact on African Americans," (FAC, ¶¶ 4, 54, 66, 116), do not save Plaintiffs' disparate impact claims. These assertions remain nothing more than conclusory legal allegations that must be stricken under *Iqbal* and *Twombly*. *See, e.g., Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) ("[I]it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized

policy that leads to such an impact."); *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 811 (11th Cir. 2015) ("Conclusory assertions regarding statistical disparities" are not sufficient to state a disparate impact claim.); *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (finding that the words "disproportionate" and "impermissible impact" and other synonyms constituted "bare legal conclusions, not facts."); *Gray v. Esper*, No. 20-cv-01898 (GRB) (ST), 2022 WL 1174959, at *6 (E.D.N.Y. Feb. 24, 2022) (conclusory allegations were insufficient to show security clearance procedure had a disparate impact on African American employees and applicants); *Jennings v. City of Tuscaloosa*, No. 7:13-cv-00874-LSC, 2013 WL 5299304, at *3 (N.D. Ala. Sept. 19, 2013) (allegation that "Defendant's DUI policy as enforced has a disparate impact on African-Americans" was legal conclusion).

Nor do Plaintiffs allege any facts or statistics to support that NTT DATA's alleged employment practice had a significant adverse impact as applied. Plaintiffs allege ***no*** facts supporting that African American applicants were, in fact, refused jobs more often than white applicants here. *See, e.g., Rodriguez v. Beechmont Bus Serv., Inc*., 173 F. Supp. 2d 139, 148 (S.D.N.Y. 2001) (granting motion to dismiss disparate impact claim with prejudice where ''plaintiff presents no statistical evidence to suggest that any such neutral policy or factor had a significant adverse impact''); *Barnett v. Cobb County Sch. Dist.*, No. 15-CV-3561-RWS-LTW, 2017 WL 5203049, at *4 (N.D. Ga. Feb. 7, 2017) (rejecting notion that simply alleging "African Americans are arrested more often than other non-minority groups" suffices to establish disparate impact claim); *Motta*, 2016 WL 2642229, at *3 (dismissing NYSHRL claims because the complaint did not allege defendant's "policies affect[ed] employees of protected classes differently than they do non-members of those classes"); *Washington v. Steve*, No. 13-CV-343-JPS, 2013 WL 6061988, at *2 (E.D. Wisc. Nov. 18, 2013) (dismissing failure to hire complaint based upon

criminal conviction, and plaintiff failed to allege "that members of his race were more often refused jobs on the basis of their race."). Failure to make such allegations is fatal to Plaintiffs' disparate impact claims. *See Watson v. New York Pressman's Union No. 2*, 444 F. App'x 500, 502 (2d Cir. 2011) ("Plaintiffs do not dispute that all Junior Pressmen and Casuals – regardless of race or gender – were impacted by the transfer equally.").

In fact, Plaintiffs' proffered statistics – which are largely duplicative of the Original Complaint – still fail to plausibly suggest NTT DATA's alleged employment practice had a disparate impact given they are not "focus[ed] on the disparity between appropriate comparator groups" nor are they focused to "reveal disparities between populations that are ***relevant to the claim[s] the plaintiff[s] seek[] to prove.***" *Mandala II*, 975 F.3d at 210 (emphasis added). Plaintiffs have utterly failed to supplement their Complaint with ***any factual*** allegations that relate to the appropriate comparator groups or are otherwise relevant to the claims Plaintiffs seek to prove. Courts in this Circuit, as well as numerous other circuits, have not hesitated to dismiss disparate impact claims at the pleadings stage where, such as here, the plaintiffs are simply "relying on apples to study oranges." *Mandala II*, 975 F.3d at 211. *See, e.g.*, *Osborne v. Travis Cnty.*, 638 F. App'x 290, 295 (5th Cir. 2016) (affirming dismissal of disparate impact claim where statistical evidence was not based upon employment practice and where no statistical evidence as to the effect of the employment practice was provided); *Muldrow v. Garland*, No. 8:21-cv-2674-KKM-JSS, 2023 WL 6376378, at *7 (M.D. Fla. Sept. 30, 2023) (general comparison between employment statistics insufficient without any causal nexus between at-issue policy and statistics); *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-cv-10256-GHW, 2021 WL 4434935, at *37 n.18 (reliance on statistics regarding discrimination in legal industry generally did not pertain to plaintiff's former employer); *Toussaint v. City of New York*, No. 19 Civ. 1239 (AT), 2021 WL

4429316, at *10 (S.D.N.Y. Sept. 27, 2021) (dismissing NYSHRL disparate impact claim where alleged policy was not causally connected to statistics alleged).[4]

