**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated, | Case No. 18-cv-6591-CJS-MWP |
| Plaintiffs, | |
| v. | |
| NTT DATA, INC., | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.   Initial Trial Court Litigation and First Appeal .......................................... 2

    B.   Rule 60 Motion and Second Appeal .......................................................... 3

    C.   First Amended Complaint ........................................................................... 4

III.  ARGUMENT ..................................................................................................... 5

    A.   Plaintiffs Have Pleaded a Plausible Claim for Relief ................................ 5

        1.   Plaintiffs Have Alleged Facts that Meet the Second Circuit's Standard .... 7

        2.   *Mandala V* Included an Analysis of Plaintiffs' FAC and Determination that Plaintiffs' FAC was not Futile .......................................... 10

        3.   The Court Should Exercise Supplemental Jurisdiction over Plaintiff Mandala's NYHRL Claims if it Denies NTT's Motion as to Plaintiffs' Title VII Claim ........................................................................ 11

    B.   The Court Should Not Strike Plaintiffs' Class Allegations ...................... 12

        1.   Plaintiffs Have Standing to Represent Absent Class Members Who Were Injured Before Plaintiffs Applied to Work at NTT ....................... 14

        2.   Plaintiffs Have Adequately Pleaded the Existence of a Class ................. 18

    C.   NTT's Remaining Arguments ................................................................... 22

        1.   Plaintiff Mandala's Second Cause of Action Is Not Time Barred ........... 22

        2.   Plaintiff Mandala Will Limit the Start of His Third Cause of Action to August 15, 2015 ......................................................................................... 23

        3.   Plaintiff Mandala Will Dismiss the Fourth Cause of Action ................... 23

IV.   CONCLUSION ................................................................................................ 23

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ............................................................................17, 22

*Andres v. Town of Wheatfield*,
    621 F. Supp. 3d 415 (W.D.N.Y. 2022) ....................................13, 18, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................5

*Avagliano v. Sumitomo Shoji Am., Inc.*,
    103 F.R.D. 562 (S.D.N.Y. 1984) ............................................................18

*Balintulo v. Ford Motor Co.*,
    796 F.3d 160 (2d Cir. 2015) ...................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................5, 9

*Brown v. City of New York*,
    No. 16 CV 1106(NG) (RER), 2017 WL 1102677 (E.D.N.Y. Mar. 23, 2017) ........................5

*Buon v. Spindler*,
    65 F.4th 64 (2d Cir. 2023) ........................................................................8

*Calibuso v. Bank of Am. Corp.*,
    893 F. Supp. 2d 374 (E.D.N.Y. 2012) ...................................................19

*Callahan v. Cnty. of Suffolk*,
    96 F.4th 362 (2d Cir. 2024) ....................................................................11

*Chavez v. Occidental Chem. Corp.*,
    35 N.Y.3d 492 (2020) ..............................................................................22

*Chen-Oster v. Goldman*,
    2022 U.S. Dist. LEXIS 47922 (S.D.N.Y. Mar. 17, 2022) .....................15

*Chen-Oster v. Goldman, Sachs & Co.*,
    325 F.R.D. 55 (S.D.N.Y. 2018) ....................................................17, 20, 21

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012) ....................................................13

*China Agritech, Inc. v. Resh*,
    584 U.S. 732 (2018) ................................................................................17

*Crown v. Parker*,
    462 U.S. 345 (1983)..................................................................................................22

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d. Cir. 2006)....................................................................................15

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)..........................................................................................5

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)............................................................................................17, 22

*Gratz v. Bollinger*,
    539 U.S. 244 (2003)..................................................................................................15

*Hallmark v. Cohen & Slamowitz, LLP*,
    293 F.R.D. 410 (W.D.N.Y. 2013).............................................................................18

*Hardy v. Olé Mexican Foods, Inc.*,
    No. 22-1805, 2023 U.S. App. LEXIS 12466 (2d Cir. May 22, 2023)......................16

*Hendricks v. JPMorgan Chase Bank, N.A.*,
    No. 08 Civ. 613, 2008 U.S. Dist. LEXIS 99788 (D. Conn. Nov. 21, 2008)............18

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y. 2014)...............................................17, 18, 19, 21

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016)........................................................................................10

*Ironforge.com v. Paychex, Inc.*,
    747 F. Supp. 2d 384 (W.D.N.Y. 2010)...................................................................13

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F. 3d 732 (2d Cir. 2017)......................................................................................6

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
    561 F.3d 112 (2d Cir. 2009)................................................................................14, 15

*Langan v. Johnson & Johnson Consumer Cos.*,
    897 F.3d 88 (2d Cir. 2018)........................................................................14, 15, 16, 17

*Lee v. Hertz Corp.*,
    330 F.R.D. 557 (N.D. Cal. 2019)........................................................................13, 14

*Lemm v. N.Y. Cmty. Bancorp, Inc.*,
    No. 24 Civ. 903, 2024 U.S. Dist. LEXIS 83218 (E.D.N.Y. May 7, 2024)..............22

*Linville v. O & K Trojan, Inc.*,
  No. 91 Civ. 284S, 1994 U.S. Dist. LEXIS 4293 (W.D.N.Y. Mar. 31, 1994)........................11

*Little v. Wash. Metro. Area Transit Auth.*,
  249 F. Supp. 3d 394 (D.D.C. 2017) ............................................................................18, 19, 21

*Maddison v. Comfort Sys. USA (Syracuse)*,
  No. 17 Civ. 359, 2018 U.S. Dist. LEXIS 16090 (N.D.N.Y. Feb. 1, 2018)............................15

*Mandala v. NTT Data, Inc.*,
  88 F.4th 353 (2d Cir. 2023) (*Mandala V*) ..................................................................... *passim*

*Mandala v. NTT Data, Inc.*,
  975 F.3d 202 (2d Cir. 2020) (*Mandala II*) ..................................................................... *passim*

*Mandala v. NTT Data, Inc.*,
  988 F.3d 664, 668 (2d Cir. 2021) (*Mandala III*) ........................................................1, 2, 5, 6

*Mandala v. NTT Data, Inc.*,
  No. 18 Civ. 6591, 2019 U.S. Dist. LEXIS 119832 (W.D.N.Y. July 17, 2019)
  (*Mandala I*) ...........................................................................................................................6

