UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGE MANDALA and CHARLES BARNETT, individually and on behalf of all others similarly situated,

Plaintiffs,

-v-

NTT DATA, INC.,

Defendant.

Case No. 18-cv-6591-CJS-MWP

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT IN ITS ENTIRETY AND WITH PREJUDICE**

Jacqueline Phipps Polito
Erin M. Train
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Telephone: 585.203.3400
jpolito@littler.com
etrain@littler.com

Attorneys for Defendant
NTT DATA, INC.

# TABLE OF CONTENTS

PAGE


I. PRELIMINARY STATEMENT .......... 1

II. ARGUMENT .......... 1

  A. PLAINTIFFS' DISPARATE IMPACT CLAIMS MUST BE DISMISSED. .......... 1

  B. PLAINTIFFS CANNOT ASSERT A NYSHRL CLAIM. .......... 8

  C. THE CLASS CLAIMS SHOULD BE STRICKEN. .......... 9

III. CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662,678 (2009) .......... 5

*Bellavia v. Orleans Cnty.*,
No. 1:22-CV-842-LJV-JJM, 2024 WL 1588603 (W.D.N.Y. Mar. 25, 2024) *adopted by* 2024 WL 1585437 (W.D.N.Y. Apr. 11, 2024) .......... 9

*Bility v. Univ. of Pittsburgh*,
No. 2:23-CV-00770-MJH, 2024 WL 1156625 (W.D. Pa. Mar. 18, 2024) .......... 6

*Borja-Valdes v. City and County of San Francisco*,
No. 3:14-cv-04168-CRB, 2015 WL 5522287 (N.D. Ca. Sept. 18, 2015) .......... 2

*Brook v. Simon*,
No. 17 Civ. 6435 (GBD), 2021 WL 878561 (S.D.N.Y. Mar. 9, 2021) .......... 7

*Brown v. City of New York*,
No. 16 CV 1106(NG)(RER), 2017 WL 1102677 (E.D.N.Y. Mar. 23, 2017) .......... 5

*Buon v. Spindler*,
65 F.4th 64 (2d Cir. 2023) .......... 5

*Chavez v. Occidental Chem. Corp.*,
35 N.Y.3d 492 (2020) .......... 9

*China Agritech, Inc. v. Resh*,
584 U.S. 732 (2018) .......... 9

*Doe v. Columbia Univ.*,
831 F.3d 46 (2d Cir. 2016) .......... 5

*EEOC v. Freeman*,
961 F. Supp. 2d 783 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th Cir. 2015) .......... 4

*Ellison v. Inova Health Care Servs.*,
--- F. Supp. 3d ---, No. 1:23-cv-00132, 2023 WL 6038016 (E.D. Va. Sept. 14, 2023) .......... 10

*John v. Whole Foods Mkt. Grp., Inc.*,
858 F.3d 732 (2d Cir. 2017) .......... 5

*Katz v. New York City Housing Preservation & Dev.*,
No. 21 Civ. 2933 (JPC), 2022 WL 3156178 (S.D.N.Y. Aug. 8, 2022) .......... 6

*Kevari v. Scottrade, Inc.*,
No. 18-819-JFW, 2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ........ 10

*Lewis v. Cuomo*,
No. 20-CV-6316-CJS, 2021 WL 5827274 (W.D.N.Y. Dec. 8, 2021) ........ 9

*Mandala v. NTT DATA*,
18-CV-6591 (CJS), 2019 WL 3237361 (W.D.N.Y. July 18, 2019) ........ 1

*Mandala v. NTT DATA*,
88 F.4th 353 (2d Cir. 2023) ........ 6, 7

*Mandala v. NTT Data, Inc.*,
18-CV-6591 (CJS), 2021 WL 5771154 (W.D.N.Y. Dec. 6, 2021) ........ 3

*Mandala v. NTT DATA, Inc.*,
975 F.3d 202 (2d Cir. 2020) ........ 2, 3, 4, 5

*Merhulik v. Weltman, Weinberg, & Reis Co., LPA*,
No. 1:20 CV 1188, 2020 WL 7156621 (N.D. Ohio Dec. 7, 2020) ........ 2

