UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEORGE MANDALA, *individually and on behalf of all others similarly situated,*

                               Plaintiff,

vs.

NTT DATA, INC.,

                               Defendant.

DECISION AND ORDER

18-CV-6591 (MAV)

---

## INTRODUCTION

This matter is presently before the Court on Defendant NTT Data, Inc.'s motion to reconsider the Court's July 2025 Decision and Order granting in part and denying in part Defendant's motion to dismiss. ECF No. 72. In the alternative, Defendant asks the Court to amend its order to certify an issue for interlocutory appeal to the Second Circuit and to stay proceedings while the interlocutory appeal is pending. *Id.* Plaintiff George Mandala[1] opposes Defendant's motions. ECF No. 75. For the reasons discussed below, Defendant's motions are denied, and Defendant must answer the remaining claims in Plaintiff's First Amended Complaint ("FAC") on or before 30 days from the date of this order.

## BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural

---

[1] For the vast majority of the litigation in this case, there were two representatives of the putative class: Mandala, and Charles Barnett. Barnett withdrew as a representative of the putative class on September 30, 2025. ECF No. 78. For ease of discussion, the Court will refer to Plaintiff in the singular in this decision rather the plural as in prior decisions.

history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

The original complaint in this putative class action suit was filed on August 15, 2018. ECF No. 1. In July 2019, the Hon. Judge Charles J. Siragusa of this district granted Defendant's motion to dismiss. *Mandala v. NTT Data, Inc.*, No. 18-CV-6591 CJS, 2019 WL 3237361 (W.D.N.Y. July 18, 2019). The judgment was subsequently affirmed on appeal by the Second Circuit Court of Appeals (*Mandala II*), and Plaintiff's petition for a rehearing *en banc* was denied (*Mandala III*). *Mandala v. NTT Data, Inc.*, 975 F.3d 202 (2d Cir. 2020); *Mandala v. NTT Data, Inc.*, 988 F.3d 664 (2d Cir. 2021).

Following the denial of the petition for a rehearing, Plaintiff filed a motion to vacate judgment with the district court and sought to amend the complaint. ECF No. 35. After Judge Siragusa's denial of Plaintiff's motion to vacate was reversed by the Second Circuit, Plaintiff filed the First Amended Complaint ("FAC") in March 2024. ECF No. 49; *see also Mandala v. NTT Data, Inc.*, No. 18-CV-6591 (CJS), 2021 WL 5771154 (W.D.N.Y. Dec. 6, 2021), *rev'd and remanded*, 88 F.4th 353 (2d Cir. 2023). The FAC alleges disparate impact claims under Title VII and the New York State Human Rights Law ("NYSHRL"), and claims under New York law alleging improper use of a criminal background check. ECF No. 49.

As relevant here, the FAC alleges that Defendant NTT Data, Inc. is a global IT services company employing over 110,000 people worldwide, including approximately 18,000 people in North America and at least four offices in New York.

*Id.* ¶¶ 17, 105. In early 2017, Plaintiff George Mandala, an African-American, applied for a position as a "Salesforce Developer" with Defendant, successfully completed two phone interviews, and received a letter formally offering him the job on March 22, 2017. *Id.* ¶¶ 15, 22–26. On March 23, 2017, Mandala accepted the offer and "authorized a background check pursuant to Defendant's policy, and Defendant obtained a criminal background check on Mr. Mandala from a consumer reporting agency." *Id.* ¶¶ 28–29. Then, on March 30, 2017, Mandala was informed by phone that "NTT had a policy not to hire persons with felonies[2] on their records." *Id.* ¶ 32. On April 6, 2017, Mandala received a letter from Defendant withdrawing its job offer, and stating that "[t]his action was influenced by information contained in a consumer report . . . ." *Id.* ¶ 33. On June 2, 2017, Mandala filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued him a Right to Sue letter on May 17, 2018. *Id.* ¶ 38.

The FAC also alleges that statistics show that African Americans are arrested, sentenced, and imprisoned for crimes at substantially higher rates than whites, relative to their share of the national population. FAC ¶¶ 54–55 (citing reports from the Federal Bureau of Investigation (2016) and the Census Bureau (2017), and enforcement guidance from the EEOC (2012)). In addition, the FAC points to a study published by the Russell Sage Foundation in 2006, which found that "Black men with some college education have imprisonment risks that are seven (7) times greater than white men with some college education." *Id.* ¶ 58 (citing Bruce Western, *Punishment*

_____

2 Mandala was convicted of Driving While Intoxicated in 2014. Id. ¶ 35.

*and Inequality in America*, Russell Sage Foundation: 2006). "This [pattern] is consistent with the racial disparities that exist among individuals with lesser educational attainment." *Id.* (again citing the Russell Sage Foundation study).