As a threshold matter, the **only** employment policy or practice Plaintiffs have plausibly alleged is that Defendant allegedly had a policy "not to hire persons with felonies on their records." *See* FAC, ¶¶ 32, 49.[5] Yet Plaintiffs continue to offer overbroad, national statistics they allege show African Americans are "arrested, sentenced, and imprisoned" for "crimes" [not specific to

---

[4] This reasoning is consistent for disparate impact claims brought under different statutes and disparate treatment claims – where proffered statistics are based on inappropriate comparators the claims are dismissed. *See Bility v. Univ. of Pittsburgh*, No. 2:23-CV-00770-MJH, 2024 WL 1156625, at *6 (W.D. Pa. Mar. 18, 2024) (dismissing disparate treatment claim as "[t]he general population of Pittsburgh is not a proper comparison to those persons qualified to be a tenured professor at the University."); *Katz v. New York City Housing Preservation & Dev.*, No. 21 Civ. 2933 (JPC), 2022 WL 3156178, at *6-7 (S.D.N.Y. Aug. 8, 2022) (dismissing disparate impact claim under FHA where statistical analysis involves the incorrect comparators); *United Prob. Officers Assoc. v. City of New York*, No. 21-cv-0218 (RA), 2022 WL 875864, at *10 (S.D.N.Y. Mar. 24, 2022) (alleged statistics insufficient to support claim of intra-title pay disparities). The same holds true at the summary judgment stage. *See Davis v. District of Columbia*, 925 F.3d 1240, 1254 (D.C. Cir. 2019) (affirming dismissal of disparate impact claim on summary judgment where plaintiff relied upon census data showing racial disparity of individuals with bachelor's degree living in the District of Columbia in alleging a requirement for bachelor's degree created a disparate impact); *Crawford v. U.S. Dept. of Homeland Security*, 245 F. App'x 369, 379-80 (5th Cir. 2007) (affirming dismissal of disparate impact claims based upon background check policy where general population statistics, not the relevant applicant pool, were provided); *Rice v. City of Cincinnati*, 538 F.Supp.3d 800, 812-13 (S.D. Ohio 2021) (granting summary judgment due to failure to include appropriate comparators in piecemeal statistics).

[5] Plaintiffs also add a vague reference to an undated job posting for a "Network/Systems Administrator" (*see* FAC, ¶ 37) but fail to make any allegations that either Plaintiff ever applied for the position, and therefore does not warrant any consideration by this Court. *See Mandala II*, 975 F.3d at 212, n.6 (limiting Plaintiffs' allegations to the Salesforce Developer and web developer positions). *See also Merhulik v. Weltman, Weinberg, & Reis Co., LPA*, No. 1:20 CV 1188, 2020 WL 7156621, at * 7 (N.D. Ohio Dec. 7, 2020) ("[S]peculation that the wording of the job posting may have kept [a protected class of] applicants other than [plaintiff] from applying for a job at [defendant], without more, is insufficient to state a claim for disparate impact discrimination."); *Borja-Valdes v. City and County of San Francisco*, No. 3:14-cv-04168-CRB, 2015 WL 5522287, at *8 (N.D. Ca. Sept. 18, 2015) (plaintiff's failure to allege she applied for jobs at issue precluded her from bringing disparate impact claim). Nor is any specific employment practice at issue, which is fatal to Plaintiffs' claims. *See Doheny v. Int'l Bus. Machines, Corp.*, 2024 WL 382142, at *9 (S.D.N.Y. Feb. 1, 2024) (dismissing disparate impact claim where the plaintiff failed to allege specific, neutral employment policy).

"felonies"] at "higher rates than whites." *See, e.g., id.*, ¶ 54.[6] These allegations are simply insufficient to survive a motion to dismiss. *See Barnett*, 2017 WL 5203049, at *4 (dismissing claim where plaintiff failed "to offer facts tending to show that the arrest policy as applied by Defendant has caused the exclusion of African American applicants because of their race" and failed to allege "statistics or any other facts tending to show that the application of Defendant's arrest policies has had a disproportionate impact on African Americans.").

In fact, ***only the first sentence*** of a single paragraph of Plaintiffs' Complaint identifies any statistic **specific** to felony convictions – *i.e.* Defendant's alleged employment or policy at issue. FAC, ¶ 55. However, as pointed out by the Second Circuit, this statistical analysis falls short because it "must, at the very least, focus on the disparity between appropriate comparator groups." *Mandala II*, 975 F.3d at 210.  *See also Wards Cove*, 490 U.S. at 651 ("Measuring alleged discrimination in the selection of accountants, managers, boat captains, electricians, doctors, and engineers…by comparing the number of nonwhites occupying these [skilled] jobs to the number of nonwhites filling [unskilled] cannery worker positions is nonsensical.").