*Mandala v. NTT Data, Inc.*,
  No. 654705/2019 (Sup. Ct. N.Y. Cty.) .........................................................................12, 22

*Mandell v. County of Suffolk*,
  316 F.3d 368 (2d Cir. 2003)..................................................................................................12

*McCracken v. Verisma Sys., Inc.*,
  No. 14 Civ. 6248, 2017 U.S. Dist. LEXIS 118941 (W.D.N.Y. July 28, 2017)....................21

*In re Nassau Cnty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006)..................................................................................................20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)..................................................................................................16

*Niland v. Buffalo Laborers Welfare Fund*,
  No. 04 Civ. 187F, 2007 U.S. Dist. LEXIS 77567 (W.D.N.Y. Oct. 17, 2007)........................12

*Pritchard v. Cty. of Erie*,
  269 F.R.D. 213 (W.D.N.Y. 2010)...........................................................................................18

*Roach v. T.L. Canon Corp.*,
  No. 10 Civ. 591, 2015 U.S. Dist. LEXIS 177286 (N.D.N.Y. Sept. 4, 2015) .........................15

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)............................................................................................19, 20

*Soule v. Conn. Ass'n of Sch.*,
    57 F.4th 43 (2d Cir. 2022) .................................................................................14

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002)...........................................................................................8

*Torres v. Pisano*,
    116 F.3d 625 (2d Cir. 1997)...........................................................................12

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)...............................................................................5

*Woods-Early v. Corning Inc.*,
    330 F.R.D. 117 (W.D.N.Y. 2019)..............................................................13, 19

## I.    INTRODUCTION

In its order remanding this case to allow Plaintiffs George Mandala and Charles Barnett ("Plaintiffs") to file the First Amended Complaint ("FAC"), the Second Circuit held that "Plaintiffs' proposed amendments address the sole pleading deficiency identified by the district court." *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 365 (2d Cir. 2023) (*Mandala V*).  Plaintiffs' FAC states a plausible claim for relief and the Second Circuit's mandate compels the denial of Defendant NTT Data, Inc.'s ("NTT") motion to dismiss.

The Second Circuit has now had several opportunities to opine on what would constitute a plausible complaint in this action.  Crucially, the Second Circuit held that plaintiffs *can* rely on general population statistics so long as those statistics "can plausibly be expected to hold true for the qualified applicant pool in question," *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 212 (2d Cir. 2020) (*Mandala II*), and that, specifically, such an inference can be supported by "national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain."  *Mandala v. NTT Data*, Inc., 988 F.3d 664, 668 (2d Cir. 2021) (*Mandala III*). Following these instructions, Plaintiffs added the precise statistics the Second Circuit identified, including statistics showing that racial disparities in conviction rates persist as education levels increase.

Despite Plaintiffs' inclusion of the statistics that the Second Circuit found lacking in its initial complaint, NTT now seeks to dismiss Plaintiffs' amended complaint, recycling many of the arguments it raised in its first motion to dismiss which have now been rejected by the Second Circuit or rendered moot by Plaintiffs' amendments.

As discussed further below, the Court should follow the Second Circuit's clarified standard for pleading a Title VII disparate impact case, as well as its holding that Plaintiffs' amendments

are not futile under the same standard that applies on a motion to dismiss, and allow this case to finally proceed into discovery.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case challenges NTT's policy and practice of screening out job applicants because of their criminal histories as overbroad and disproportionately denying opportunity to Black applicants, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as the New York Human Rights Law ("NYHRL"), and Article 23-A of the New York Correction Law ("Article 23-A"). Given the Court's familiarity with the case over the years, the below provides a high-level description of the case's procedural history and facts, focusing primarily on events that have transpired since Plaintiffs' Rule 60 motion was denied, and the allegations in Plaintiffs' FAC.

### A.    Initial Trial Court Litigation and First Appeal

On August 15, 2018, Plaintiffs filed a class action complaint. ECF No. 1. On November 13, 2018, NTT moved to dismiss. ECF No. 9. The Court granted NTT's motion on July 18, 2019, holding that Plaintiffs' statistical allegations failed to establish a plausible disparate impact claim under Title VII. ECF No. 27 at 7.

Plaintiffs appealed. ECF No. 29. On September 21, 2020, a divided panel of the Second Circuit affirmed the order dismissing Plaintiffs' case. *Mandala II*, 975 F.3d at 202. On October 5, 2020, Plaintiffs sought rehearing *en banc*, which was denied over the dissents of five judges of the Second Circuit on February 23, 2021. *Mandala III*, 988 F.3d at 664. Judge Pooler, in her dissent, encouraged "Plaintiffs here to move under Rule 60 for relief from the district court's judgment in order to file an amended complaint that includes statistics incorporating the continued racial gaps in conviction rates as education levels rise." *Id.* at 671.

**B.      Rule 60 Motion and Second Appeal**

Heeding Judge Pooler's advice, upon issuance of the mandate, ECF No. 34, Plaintiffs moved for relief from the judgment under Rule 60.  ECF No. 35.  The Court denied Plaintiffs' motion, construing it as a motion under Rule 60(b)(1) and deeming it untimely, and also finding that no extraordinary circumstances existed that would warrant relief under Rule 60(b)(6).  ECF No. 40 at 6.

On December 30, 2021, Plaintiffs again appealed.  ECF No. 41.  On December 8, 2023, the Second Circuit reversed the Court's order denying relief from the judgment.  *Mandala V*, 88 F.4th at 353.  The Second Circuit found that Plaintiffs' motion was properly filed under Rule 60(b)(6) rather than 60(b)(1), as "insufficient pleading is not categorically a 'mistake,' and Plaintiffs' belief that their Complaint satisfied the standards for pleading a disparate impact claim was well-founded."  *Id.* at 359.  Applying Rule 60(b)(6), the Second Circuit recognized that "[w]hen vacatur is sought in order to obtain leave to file an amended complaint, special considerations come into play," and that "courts should freely give leave to amend a complaint when justice so requires."  *Id.* at 361 (cleaned up).  The Second Circuit went on to find that there are "no justifying reasons for depriving Plaintiffs of the chance to obtain relief from judgment and file an amended complaint for the first time," including that "[t]here is no plausible contention of bad faith or dilatory motive, nor that vacatur would unduly prejudice the Defendant.  There was no undue delay, for the reasons explained above.  And the district court did not conclude that Plaintiffs' proposed amendments would be futile."  *Id.* at 365 (cleaned up and citation omitted). The Second Circuit concluded by recognizing that:

> this is one of the exceptional cases necessitating relief from judgment: Plaintiffs have yet to be afforded a single opportunity to amend their pleading; the original dismissal of the Complaint was premised on grounds subject to reasonable, actual, and vigorous debate; Plaintiffs diligently prosecuted their case at all times; and

> *Plaintiffs' proposed amendments address the sole pleading deficiency identified by the district court.*

*Id.* (emphasis added).