*Muldrow v. Garland*,
No. 8:21-cv-2674-KKM-JSS, 2023 WL 6376378 (M.D. Fla. Sept. 30, 2023) ........ 5, 6

*Ndugga v. Bloomberg L.P.*,
1:20-cv-7464-GHW, 2023 WL 4744183 (S.D.N.Y. July 25, 2023) ........ 6

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012) ........ 9

*Osborne v. Travis Cnty.*,
638 F. App'x 290 (5th Cir. 2016) ........ 6

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ........ 7

*Spring v. Allegany-Limestone Cent. Sch. Dist.*,
No. 14-CV-476S, 2017 WL 6512858 (W.D.N.Y. Dec. 20, 2017) ........ 8

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ........ 5

*Syeed v. Bloomberg L.P.*,
No. 1:20-cv-7464-GHW, 2022 WL 3447987 (S.D.N.Y. Aug. 17, 2022) ........ 6

*Toussaint v. City of New York*,
No. 19 Civ. 1239 (AT), 2021 WL 4429316 (S.D.N.Y. Sept. 27, 2021) ........ 4

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) .......... 5

*Village Green at Sayville, LLC v. Town of Islip*,
43 F.4th 287 (2d Cir. 2022) .......... 2

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 10

*Wards Cove Packing Co., Inc. v. Atonio*,
490 U.S. 642 (1989) .......... 1

**Other Authorities**

Bruce Western, *Punishment and Inequality in America 27*, Fig. 1.4, 32-33, Table 1A (Russell Sage Foundation 2006) 1 .......... 8

Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937 (2003) .......... 3

*Education and Correctional Populations*, BUREAU OF JUSTICE STATISTICS (2003), *available at* https://bjs.ojp.gov/content/pub/pdf/ecp.pdf .......... 2

Jaylon Thomas & Kalen Russel, *Black Students' Lived Experiences With and Perceptions of Law Enforcement*, 22 Diversity & Democracy 1 (2019) .......... 3

## I. PRELIMINARY STATEMENT

To save their FAC, Plaintiffs ask this Court to ***ignore*** the Second Circuit's precedent ***in this case affirming dismissal of the Original Complaint*** and instead, seek to have this Court reach a different conclusion based solely upon a footnote of one lone jurist.[1] While Plaintiffs' convenient misunderstanding of the pleading standard may have worked to resurrect this lawsuit once, surely, it should not happen again. Moreover, in making this request, Plaintiffs misrepresent material factual allegations that are ***not*** present in their FAC – a blatant effort to revive the defunct claims. Furthermore, not only do Plaintiffs ask this Court to ignore the allegations (as pled) in the FAC, but they also wholesale fail to address *any* case cited in Defendant's Motion. To permit this action to move forward based upon a patchwork of overbroad statistics (unrelated to the applicant pool) and conclusory, non-specific allegations is exactly what the Supreme Court cautioned against, and what "Congress expressly rejected in drafting Title VII." *Wards Cove Packing Co.*, *Inc. v. Atonio*, 490 U.S. 642, 652-53, 656-57 (1989) (collecting cases).

## II. ARGUMENT

### A. PLAINTIFFS' DISPARATE IMPACT CLAIMS MUST BE DISMISSED.

The ***actual factual allegations*** contained in the FAC ***do not*** state a plausible disparate impact claim under either Title VII or NYSHRL. Moreover, Plaintiffs' multiple misrepresentations with respect to the factual allegations ***contained*** in the FAC cannot (and do not) save their claims.

At the outset, and as noted in Defendant's Motion, the ***only*** employment policy or practice Plaintiffs have plausibly alleged is NTT DATA's alleged policy "not to hire persons with felonies on their records." *See* Def. Mot., at 10 n.5. Neither this Court, nor the Second Circuit, have found that Plaintiffs have plausibly pled anything other than this specific issue. *See Mandala v. NTT DATA,* 18-

[1] Defendant ("NTT DATA" or "Defendant") incorporates by reference herein all defined terms, abbreviations, and arguments used in its Moving Brief. (*See* Dkt. 57-1) ("Motion" or "Def. Mot.").