The FAC alleges that notwithstanding these disparities, Defendant has a policy and practice of denying employment to individuals with criminal histories, including felony convictions, and no process or policy to determine whether applicants convicted of crimes have made positive changes in their lives after their respective convictions. *Id.* ¶ 64–65. For instance, when posting for a "Network/Systems Administrator in New York City," Defendant listed as a "basic qualification" that the applicant have "[n]o prior felony arrests." *Id.* ¶ 37. Thus, Plaintiff infers that Defendant's policy and practice of denying job opportunities to individuals with non-job-related convictions had and continues to have a significant and detrimental impact on African American applicants based on their race, color and/or national origin, as compared to white applicants. *Id.* at ¶ 54.

In April 2024, Defendant filed a motion to dismiss the FAC for failure to state a claim and lack of jurisdiction. ECF No. 57. In July 2025, the Court issued a Decision and Order granting Defendant's motion in part, and denying it in part. ECF No. 71. As relevant here, the Court deferred making a finding on Defendant's statute of limitations argument regarding Plaintiff's NYSHRL claim, and found that Plaintiff has plausibly pleaded disparate impact claims under Title VII and the NYSHRL. *Id.* at 17. Soon thereafter, Defendant filed a motion for reconsideration, motion to amend the Decision and Order to certify an issue for interlocutory appeal, and motion to stay

4

proceedings while the appeal is pending. ECF No. 72. Those motions are presently before the Court.

## MOTION FOR RECONSIDERATION

Defendant maintains that reconsideration of the Court's Decision and Order is warranted because it believes the Court committed "clear error" in two respects: (1) declining to dismiss Plaintiff's NYSHRL disparate impact claim as barred by the statute of limitations, and (2) allowing Plaintiff's disparate impact claims under both Title VII and NYSHRL to proceed.

### A. Legal Standard

The Federal Rules of Civil Procedure do not recognize a motion for "reconsideration." *See Lopez v. Goodman*, No. 10-CV-6413 CJS, 2013 WL 5309747, at *1 (W.D.N.Y. Sept. 20, 2013) (citing *Hamilton v. Williams*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998)). However, "'[m]otions for reconsideration may be filed under Federal Rules of Civil Procedure 59(e), 54(b), or 60(b) . . . .'" *Warr v. Liberatore*, No. 13-CV-6508P, 2018 WL 3237733, at *1 (W.D.N.Y. July 3, 2018) (quoting *McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524, *3 (E.D.N.Y. 2008)). Here, because the Court's decision on Defendant's motion to dismiss did not result in an appealable final judgment, Rule 54(b) governs this motion for reconsideration.

Rule 54(b), "Judgment on Multiple Claims or Involving Multiple Parties," provides that:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court

> expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Though this rule indicates that the district court has inherent power to reconsider its own entries prior to the entry of a judgment adjudicating all the claims, "[t]he Second Circuit has 'limited district courts' reconsideration of earlier decisions . . . by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Warr*, 2018 WL 3237733, at *2 (quoting *Official Comm. of the Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).

For these reasons, the Second Circuit has also stated that motions for reconsideration should generally be denied "'unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.'" *Warr*, 2018 WL 3237733, at *2 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, 506 U.S. 820 (1992)). "'These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court.'" *Boyde v. Osborne*, 2013 WL 6662862, *1 (W.D.N.Y. 2013) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