Plaintiffs allege that both Mandala and Barnett are skilled workers who applied for technical positions as an "Application Software Development Senior Principal Consultant" and "web developer." *See* FAC, ¶¶ 15, 16, 22, 26, 39. As the Second Circuit correctly surmised, "the positions' titles alone – Salesforce Developer and web developer – reflect that they require…educational or technical experience that is not shared by the general population." *Mandala II,* 975 F.3d at 211-12.[7] Yet, Plaintiffs persist in citing to statistics based upon ***general***

---

[6] *See also* FAC, ¶¶ 54 (discussing arrests and convictions), 56 (comparing imprisonment rates), 58 (comparing imprisonment rates).
[7] Despite being given this second bite of the apple, Plaintiffs failed to include any allegations with respect to Mandala's educational history to make his disparate impact claims more plausible.

*population* studies to support their disparate impact claim. *See e.g.*, FAC, ¶¶ 53, 55, 57, 58, 60, and 63 n.18. This is the same, fatal flaw the Second Circuit identified in affirming this Court's decision to dismiss Plaintiffs' Original Complaint: "while Plaintiffs' statistics show that African Americans are on average more likely to have been convicted of a crime than whites, that does not, without more, make it plausible that an African-American web developer with the educational and technical qualifications to work at NTT is more likely to have been convicted of a crime than his Caucasian counterpart." *Mandala II*, 975 F.3d at 212.

Finally, the addition of the allegation that "Black men with **some college education** have **imprisonment risks** that are seven (7) times greater than white men with **some college education** (4.9% for Black men compared to 0.7% for white men)" (*see* FAC, ¶ 58 (emphasis added)) is not sufficient to "nudge" Plaintiffs' claims from conceivable to plausible for at least three reasons.

*First*, Plaintiffs rely on an outdated statistic from a 2006 publication (*see* FAC, ¶ 58 n.15) over a decade before either Plaintiff applied for a position with NTT DATA. *See id.*, ¶¶ 22, 39. Moreover, the statistical figures themselves are based upon the "cumulative risk of ever having been to prison…by 1999 for men born between 1965 and 1969…" *See* Bruce Western, *Punishment and Inequality in America* 27, Fig. 1.4, 32-33, Table 1A (Russell Sage Foundation 2006) 1. These dated statistics cannot demonstrate a causal connection to a 2014 felony conviction. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 794 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th Cir. 2015) ("cherry-picked" statistics insufficient to support plaintiff's disparate impact claim); *Rice*, 538 F.Supp.3d at 810-11 (statistics contained broad variables).

*Second*, the specific statistic relied upon by Plaintiffs identify addresses "**imprisonment risks**" and not, as Plaintiffs allege, NTT DATA's employment practice of not hiring individuals with a felony conviction. *See* FAC, ¶¶ 32, 49. Accordingly, these statistics relates to something

that is not even the issue claimed by Plaintiffs and therefore, insufficient. *See, e.g.*, *Toussaint*, 2021 WL 4429316, at *10 (dismissing disparate impact claim where statistics were not connected to specific policies); *Freeman*, 961 F. Supp. 2d at 798 (explaining statistics are not applicable when they "relate to things that are not even considered under Defendant's hiring criteria, such as arrest and incarceration rates").

*Third*, this statistic is entirely devoid of any connection to the alleged comparator pool, as required to withstand a motion to dismiss. *See Mandala II*, 975 F.3d at 211 (noting Plaintiffs same failure to allege "national arrest or incarceration statistics are in any way representative of the pool of potential applicants qualified for a position [with Defendant]."). Plaintiffs allege no facts that individuals with "some college education" accurately reflects the pool of qualified job applicants in question. *See Trezza v. Hartford, Inc.*, No. 98 CN. 2205 (MBN), 1998 WL 912101, at *8 (S.D.N.Y. Dec. 30, 1998) (dismissing disparate impact claim where plaintiff "alleges no facts about the mix of the relevant labor pool or about the pool of otherwise-qualified applicants," and only offered a "conclusory assertion" that at-issue test caused a disparate impact). Rather, Plaintiffs allege that Barnett had a master's degree (*see* FAC, ¶ 51), and continue to fail to include any allegations with respect to Mandala's educational background. *See* FAC, *generally*.[8] Accordingly, even **with** the addition of the statistical evidence provided by Plaintiffs, they still fail to provide sufficient statistics from the ***appropriate comparator group*** to state a plausible disparate impact

---

[8] Plaintiffs rely upon studies that confirm the educational level of individuals in prison are vastly different than the general population. *See* Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937, 955-61, 949-50 (2003) ("More than 70% of federal and nearly 90% of state prisoners have no more than a high school degree (or equivalent).") (cited at FAC, ¶ 60 n.17). Accordingly, the studies are focused on individuals with high-school degrees for entry-level positions. *See* Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 781 (2009); Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 Annals Am. Acad. Pol. & Soc. Sci. 195, 198 (2009) (cited at FAC, ¶ 60 n.17).

claim. *Katz*, 2022 WL 3156178, at *6-7 (dismissing claim based upon statistics involving incorrect comparators).