The mandate issued on March 4, 2024, ECF No. 46, and Plaintiffs filed the FAC on March 18, 2024. ECF No. 49. After a stipulation to extend the deadline for NTT to file its response, NTT filed a motion to dismiss on April 17, 2024, ECF No. 57, requiring this response.

### C.    First Amended Complaint

In relevant part, Plaintiffs FAC alleges that:

- NTT has a policy and practice of denying jobs to applicants with non-job-related convictions, FAC ¶¶ 32, 37, 49, 54;

- Because of persistent discrimination in the criminal legal system, Black people are arrested and incarcerated at rates substantially higher than are white people across the country and within New York state, FAC ¶¶ 53-57;

- While the overall incarceration rates decrease for both groups, the disparity between imprisonment risk for Black people and for white people holds steady among individuals who attended some college or graduated from college, FAC ¶¶ 58-59;

- Plaintiffs Mandala and Barnett each received and accepted offers of employment from NTT but had those offers rescinded solely because of non-job-related convictions that appeared on their background checks, FAC ¶¶ 22-52;

- Plaintiffs' claims are suitable for class treatment because NTT is a large company with many applicants, FAC ¶¶ 17, 105, NTT's policy and practice of not hiring applicants with convictions is applied in common to all applicants, FAC ¶¶ 32, 37, 49, 106, and Plaintiffs are typical class members and adequate class representatives. FAC ¶¶ 108-109.

Plaintiffs' primary new allegation, added in response to *Mandala II* and *Mandala III*, states specifically that: "Black men with some college education have imprisonment risks that are seven (7) times greater than white men with some college education (4.9% for Black men compared to 0.7% for white men)."  FAC ¶ 58.

## III.    ARGUMENT

### A.    Plaintiffs Have Pleaded a Plausible Claim for Relief.

To defeat a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct, even if "actual proof of those facts is improbable."  *Twombly*, 550 U.S. at 556.  When determining whether a complaint meets this standard, courts are "obligat[ed] to draw reasonable inferences in favor of the sufficiency of the complaint," *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016), and must take the complaint's factual allegations as true, "even if [they are] doubtful in fact," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

To adequately plead a Title VII disparate impact claim, the Second Circuit has explained that a complaint "must plausibly allege that (i) a specific employment practice or policy exists, (ii) a disparity exists, and (iii) there is a causal connection between the two."  *Mandala III*, 988 F.3d at 665.  At the pleading stage, the complaint need not allege evidence sufficient to *prove* a prima facie case of disparate impact discrimination. *Mandala II*, 975 F.3d at 209; *see also Brown v. City of New York*, No. 16 Civ. 1106, 2017 U.S. Dist. LEXIS 42302, at *17 (E.D.N.Y. Mar. 23, 2017) ("[S]tatistics that may ultimately prove insufficient [to prove a claim] can nevertheless support a plausible inference of disparate impact on a motion to dismiss.").  Rather, it "need only generally

allege facts that, accepted as true, make [the] alleged injury plausible." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F. 3d 732, 737 (2d Cir. 2017).

Through its opinions in this case, the Second Circuit has clarified how plaintiffs generally (and Plaintiffs here) can plausibly allege facts creating a plausible inference of a disparity in an employer's applicant pool prior to discovery, when the "[p]laintiffs lack 'access to more granular data' at the pleading stage." *Mandala V*, 88 F.4th at 365 (quoting *Mandala II*, 975 F.3d at 212).

After this Court dismissed the Plaintiffs' initial complaint, holding that "general statistics [were] inadequate to show" a racial disparity in conviction rates within NTT's qualified applicant pool, *Mandala v. NTT Data, Inc.*, No. 18 Civ. 6591, 2019 U.S. Dist. LEXIS 119832, at *8-9 (W.D.N.Y. July 17, 2019) ("*Mandala I*"), the Second Circuit clarified on appeal that Plaintiffs' complaint may rely on general population statistics to plead elements of their disparate impact claim as long as it also alleges facts that "explain why those statistics can plausibly be expected to hold true for the qualified applicant pool in question." *Mandala II*, 975 F.3d at 212; *accord Mandala V*, 88 F.4th at 365 (explaining that "[it] wasn't until this Court's decision on appeal that it became clear what other types of information might suffice at the pleading stage"). The Court further explained in response to Plaintiffs' *en banc* petition that those facts could "take[] the form of additional national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain." *Mandala III*, 988 F.3d at 668.

An application of this precedent establishes that NTT's motion to dismiss Plaintiffs' disparate impact claim must be denied because (i) Plaintiffs have meet the Second Circuit's pleading standard and (ii) the Second Circuit has already examined Plaintiffs' FAC and found that the allegations in Plaintiffs FAC are not futile, and therefore plausible. The Second Circuit made

this ruling in the context of its Rule 15 analysis, which utilizes the same plausibility standard as the one that applies to the current motion to dismiss.

          1.       **Plaintiffs Have Alleged Facts that Meet the Second Circuit's Standard.**

Plaintiffs' Amended Complaint plausibly alleges a Title VII disparate impact claim under the Second Circuit's controlling standard.

*First*, Plaintiffs have identified a specific employment practice or policy: Plaintiffs allege that NTT has a policy or practice of denying job opportunities to individuals with non-job-related convictions. *See* FAC ¶¶ 32, 37, 49, 54; *see also Mandala V*, 88 F.4th at 357 ("The gist of the Title VII claim is that NTT's blanket practice of refusing to employ people with felony convictions disproportionately harms Black applicants because Black people are arrested and incarcerated at higher rates than others.").