CV-6591 (CJS), 2019 WL 3237361, at *3-4 (W.D.N.Y. July 18, 2019) ("*Mandala I*"); *see also Mandala v. NTT DATA, Inc.*, 975 F.3d 202, 211 (2d Cir. 2020) ("*Mandala II*"). Yet, Plaintiffs continue to argue that NTT DATA's policy was broadly based on "non-job-related convictions," regardless of whether the conviction is a felony, misdemeanor, or infraction. *See* Opp., at 4, 11 n.4. Plaintiffs cannot backdoor their general statistics by referencing a job posting that neither Plaintiff applied for, as the Second Circuit already limited the disparate impact analysis to the positions the Plaintiffs actually applied to, and were allegedly rejected from, based upon the *only* policy that the FAC plausibly pleads. *See Mandala II*, 975 F.3d at 212, n.6 (limiting Plaintiffs' allegations to their own positions where the Original Complaint failed to allege "what other positions…what the qualifications for those positions might be, or even whether [NTT DATA] applies the same alleged hiring policy to them.").[2]

Since the statistics cited do not support their claim, Plaintiffs attempt to disguise them by brazenly claiming "the disparity between imprisonment risk for Black people and for white people holds steady among individuals who attended some college ***or graduated from college***." Opp., at 4. However, the FAC contains absolutely ***no allegations***, ***nor cites to any studies, journals, or articles*** about the differences between imprisonment risks among ***college graduates***. *See* FAC, *generally*.[3] (To

[2] *See also Merhulik v. Weltman, Weinberg, & Reis Co., LPA*, No. 1:20 CV 1188, 2020 WL 7156621, at * 7 (N.D. Ohio Dec. 7, 2020) ("[S]peculation that the wording of the job posting may have kept [a protected class of] applicants other than [plaintiff] for applying for a job at [defendant], without more, is insufficient to state a claim for disparate impact discrimination."); *Borja-Valdes v. City and County of San Francisco*, No. 3:14-cv-04168-CRB, 2015 WL 5522287, at *8 (N.D. Ca. Sept. 18, 2015) (plaintiff's failure to allege she applied for jobs at issue precluded her from bringing disparate impact claim).

[3] Perhaps the reason Plaintiffs do not actually contain this statistical analysis in their FAC is that the statistics invert once a college degree is obtained. *See* Caroline Wolf Harlow, Ph.D., Bureau of Justice Statistics, *Education and Correctional Populations*, BUREAU OF JUSTICE STATISTICS, at 6 (2003), *available at* https://bjs.ojp.gov/content/pub/pdf/ecp.pdf (indicating the percentage of white males with a college degree or more between the ages of 20 through 39 at state prisons was 12.32% of the white male population with that level of education and the percentage of Black males with a college degree or more between the ages of 20 through 39 at state prisons was 10.45% of the total Black male population). *See also Village Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022) (noting "[a] court may take routine judicial notice of documents retrieved from official government websites" in affirming 12(b)(6) dismissal)(internal quotations omitted). This confirms the Second

be clear, all that "some college" indicates is that "a person has attended college but that they did not receive any degree.").[4] In fact, as this Court previously discussed, the "study regarding a perception of discriminatory policing on college campuses" has little relevance to ***this case***. *Mandala v. NTT Data, Inc.*, 18-CV-6591 (CJS), 2021 WL 5771154, at *8, n.3 (W.D.N.Y. Dec. 6, 2021) ("*Mandala IV*"). This is never truer than where the study cited, as here, was simply a question-and-answer survey, from a single university, and with data from only Black students.[5]

As noted in Defendant's Motion, the general population statistics – even those that Plaintiffs cite to show that, "even among people with criminal records, African Americans were particularly disadvantaged in the job market compared to white people with criminal records" – ***do not*** include the appropriate comparator group, given the educational levels of prisoners are vastly different than the general population, and wholly inapposite to the comparators in ***this case***. *Compare* Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937, 955-61, 949-50 (2003) ("More than 70% of federal and nearly 90% of state prisoners have no more than a high school degree (or equivalent).") (cited at FAC, ¶ 60 n.17) *with Mandala II*, 975 F.3d at 211-12 (noting positions Plaintiffs applied for reflect requirement of "educational or technical experience that is not shared by the general population.").[6]

The only statistic relied upon by counsel that addresses college is the study addressing ***imprisonment risks*** for individuals with ***some college***. *See* FAC, ¶ 58. But this statistic remains insufficient to state a plausible claim because it fails to demonstrate "that the disparity is substantial

---

Circuit's reasoning in *Mandala II* was sound 975 F.3d at 212 ("[I]t is not much of a stretch to imaging that arrest and conviction rates are negatively correlated with education…").