6

## B. Plaintiff's NYSHRL Claim and the Statute of Limitations

Defendant argues that the Court committed clear error by declining to find that Plaintiff's NYSHRL claim was barred by the statute of limitations. In particular, Defendant asserts that Plaintiff admitted in his opposition papers to the motion to dismiss that his NYSHRL claim was barred by the statute of limitations unless tolled under *American Pipe & Construction Co. v. Utah*, 414 U.S. 38 (1974), and cites to Second Circuit caselaw for the proposition that "'[w]here the dates in the complaint show that an action is barred by a statute of limitations,' a motion to dismiss based on the statute of limitations is properly treated as one under Rule 12(b)(6).'" ECF No. 72-1 at 5–6 (quoting *Cangemi v. United States*, 13 F.4th 115, 134–53 (2d Cir. 2021)). Therefore, Defendant takes issue with the Court's finding that dismissing the claim would be premature because resolution of its statute of limitations argument requires fact-specific evaluation. *Id.* at 6. "In short," Defendant concluded, "this Court undertook the analysis, didn't like the result, and therefore declined to reach a determination on the *legal* issue presented to it – whether *American Pipe* tolling applies to Plaintiff's efforts to toll his *own* putative class action claim when it is first asserted *after* the statute of limitations expires." *Id.* (emphasis in original).

As an initial matter, the Court does not reach decisions on particular issues based on whether or not it "likes the result." Further, the Court did not read Plaintiff's opposition papers as conceding his claim is barred unless *American Pipe* applies. ECF No. 64. Rather, the Court was unable to discern with certainty from the face of the FAC whether the claim was actually barred, even in the absence of tolling under

*American Pipe.* ECF No. 71 at 10–12. Among the complicating factors was the practice of the majority of courts in this Circuit to toll the statute of limitations while the EEOC investigates the claim. *Id.* Despite due consideration of Defendant's arguments in its motion to dismiss, the Court was unable to make a determination and thus declined to bar the claim at this stage of the case. *Id.* In other words, Defendant had not demonstrated to the Court that the FAC clearly showed that the claim was not timely. *See, e.g., Allen v. Dairy Farmers of Am., Inc.,* 748 F. Supp. 2d 323, 354 (D. Vt. 2010) ("A statute of limitations analysis is generally riddled with questions of fact which the Defendants must establish in order to bar Plaintiffs' claims."). The Court declines to find that its decision in this regard was clear error.

## C. The Legal Sufficiency of Plaintiff's Disparate Impact Statistics

Defendant also argues that there were two clear errors in the Court's ruling that Plaintiff had sufficiently pleaded his disparate impact claims: (1) the Court incorrectly considered unsupported facts, and (2) the Court incorrectly applied irrelevant statistics. ECF No. 72-1 at 7–15.

### *i. Incorrectly Considered Unsupported Facts*

Defendant maintains that the Court improperly relied upon allegations regarding a job posting that Plaintiff did not apply for, and therefore that Plaintiff has not shown actual harm to have standing to bring a claim. *Id.* at 8–9. Specifically, Defendant cites to the Court's reference to the FAC's factual allegation regarding a job posting for a "Network/Systems Administrator in New York City" that listed as a requirement "[n]o prior felony arrests," and argues that Plaintiff has failed to allege

any harm because he has not alleged that he applied for the position, or was deterred from applying for the position. *See* ECF No. 71 at 8–9 (referencing FAC ¶ 37). Although it is not clear from Defendant's papers whether it is challenging Plaintiff's Article III standing or his class standing, the Court is satisfied that Plaintiff's allegations in the FAC are sufficient to find both forms of standing at this stage.

A named plaintiff's Article III standing and a plaintiff's class standing "'are different issues that require separate consideration.'" *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 544 (W.D.N.Y. 2018) (quoting *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277 (BKS/CFH), 2016 WL 403497, at *4 (N.D.N.Y. Jan. 15, 2016) (citations omitted)). The "irreducible constitutional minimum" of Article III standing for the named plaintiff is that he "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Here, Plaintiff demonstrated Article III standing by plausibly alleging that his employment offer for a position as a Salesforce Developer was rescinded following Defendant's discovery of his 2014 felony conviction, that Defendant's conduct was traceable to an allegedly discriminatory policy of denying employment to convicted felons, and that this injury would be redressed by a judicial decision restoring Plaintiff to his position and awarding backpay, or compensatory damages. FAC ¶¶ 32–33, 117–18.

On the other hand, "in a putative class action, a plaintiff has class standing if

9

he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012)). As indicated in the preceding paragraph, the Court is satisfied that Plaintiff has plausibly alleged the first element: that he personally has suffered some actual injury as a result of the allegedly illegal conduct of the Defendant. *See also* ECF No. 71 at 5.