In short, Plaintiffs' FAC fails to correct the fundamental flaw found in their Original Complaint that cannot be saved by a compilation of insufficient statistics. *See Tyree v. GCA Servs. Grp., Inc.*, No. 7:17CV00328, 2018 WL 342066, at *3 (W.D. Va. Jan. 9, 2018) ("[M]erely point[ing] to the EEOC's guidance concerning the use of criminal records in the employment context" without alleging "any facts which plausibly suggest that [employer's] selection criteria imposed a substantially disproportionate burden on African-Americans" insufficient to withstand motion to dismiss). Plaintiffs continued assertions that a racial imbalance in the criminal justice system, is alone, sufficient for this Court to jump to the conclusion that a corresponding racial imbalance exists with respect to Defendant and the job positions in question is incorrect. Courts have cautioned against using such broad statistics as Plaintiffs have relied upon here. *See, e.g.*, *Watson*, 444 F. App'x at 502 ("Plaintiffs' argument that the transfer 'locks in' the effects of alleged past discrimination does not amount to a disparate impact claim.") (internal citations omitted).

## B.    MANDALA FAILS TO STATE PLAUSIBLE STATE LAW CLAIMS.

### i.    The Second Cause of Action Is Time-Barred.

In addition to the reasons set forth in Section I.A *supra*, Mandala's Second Cause of Action brought under the NYHRL for disparate impact likewise fails as it is undisputedly time-barred. "[C]laims under the NYSHRL…are time-barred unless filed within three years of the alleged discriminatory acts." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing N.Y. Exec. L. § 296 and C.P.L.R. § 214(2) ("The following actions must be commenced within three years...(2) an action to recover upon a liability, penalty or forfeiture created or imposed by statute")). Plaintiffs first sought to add their cause of action for an NYHRL Disparate Impact Claim when Plaintiffs filed their motion to vacate this Court's judgment on March 31,

2021. *See* Dkt. 35. Accordingly, the statutory cut-off is three years earlier or March 31, 2018. Even if this Court were to toll the time Mandala's EEOC Charge was pending for 11 months and 15 days from June 2, 2017 through May 17, 2018 (*see* FAC, ¶ 38), the three year statutory period would still expire ***prior*** to March 31, 2021.

Alternatively, this Court should stay any decision on the Second Cause of Action as Mandala filed the Second Cause of Action in State Court ***first*** – which is still pending before that Court. "[R]egardless of the action or inaction of the first court, '[s]ound judicial discretion' ordinarily requires that the second court decline consideration of the action in deference to the proceedings pending before the first court." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 724 (2d Cir. 2010) (internal citation omitted). Mandala first raised this Claim in his State Court Complaint (*see* Polito Decl., ¶ 8) and the matter is still pending before that court.

### ii.    Mandala Lacks Standing to Bring the Fourth Cause of Action.

### (a)    Mandala Does Not Allege a Concrete Injury.

In the seminal case *Spokeo, Inc. v. Robins*, the Supreme Court found that an alleged violation of the Fair Credit Reporting Act on its own, is insufficient to show a "concrete injury," even "in the context of a statutory violation." 578 U.S. at 341. The Supreme Court held that bare procedural, notice violations, divorced from any concrete injury, do not confer standing. *Id*. at 341. The Court held:

> [Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example***, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate***...

*Id*. at 342 (emphasis added).

Consistent with *Spokeo*, other Circuit Courts have rejected claims on standing grounds

where the plaintiff asserted a bare procedural violation of a statute's notice requirement. In *Long v. SEPTA*, 903 F.3d 312 (3rd Cir. 2018), the Third Circuit virtually analogous facts. The *Long* plaintiffs alleged that they were convicted of drug offenses, applied for employment, authorized a background check, received an offer of employment, and then were ultimately denied employment because of criminal information on their background check without receiving notice of their rights under the Fair Credit Reporting Act. *Id*. at 316-317.