*Second*, Plaintiffs have plausibly alleged that a disparity exists. Plaintiffs provide statistics demonstrating that Black people are arrested, sentenced, and imprisoned for crimes at substantially higher rates than white people, both nationally and within New York state. *See* FAC ¶¶ 55–57. To explain why these state and national statistics "can plausibly be expected to hold true" for NTT's qualified applicant pool, Plaintiffs further allege that disparities in the criminal justice system persist even as education levels increase. FAC ¶¶ 58, 59. Plaintiffs support this allegation with statistics showing that the imprisonment risk for Black men with some college education (4.9%) is significantly higher than for white men with some college education (0.7%), and that the disparity is similar in magnitude to disparities in convictions amongst the general population. *Id*.

*Third*, Plaintiffs allege a causal connection between NTT's policy and the disparity. Both Plaintiff Mandala and Plaintiff Barnett allege that they received and accepted employment offers based on their qualifications and interviews, and that NTT rescinded their job offers solely because of the convictions on their criminal records. *See* FAC ¶¶ 22–52. These facts plausibly plead that

NTT's policy was a but-for cause of the employment denial experienced by the Plaintiffs. Moreover, Plaintiffs' cited statistics—which, as explained above, the Court can reasonably infer are likely to reflect NTT's qualified applicant pool—show a disparity that is "of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." *See Mandala II*, 975 F.3d at 209; FAC ¶¶ 55, 58 (noting that Black adults are 5.9 times more likely to have been convicted than white adults, and that the imprisonment risk for Black men with some college education is seven times higher than the risk for white men with some college education).

NTT nonetheless argues that Plaintiffs fail to state a claim because their proffered statistics are not specific enough to the circumstances of this case to prove that NTT "in fact" rejected Black applicants more often than white applicants. *See* Mot. at 9-14 (arguing that Plaintiffs' statistics are insufficient to support their disparate impact claim because they come from a study that pre-dates a Plaintiff's felony conviction, because they reflect cumulative imprisonment risks rather than convictions, and because they do not focus on individuals with master's degrees). NTT goes so far as to suggest that Plaintiffs cannot rely on general population statistics at all, even at the pleading stage. *See id*. at 11–12.

In making these arguments, NTT continues to advance positions that have been rejected by the Second Circuit. NTT's arguments conflict with the Second Circuit's clear pronouncement that, specifically because "[i]t may be difficult to define the precise formulation of the required prima facie case" before discovery, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002),[1] Plaintiffs may rely on general population statistics at the pleading stage as long as "there is reason to think

---

[1]     *Swierkiewicz* remains good law in the Second Circuit. *See Buon v. Spindler,* 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Swierkiwicz* for the proposition that "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case").

that they 'accurately reflect the pool of qualified job applicants' for the position in question,"
*Mandala II*, 975 F.3d at 211 (quoting *Malave v. Potter*, 320 F.3d 321, 326 (2d Cir. 2003)).  Here,
it is plausible that NTT's qualified applicant pool will reflect similar conviction disparities as seen
in the general population because Plaintiffs' proffered statistics plausibly show that, even if the
absolute conviction rate decreases, racial disparities in convictions persist at similar magnitudes
as educational attainment increases.  Moreover, Plaintiffs further support their disparate impact
claim by alleging that NTT withdrew employment offers to Plaintiffs—two Black men who were
otherwise qualified for the positions to which they applied—based solely on their criminal records.
*See* FAC ¶¶ 22–52.[2]

NTT's specific arguments for why the statistics proffered are supposedly insufficient to
plausibly plead the claims at issue continue to hold Plaintiffs to a higher standard than what the
Second Circuit actually required – and are a recycling of the same arguments NTT made in the
Rule 60 appeal for why amendment would be futile, which were rejected by the Second Circuit
(as discussed further below).  *Compare Mandala v. NTT Data, Inc.*, No. 22-4 (2d Cir.), ECF No.
57 (Answering Br.) at 41-44 (arguing that amici's statistics do not render the FAC viable because
(1) they address "imprisonment risks" rather than convictions and (2) "this statistic is devoid of
any connection to the relevant comparator pool"), *with* Mot. at 12-14 (same).

Plaintiffs' complaint pleads sufficient factual content beyond what is required "to raise a
right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

---

[2]    Casting further doubt on NTT's argument, *Mandala V* explained that: "the ground for
dismissing the Complaint—that racial disparities in national arrest and incarceration rates do not
necessarily persist among persons with the skill set required for the jobs in question—is not self-
evident.  Skills are acquired by adults; nobody is born with a resume.  Every qualified candidate
for employment was once a kid, youngster, and teenager."  88 F.4th at 359.

### 2. *Mandala V* **Included an Analysis of Plaintiffs' FAC and Determination that Plaintiffs' FAC was not Futile.**

Following *Mandala II* and *Mandala III*'s clarification of the applicable standard for pleading disparate impact claims and guidance as to how Plaintiffs *could* meet this standard, *Mandala V* clarified that Plaintiffs' FAC *can* meet this standard.

As a central component of its ruling in *Mandala V*, the Second Circuit reviewed the Rule 15(a) factors, which include an inquiry into whether any proposed amendment would be futile, rejected NTT's arguments that the amendment would be futile, and determined that amendment in fact would not be futile. *See* 88 F.4th at 361 ("When vacatur is sought in order to obtain leave to file an amended complaint, special considerations come into play" such that the court must give "due regard" to the "liberal amendment policy of Rule 15(a)." (cleaned up)); *id.* at 362 (explaining that, when a plaintiff has not yet had an opportunity to replead, "it is an abuse of discretion to deny post-judgment relief [under Rule 60] without any justifying reason [under Rule 15], such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or *futility of amendment*" (cleaned up; emphasis added)); *id.* at 365 (rejecting challenges to Rule 15 elements).

When the Second Circuit assesses futility, it does so "as [it] would a motion to dismiss, determining whether the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (quoting *Twombly*, 550 U.S. at 570) (vacating judgment under Rule 60 on grounds that the proposed amended complaint pleaded facts sufficient to state a claim and was thus not futile);[3] *see also* *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015) ("[a] proposed amendment to a

---

[3]    *SAIC* was also cited with approval in *Mandala V*. *See* 88 F.4th at 361, 364-65.

complaint is futile when it 'could not withstand a motion to dismiss.'") (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).  Consistent with this standard, and with the proposed FAC in the record on appeal, the Second Circuit concluded its opinion by stating that "Plaintiffs' proposed amendments address the sole pleading deficiency identified by the district court."[4] *Mandala V*, 88 F.4th at 365; *see also id.* ("This is the sort of case in which it is 'appropriate . . . to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment.'") (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011)).  Thus, NTT's arguments in support of dismissal have already been addressed and rejected by Second Circuit.