[4] NIDA CTN Common Data Elements, Question: What Is The Highest Grade Or Level Of School The Participant Has Completed Or The Highest Degree They Have Received, Question: What is the highest grade or level of school the participant has completed or the highest degree they have received | NIDA CTN Common Data Elements (nih.gov).

[5] Jaylon Thomas & Kalen Russel, *Black Students' Lived Experiences With and Perceptions of Law Enforcement*, 22 Diversity & Democracy 1, 3 (2019) (cited in FAC, ¶ 59 n.16).

[6] The statistics Plaintiffs rely upon are based on studies focused on individuals with high-school degrees for entry-level positions. *See* Def. Mot., at 13 n.8 (discussing studies from FAC, ¶ 60 n.17).

or significant and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." *Mandala II*, 975 F.3d at 209 (internal citation omitted). As stated by the Second Circuit, to do this, "the statistics must plausibly suggest that the challenged practice actually has a disparate impact," ***and*** the statistics must also "focus on the disparity between appropriate comparator groups." *Id.*, at 210.[7]

The additional statistical data of ***imprisonment risks*** does not, contrary to Plaintiffs' argument, address the ***policy at issue*** – NTT DATA's alleged policy "not to hire persons with felonies on their records." FAC, ¶¶ 32, 49. In other words, "imprisonment risks" are too far removed from felony convictions - the only specific challenged policy at issue to "plausibly suggest that the challenged practice actually has a disparate impact." *Mandala II*, 975 F.3d at 210. Where the statistics pled do not address the specific policy at issue, it is insufficient to withstand a 12(b)(6) motion. *See, e.g.*, *Toussaint v. City of New York*, No. 19 Civ. 1239 (AT), 2021 WL 4429316, at *10 (S.D.N.Y. Sept. 27, 2021) (dismissing disparate impact claim where statistics were not connected to specific policies). *Cf. EEOC v. Freeman*, 961 F. Supp. 2d 783, 798 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th Cir. 2015) (explaining statistics not applicable when they "relate to things that are not even considered under Defendant's hiring criteria, such as arrest and incarceration rates").

Moreover, Plaintiffs chose not to "provide additional allegations to explain why their chosen national statistics are in fact likely to be representative of NTT [DATA]'s qualified applicant pool" despite the Second Circuit's clear instruction to do so. *Mandala II*, 975 F.3d at 212. In fact, Plaintiffs failed to include any allegations with respect to Mandala's educational history. *See* FAC, *generally*. Nor do Plaintiffs allege any facts that individuals with "some college education" accurately reflects the pool

[7] In fact, Plaintiffs fail to even address the arguments raised in NTT DATA's Motion with respect to the statistical analysis, instead solely relying upon the Second Circuits decision in *Mandala V*. Contrary to Plaintiffs' arguments (discussed further below), whether this statistic is sufficient to "nudge" Plaintiffs' disparate impact claims from conceivable to plausible has ***not*** been decided.

of qualified job applicants in question. *Id.* Instead, Plaintiffs rest on prior decisions that this additional statistic "addresses" a deficiency or that it "may" nudge their disparate impact claim from conceivable to plausible. *See* Opp., *generally*. But their calculated decision to do so fails for three specific reasons.