Moreover, when the factual allegation at the center of Defendant's argument – i.e., the allegation regarding a job posting for a "Network/Systems Administrator in New York City" that listed as a requirement "[n]o prior felony arrests" (FAC ¶ 37) – is read together with such additional allegations as that Defendant's policy "has excluded many properly qualified persons, including disproportionate numbers of African American applicants" (FAC ¶ 66), the FAC plausibly alleges the second element of class standing. That is, it plausibly alleges that the conduct which caused Plaintiff's injury implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by Defendant.

Accordingly, the Court finds no merit in Defendant's primary argument regarding the Court's consideration of the alleged facts. Defendant also asserts that the FAC is deficient because it contains no factual allegations to show "the pool of

10

qualified applicants" for this position. ECF No. 72-1. The Court finds this assertion to be unpersuasive for the same reasons explained below regarding Defendant's arguments about the "incorrect application of irrelevant statistics."

### ii. Incorrectly Applied Irrelevant Statistics

Defendant maintains that the "Court committed clear error in failing to scrutinize the proffered statistics alleged by Plaintiffs." ECF No. 72-1 at 9–10. In particular, Defendant argues that despite guidance from the Second Circuit decision that affirmed the dismissal of Plaintiff's original complaint, the Court "merely accepted 'as true every inference [Plaintiffs'] ask[ed] [it] to draw from those findings no matter how attenuated." *Id.* at 11. In support of this argument, Defendant asserts that "three of the five paragraphs" the Court relied upon "were already found insufficient by the Second Circuit" (*Id.* at 11); that the FAC failed to create a causal link between the general population statistics and the pool of applicants qualified for the position at issue (*Id.* at 11–12); and that the Court relied upon statements from the concurrence in the Second Circuit's denial of Plaintiff's petition for a hearing *en banc* "without any further analysis" (*Id.* at 12–15).

The Court is aware that the majority of the Second Circuit panel that affirmed Judge Siragusa's dismissal of the original complaint in *Mandala II* found that it was error for Plaintiff "to simply presume that population-level statistics will accurately describe subgroups of that population." *Mandala II*, 975 F.3d at 211. The Court is also aware that the majority found it fatal to Plaintiff's disparate impact claim that he "offered no allegations to suggest that the general population statistics on which

[he] rel[ied] might accurately reflect [Defendant's] pool of qualified job applicants," especially since the titles alone of the positions at issue "reflect that they require at least some education or technical experience that is not shared by the general population . . . ." *Id.* at 11–12 (citation and internal quotation marks omitted).

Nevertheless, in elaborating upon the reasoning behind *Mandala II,* the concurrence in *Mandala III* explained that the *Mandala II* majority was drawing on the panel's "judicial experience and common sense" to determine Plaintiff's claim was not plausible. *Mandala III,* 988 F.3d at 667. In that regard, the panel found that "common sense dictates that highly educated individuals can be expected to have lower conviction rates than the general population." *Id.* Given this link between education and a decrease in conviction rates, "the panel majority opinion simply concluded that Plaintiffs were asking the district court to draw inferences that, based on common sense, were too attenuated from the supplied statistics to be plausible." *Id.* Thus, the panel majority stated that to render the national statistics relevant to their claim, "Plaintiffs simply need 'to provide additional allegations to explain why their chosen national statistics are in fact likely to be representative of [the] qualified candidate pool." *Id.* at 668 (quoting *Mandala II,* 975 F.3d at 212). "Here, that could have taken the form of additional national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain." *Id.*

Neither *Mandala II* nor *Mandala III* dismissed the national statistics in the original complaint as uncredible or implausible *per se.* Rather, the Second Circuit found that Plaintiff had not provided sufficient "connective tissue" between the

national statistics he originally offered, and the qualified labor pool in question. *Mandala III*, 988 F.3d at 666. That "connective tissue" has been supplied in the FAC in the form of the allegation that "[b]lack men with some college education have imprisonment risks that are seven (7) times greater than white men with some college education," which "is consistent with the racial disparities that exist among individuals with lesser educational attainment." FAC ¶ 58. Whereas the original complaint "simply presume[d] that population level statistics . . . accurately described subgroups of the population," *Mandala II*, 975 F.3d at 212, the FAC provides support for the proposition that there will be a disparity in African American and white conviction rates even when controlling for educational attainment. *Mandala III*, 988 F.3d at 667–68.

In other words, the FAC alleged additional statistics that created a plausible connection between the national statistics originally alleged and the qualified labor pool. At this early stage of the case, when "Plaintiffs are undoubtedly working from an informational disadvantage," this is sufficient to allege "disparities between populations that are relevant to the claim the plaintiff seeks to prove." *Mandala II*, 975 F.3d at 210.