In affirming the District Court's decision to dismiss the FCRA claim on standing grounds, the Third Circuit reasoned that, although the FCRA provides that ''before'' a potential employer takes any adverse action based on a consumer report it must provide the applicant with "a description in writing of the rights of the consumer under [the FCRA]," (*id*. at 317-318), this was a ''bare procedural violation, divorced from any concrete harm'' that cannot "satisfy the injury-in-fact requirement of Article III." *Id*. at 325 (citing *Spokeo*, 578 U.S. at 341). The Court reasoned: "Plaintiffs became aware of their FCRA rights and were able to file this lawsuit within the prescribed limitations period, so were not injured." *Id*. at 325. In other words, the named plaintiffs "lack standing, because although they did not receive FCRA rights disclosures, they understood their rights sufficiently to be able to bring this lawsuit." *Id*. *See also Lee v. Hertz Corp*., No. 15-cv-04562-BLF, 2016 WL 7034060, at *5 (N.D. Cal. Dec. 2, 2016) (granting motion to dismiss plaintiff-applicants' FCRA claim based on allegation that they were not provided summary of rights under FCRA because Plaintiffs did not meet Article III's injury-in-fact requirement). *Cf. Jenkins v. National Grid USA Serv. Co.*, No. 15-CV-1219(JS)(GRB), 2017 WL 4250511, at *9 (E.D.N.Y. Sept. 22, 2017) (finding statutory violations are insufficient to establish standing).

As in *Spokeo* and *Long*, Mandala lacks standing to bring a N.Y. Gen. Business Law claim. Plaintiffs' Complaint does nothing more than list purported violations of the procedural

requirements of the ''NY FCRA,'' N.Y. Gen. Bus. Law § 380-g(d), and then lay claim to damages for those purported violations. FAC, ¶¶ 15, 36, 86, 131-36. But *Spokeo* makes clear that a statutory violation (of a FCRA statute, no less), without more, does not satisfy Article III, and Plaintiffs do not allege a single fact showing any resulting harm or damages from their alleged failure to receive an Article 23-A notice. Although Plaintiffs assert that "Mandala and other [undefined] job applicants" suffered a "concrete harm" because they were allegedly denied "an opportunity to learn of their rights under Article 23-A of the Correction Law," (FAC, ¶ 87), as in *Long*, this allegation is belied by the very fact that Mandala now brings a lawsuit alleging violations of Article 23-A. This lawsuit (along with the State Court Complaint) is conclusive evidence that, even if he did not receive a copy of Article 23-A (he did), it amounted to nothing more than a bare procedural violation that resulted in no harm. Furthermore, Mandala's newfound alleged harm that he was prevented from "advocat[ing] fully for a job with NTT" (*see* FAC, ¶ 91) does not save his claim in light of the more specific factual allegations contained in the FAC (*see DPWN Holdings*, 747 F.3d at 151-52) given the crux of Plaintiffs' disparate impact claims are NTT DATA's alleged practice of not hiring individuals with felony convictions. *See* FAC, ¶¶ 32, 49.

Accordingly, the sole addition to the FAC that Mandala suffered concrete harm because he was prevented from fully advocating for employment with NTT DATA (*see* Dkt. 39-3, ¶ 86), is nothing more than a conclusory allegation unsupported by facts in an effort to overcome Mandala's lack of standing to bring this claim. In *Long v. NUCO Educ. Corp.*, the court dismissed plaintiff's FCRA disclosure and authorization claims resulting in her termination, as the allegations that the plaintiff "would have attempted to terminate her probation early and expunge her record" was too speculative and hypothetical to establish a concrete injury to satisfy Article III standing. No. 5:19V01711, 2020 WL 13469459, at *6 (N.D. Ohio Apr. 20, 2020). Under these circumstances, it

is hard to imagine how the (alleged) failure to disseminate a copy of Article 23-A could work any

concrete harm. *Spokeo*, 578 U.S. at 342. As such, Mandala does not have standing to bring Claim

IV, either individually or on behalf of a purported class of job applicants (*Long*, 903 F.3d at 317),

and Defendant's motion to dismiss should be granted as a matter of law.

**(b)    Mandala Received a Copy of Article 23-A.**

Moreover, Mandala lacks standing to bring the Fourth Cause of Action, as Mandala did, in

fact, receive a copy of Article 23-A when he authorized a background check.

According to New York General Business Law, § 380-g:

> (d) When a consumer reporting agency provides a consumer report
> that contains criminal conviction information...to a user, the person,
> firm, corporation or other entity requesting such report shall provide
> the subject of such report a printed or electronic copy of article
> twenty-three-A of the correction law governing the licensure and
> employment of persons previously convicted of one or more
> criminal offenses.

N.Y. Gen. Bus. L., § 380-g(d). Mandala alleges that he "authorized a background check pursuant

to NTT's policy, and NTT obtained a criminal background check on Mr. Mandala from a consumer

reporting agency." FAC, ¶ 29. Plaintiffs also allege that "NTT violated the NY FCRA by procuring

consumer reports from Mandala and Class Members without providing them with a copy of Article

23-A of the Correction Law." FAC, ¶ 131.