In light of the Second Circuit's reasoning, holding, and rejection of NTT's arguments, NTT's motion to dismiss for failure to state a claim must be denied.  *Cf. Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 (2d Cir. 2024) (trial courts have "no discretion in carrying out the mandate" issued by the controlling appellate court) (quoting *Puricelli v. Republic of Arg.*, 797 F.3d 213, 218 (2d Cir. 2015)).

### 3. The Court Should Exercise Supplemental Jurisdiction over Plaintiff Mandala's NYHRL Claims if it Denies NTT's Motion as to Plaintiffs' Title VII Claim.

Given that Plaintiffs have pleaded a plausible claim of disparate impact discrimination, the Court should continue to exercise supplemental jurisdiction over those state law claims.  *See, e.g.*, *Linville v. O & K Trojan, Inc.*, No. 91 Civ. 284S, 1994 U.S. Dist. LEXIS 4293, at *59 (W.D.N.Y. Mar. 31, 1994) (denying defendants' motion to dismiss NYHRL claims in a federal ADEA case because both "claims arise from a 'common nucleus of operative facts'" and "essentially the same

---

[4]    As this Court is well-aware through years of litigation and appeal, the pleading deficiency at issue in this case has always been whether Plaintiffs had alleged statistics sufficient to render it plausible that NTT's criminal history screen disproportionately screens out Black applicants.

evidence would be used to support" both claims); *Niland v. Buffalo Laborers Welfare Fund*, No. 04 Civ. 187F, 2007 U.S. Dist. LEXIS 77567, at *30 (W.D.N.Y. Oct. 17, 2007) (denying defendants' request to decline to exercise supplemental jurisdiction because the court denied summary judgment as to related claims under Title VII). This is because the facts underlying Plaintiff Mandala's state law claims are the same facts that constitute the Title VII case and controversy before this Court. *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("We analyze plaintiff's federal and state law discrimination claims together since in other contexts we have applied federal standards of proof to discrimination claims under the state Human Rights Law."); *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (finding that claims under NYHRL are analytically inseparable from Title VII claims); *see also* Mot. at 6 n.3 (arguing that NYHRL and Title VII claims are "analyzed identically" on the merits). And, none of the four factors set forth in 28 U.S.C. §1367(c) apply.

In its motion, NTT asks only that the Court decline to exercise supplemental jurisdiction *if* its plausibility arguments are rejected. *See* Mot. at 19-20.[5] Here, the parties are aligned; should Plaintiffs' Title VII claim be dismissed, Plaintiffs agree that the case would properly proceed in state court.

### B.    The Court Should Not Strike Plaintiffs' Class Allegations.

Neither of NTT's arguments for striking Plaintiffs' class allegations overcomes the "particularly disfavored" nature of motions to strike class allegations. NTT's contentions should instead be dealt with at class certification because NTT has not shown, based on the pleadings, it would be impossible to certify the alleged class. *See* Mot. at 20-24.

---

[5]    In fact, NTT has shown a clear preference to litigate in this forum by agreeing to dismiss Plaintiff Mandala's state law claims in state court, in deference to this forum. *Mandala v. NTT Data, Inc.*, No 654705/2019 (Sup. Ct. N.Y. Cty.), Dkt. No. 63 (agreeing to dismiss state law claims in the event Plaintiffs' Rule 60 motion were granted).

"In this Circuit, motions to strike are generally looked upon with disfavor, and motions to strike class claims are particularly disfavored because they require a reviewing court to preemptively terminate the class aspects of litigation, on the basis solely of a complaint and without the benefit of discovery." *Andres v. Town of Wheatfield*, 621 F. Supp. 3d 415, 418 (W.D.N.Y. 2022) (cleaned up); *see also Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (explaining that pre-discovery motions to strike class allegations are generally "deemed procedurally premature"). Absent unusual circumstances, the questions raised by motions to strike class claims are "more properly deferred to the class certification stage, when a more complete factual record can aid the [c]ourt in making this determination." *Andres*, 621 F. Supp. 3d at 418 (alteration in original) (quoting *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)); *see also Chen-Oster*, 877 F.Supp.2d at 117 (explaining that motions to strike class allegations can only be granted where they deal with issues "separate and apart from the issues that will be decided on a class certification motion") (cleaned up); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (declining to "depart from the usual practice by deciding now, on a motion to strike, whether [the plaintiff's] claims are typical of those of the proposed class" and recognizing that there is "no undue prejudice to [the] defendant by allowing these allegations to remain in the complaint" until they can be tested at class certification).

"[T]o succeed on a motion to strike class allegations, a defendant must demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." *Woods-Early v. Corning Inc.*, 330 F.R.D. 117, 122–23 (W.D.N.Y. 2019) (quoting *Guariglia v. P&G*, No. 2:15 Civ. 04307, 2018 U.S. Dist. LEXIS 42861, at *30 (E.D.N.Y. Mar. 14, 2018)). Courts have applied this logic to criminal history discrimination claims similar to those asserted here. *See, e.g.*, *Lee v. Hertz Corp.*, 330

F.R.D. 557, 562 (N.D. Cal. 2019) (denying motion to strike class Title VII claims premised on the defendant's policy of not hiring applicants with certain convictions).  Like in *Lee*, the Court should reject NTT's request here.

> **1.  Plaintiffs Have Standing to Represent Absent Class Members Who Were Injured Before Plaintiffs Applied to Work at NTT.**

NTT first argues that Plaintiffs lack Article III standing to represent Class Members who applied to work before Plaintiff Mandala applied to work for NTT, as a basis to strike claims that predate Plaintiff Mandala's application for employment.  Mot. at 21-22.  But, at the pleading stage, the only relevant question for Article III standing is whether the named plaintiffs have standing as to their own individual claims.  *See, e.g.*, *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009) ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class.");  *accord Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 94 (2d Cir. 2018) ("[a]lthough a named class action plaintiff has not actually suffered the injuries suffered by her putative class members (and therefore would not normally have standing to bring those suits), Congress has said that the fact that the parties 'possess the same interest' and 'suffer[ed] the same injury' gives the named plaintiff a sufficient stake in the outcome of her putative class members' cases" to have standing to pursue those claims).  So long as the named Plaintiffs have standing, Article III standing has been established for all Class Members.  *See id.* Plaintiffs have such standing here.