*First*, none of the cases cited by Plaintiffs refute the plethora of cases cited in Defendant's Motion dismissing disparate impact claims at the pleadings stage where the operative pleading failed to provide statistics for the appropriate comparator under similar circumstances.[8] For example:

- *Muldrow v. Garland*, No. 8:21-cv-2674-KKM-JSS, 2023 WL 6376378 (M.D. Fla. Sept. 30, 2023): Employee alleged policy of FBI hiring field supervisors who worked at FBI headquarters disparately impacted women because women were less likely to work at headquarters due to childrearing responsibilities. *Id.*, at *5. Court found that plaintiff's proffered statistics that 19.8% of all criminal investigators were women, compared to 16% of all field supervisors were women, was insufficient because there are no allegations with respect to the percentage of these women working in headquarters, or how the percentage of field versus headquarter job postings sufficient to form a causal nexus. *Id.*, at *7.[9]

[8] Plaintiff cites to cases asking this Court to, once again, ignore the pleading standard for Title VII disparate impact claims. *See Mandala II*, 975 F.3d at 209 (requiring Plaintiffs to "***at least*** set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim") (emphasis added). Plaintiffs' reliance on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) and *Buon v. Spindler*, 65 F.4th 64 (2d Cir. 2023) to argue that NTT DATA "continues to advance positions that have been rejected by the Second Circuit" (*see* Opp., at 8) ignores the Second Circuit's rejection that the "minimal support" language of discriminatory intent in disparate treatment claims should apply to the causal connection prong of disparate impact claims. *Mandala II*, 975 F.3d at 209 n.3 ("And as a result, there is no reason to hold that minimal support is all that it takes to render such a claim plausible…allegations 'that are merely consistent with a defendant's liability' won't do.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009)). The sole case cited by Plaintiffs involving a disparate impact claim is entirely distinguishable for an important reason. In *Brown v. City of New York*, No. 16 CV 1106(NG)(RER), 2017 WL 1102677 (E.D.N.Y. Mar. 23, 2017), the plaintiff offered statistics with respect to similarly-situated colleagues – where Plaintiffs have offered none. *Compare id.*, at *2-3, *6 *with* Def. Mot., at 6-8. If the Court were to rely upon the reasoning in *Brown* alone, Plaintiffs' FAC would be dismissed. The remaining cases do not involve disparate impact claims. *See, e.g.*, *Doe v. Columbia Univ.*, 831 F.3d 46, 55-59 (2d Cir. 2016) (applicability of discriminatory intent to Title IX case); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (pleading standard for disparate treatment standard); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736-38 (2d Cir. 2017) (pleading standard for Article III standing in deceptive trade practices, false advertising, and unjust enrichment claims).

[9] The *Muldrow* court pointed out the exact same concerns raised by NTT DATA:

> Requiring statistical disparity allegation between relevant comparators is consistent with *Twombly* and *Iqbal* because it requires a plaintiff alleging disparate impact claims to plausibly allege a claim for relief before the defendant is subject to discovery and litigation. Disparate impact claims implicate whole companies and agencies. Through

- *Katz v. New York City Housing Preservation & Dev.*, No. 21 Civ. 2933 (JPC), 2022 WL 3156178 (S.D.N.Y. Aug. 8, 2022): In dismissing the plaintiffs' FHA claims, the Court found that plaintiffs failed to demonstrate a causal connection between their protected class as Orthodox Jews applying for New York City affordable housing and the policy at issue: occupancy limitations. *Id.*, at *6. Plaintiffs offered statistical evidence that the national average for Orthodox Jews between the ages of 40 and 59 were to have 4.1 children, and that 48% of Orthodox Jewish families have four or more children. *Id.* In granting defendants 12(b)(6) motion on disparate impact claims, the court found that the nationwide average was the inappropriate comparator group, or that how many Orthodox Jewish families apply for housing through the same mechanism as plaintiffs or how many are denied housing based upon family size. *Id.*, at *6-7.

- *Bility v. Univ. of Pittsburgh*, No. 2:23-CV-00770-MJH, 2024 WL 1156625 (W.D. Pa. Mar. 18, 2024): Plaintiff's disparate impact claim could not survive summary judgment where the only statistical evidence provided was to compare the percentage of tenured Black faculty members (2%) with the percentage of the Black population in the city of Pittsburgh (22%). *Id.*, at *6.