### MOTION FOR § 1292(B) CERTIFICATION & MOTION FOR STAY

In the alternative to reconsidering its Decision and Order, Defendant asks the Court to amend its decision to certify for interlocutory appeal to the Second Circuit under 28 U.S.C. § 1292(b) the issue as to whether Plaintiff's disparate impact claim

was adequately pleaded. ECF No. 72-1 at 15–23. Additionally, Defendant seeks a stay while the interlocutory appeal is pending. *Id.* at 23–25.

## A. Legal Principles

A district court's denial of a motion to dismiss is not typically appealable. *Tanasi v. New All. Bank*, No. 12-CV-646S, 2013 WL 12304559, at *1 (W.D.N.Y. Dec. 17, 2013). Nevertheless, 28 U.S.C. § 1292(b) provides the district court with the discretion to certify a matter for interlocutory appeal where the district judge is:

> of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . .

28 U.S.C. § 1292(b).

As to the first element, a question of law is "controlling" if "reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or; the certified issue has precedential value for a large number of cases." *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784(WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (citations omitted). As to the second element, "substantial ground for difference of opinion" exists where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y.2013). "The possibility of a different outcome on appeal is not sufficient to show a substantial ground for difference of opinion, nor is 'the mere presence of a disputed issue that is a question of first impression.'" *Segedie v. The Hain Celestial*

14

*Grp., Inc.*, No. L 4-CV-5029 NSR, 2015 WL 5916002, at *3 (S.D.N.Y. Oct. 7, 2015) (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

"[I]nterlocutory appeals are strongly disfavored in federal practice." *Segedie*, 2015 WL 5916002, at *2 (citing *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010)). As a result, even when the elements of section 1292(b) are satisfied, "the district court retains unfettered discretion to deny certification." *Garber v. Office of the Com'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014).

## B. Application

Even assuming a "controlling question of law" in this case, the Court declines to certify this action for an interlocutory appeal because Defendant has not demonstrated either conflicting authority on the issue, or that the issue is particularly difficult and of first impression for the Second Circuit. Rather, Defendant simply disagrees with the Court's application of the Second Circuit's earlier rulings in this case. While Defendant maintains that "the underlying premise" of the Second Circuit's *Mandala II* decision was that the disparity between African American and white individuals with a criminal history is inversely affected by education levels (ECF No. 72-1 at 13 n.7), the Court's understanding, as described above, is that the Second Circuit simply sought a clearer connection between the national statistics and the populations at issue.

The Court has reviewed Defendant's proffered example of the Second Circuit's application of the principles from its *Mandala II* ruling to the circumstances presented in *Moss v. Bd. of Educ. of Sachem Cent. Sch. Dist.*, and finds no conflict

with the Court's application of the principles here. *Moss,* No. 24-2096-CV, 2025 WL 946417 (2d Cir. Mar. 28, 2025). For a comparator pool, the plaintiff in *Moss* "relied solely on census data reflecting that 4% of the District population, as a whole, was Black . . . . without demonstrating that it 'accurately reflect[s] the pool of qualified job applicants for the position in question.'" *Moss,* 2025 WL 946417, at *2 (quoting *Mandala,* 975 F.3d at 211). This is precisely the issue the Second Circuit found with Plaintiff's original complaint. However, as described above, the Court finds that Plaintiff's addition of allegations to the FAC suggesting that a disparity in imprisonment remains even after controlling for levels of education is sufficient to "nudge" Plaintiff's disparate impact claim across the line from conceivable to plausible. Therefore, the Court declines to certify this matter for interlocutory appeal.

Given the Court's ruling on Defendant's motion to amend its decision to certify an issue for interlocutory appeal, Defendant's motion for a stay pending appeal is denied as moot.

## CONCLUSION

For the foregoing reasons, Defendant NTT Data, Inc.'s motion to reconsider, motion to amend and certify for interlocutory appeal, and motion to stay proceedings [ECF No. 72] are all DENIED. Accordingly, it is hereby ORDERED that NTT shall file and serve its answer on Plaintiff's remaining claims on or before thirty (30) days from the date of this order. SO ORDERED.

Dated:     April 22, 2026
           Rochester, New York

                                        HON. MEREDITH A. VACCA
                                        United States District Judge

16