However, Mandala did receive a copy of Article 23-A. *See* Dkts. 9-1 and 9-2 for

Declaration of Patricia Price, at Ex. A for a true and correct copy of the background check

authorization signed by Mandala, attached hereto as Exhibit 1 of Polito Decl.[9] Mandala expressly

---

[9] The Court may consider the background check authorization because such authorization was
incorporated by reference into the Complaint and is "integral" to the Complaint. *See Alexander v.
Bd. of Educ.*, 648 F. App'x 118, n. 2 (2d Cir. 2016) (district court may properly consider documents
"either incorporated by reference in or [that] were integral to the complaint"); *Cordova v. Mike
Bloomberg 2020, Inc.*, No. 22-1023, 2023 WL 6119448, at *1-2 (2d Cir. Sept. 19, 2023)
(considering documents on 12(b)(6) motion that were not incorporated by reference, but heavily

acknowledged "receipt of Article 23-A of the New York Correction Law." *Id*. An acknowledgment of receipt of a document is sufficient proof that the document was, in fact, received. *See, e.g., Hall v. Kodak Ret. Income Plan*, No. 07-CV-6169, 2009 WL 778102, at *8 (W.D.N.Y. Mar. 20, 2009), *aff'd* 363 F. App'x 103 (2d Cir. 2010) (employee's acknowledgment that he received a document is clear "evidence" that he actually received it). *See also Cordova*, 2023 WL 6119448, at *2 (finding promissory estoppel claim barred where plaintiff acknowledged receipt of employee handbook and offer letter). Accordingly, Claim IV must be dismissed with prejudice.

### iii. This Court Should Decline to Exercise Supplemental Jurisdiction.

Plaintiffs indisputably fail to state a plausible claim for relief under Title VII, the only federal claim they assert. Accordingly, as this Court did previously (*see* Dkt. 27), this Court should dismiss the Title VII claim, and decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3); *New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well") (internal citation omitted); *Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 29 (2d Cir. 2006) ("Having dismissed the [plaintiffs'] federal claims, the district court did not err in declining to exercise supplemental jurisdiction over the state common law claims").

In *Booker v. City of New York,* the Court declined to exercise supplemental jurisdiction over an applicant's claims under Article 23-A of the New York Correction Law after it dismissed his federal claims, including his Title VII claim. *See* No. 14 Civ. 9801 (PAC) (HBP) 2017 WL 151625 (S.D.N.Y. Jan. 13, 2017), *adopted by* 2017 WL 1102673, at **1-2 (S.D.N.Y. Mar. 24, 2017) (reasoning that "the balance of factors to be considered under the pendent jurisdiction

---

relied upon by the plaintiffs).

doctrine...will point toward declining to exercise jurisdiction over the remaining state-law claims."). As in *Booker,* here, Plaintiffs' Title VII claim should be dismissed, and this Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *Accord N.Y. Mercantile Exch.*, 497 F. 3d at 119; *Sutton*, 208 F. App'x at 29.

### C.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN.

Alternatively, if the Court is not inclined to dismiss the Complaint in its entirety, Plaintiffs' class allegations should be stricken as Plaintiffs fail to plead that they have standing to represent the classes as defined in the Complaint, or that the Fed. R. Civ. P. 23 requirements are met here.

The Federal Rules of Civil Procedure require the Court to determine whether to certify this lawsuit as a class action "at an early practicable time." Fed. R. Civ. P. 23(c)(l)(A). Rule 23(d)(l)(D) provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Rule 12(b)(6) together with Rule 12(f) and Rule 23(d)(l)(D) allow a party to move to strike class claims before plaintiff moves for class certification. *See* Fed. R. Civ. P. 12(b)(6), 12(f), 23(d)(l)(D); *see also, e.g., Pilgrim v. Universal Health Card, LL*C, 660 F.3d 943, 949 (6th Cir. 2011) (affirming grant of motion to strike class claims where predominance requirement not met); *Vann v. Dolly, Inc.*, Civ. No. 18 C 4455, 2020 WL 902831, at *2 (N.D. Ill. Feb. 25, 2020) ("If the class allegations in the complaint are facially and inherently deficient a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action.") (internal quotations omitted); *Edwards v. Zenimax Media Inc.*, Civ. No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *4-7 (D. Colo. Sept. 25, 2012) (granting motion to strike class claim where definition of class is so overbroad that membership is not ascertainable); *Schilling v. Kenton Cty.*, Civ. No. 10-143-DLB, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011) ("Defendants here filed a motion to dismiss that essentially challenges class certification based solely on the allegations in the complaint. In such a situation, the standard of

review is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6).").

Here, Plaintiffs' class allegations should be stricken because Plaintiffs: (1) do not have standing to represent applicants whose claims arose before Plaintiffs applied for a position with Defendant; and (2) do not adequately allege that the Fed. R. Civ. P. 23 prerequisites are met.

### i.    Plaintiffs Do Not Have Standing to Represent Applicants Whose Claims Arose Before Plaintiffs Applied for Positions with Defendants.