To plead individual Article III standing, a plaintiff need only allege an (1) injury (2) caused by the defendant (3) that is redressable by the Court.  *See Soule v. Conn. Ass'n of Sch.*, 57 F.4th 43, 50 (2d Cir. 2022).  Plaintiffs have done so here (and NTT does not argue to the contrary): Plaintiffs allege that NTT revoked job offers it made to each of them based on NTT's policy of not hiring persons with felonies on their records.  FAC ¶¶ 32-33, 47-49.  They seek injunctive

relief and damages the Court can award (for themselves and absent class members) to redress the harm. *Id.* at p. 28-29 (Prayer for Relief). That is sufficient to allege Article III standing on behalf of themselves, and thus on behalf of the entire class. *See Kendall*, 561 F.3d at 118.

NTT's citation to two unpublished district court opinions cannot overcome this controlling precedent. *See* Def.'s Br. at 22. In *Roach v. T.L. Canon Corp.*, notably decided at the class certification stage, the court limited the class period to the plaintiffs' dates of employment, citing precedent that addressed a completely different issue – whether U.S. citizen plaintiffs had Article III standing to sue on behalf of a class of all U.S. citizens and taxpayers (they did not because of the "necessarily abstract nature of the injury all citizens share"). No. 10 Civ. 591, 2015 U.S. Dist. LEXIS 177286, at *19-20 (N.D.N.Y. Sept. 4, 2015) (citing *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216-17 (1974)).[6] The court in *Maddison v. Comfort Sys. USA (Syracuse)*, in turn, relied only on the *Roach* decision for its holding that named plaintiffs lacked Article III standing to pursue claims for those injured before them. No. 17 Civ. 359, 2018 U.S. Dist. LEXIS 16090, at *27 (N.D.N.Y. Feb. 1, 2018). To the extent NTT seeks to use these decisions to challenge Plaintiffs' standing at the pleading stage, they are wrongly decided because they misapply the Second Circuit standard for Article III standing, especially as it relates to class actions. *See Langan*, 897 F.3d at 95 ("[C]lass action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members."); *see also Gratz v. Bollinger*, 539 U.S. 244, 262-63 (2003) (rejecting Article III standing challenge when factual

---

[6]     *Roach* is further undermined because, even at class certification, the Second Circuit does "not require that each member of a class submit evidence of personal standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d. Cir. 2006); *see also Chen-Oster v. Goldman*, 2022 U.S. Dist. LEXIS 47922, at *55 (S.D.N.Y. Mar. 17, 2022) (rejecting defendants' attempt to decertify and explaining that "the Second Circuit[] has held that courts in this Circuit 'do not require that each member of a class submit evidence of personal standing'" (citing *Denney*, 443 F.3d at 263 (collecting cases))).

differences existed between the challenged race-based transfer policy applied to plaintiff and freshman admissions policy applicable to others in class).

While NTT's argument is limited to Article III standing *only* (Mot. at 21-22), Plaintiffs also meet the requirements for class standing at the pleading stage, which requires only plausible allegations that a plaintiff: "(1) . . . personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, . . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (citations and internal quotes omitted); *see also Hardy v. Olé Mexican Foods, Inc.*, No. 22-1805, 2023 U.S. App. LEXIS 12466, at *2 (2d Cir. May 22, 2023) (explaining standards for Article III and class standing). Here, Plaintiffs have alleged that they suffered the same type of injury alleged to have occurred for the Class (i.e., they were all denied employment by the *same* background check policy by the *same* defendant), meeting the requirement for class standing as well. *See, e.g.*, FAC ¶¶ 66, 74, 108.

Reinforcing this point, the only supposed difference that NTT identifies between the claims of the named Plaintiffs and the other class members is a difference of *when* they applied to work for NTT. *See* Mot. at 22. But this is an arbitrary difference, NTT does not explain why it matters, and under Second Circuit precedent, where even "non-identical injuries of the same general character can support standing," it does not matter. *See Langan*, 897 F.3d at 94-96 (finding no class standing issue when named plaintiff sought to represent state law claims for which he had no individual cause of action, and contrasting to a failure of Article III standing where named plaintiff was not injured by defendant); *see also NECA*, 693 F.3d at 158, 164 (finding that named plaintiff financial certificate holders had class standing to represent a class of "[c]ertificate-holders outside

the specific tranche from which [plaintiff] purchased," even though the certificates from each tranche had "varying levels of payment priority") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)). This is because "[i]n reality, it rarely happens that the circumstances surrounding one plaintiff's claim end up being identical to the claims of another putative class member, let alone all of the others." *Langan*, 897 F.3d at 94.

Finally, NTT's argument is inconsistent with *American Pipe* tolling, where "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 735 (2018); *see also Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974). If NTT's argument were correct, absent class members with injuries that predate that of the named representative would not have the benefit of tolling and would be forced to intervene to protect their claims. But this is the type of inefficient joinder that *American Pipe* tolling was created to avoid.[7]

---

[7]    *See China Agritech,* 584 U.S. at 739-40 (explaining doctrine: "A contrary rule, the Court reasoned in *American Pipe*, would deprive Federal Rule of Civil Procedure 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure . . . . This is so, the Court explained, because without tolling, potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable . . . . In *Crown, Cork*, the Court further elaborated: Failure to extend the *American Pipe* rule to class members filing separate actions, in addition to those who move to intervene, would result in a needless multiplicity of actions filed by class members preserving their individual claims— precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.") (citations and internal quotation marks omitted); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974) (recognizing that *American Pipe* tolls the claims of class members whose statute of limitations would have "long since run" by the time the class is certified, implying that the class covers members whose claims are older than the named plaintiff's).