- *Osborne v. Travis Cnty.*, 638 F. App'x 290 (5th Cir. 2016): Applicant offered statistical evidence that a lower percentage of Black bar applicants passed the bar exam as compared to White bar applicants. *Id.*, at 295. In affirming dismissal of the plaintiff's first amended complaint and denial of plaintiff's request for leave to file a second amended complaint, the Fifth Circuit found that the only statistical evidence provided did not relate to an employment practice of the defendant, and the plaintiff provided "no information on the effect on African-Americans of [defendant's] practice of only hiring licensed attorneys when compared to the overall '***pool of applicants***.'" *Id.* (emphasis added).[10]

*Second*, the *Mandala V* decision did not determine that the FAC as proposed cured all deficiencies. Plaintiffs repeatedly place emphasis on a single clause from the *Mandala V* decision. *See*

---

> discovery, defendants must provide data about their entire workforce, which is time consuming, expensive, and uniquely invasive. Under *Twombly* and *Iqbal*, a plaintiff cannot simply guess about the possibility of a disparate impact without any allegations that make such as inference reasonable and raise a right to relief above the speculative level.

2023 WL 6376378, at *6 (internal quotation omitted).

[10] Likewise the progression of one of the plaintiffs NYSHRL disparate impact claims in the matter of *Syeed v. Bloomberg L.P.*, No. 1:20-cv-7464-GHW, 2022 WL 3447987 (S.D.N.Y. Aug. 17, 2022) is instructive. The court repeatedly dismissed plaintiff Ndugga's NYSHRL complaint for failure to state a plausible claim for disparate impact for failing to plausibly plead a causal connection – even when plaintiff alleged "industry wide pay disparities" because the plaintiff did "not allege that the pay disparity at Bloomberg is greater than that overall pay disparity in the industry." *Id.* at * 12 (S.D.N.Y. Aug. 17, 2022). On reconsideration, the Court admitted error in overlooking allegations showing the pay disparity at Bloomberg's Washington D.C. Bureau and United Kingdom office between men and women was 20% - higher than the industry average. *Ndugga v. Bloomberg L.P.*, 1:20-cv-7464-GHW, 2023 WL 4744183, at *2-3 (S.D.N.Y. July 25, 2023).

88 F.4th 353, 365 (2d Cir. 2023) ("…Plaintiffs' proposed amendments ***address*** the sole pleading deficiency identified by the district court.") (emphasis added). *See also* Opp., at 1, 4, 11. NTT DATA does not dispute that Plaintiffs' FAC includes additions that are directed to ***address*** the deficiencies of the Original Complaint – just that the FAC ***cures*** these deficiencies.[11]

The Second Circuit did not state that the deficiencies were, in fact, cured. Contrary to Plaintiffs' arguments, *Mandala V* did not invoke the "Mandate Rule" by using the word "address" such that this Court cannot evaluate the plausibility of Plaintiffs' claims. Instead, the *Mandala V* (and *Mandala IV*) decision involved procedural considerations whether Plaintiffs' motion to vacate this Court's prior judgment (after failing to amend, appealing the issue, having this Court's judgment affirmed) fell under Rule 60(b)(1) or 60(b)(6) and, if the later, "extraordinary circumstances" warranted such relief. *Mandala V*, 88 F.4th at 360-61, 365. The Second Circuit articulated the following holding (in full):

> In sum, this is one of the exceptional cases necessitating relief from judgment: Plaintiffs have yet to be afforded a single opportunity to amend their pleading; the original dismissal of the Complaint was premised on grounds subject to reasonable, actual, and vigorous debate; Plaintiffs diligently prosecuted their case at all times; and Plaintiffs' proposed amendments address the sole pleading deficiency identified by the district court. On these facts, the court's contrary holding was not a proper exercise of discretion.