As set forth above, "a class cannot be certified if a named plaintiff lacks Article III standing." *Maddison v. Comfort Sys. USA (Syracuse)*, No. 5:17-CV-0359 (LEK/ATB), 2018 WL 679477, at *8 (N.D.N.Y. Feb. 1, 2018). *See also* Fed. R. Civ. P. 23 (plaintiff must be a ''member'' of the class). "Accordingly, the named plaintiff must 'allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Maddison*, 2018 WL 679477, at *8. *See also* footnote 1 *supra*. Plaintiffs purport to represent the following classes:

- The "Title VII Disparate Impact Class," which Plaintiffs define to include "All African American individuals who, ***from August 6, 2016, through the resolution of this action***, were denied employment based in whole or in part because of NTT's policy and practice of denying employment to individuals with criminal convictions." FAC, ¶ 99 (emphasis added);

- The "NYHRL Disparate Impact Class," which Plaintiffs define to include "All African American individuals who, from June 2, 2014, through the resolution of this action, were denied employment in New York State based in whole or in part on NTT's policy and practice of denying employment to individuals with criminal convictions." *Id*. at ¶ 100;

- "NYHRL Criminal History Discrimination Class," which Plaintiffs define to include "All individuals who, from ***June 2, 2014, through the resolution of this action***, were denied employment in New York State based in whole or in part on NTT's policy and practice of denying employment to individuals with criminal convictions." *Id*. at 101 (emphasis added); or

- "Notice of Rights Class," which Plaintiffs define to include "All individuals in New York State who***, from August 15, 2016, through the resolution of this action***, did not receive a copy of Article 23-A of the Correction Law from NTT when NTT received their consumer reports." *Id*. at ¶ 102 (emphasis added).

Plaintiffs concede, however, that Mandala only first applied for a position with NTT DATA starting "[i]n or around January or February of 2017." *Id*. at ¶ 22. Barnett applied for a position even later, in July 2017. *Id*. at ¶ 39. Thus, this Court should, at a bare minimum, strike any class claims brought by Plaintiffs prior to January 2017, because neither Plaintiff has standing to assert such claims. *See, e.g., Maddison*, 2018 WL 679477, at *8-9 (limiting class period to only the dates that the Named Plaintiffs were employed, because "Plaintiff cannot claim to have been injured…before...his dates of employment" and ''Plaintiff only has standing to represent the Rule 23 and FLSA Classes regarding injuries that the putative classes incurred between [dates Named Plaintiff was employed]''); *Roach v. T.L. Cannon Corp*., No. 3:10-CV-0591 (TJM/DEP), 2015 WL 10818750, at *6 (N.D.N.Y. Sept. 4, 2015) (named plaintiffs do not have standing to sue as class representatives for claims that pre or post-date their employment, and limiting temporal scope of class to dates named plaintiffs were employed); *see also, e.g.*, 5 James Wm. Moore et al., Moore's Federal Practice - Civil § 23.21 (3d ed. 2017) ("For a class action to proceed, the court must apply the class definition to each proposed class representative and find that the class representative is a member of that class."). Thus, for the reasons stated above, Plaintiffs' class allegations which fall before Mandala applied for a position at NTT DATA should be stricken.

###        ii.    Plaintiffs Do Not Adequately Allege That Fed. R. Civ. P. 23 Prerequisites Are Met Here.

Plaintiffs also fail to plead that the basic requirements of Fed. R. Civ. P. 23 are met. Rule 23 provides that one or more members of a class may sue or be sued as representative parties on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable ["numerosity'']; (2) there are questions of law or fact common to the class ["commonality'']; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality'']; and (4) the representative parties will fairly and adequately

22

protect the interests of the class ["adequacy of representation"]." Fed. R. Civ. P.23(a)(l) -(a)(4).

Plaintiffs' Complaint alleges no facts supporting that these factors are met here. With respect to numerosity, Plaintiffs provide nothing more than a "formulaic recitation" of the Rule 23 requirements by alleging that the "Class Members identified herein are so numerous that joinder of all members is impracticable." FAC, ¶ 105. *See Twombly*, 550 U.S. at 555. Moreover, Plaintiffs' allegation that the "number of job applicants harmed by NTT's violations of the law is far greater than feasibly could be addressed through joinder," (FAC, ¶ 105), has nothing to do with job applicants with felony convictions, let alone those in New York who were denied employment.