Consistent with *American Pipe*, courts regularly permit classes to proceed where the class period does not precisely coincide with or predates the dates of the named plaintiffs' injuries. *See, e.g., Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 62-63 (S.D.N.Y. 2018) (certifying nationwide class for pay and promotion claims dating back to 2004 and New York City class dating back to 2002, even though the earliest a named plaintiff alleged denial of a promotion was 2008); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 254 (S.D.N.Y. 2014) (certifying class of African Americans who sought employment during the 2010 Decennial Census, regardless of whether they

## 2.    Plaintiffs Have Adequately Pleaded the Existence of a Class.

Contrary to NTT's arguments, *see* Mot. at 22-24, Plaintiffs also have plausibly pleaded each of the elements of a class claim under Rule 23.  NTT cannot meet the exacting standard for motions to strike class allegations which requires a showing that it would be impossible to certify these claims.  *See, e.g.*, *Andres*, 621 F. Supp. 3d at 418.  In fact, similar Title VII criminal history discrimination claims have been repeatedly certified by courts, which itself illustrates that it is not "impossible" that Plaintiffs could obtain through discovery facts sufficient to establish class certification.  *See Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 426 (D.D.C. 2017) (certifying three classes of African American job applicants denied employment as a result of the defendant's criminal background check policy); *Houser*, 28 F. Supp. 3d at 256 (certifying classes of Black and Latino job applicants denied employment because of the defendant's criminal background check policy).

**Numerosity.**  Plaintiffs have pleaded facts giving rise to an inference of numerosity, including that NTT is a large employer with 20 offices throughout the United States, with over 18,000 employees nationally and four offices in New York State.  FAC. ¶¶ 17, 105.  This is more than sufficient at this stage.  *See, e.g.*, *Hendricks v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 613, 2008 U.S. Dist. LEXIS 99788, at *10 (D. Conn. Nov. 21, 2008) (plaintiffs are not required to show "evidence of exact class size or identity of class members") (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  In fact, even at the class certification stage, "[c]ourts have not required

---

sought employment precisely when named plaintiffs did so); *Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410, 419 (W.D.N.Y. 2013) (certifying a class including consumers injured prior to the date of the named plaintiff's injury); *Pritchard v. Cty. of Erie*, 269 F.R.D. 213, 218 (W.D.N.Y. 2010) (certifying class of arrestees unlawfully searched, including class members injured prior to the named plaintiff); *Avagliano v. Sumitomo Shoji Am., Inc*., 103 F.R.D. 562, 584 (S.D.N.Y. 1984) (certifying Title VII class and § 1981 class consisting of "all past and present female employees of Sumitomo, except as limited by the applicable statutes of limitations").

evidence of exact class size or identity of class members to satisfy the numerosity requirement" – something NTT improperly demands now before discovery has even commenced. *Robidoux*, 987 F.2d at 935.

**Commonality.** With respect to commonality, the Complaint sufficiently alleges a single company-wide policy of denying job opportunities to applicants with non-job-related convictions and alleges multiple common questions related to that policy, including allegations that NTT withdrew Plaintiff Barnett's Kentucky-based job offer and Plaintiff Mandala's Massachusetts-based offer based on the alleged policy. FAC ¶¶ 32, 49, 106. Courts routinely find that similar allegations of a uniform discriminatory policy or practice establish commonality at the pleadings stage. *See, e.g.*, *Woods-Early*, 330 F.R.D. at 120, 124 (refusing to strike class claims for lack of commonality where the plaintiff alleged the defendant's performance rating process was "flawed, discriminatory, and has the effect of 'undervalu[ing] Black Professionals'" and operated under the "executive brain trust['s] unfettered discretion" because the court could not "conclude that 'it would be impossible to certify' the proposed classes even after discovery") (quoting *Guariglia v. P&G*, No. 18 Civ. 4307, 2018 U.S. Dist. LEXIS 42861, at *11 (E.D.N.Y. Mar. 14, 2018); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 379-380 (E.D.N.Y. 2012) (denying motion to strike class claims where the plaintiffs alleged discrimination based on "uniform, systematically documented, and unvalidated company-wide procedures"); *see also Little*, 249 F. Supp. 3d at 419 (certifying criminal history discrimination class where the plaintiffs identified a single policy with "application to all hiring decisions"); *Houser*, 28 F. Supp. 3d at 243 (certifying criminal history discrimination class where common "Adjudication Criteria" were applied to all job applications).

While NTT does not actually challenge the Rule 23(b) factors, to the extent NTT argues that a liability showing would require individualized inquiries, that argument also is premature.

*See Andres*, 621 F. Supp. 3d at 418 (the Rule 23 analysis is "properly deferred to the class certification stage").  NTT ignores that Plaintiffs challenge uniform policies that were applied by NTT without any such individualized inquiry, *see* FAC ¶¶ 2, 34-35, 50-52, 60 (as to the Title VII Class, alleging NTT fails to perform an individualized review of applicants' criminal histories or evidence of rehabilitation); ¶¶ 6, 69, 80 (as to the NY Criminal History Discrimination Class, alleging NTT denied employment without performing any Article 23-A analysis).  That Plaintiffs applied for different roles for different reasons does not negate that they were denied for the *same* reason, which is clearly alleged throughout the Complaint.  *See* FAC ¶¶ 32-33, 49.

Further highlighting the premature nature of the inquiry, Plaintiffs have pleaded, and have the option after discovery, to seek certification of the class under Rule 23(b)(2), (b)(3), (c)(4), or some combination thereof.  *See* FAC ¶¶ 97-98.  And, to the extent any of the issues NTT raises have merit, which they do not, NTT ignores the case management tools available to the Court at class certification and trial to address those issues.  *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) ("[T]here are a number of management tools available to a district court to address any individualized damages issues, such as bifurcation, the use of a magistrate or special master, alteration of the class definition, the creation of subclasses, or even decertification after a finding of liability.") (quotations omitted); *see also Chen-Oster*, 325 F.R.D. at 84 (substantively same).