*Id.* at 365. In other words, their holding extended only as to whether "exceptional circumstances" existed based, in large part, on the fact that Plaintiffs had not yet amended their Original Complaint, which is insufficient to invoke the "Mandate Rule" on a subsequent motion to dismiss. *See Brook v. Simon*, No. 17 Civ. 6435 (GBD), 2021 WL 878561, at *2 (S.D.N.Y. Mar. 9, 2021) ("Plaintiffs concerns

---

[11] The plain language used in *Mandala V* confirms this Court can consider the plausibility of the FAC. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) ("[L]itigants are entitled to rely on the meaning suggested by the plain language of a court order."). Address means "to deal with; treat." *Address*, MERRIAM WEBSTER (2022). Whereas the definition of "cure" is "to eliminate or correct a violation or defect." *Cure*, MERRIAM WEBSTER (2022); *see also Cure*, BLACK'S LAW DICTIONARY, (11th ed. 2019) (defining cure as "[to] remove one or more legal defects to correct one or more legal errors.").

regarding the 'mandate rule' and this Court's discussion of Rule 15(a)…misplaced," noting that the Court's subsequent dismissal of the claims set forth in the plaintiffs amended complaint "did not hinge on this procedural issue."); *Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-CV-476S, 2017 WL 6512858, at *4-5 (W.D.N.Y. Dec. 20, 2017) (analyzing plaintiff's claims where the mandate from the Second Circuit was "less clear" with respect to the plausibility of these claims).

*Third*, as pointed out by the Second Circuit in *Mandala II*, a negative correlation between education and imprisonment rates exists, demonstrated by Plaintiffs' ***own*** statistics:

**Table 1A.1 Cumulative Risk of Imprisonment**

| | All (1) | Less than High School (2) | High School or GED (3) | All Noncollege (4) | Some College (5) |
|---|---|---|---|---|---|
| White men | | | | | |
| BJS | 3.0 | — | — | — | |
| NLSY | 4.3 | 11.3 | 3.7 | 5.1 | 1.5 |
| Born 1945 to 1949 | 1.4 | 4.0 | 1.0 | 2.1 | .5 |
| Born 1965 to 1969 | 2.9 | 11.2 | 3.6 | 5.3 | .7 |
| Black men | | | | | |
| BJS | 24.6 | — | — | — | |
| NLSY | 18.7 | 30.9 | 18.8 | 19.3 | 7.2 |
| Born 1945 to 1949 | 10.5 | 17.1 | 6.5 | 12.0 | 5.9 |
| Born 1965 to 1969 | 20.5 | 58.9 | 18.4 | 30.2 | 4.9 |

*Sources*: BJS figures reported by Bonczar and Beck (1997) using synthetic cohort from the 1991 Survey of Inmates of State and Federal Correctional Facilities (BJS 1993). NLSY figures give percentage of respondents interviewed in a correctional facility by age thirty-five (whites N = 2171, blacks N = 881). NLSY cohort was born between 1957 and 1964.

Bruce Western, *Punishment and Inequality in America* 27, Fig. 1.4, 32-33, Table 1A (Russell Sage Foundation 2006) 1 (FAC, ¶ 58 n.15) (demonstrating statistical disparity between White men and Black men imprisonment risks decreases from 47.7% with less than a high school degree to 14.8% with a high school degree or GED to 4.2% with some college). As noted previously, the statistical disparity inverts once college graduates are considered. *See* footnote 3 *supra.*

### B. PLAINTIFFS CANNOT ASSERT A NYSHRL CLAIM.

Plaintiffs' gamesmanship continues with respect to their new cause of action under the NYSHRL. In addition to conceding ("without conceding") Defendants' arguments regarding their

third and fourth causes of action (*see* Opp., at 22-23), Plaintiffs likewise concede their second cause of action under the NYSHRL is analyzed identically as their first cause of action under Title VII. *See* Opp., 11. Accordingly, for the same reasons set for in Section II.A *supra*, and in Defendant's Motion, Plaintiffs' second cause of action must be dismissed. *See* Def. Mot., at I.A.

Even if this Court does retain jurisdiction over Mandala's NYSHRL claim, it is time-barred. Plaintiffs argue that filing a putative class action that included a NYSHRL disparate impact claim in state court after *Mandala I* tolls the same claim in this action. This is simply not true. In *China Agritech, Inc. v. Resh*, the Supreme Court unequivocally stated that the tolling doctrine enunciated in "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." 584 U.S. 732, 736 (2018) (cited in Opp., at 17).[12] Plaintiffs do not dispute that the NYSHRL claim is untimely – only that tolling is permitted under *American Pipe*. *Compare* Moving Br., Sect. I.B.i., *with* Opp., Sect. III.C.1.[13] Accordingly, Plaintiffs' class claims brought pursuant to the NYSHRL must be dismissed.