Likewise, Plaintiffs' formulaic recitation that their claims are "typical of the claims of the Classes they seek to represent" (*Id*. at ¶ 108) and that there are "questions of law and fact common to Class Members" (*Id*. at ¶ 106), are belied by their own allegations in the Complaint. Plaintiffs concede that, with respect to both the "Title VII Disparate Impact Class," "NYHRL Disparate Impact Class," and ''NYHRL Criminal History Discrimination Class" that an individualized inquiry is required to determine whether each individual applicant was actually "denied employment based in whole or in part on NTT's policy and practice of denying employment to individuals with criminal convictions," and not for some other reason. *Id*., ¶¶ 99-100. Moreover, the ''Notice of Rights Class," the class members, defined as every single "individual…who...did not receive a copy of Article 23-A of the Correction Law from NTT when NTT received their consumer reports," is not limited to applicants with criminal histories. NY FCRA § 380-g(d) only applies to a consumer report that contains criminal conviction information. *Id.*, at ¶ 82-84. Thus, class members with no criminal history have suffered no injury or violation of the law. Accordingly, the "Notice of Rights Class" is vastly overbroad, untethered to any Complaint allegations, and includes putative class members with and without criminal histories whose claims

are neither common nor typical of each other. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers"). Even Plaintiffs' own claims are not even "common" or "typical" of each other. Mandala alleges that he applied for a position with Defendant (*Id.* at ¶ 22), but Barnett concedes he never applied for any position with Defendant. *See id.*, ¶¶ 39, 49. Mandala and Barnett were considered for different positions, with different clients and client requirements, in completely different states. Mandala was told "he would be working at a company based in Wellesley, Massachusetts," but Barnett was contacted about an "opportunity to work on a contract with the Commonwealth of Kentucky." *Id*. at ¶ 25, 39. Although Plaintiffs claim they have "criminal convictions," and challenge an alleged policy to exclude applicants with felony convictions, they do not allege that they themselves even have felony criminal convictions. *See* FAC, *generally*.

Finally, Plaintiffs are not adequate representatives of the classes, as they purport to represent a class of applicants who applied for positions long before Plaintiffs claims arose. Moreover, Mandala received a copy of Article 23-A, and was clearly aware of the law's requirements, and therefore lacks standing to be an adequate class representative. For these additional reasons, Plaintiffs' class allegations should be stricken.

### iii. The "NYRHL Criminal History Discrimination Class" Claims Are Partially Time-Barred.

Plaintiffs' Complaint suffers from yet another deficiency, carried over from the Original Complaint. In Claim III, Plaintiffs allege that Defendant violated N.Y. Executive Law § 296(15), which prohibits denying employment in violation of Article 23-A of the New York Correction Law. *Id*., ¶¶ 125-29. "Executive Law § 297(9) is the applicable procedural enforcement mechanism invoked... for violations of Executive Law§ 296(15)." *Mentor v. Dept. of Educ. of City*

*of NY.*, 66 N.Y.S.3d 654, at *3 (Sup. Ct. N.Y. Cty. Jan. 17, 2017). For such claims, a plaintiff must commence an action within three years, pursuant to section 214(2) of the New York Civil Practice Law and Rules. *See id.*; *see also* N.Y. C.P.L.R. § 214(2) (McKinney 2021).

Plaintiffs filed their Original Complaint on August 15, 2018. *See* Dkt. 1. Thus, the situation remains that any claims for discriminatory denial of employment under Executive Law§ 296(15) prior to August 15, 2015 are time-barred. *Id*. Nevertheless, in the Complaint, Mandala has once more proposed a class period for the "NYHRL Criminal History Discrimination Class" beginning on June 2, 2014, over a year outside the applicable limitations period. Moreover, Mandala's criminal conviction discrimination allegation cannot fall within the scope of the EEOC's investigation given "Title VII does not prohibit discrimination on the basis of a criminal record." *See, e.g. Booker*, 2017 WL 151625, at *3 (collecting cases); *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(i). Regardless, even if the Court does not limit class allegations on standing grounds, Mandala's and the class claims in Claim III must be limited to only those individuals who allegedly experienced discrimination during the relevant limitations period, and the Court should dismiss Plaintiffs' class claims prior to August 15, 2015.

## <u>CONCLUSION</u>

The Complaint should be dismissed in its entirety. Claims I, II, and IV should be dismissed on the merits and the Court should decline to exercise supplemental jurisdiction over Claim III. Alternatively, if not dismissed outright, Plaintiffs' class allegations must be stricken as Plaintiffs failed to allege the prerequisites to Fed. R. Civ. P. 23 are met here, are untimely, and Plaintiffs do not have standing to represent members of the putative class.

Dated: April 17, 2024
      Fairport, New York

              LITTLER MENDELSON, P.C.

              By: */s/ Jacqueline Phipps Polito*
                  Jacqueline Phipps Polito
                  Erin M. Train
                  375 Woodcliff Drive, Suite 2D
                  Fairport, NY  14450
                  Telephone:  585.203.3400
                  Facsimile:  585.203.3414
                  jpolito@littler.com
                  etrain@littler.com

              Attorneys for Defendant
              NTT DATA, INC.