**Typicality.**  Plaintiffs have pleaded sufficient facts to support a showing of typicality among class members.  Rule 23's "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936.  The Amended Complaint alleges that the classes were "denied employment based in whole or in part because of NTT's policy and

practice of denying employment to individuals with criminal convictions." FAC ¶¶ 99-102. These allegations are sufficient to demonstrate the class members' claims arise from the same alleged conduct, which will require the resolution of the same factual and legal issues. *See McCracken v. Verisma Sys., Inc.*, No. 14 Civ. 6248, 2017 U.S. Dist. LEXIS 118941, at *6 (W.D.N.Y. July 28, 2017) (named plaintiffs' claims were typical when they were charged the same allegedly unlawful fee as all class members and the "typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual [class members'] claims" (quoting *Robidoux*, 987 F.2d at 936-37)); *see also Little*, 249 F. Supp. 3d 419-20 (typicality satisfied at class certification where named plaintiffs were denied employment under same policies as absent class members); *Houser*, 28 F. Supp. 3d at 247-48 (same).

**Adequacy.**    Finally, Plaintiffs have plausibly alleged that they adequately represent members of the class. *See* FAC ¶ 109; *see also Chen-Oster*, 325 F.R.D. at 80 (named plaintiff was adequate representative, at class certification, where her claims were not antagonistic to the class, even where she possessed a unique claim in addition to the class claims); *Houser*, 28 F. Supp. 3d at 248 (adequacy satisfied, at class certification, when there is "no conflict between the interests of the class and the named plaintiff[s]").

The *sole* supposed challenge to adequacy that NTT makes at this early stage is to recycle its argument that Plaintiffs cannot represent individuals who were injured prior to their discriminatory denial of employment. *See* Mot. at 24. But this argument is doctrinally wrong as to standing (*see* § III.B.1, *supra*) and lacks merit as to adequacy because it does not create a conflict and does not otherwise impede their ability to represent the class. *See, e.g.*, *Little*, 249 F. Supp. 3d at 421-22 (finding named plaintiffs to be adequate representatives, at class certification, and rejecting argument that lack of standing rendered them inadequate). Ultimately, NTT simply has

not identified *any* actual conflict that would impede Plaintiffs' ability to represent the class, which is what Rule 23(a)(4) is designed to determine. *Lemm v. N.Y. Cmty. Bancorp, Inc.*, No. 24 Civ. 903, 2024 U.S. Dist. LEXIS 83218, at *20 (E.D.N.Y. May 7, 2024) (finding named plaintiff adequate for class certification purposes where defendant "fail[ed] to raise any proof that [the named plaintiff] is an inadequate lead plaintiff").

Plaintiffs have adequately pled their class claims and NTT has failed to advance any argument that requires resolution now, as opposed to at the class certification stage. NTT's motion to strike should therefore be denied.

### C.    NTT's Remaining Arguments

#### 1.    Plaintiff Mandala's Second Cause of Action Is Not Time Barred.

NTT's argument that Plaintiff Mandala's Second Cause of Action, his NYHRL claim, is "undisputedly time-barred," Mot. at 14-15, fails because the claim was tolled through the filing of his state court savings class action.

Plaintiff Mandala filed this claim in New York County Supreme Court on August 16, 2019, well within the three-year statute of limitations period. *Mandala v. NTT, Inc.*, No. 654705/2019 (NY Cnty.) (the "State Court Action"), Dkt. No. 1. That filing tolled the statute of limitations as to those claims for all class members in any forum. *See Chavez v. Occidental Chem. Corp.*, 35 N.Y.3d 492, 503-04 (2020) (recognizing that, under New York law, filing a class action tolls the statute of limitations as to all class members, even across jurisdictions); *American Pipe*, 414 U.S. at 552-53; *see also Crown v. Parker*, 462 U.S. 345, 351 (1983) ("Failure to apply *American Pipe* to class members filing separate actions also would be inconsistent with the Court's reliance on *American Pipe* in *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156 (1974)."). NTT's alternative argument that the Second Cause of Action should be stayed pending resolution of the State Court Action is gamesmanship plain and simple: the parties have agreed that all of Plaintiffs' claims

should proceed in federal court, and that Plaintiffs would dismiss their state complaint – and Plaintiffs have sought that dismissal. *See* State Court Action, Dkt. No 63 (stipulating that Plaintiffs would dismiss the State Court Action if the Rule 60 motion were granted).[8]

Accordingly, Plaintiff Mandala's Second Cause of Action properly extends back to August 16, 2016—three years before the filing of his New York State class action complaint.

### 2.    Plaintiff Mandala Will Limit the Start of His Third Cause of Action to August 15, 2015.

Without conceding the validity of NTT's argument (Mot. at 24-25), Plaintiff Mandala agrees to limit the start of the statute of limitations period for his Third Cause of Action (the "Criminal History Discrimination Class") to August 15, 2015.

### 3.    Plaintiff Mandala Will Dismiss the Fourth Cause of Action.

Without conceding the merits of NTT's positions, Plaintiff Mandala agrees to dismiss the Fourth Cause of Action ("Failure to Provide a Copy of Article 23-A, N.Y Gen. Bus. Law § 380-g(d)"). *Cf.* Mot. at 15-19.

## IV.    CONCLUSION

As described above, Plaintiffs respectfully request that the Court deny NTT's motion to dismiss.

Dated: May 15, 2024
      New York, New York            Respectfully submitted,

             By: */s/ Christopher M. McNerney*
                  **OUTTEN & GOLDEN LLP**
                  Christopher M. McNerney
                  685 Third Avenue, 25th Floor

---

[8]    While the parties disagree as to the mechanism for the dismissal of Plaintiff Mandala's state law claim, and as to whether that dismissal should be with prejudice, this does not impact the fact that both parties have agreed to dismiss those claims in deference to the pre-existing federal venue. *See* State Court Action Dkt. Nos. 76, 84, 85.

New York, New York 10017
Telephone: (212) 245-1000
Email: cmcnerney@outtengolden.com

**OUTTEN & GOLDEN LLP**
Ossai Miazad
1225 New York Ave NW, Suite 1200B
Washington, D.C. 20005
Telephone: (202) 847-4400
Email: om@outtengolden.com

**OUTTEN & GOLDEN LLP**
Adam L. Koshkin*
One California, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Email: akoshkin@outtengolden.com

**NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.**
Rachel M. Kleinman
Breanna D. Williams*
Tiffani J. Burgess*
40 Rector Street, Fifth Floor
New York, New York 10006
Telephone: (212) 965-2200
Email: rkleinman@naacpldf.org
Email: bwilliams@naacpldf.org
Email: tburgess@naacpldf.org

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs and the Putative Classes*