**C. THE CLASS CLAIMS SHOULD BE STRICKEN.[14]**

"Commonality requires that class members suffer the same injury; merely suffering violation

---

[12] Even Plaintiffs reliance on *Chavez v. Occidental Chem. Corp.* does not warrant a different conclusion. *See* Opp., at 22. Notably, the plaintiffs in *Chavez* "filed individual lawsuits" and were a different set of plaintiffs than the "group of plaintiffs" that filed the original lawsuit in 1993. *See* 35 N.Y.3d 492, 496-97 (2020). Here, Mandala's efforts to forum shop by bringing class actions for the same claim, albeit in different forums, does not warrant the application of *American Pipe* tolling, either on his individual claim or putative class claims.

[13] "The failure to oppose an argument raised in a motion to dismiss is normally deemed a concession of the argument and abandonment of the claim." *Bellavia v. Orleans Cnty.*, No. 1:22-CV-842-LJV-JJM, 2024 WL 1588603, at *6 (W.D.N.Y. Mar. 25, 2024) *adopted by* 2024 WL 1585437 (W.D.N.Y. Apr. 11, 2024). *See also Lewis v. Cuomo*, No. 20-CV-6316-CJS, 2021 WL 5827274, at *14 (W.D.N.Y. Dec. 8, 2021) ("[W]here, as here, the Plaintiffs have responded to the motion to dismiss but have not disputed particular arguments or defended certain claims, the Court may regard Plaintiffs as having conceded those arguments and abandoned those claims.").

[14] Contrary to Plaintiffs' arguments, NTT DATA argues that the Plaintiffs themselves lack standing to bring claims as individual for the timeframe they assert (*compare* Opp., Sect. III.B.1 *with* Def. Mot., Sect. I.C.i)– which is wholly appropriate for consideration by the Court at this stage. *See, e.g.*, *NECA-*

of the same law is insufficient." *Kevari v. Scottrade, Inc.*, No. 18-819-JFW (GJSx), 2018 WL 6136822, at *7 (C.D. Cal. Aug. 31, 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (striking class allegations). Plaintiffs ***admit*** that any determination of liability turns upon the individualized inquiry. *See* Opp., 20 (arguing that NTT DATA was required to perform individualized inquiry pursuant to all three remaining causes of action). This is no different than asking the Court to sustain a putative class action based upon plaintiffs' individual religious beliefs, even under the guise of a "common" policy. *See, e.g.*, *Ellison v. Inova Health Care Servs.*, --- F. Supp. 3d ---, No. 1:23-cv-00132 (MSN/LRV), 2023 WL 6038016, at *11 (E.D. Va. Sept. 14, 2023) (striking class claims for failure to satisfy the commonality requirement at the pleadings stage because the individual analysis of the claims "do not lend themselves to common resolution."). Not only do Plaintiffs admit that resolution would necessitate an individualized inquiry as to each of the putative class members claims, but they do not refute the fact that they were initially offered positions by NTT DATA for different clients in different states. FAC ¶¶ 25, 39. Since Plaintiffs' remaining proposed classes will almost certainly "impede the generation of common answers" (*Dukes*, 564 U.S. at 350), their class allegations should be stricken.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to dismiss the first amended complaint and award such other relief as the Court deems proper and just.

---

*IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 n.9 (2d Cir. 2012) ("[Plaintiff's] standing to assert claims on others' behalf is an inquiry separate from its ability to represent the interests of absent class members under Fed. R. Civ. P. Rule 23(a).").

Dated: May 30, 2024
Fairport, New York

LITTLER MENDELSON, P.C.

By: */s/ Jacqueline Phipps Polito*

Jacqueline Phipps Polito
Erin M. Train
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450
Telephone: 585.203.3400
Facsimile: 585.203.3414
jpolito@littler.com
etrain@littler.com

Attorneys for Defendant
NTT DATA, INC.